FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 24 2002
at 9 o'clock and 15 min. A.M.
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, Inc., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; AND RAYMOND IWAMOTO, KURT GLASSMAN, DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants.<br><br>and<br><br>CG DEVELOPMENT INC., F&J MOVERS, and RENEE K. COSTA<br><br>Additional Cross-claim Defendants. | CV. NO. 01-187 DAE/BMK |

ORDER DENYING DEFENDANT FRANCES HALLER-BOWLING'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO PLAINTIFF WHIRLPOOL'S SECOND AMENDED COMPLAINT AND GRANTING IN PART AND DENYING IN PART DEFENDANT FRANCES HALLER-BOWLING'S MOTION TO DISMISS DEFENDANT CIT GROUP'S CROSS-CLAIM

The court heard Defendant Frances Haller-Bowling's Motions on October 15, 2002. Timothy J. Hogan, Esq., appeared on behalf of Plaintiff. Louise K.Y. Ing, Esq., appeared on behalf of Defendant CIT Group; Ted N. Pettit, Esq., appeared on behalf of Defendant Michael Clifford and Defendant CG Development; Jeanette Holmes, Esq., and Margery S. Bronster, Esq., appeared on

**EXHIBIT A**

Fed. R. Civ. P. 12(c) provides that a party may move for judgment on the pleadings "[a]fter the pleadings are closed, but within such time as not to delay the trial [.]" Ordinarily, this means that a Rule 12(c) motion must await the answer of all defendants. Moran v. Peralta Community College Dist., 825 F. Supp. 891, 894 (N.D. Cal. 1993). At the time that Whirlpool filed its Opposition, CIT had not yet filed its amended answer to the Second Amended Complaint. However, the amended answer was filed on September 24, 2002, and therefore to date all defendants have answered the complaint. Therefore, the pleadings are closed with respect to Whirlpool's complaint. Accordingly, for purposes of this motion, the pleadings are closed and a Rule 12(c) motion is timely.

**B. Fraud Conspiracy**

Haller-Bowling contends that in its Second Amended Complaint Whirlpool has failed to allege with the required specificity pursuant to Fed. R. Civ. P. 9(b) any fraudulent conduct by Haller-Bowling herself. Haller-Bowling does not argue that fraud was not properly pled with regards to the other Defendants. Haller-Bowling's arguments fail to consider the distinction between the fraud claims asserted against the other defendants and the fraud *conspiracy* claim asserted against Haller-Bowling. Instead, she argues that Whirlpool has failed to

allege a sufficient claim of fraud against Haller-Bowling and therefore, the fraud conspiracy claim against her must also fail. The failure to allege a fraud claim with specificity against Haller-Bowling does not necessarily mean the fraud conspiracy claim must also fail. However, Fed. R. Civ. P. 9(b)'s particularity requirement does apply to claims of a conspiracy to defraud. See Southern Union Co. v. Southwest Gas Corp., 165 F. Supp. 2d 1010, 1020 (D. Ariz. 2001). Whirlpool argues that Southern Union does not apply to its fraud conspiracy claim because Hawaii requires only that co-conspirators be shown to have approved, cooperated in *or* agreed to the conspiracy, citing Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91 Haw. 224, 982 P.2d 853 (Haw. App. 1999). However, in Southern Union, the court applied 9(b)'s particularity requirements to claims of conspiracy to fraudulently induce based on California's definition of a "civil conspiracy" which is nearly identical to the definition used in Hawaii.[2]

---

[2] In California, a civil conspiracy consists of "a combination of two or more persons to accomplish an evil or unlawful purpose." Southern Union, 165 F. Supp. at 1020. Hawaii's accepted definition of a civil conspiracy is "a combination of two or more persons [or entities] by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means." Robert's Haw. Sch. Bus, Inc., 91 Haw. at 252 n. 28; see also Duplex Printing Press Co. v. Deering, 254 U.S. 443, 466, 41 S. Ct. 172, 65 L. Ed. 349 (1921) (citation omitted); Island Tobacco Co. v. R.J. Reynolds Tobacco Co., 513 F. Supp. 726, 739 (D. Haw. 1981); Bonds v. Landers, 279 Or. 169, 566 P.2d 513, 516 (1977) (citing 15A C.J.S. 599 Conspiracy § 1(2)).

Where a plaintiff alleges a conspiracy to commit fraud, Rule 9(b) requires more than conclusory allegations of the conspiracy. Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Rule 9(b) requires that a conspiracy to commit fraud be pleaded with the same particularity as the fraud itself. Wanetick v. Mel's of Modesto, Inc., 811 F. Supp. 1402, 1406 n. 3 (N.D. Cal. 1992). To satisfy this requirement, a "plaintiff must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement." Alfus, 745 F. Supp. at 1521. It is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves towards this wrongful goal by virtue of a mutual understanding or agreement." Id. See also In re Sunrise Technologies Sec. Litig., No. C-92-0948TEH, 1992 WL 359636 at *7 (N.D. Cal. Sept. 22, 1992) (a plaintiff must plead "an agreement among defendants to engage in an unlawful act," as well as "overt acts by the defendants in furtherance of that agreement"). Although an express agreement need not be shown for a plaintiff to prevail on a civil conspiracy claim, there must be at least a tacit understanding. See In re Sunset Bay Associates, 944 F.2d 1503, 1517 (9th Cir. 1991). The existence of a conspiracy "may sometimes be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other

circumstances." Id. (quoting Greenwood v. Mooradian, 137 Cal. App.2d 532, 538, 290 P.2d 955, 959 (1955)). However, a plaintiff must allege specific facts which support the inference of an agreement. See id. at 1517-18; Alfus, 745 F. Supp. at 1521; see also Roberts v. Heim, 670 F. Supp. 1466, 1484-85 (N.D. Cal. 1987) (specific facts must be alleged from which an understanding or agreement may be inferred).

Taking all of the allegations to be true for purposes of this motion, Whirlpool has set forth specific facts that support an inference that Haller-Bowling agreed with other defendants to specifically defraud Whirlpool. In support of its fraud conspiracy claim, Whirlpool alleges that Haller-Bowling created stock purchase agreements, backdated these agreements to conceal where the monies came from, and that she received money from a MidPac account. The court agrees with Whirlpool's contention that the creation and backdating of these stock purchase agreements along with the receipt of funds from MidPac evidences Haller-Bowling's agreement and knowing commission of an overt act in furtherance of the conspiracy. In this case, the existence of the conspiracy can be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances. See In re Sunset Bay Associates, 944 F.2d 1503, 1517 (9th Cir. 1991).

Haller-Bowling maintains that the allegations do not support an inference that she engaged in a conspiracy to specifically defraud Whirlpool because the allegations do not establish that she had any knowledge of Whirlpool, or its transactions with MidPac. The Ninth Circuit has noted that since one cannot agree, expressly or tacitly, to commit a wrong about which he or she has no knowledge, civil conspiracy necessarily requires that all of the parties be aware of the wrongful conduct at the beginning of the agreement. Moore v. Brewster, 96 F.3d 1240 (9th Cir. 1996), cert. denied, 1188 S. Ct. 329 (1997). Accordingly, Haller-Bowling argues that absent allegations that she had knowledge of Whirlpool, there can be no conspiracy claim. However, Ninth Circuit case law only requires that the parties be aware of wrongful conduct, not wrongful conduct directed at a particular individual or entity. See id. There may be a "meeting of the minds" to commit an unlawful act without having knowledge of all the parties that will be involved in the scheme.

Therefore, the allegations that Haller-Bowling backdated stock purchase agreements to conceal the source of certain funds and improperly received MidPac money are sufficient to support a fraud conspiracy claim. The specificity requirement of Rule 9(b) is satisfied, even without establishing that Haller-Bowling had knowledge of Whirlpool, as Whirlpool identified the time, place, and manner of the conspiratorial conduct, as well as

Haller-Bowling's role. See Lui Ciro, 895 F. Supp. at 1374. The purposes of Rule 9(b) is to give adequate notice to the adverse party of the charges against it and to deter groundless suits. See, e.g., Wright & Miller, Federal Practice and Procedure, Civil 2d §§ 1296-1298 [hereinafter "Wright & Miller"]. Whirlpool's allegations meet the specificity requirement applicable to the fraud conspiracy claim. Therefore, Haller-Bowling is not entitled to judgment as a matter of law on the fraud conspiracy claim.

**C. RICO Claim**

Whirlpool asserts that Haller-Bowling is liable for violation of 18 U.S.C. § 1962(c) of the Racketeering Influenced and Corrupt Organizations Act ("RICO").

Section 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

RICO defines the term "pattern of racketeering activity" as requiring "at least two acts of racketeering activity . . . the last of which occurred within ten years after the commission of a prior act of racketeering activity." RICO, 18 U.S.C. § 1961(5). In H.J. Inc. v. Northwestern Bell Telephone

asserted. Cross-claim ¶ 39. Incorporation by reference is a common and acceptable pleading practice. Rule 10(c); *Wright & Miller*, Federal Practice and Procedure: Civil 2d § 1326. Among the allegations incorporated by reference are Haller-Bowling's improper receipt of $1.29 million disguised as a stock sale. Also incorporated into the unjust enrichment claim is the allegation that Haller-Bowling unjustly benefitted from the sale of her shares of the inter-locking CG firms at inflated prices in return for MidPac cash which was allegedly laundered through co-defendant Glassman.

These constitute prima facie allegations of "enrichment without adequate legal basis" which is the only requirement for stating an unjust enrichment claim. Accordingly, CIT has met the Rule 8(a)(2) requirement of a short and plain statement giving the defendant fair notice of the claim of unjust enrichment and the grounds upon which it rests.

**3. Misrepresentation**

Haller-Bowling argues that CIT's cross-claim for misrepresentation must be dismissed as CIT has failed to adequately plead misrepresentation. A misrepresentation claim must meet the heightened pleading standard of Rule 9(b). CIT contends that it is entitled to a relaxation of the requirements of Rule 9(b) pursuant to the "group published information

doctrine." The group published information doctrine was set forth by the Ninth Circuit in Wool v. Tandem Computers, Inc., 818 F.2d 1433 (9th Cir. 1987). "The group published information doctrine is a narrow exception to the general rule stated in Fed. R. Civ. P. 9(b) that allegations of fraud must be pled with particularity." In re Interactive Network, Inc. Securities Litigation, 948 F. Supp. 917, 921 (N.D. Cal. 1996). To be afforded the benefit of this exception, the question is whether the defendant is alleged to be involved in running the day-to-day affairs of the corporation. Id. at 22. CIT contends that the exceptions applies in this case because Haller-Bowling was part of a "narrowly defined group of officers or directors who are alleged to have had day-to-day control" over MidPac. Memo. in Opp. at 10. However, Haller-Bowling correctly points out that CIT has not alleged that Haller-Bowling was an officer, director, agent or employee of MidPac or that she was involved in MidPac's day-to-day operations.

CIT insists that Haller-Bowling does not establish why such allegations are necessary to maintain the cross-claim. CIT itself invoked the group published information doctrine yet fails to realize that a failure to allege the circumstances under which the exception applies will prevent them from enjoying the benefit of the exception. Absent an allegation that Haller-Bowling was involved in the day-to-day operations of MidPac, CIT cannot

benefit from the group published information doctrine. Therefore, CIT must meet the heightened pleading requirement of 9(b).

CIT contends that it has met the heightened pleading requirement as it has alleged ample operative facts as to the actions of the conspirators as a group, establishing each element of fraud, as well as the time, place, and nature of the fraudulent activities. However, CIT's position ignores the distinction between a fraud claim and a fraud conspiracy claim. CIT's argument is that Haller-Bowling was part of a conspiracy to defraud CIT. If CIT wanted to pursue a fraud conspiracy claim they would only need to plead with specificity the existence of an agreement and an overt act in furtherance of the conspiracy on the part of Haller-Bowling. <u>See</u> discussion under Whirlpool's fraud conspiracy claim above. However, to assert a fraud claim against Haller-Bowling, as opposed to a conspiracy claim, CIT must allege specific facts with respect to Haller-Bowling that would establish the elements of a fraud claim. CIT incorrectly claims that allegations and proof of each of the elements of fraud as to the conspirators *as a group* will suffice for the fraud claim against Haller-Bowling.

CIT alleges the identical facts as Whirlpool with regards to Haller-Bowling. Accordingly, the analysis is the same. The facts alleged by CIT are sufficient to support a claim

for fraud conspiracy, not for fraud itself. As discussed above regarding Whirlpool's fraud conspiracy claim, the specific facts allege that Haller-Bowling agreed to the creation and backdating of the stock purchase agreements, as well as the receipt of funds from Mid Pac. Because the law only requires that she be aware of the wrongful conduct, these allegations suffice to support the fraud conspiracy claim. However, the allegations in CIT's cross-claim are insufficient to support a direct claim of fraud or misrepresentation against Haller-Bowling. Therefore, the court GRANTS Haller-Bowling's Motion to Dismiss CIT's cross-claim for misrepresentation.

**4. Standing**

Haller-Bowling also argues that CIT's cross-claims are general claims which belong exclusively to the MidPac Bankruptcy Trustee. However, this position cannot be maintained with respect to contribution and indemnification claims which by their nature are personal claim. Similarly, CIT's claim of tortious interference with contract is personal as it arises from the loan agreement between MidPac and CIT. No other creditor was a party to the loan agreement and there is no rationale for characterizing the agreement giving CIT secured creditor status as a general claim on behalf of unsecured creditors belonging to a trustee. As discussed above, the facts alleged by both

harm to MidPac. That is the definition of a general claim, and MidPac's bankruptcy trustee has exclusive standing to pursue it.

As indicated above, CIT argues that pursuant to the law of the case, it has standing. However, CIT ignores that the law of the case pertains solely to Whirlpool's particular situation. CIT represented that Magistrate Kurren had already found that CIT had standing to pursue its fraudulent conveyance claim in his oral ruling on September 20, 2002. However, Magistrate Kurren specifically stated that he was not ruling on whether or not there was standing, he only granted CIT leave to amend their cross-claim. Accordingly, there is no conflict between the court's ruling on the instant motion and any previous orders in this case.

Therefore, the court GRANTS Haller-Bowling's Motion to Dismiss CIT's cross-claim for fraudulent conveyance.

## CONCLUSION

For the reasons stated above, the court DENIES Defendant Frances Haller-Bowling's Motion for Judgment on the Pleadings as to Plaintiff Whirlpool's Second Amended Complaint and GRANTS IN PART AND DENIES IN PART Defendant Frances Haller-Bowling's Motion to Dismiss CIT's Group's Cross-Claim. The courts GRANTS Defendant Frances Haller-Bowling's Motion to

Dismiss CIT's cross-claims of misrepresentation and fraudulent conveyance and DENIES Defendant Frances Haller-Bowling's Motion to Dismiss CIT's Group's Cross-Claim for contribution/indemnity, unjust enrichment, tortious interference with contract.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, OCT 24 2002.

DAVID ALAN EZRA
CHIEF UNITED STATES DISTRICT JUDGE

Whirlpool Corporation vs. CIT Group/Business Credit, Inc., et al., Civil No. 01-00187 DAE/BMK; ORDER DENYING DEFENDANT FRANCES HALLER-BOWLING'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO PLAINTIFF WHIRLPOOL'S SECOND AMENDED COMPLAINT AND GRANTING IN PART AND DENYING IN PART DEFENDANT FRANCES HALLER-BOWLING'S MOTION TO DISMISS DEFENDANT CIT GROUP'S CROSS-CLAIM