Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys At Law
A Law Corporation

PAUL ALSTON 1126-0
LOUISE K. Y. ING 2394-0
THOMAS E. BUSH 4737-0
18th Floor, ASB Tower
1001 Bishop Street
Honolulu, Hawai'i 96813
Telephone: 524-1800
Facsimile: 524-4591
palston@ahfi.com
ling@ahfi.com
tbush@ahfi.com

Attorneys for Defendant/Cross-claimant
THE CIT GROUP/BUSINESS CREDIT, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Crossclaim Defendants. | Civil No. CV 01 00187 MEA-BMK (Tort and RICO)<br><br>**SECOND PROPOSED SET OF JURY INSTRUCTIONS (UNANNOTATED) OF DEFENDANT/CROSSCLAIMANT THE CIT GROUP/BUSINESS CREDIT, INC.**; CERTIFICATE OF SERVICE<br><br>TRIAL DATE: November 6, 2006<br>JUDGE: Hon. Marvin E. Aspen |

**SECOND PROPOSED SET OF JURY INSTRUCTIONS (UNANNOTATED) OF DEFENDANT/ CROSSCLAIMANT THE CIT GROUP/BUSINESS CREDIT, INC.**

Defendant/Crossclaimant The CIT Group/Business Credit, Inc., ("CIT")by and through its attorneys, submits its unannotated Second Proposed Set of Jury Instructions.

CIT reserves the right to supplement, amend, correct or modify its requested jury instructions as appropriate. CIT also reserves the right to submit proposed jury instructions on damages if it is found liable to Whirlpool on any of the claims.

DATED: Honolulu, Hawai`i, March 1, 2006.

/s/ Louise K. Y. Ing
PAUL ALSTON
LOUISE K. Y. ING
THOMAS E. BUSH
Attorneys for Defendant/Cross-claimant THE CIT GROUP/BUSINESS CREDIT, INC.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Claims and Defenses Asserted)

In this case, the Plaintiff, Whirlpool, has alleged claims against CIT for fraud, fraud conspiracy, conversion and tortious interference with contract. CIT denies all liability.

DEFENDANT/CROSSCLAIMANT CIT'S SUPPLEMENTAL
JURY INSTRUCTION NO. __
(Bifurcation of Trial - Before the Start of Evidence)

In a general sense, there are two issues that are common to the different claims that you will be asked to consider in this trial. Those two issues are liability and damages. I have bifurcated this trial, that is, cut this trial into two parts, such that you will hear only the evidence that relates to liability for each of the claims that you will be asked to consider, and you will decide whether there is liability for each claim you consider. At the end of the presentation of evidence relating to liability, I will be instructing you on the applicable law for liability. You must not let speculation as to any party's claims of damages enter your consideration of liability.

DEFENDANT/CROSSCLAIMANT CIT'S SUPPLEMENTAL
JURY INSTRUCTION NO. __
(Bifurcation of Trial - After Evidence)

As I told you at the start of this trial, there are two issues that are common to the claims that you will now consider: liability and damages. However, as I have previously told you, I have bifurcated this trial, that is, cut this trial into two parts, such that you have heard only the evidence that relates to liability regarding the various claims. You will now decide the liability issue for each claim. I will thus be instructing you only on the law that applies to the issue of liability for each of the claims that you will consider. You must not let speculation as to a party's claims of damages enter your deliberations on the issue of liability. If you find that a party bringing claims has proven liability for one or more of that party's claims, then we will proceed to trial on the issue of damages. If you find that a party has not proven liability for any of that party's claims, then this case is over as to those claims because the issue of damages arises only if the party defending against a claim has been proven to be liable on the claim.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Corporations—Fair Treatment)

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Whirlpool Fraud Claim)

Whirlpool has sued CIT for fraud because of statements it alleges were made to it by Ted Phelps. Whirlpool alleges that Mr. Phelps was CIT's agent and that as CIT's agent, he committed fraud upon Whirlpool by misrepresenting the financial condition of MidPac and Maui Home Supply. CIT denies that Mr. Phelps was its agent and that he committed fraud on Whirlpool. To prevail on its claim against CIT for fraud, Whirlpool must prove that Mr. Phelps was CIT's agent and that while acting as CIT's agent, he committed fraud upon Whirlpool.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Agent and Principal - Definition)

An agent is a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services. The other person is called a principal. One may be an agent without receiving compensation for services. The agency agreement may be oral or written.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Agent - Scope of Authority Defined)

An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Agency and Authority denied)

For Whirlpool's claim of fraud against CIT, Whirlpool has sued CIT as a principal. Whirlpool claims that Ted Phelps was acting as CIT's agent. CIT denies that Mr. Phelps was acting as CIT's agent and denies that Mr. Phelps was acting within the scope of authority.

If you find that Mr. Phelps was the agent of CIT and was acting within the scope of authority, then any act or omission of Mr. Phelps while acting as agent for CIT was the act or omission of CIT.

If you find that Mr. Phelps was not acting within the scope of authority as CIT's agent, then you must find for CIT.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Agency - Actual Authority)

In order to find that Mr. Phelps was CIT's agent, you must find that he had actual authority, as implied from the conduct of the parties.

To establish implied actual authority, Whirlpool must prove both of the following:

(1) Conduct by CIT, including acquiescence, which is communicated directly or indirectly to Mr. Phelps; and

(2) A reasonable belief by Mr. Phelps based on such conduct that CIT desired Mr. Phelps to perform certain acts for it.

Acquiescence is a silent appearance of consent and occurs where the principal knows that the agent is acting on the principal's behalf and takes no action to object.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Whirlpool Fraud Claim - Elements)

If you find that Ted Phelps was an agent of CIT and was acting within the scope of authority, you must then consider whether Mr. Phelps committed fraud upon Whirlpool. Whirlpool's claim for fraud requires it to prove each of the following elements by clear and convincing evidence:

(1) a misrepresentation of a material fact, or a promise as to a material matter which at the time it was made, Mr. Phelps did not intend to perform;

(2) made with the knowledge that the representation or promise was false;

(3) intending that Whirlpool would act upon the misrepresentation or promise in the manner that Whirlpool actually did act;

(4) that Whirlpool relied on the alleged misrepresentation or promise and that its reliance was justified; and

(5) that Whirlpool, as a proximate consequence of its reliance on the misrepresentation or promise, suffered a loss.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Fraud - Materiality)

An element of fraud is the misrepresentation of a material fact. A material fact is one which reasonable person would attach importance in determining choice of action in transaction. The representation must have been of an existing material fact. A representation that is merely a promise to do something in the future or that is just conjecture or prophecy about future events will not be sufficient to find fraud.

If you find that Whirlpool has not proven by clear and convincing evidence that CIT made a material misrepresentation of a then-existing fact, then your verdict must be in favor of CIT on Whirlpool's fraud claim.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Fraud - Justifiable Reliance - Reliance)

An element of fraud is the justifiable reliance on the alleged misrepresentation of a material fact or alleged false promise. Whirlpool must prove by clear and convincing evidence that it not only acted in reliance on Mr. Phelps' alleged misrepresentations about the financial condition of MidPac and Maui Home Supply or promises, but was justified in that reliance. Reliance exists when the misrepresentation or promise caused Whirlpool's conduct in entering into the transactions in question, and when without this representation or promise, Whirlpool would not have entered into the transaction.

The fraud, if any, need not be the sole cause if it appears that reliance upon the representation or promise substantially influenced that party's action, even though other influences operated as well.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Fraud-Justifiable Reliance)

Whirlpool must not only act in reliance on the false representation, but must be justified in that reliance; that is, it was reasonable in light of the circumstances and Whirlpool's intelligence, experience and knowledge, for Whirlpool to accept the representation or promise without making an independent inquiry or investigation.

Whirlpool cannot meet the justifiable reliance element of the claim if you find that Whirlpool reasonably knew or should have known about MidPac and Maui Home Supply's financial condition.

If you find that Whirlpool has not proven by clear and convincing evidence that it justifiably relied on Mr. Phelps' alleged misrepresentations, then your verdict must be in favor of CIT on Whirlpool's fraud claim.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Fraud-Justifiable Reliance)

The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him.

Although the recipient of a fraudulent misrepresentation is not barred from recovery because he could have discovered its falsity if he had shown his distrust of the maker's honesty by investigating its truth, he is nonetheless required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Fraud - Causation)

Whirlpool must also prove by clear and convincing evidence that CIT's conduct was the legal cause of its damages. An act or omission is a legal cause of damages when, in a natural and continuous sequence, unbroken by any new and independent cause, it was a substantial factor in bringing about the loss.

The term "new and independent cause" means an act or omission of a separate person or entity (which the defendant did not control) that destroyed the causal connection between the alleged wrongful act of the defendant and the injury complained of, and thereby becomes within itself the immediate cause of the injury.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Civil Conspiracy)

Whirlpool has alleged that there was a conspiracy among Michael Clifford, Edwin Bowling, Frances Haller-Bowling, Kurt Glassman, Raymond Iwamoto, and CIT to conduct a "bust-out" scheme using MidPac and MHS. A bust-out is conducted by setting up a company to fail from the outset. The operators of the company obtain merchandise from creditors, dispose of the goods for cash, and take the cash from the company, leaving the company bankrupt and the creditors unpaid.

Here, Whirlpool has alleged that Edwin Bowling, Frances Haller-Bowling and Kurt Glassman initially set up the bust-out scheme using MidPac and MHS as the companies. Whirlpool alleges that these individuals caused MidPac and MHS to order goods from Whirlpool with no intention of paying Whirlpool, while receiving millions of dollars in "bust-out" proceeds. Whirlpool further alleges that CIT later joined this conspiracy and caused MidPac and MHS to order additional goods from Whirlpool between June 23 and July 23, 1999 with no intention of paying Whirlpool.

Whirlpool's claim for conspiracy requires it to prove each and every one of the following elements by clear and convincing evidence:

(1) a combination of two or more persons or entities;

(2) by concerted action;

(3) to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means;

(4) for the purpose of harming another; and

(5) which results in damage.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Civil Conspiracy - Concerted Action)

To satisfy the concerted action element of its civil conspiracy claim against CIT, Whirlpool must prove by clear and convincing evidence that CIT reached an agreement or tacit understanding with its alleged co-conspirators to conceal their fraudulent activities. The mere fact that each defendant performed a wrongful act is insufficient, by itself, to create an inference of a conspiratorial agreement.

The existence of a conspiracy may sometimes be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances. However, if a defendant has no rational economic motive to conspire and if its conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy. You may not base a finding that there was an agreement to conspire merely on the fact that CIT failed to disclose to Whirlpool information it may have had about Mid-Pac and/or MHS' financial condition. CIT owed no duty to Whirlpool or any other creditor to disclose information about the financial condition of CIT's borrower because there was no legal relationship between CIT and Whirlpool. There is nothing wrong with a creditor using its bargaining position to improve the status of its loans.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Conversion)

Whirlpool also alleges that CIT converted sales proceeds generated from the sale of property in which Whirlpool held a security interest. A security interest is an interest in personal property that secures payment or performance of an obligation.

To meet its burden to show conversion, Whirlpool must prove each of the following elements by a preponderance of the evidence:

(1) Whirlpool's ownership or right to possession of the property at the time of the conversion;

(2) that CIT took Whirlpool's property without its consent;

(3) CIT's unwarranted assumption of ownership over the property;

(4) an illegal use or abuse of the property; and

(5) a wrongful detention after demand.

In addition, in determining whether conversion has occurred, you may also consider the extent and duration of actor's dominion and resulting interference with the other's right of control, his intent to assert a right in fact, his good faith, harm done to property, and inconvenience and expense caused to the other.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Conversion-Ownership of Goods)

In order for you to find in favor of Whirlpool on its conversion claim, Whirlpool must prove by a preponderance of the evidence that it owned or had a right to possess all of the goods located in the MHS warehouse. In this case, Whirlpool alleges that it had a right to possess the goods and the proceeds of the goods because it had a security interest in those goods. CIT alleges that part of the inventory located in the MHS warehouse was actually Midpac inventory that was merely being stored at MHS. CIT further alleges that the proceeds which it received were proceeds from inventory in which CIT had a security interest.

If you find that a preponderance of the evidence shows that the proceeds that were paid to CIT were from inventory in which CIT had a security interest, then your finding must be for CIT on the conversion claim.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Conversion- Ownership)

If you find that CIT proved by a preponderance of the evidence that MHS was generally known by its creditors to be substantially engaged in selling the goods of others then you must find that Whirlpool knew that not all of the inventory in the MHS warehouse belonged to MHS.

Thus, if you find that Whirlpool knew that MHS was holding inventory for MidPac, then you must find that Whirlpool had no security interest in the MidPac inventory and your finding must be in favor of CIT on Whirlpool's claim for conversion.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Conversion-Ownership-Consignment)

CIT alleges that the MidPac property being stored in the MHS warehouse belonged to MidPac pursuant to a consignment agreement entered into by and between Midpac and MHS. If you find that the property was on consignment, then you must find in favor of CIT on Whirlpool's conversion claim.

A consignment arises when property or goods are delivered to another as an agent to sell such goods. The delivery is made with the understanding that the recipient of the goods will sell them and remit the proceeds to the owner. If the goods do not sell, then the recipient can return the goods. You should look at the following factors to determine whether the arrangement between MidPac and MHS was a consignment relationship:

(1) the consignor (MidPac) retained control over the resale price;

(2) the consignee (MHS) was given authority to sell only at the price set by the consignor (MidPac);

(3) the consignor (MidPac) may recall the goods;

(4) the consignee (MHS) received a commission and not a profit from the goods;

(5) the consigned property was segregated from the other property of the consignee (MHS);

(6) the consignor (MidPac) was entitled to inspect the sales records and inventory of the goods; and/or

(7) the consignee (MHS) had no obligation to pay for the goods until they were sold.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Conversion-No Unwarranted Assumption of Ownership-
Waiver of Security Interest)

Even if you find that Whirlpool had a security interest in the property located at MHS, you must still find in CIT's favor on the conversion claim if you find (A) that MHS, not CIT, conducted the sale of goods at MHS and (B) MHS was not required by Whirlpool to segregate the sales proceeds and pay them immediately to Whirlpool.

A secured party can waive its security interest by its conduct, such as by failing to require the company owing it money to segregate sales proceeds and remit those procees to the secured party. In such a case, there is no conversion even if the company owing the money diverts it to the company's general business purposes.

If you find that MHS owed MidPac money from the transfer of goods from MidPac to MHS, that MHS conducted the sale of goods, and that MHS paid MidPac from MHS's sales proceeds as it would any creditor, then no conversion occurred unless Whirlpool can show that it required MHS to segregate sales and pay them immediately to Whirlpool.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. ___
(Conversion-No Unwarranted Assumption of Ownership-
Payments in the Ordinary Course)

Where proceeds from the sale of collateral are paid out in the ordinary course of business, the recipient of those funds takes free of any secured party's claim. "Collateral" is the property in which a creditor or a secured party has a security interest. Thus, even if you find that Whirlpool had a security interest in the property located at MHS, you must still find in CIT's favor on the conversion claim if the proceeds from the sale of the property were paid to CIT in the ordinary course of business.

In this case, a payment is within the ordinary course if it was made as part of the operation of MHS's business and if CIT did not know and was not reckless about whether the payment violated Whirlpool's security interest. A debt repayment to a creditor like CIT will thus be within the ordinary course of business, unless CIT had actual knowledge that the payment violated a superior security interest or if CIT accepted the payment with recklessness about whether it violated a superior security interest.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Conversion-No Unwarranted Assumption of Ownership-
Tracing of Proceeds of Collateral)

The law provides that upon the sale of collateral, a security interest in that collateral continues in any identifiable proceeds including collections received by the debtor. In order to prove that it had a security interest in the cash that was paid to MidPac and then to CIT, Whirlpool must "trace" these funds from an account held by CIT, back to the sale or disposition of the original collateral over which Whirlpool claims a security interest. In other words, Whirlpool must prove that the sales proceeds it claims arose directly from the sale or other disposition of Whirlpool's collateral and that these sales proceeds cannot have arisen from any other source.

If you find that the proceeds in which Whirlpool had a security interest were commingled with other moneys(that is, combined into a common account of MHS or MidPac), then the established procedure for tracing those proceeds back to Whirlpool's collateral is called "the lowest intermediate balance rule. Under this rule, you may assume that the traced proceeds are the last funds withdrawn from a commingled account. However, once the traced proceeds are withdrawn, they are treated as lost, even though subsequent deposits are made into the account. Thus, if you find that the balance in the account into which Whirlpool's proceeds were deposited dipped below the amount of proceeds deposited, you must find that Whirlpool lost its security interest in such proceeds.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Tortious Interference)

Whirlpool has also asserted a claim against CIT for tortious interference with Whirlpool's contractual relationship with MHS. In order to prevail on this claim, Whirlpool must prove each of the following elements by a preponderance of the evidence:

(1) a contract between the plaintiff and a third party;

(2) the defendant's knowledge of the contract;

(3) the defendant's intentional inducement of the third party to breach the contract;

(4) the absence of justification on the defendant's part;

(5) the subsequent breach of the contract by the third party; and

(6) damages to the plaintiff.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Tortious Interference - Justification)

To prevail on its claim for tortious interference with contract, Whirlpool must prove that CIT acted without justification; in other words, Whirlpool must show that CIT acted exclusively to harm Whirlpool's business interest. If you find that CIT had a justification to induce MHS to breach its contract with Whirlpool, then you must find in favor of CIT on the claim for tortious interference.

CIT contends that its actions were motivated only by an intention to exercise and protect its own contractual rights. If you find that CIT was only protecting its own economic interests, then you must find that CIT was justified in its actions. If CIT's actions were justified, then Whirlpool has failed to establish an essential element of its claim for tortious interference and you must find in favor of CIT.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Tortious Interference - Subsequent Breach)

To prevail on its claim for tortious interference with contract, Whirlpool must prove that MHS breached its contract with Whirlpool after CIT allegedly interfered. Whirlpool can satisfy this obligation by proving that MHS would have been able to make good on its debts owed to Whirlpool had it not been for the alleged liquidation". If however, you find that MHS was already failing to make good on its debts to Whirlpool in June 1999 and earlier before CIT even knew it had a loan default, then your finding must be for CIT on the claim of tortious interference.

DEFENDANT/CROSSCLAIMANT CIT'S JURY INSTRUCTION NO. __
(Tortious Interference - Intent)

To prevail on its claim for tortious interference with contract, Whirlpool must prove that CIT intended to induce a breach of the contract between MHS and Whirlpool. This means that Whirlpool must prove that CIT desired to bring about the interference or that CIT knew that the interference was certain or substantially certain to occur. If you find that CIT had a good-faith or honest belief that the goods housed in the MHS warehouse actually belonged to MidPac and that CIT intended to protect itself and not to interfere with Whirlpool's contract, then your finding must be in favor of CIT.

**CERTIFICATE OF SERVICE**

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

SERVED ELECTRONICALLY THROUGH CM/ECF:

TIMOTHY J. HOGAN, ESQ. — tjh@loio.com
**Attorney for Plaintiff** — March 1, 2006

MARGERY S. BRONSTER, ESQ. — mbronster@bchlaw.net, audrey@bchlaw.net
JEANNETTE E. HOLMES CASTAGNETTI, ESQ. — jcastagnetti@bchlaw.net, jennifer@bchlaw.net
**Attorneys for Defendants**
**Edwin Bowling and Frances Haller-Bowling** — March 1, 2006

JOHN S. NISHIMOTO, ESQ. — john.nishimoto@hawadvocate.com
CALVIN E. YOUNG, ESQ. — calvin.young@hawadvocate.com
**Attorneys for Defendant Raymond S. Iwamoto** — March 1, 2006

SERVED BY FIRST CLASS MAIL:

ROBERT E. BADGER, ESQ. — March 1, 2006
Pioneer Plaza, Suite 1680
900 Fort Street Mall
Honolulu, Hawaiʻi 96813
**Attorney for Defendant Kurt Glassman**

ERIC J. GLASSMAN, ESQ. — March 1, 2006
Mennemeier, Glassman & Stroud LLP
980 9th Street, Suite 1700
Sacramento, California 95814
**Attorney for Defendant Kurt Glassman**

RENEE K. COSTA — Address unknown/ Last known address undeliverable
2212 Gateway Drive, Apt. 401
Sacramento, California 95833
**Cross-Claim Defendant**

DATED: Honolulu, Hawaiʻi, March 1, 2006.

/s/ Louise K. Y. Ing
PAUL ALSTON
LOUISE K. Y. ING
THOMAS E. BUSH
Attorneys for Defendant/Cross-claimant THE CIT GROUP/BUSINESS CREDIT, INC.