AYABE, CHONG, NISHIMOTO,
SIA & NAKAMURA
A Limited Liability Law Partnership

JOHN S. NISHIMOTO 1820-0
CALVIN E. YOUNG 3278-0
GARY S. MIYAMOTO 3233-0
STEVEN L. GOTO 6041-0
Pauahi Tower, Suite 2500
1001 Bishop Street
Honolulu, Hawaii 96813
Telephone No. (808) 537-6119
Facsimile No. (808) 526-3491
john.nishimoto@hawadvocate.com
calvin.young@hawadvocate.com

Attorneys for Defendant
RAYMOND IWAMOTO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20, | CIVIL NO. 01-00187 MEA BMK<br>(Tort and RICO)<br><br>DEFENDANT RAYMOND IWAMOTO'S STATEMENT RE PROPOSED STIPULATED FACTS; CERTIFICIATE OF SERVICE<br><br>Trial Date: November 6, 2006<br>Judge: Hon. Marvin E. Aspen |

Defendants,

and

CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,

Additional Cross-Claim Defendants.

[2001556/298493]

# DEFENDANT RAYMOND IWAMOTO'S STATEMENT RE: PROPOSED STIPULATED FACTS

Comes now, Defendant Raymond Iwamoto, by and through his attorneys, and respectfully submits his proposed stipulated facts as follows:

1. Raymond Iwamoto ("Iwamoto") is a licensed attorney in Hawaii and is a partner with the law firm of Goodsill Anderson Quinn & Stifel.

2. Mr. Iwamoto's involvement with corporations formed, operated and/or controlled by Edwin Bowling, Frances Haller-Bowling, Kurt Glassman and/or Michael Clifford was restricted to rendering legal services.

3. Legal services rendered by Mr. Iwamoto before Defendant CIT Group/Business Credit, Inc. ("CIT") declared Midpac Lumber Co., Ltd.'s ("Midpac") in default included drafting corporate governance documents, matters involving construction bonds issued by Midpac, and an industrial accident involving one of Midpac's employees.

4. Mr. Iwamoto did not manage, and/or supervise the corporations formed, operated and/or controlled by Edwin Bowling, Frances Haller-Bowling, Kurt Glassman and/or Michael Clifford.

5. Other than drafting the incorporation documents for F & J Movers, Inc. and W Spectrum, Inc., Mr. Iwamoto had no other involvement with or knowledge of how those corporations were used or operated.

6. After drafting the incorporation documents for F& J Movers, Inc., and W Spectrum, Inc., Mr. Iwamoto did not provide additional legal services for those corporations.

7. Mr. Iwamoto did not receive or have access to any of Midpac's financial information, financial records, business records or bank accounts before CIT declared Midpac was in default on its loan payments.

8. Mr. Iwamoto did not communicate or have contact with Midpac's vendors or know how much was owed to each vendor.

9. Theodore Phelps communicated with the vendors outside of Mr. Iwamoto's presence.

10. Mr. Iwamoto did not order merchandise from any vendor including Whirlpool Corporation.

11. Mr. Iwamoto did not make representations to Whirlpool Corporation regarding Midpac's financial condition or its ability to pay money owed to Whirlpool Corporation.

12. After CIT declared Midpac in default, Mr. Iwamoto negotiated with CIT to release Midpac's payroll money and money held by Midpac for construction bonds.

13. Mr. Iwamoto negotiated with CIT in good faith and without knowledge of any alleged financial and/or business improprieties.

14. Mr. Iwamoto relied on Mr. Glassman's representations that Midpac was doing well financially. Mr. Glassman told Mr. Iwamoto that Midpac was in "fine shape."

15. Mr. Iwamoto did not have any reason not to believe or trust Kurt Glassman. He did not receive information that contradicted the representations made by Kurt Glassman.

16. The restrictions imposed by CIT on Midpac's cash flow jeopardized Midpac's operations. Midpac was faced with serious statutory fines if it did not pay its employees. The restrictions on money held for construction bonds interfered with Midpac's business as: (i) the money did not belong to Midpac; and (ii) Midpac required the money to make payments pursuant to the construction bonds. If CIT did not release the construction bond money, Midpac

may have been subject to lawsuits if payments required by the bonds were not made.

17. Mr. Iwamoto asked CIT not to contact Midpac's trade vendors while CIT investigated Midpac's operations. He made this request to prevent disruptions of Midpac's operations but not to harm or damage Whirlpool Corporation or any other vendor or lender.

18. In response to CIT's inquiries regarding balances shown in Midpac's financial records, Mr. Iwamoto informed CIT that there was an instance of inadvertent double invoicing. Mr. Iwamoto made this statement in reliance on representations made by Mr. Glassman.

19. Mr. Iwamoto informed CIT that F & J Movers, Inc. and W Spectrum, Inc. were independent entities in reliance on representations made by Mr. Glassman.

20. In June 1999, Mr. Iwamoto learned that Edwin Bowling had resigned as a Midpac officer and director many months earlier. He drafted documents to reflect Mr. Bowling's resignation for the sole purpose of reflecting Mr. Bowling's resignation in Midpac's corporate records. He could not have drafted the documents at the time of Mr. Bowling's resignation in January 1999 because he was not informed of the resignation until June 1999.

21. Mr. Iwamoto temporarily served as a director of Midpac because the corporate bylaws required Midpac to have three directors. He served as a director until the corporate bylaws were amended to reduce the number of required directors from three to two.

22. At the request of his client, Mr. Glassman, Mr. Iwamoto's staff prepared warehouse receipts to document the transfer of inventory between different warehouses.

23. The warehouse receipts disclosed information regarding the movement and location of Midpac's inventory.

24. The warehouse receipts were prepared before CIT declared Midpac in default and before Mr. Iwamoto learned of Midpac's alleged financial and/or business improprieties.

25. Mr. Iwamoto did not draft the stock purchase agreements concerning the sale of stock between Edwin Bowling, Frances Haller Bowling and Kurt Glassman. He was informed of the transaction several months after the sale was negotiated. He was not involved in the negotiation and did not know the consideration paid for the stock transfers. His involvement was limited to canceling old stock certificates and preparing new stock certificates to reflect the transfers of stock. He did not discuss the stock transaction with Paul Mancini, the attorney who prepared the stock purchase agreements.

26. Mr. Iwamoto did not draft or review an offering circular before it was distributed. He received the circular after it was released.

27. Mr. Glassman did not discuss the circular with Mr. Iwamoto or ask Mr. Iwamoto to review the circular. If Mr. Glassman had asked Mr. Iwamoto to review the circular, Mr. Iwamoto would have referred Mr. Glassman to an attorney specializing in securities. The attorneys in Mr. Iwamoto's law firm did not review the circular.

28. Mr. Iwamoto was unaware that Mr. Glassman was withdrawing money from Midpac for Mr. Glassman's personal use.

29. Mr. Iwamoto first learned that Mr. Glassman withdrew money from Midpac months after CIT declared Midpac in default.

30. The services rendered by Mr. Iwamoto were typical of services rendered by attorneys practicing corporate law.

31. Mr. Iwamoto relied on the representations made by his client, Mr. Glassman.

32. Mr. Iwamoto had no knowledge of any conspiracy to improperly remove money from Midpac.

33. Mr. Iwamoto was not involved in any conspiracy to improperly remove money from Midpac.

34. If the alleged conspiracy existed, Mr. Iwamoto acted without knowledge of the alleged conspiracy's existence and did not knowingly assist or further the alleged conspiracy.

35. Mr. Iwamoto held positions as a Midpac officer and director strictly as an accommodation to his client. He only provided legal services in his capacity as corporate attorney. His only act as an officer was to execute real estate documents. He did not take any action as a director and did not attend directors' meetings.

36. Mr. Iwamoto did not receive any portion of the revenue, income or profits earned by the corporations owned, operated or controlled by Edwin Bowling, Frances Haller-Bowling, Kurt Glassman and/or Michael Clifford other than the payment of his law firm's billed fees and costs.

37. Mr. Iwamoto did not receive full payment of attorney's fees charged for services rendered to the corporations owned, operated or controlled by Mr. Glassman.

DATED: Honolulu, Hawaii, April 19, 2006.

_/s/ Gary S. Miyamoto_________
JOHN S. NISHIMOTO
CALVIN E. YOUNG
GARY S. MIYAMOTO
STEVEN L. GOTO
Attorneys for Defendant
RAYMOND IWAMOTO

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was duly served on the following parties listed below, through electronic transmission on April 19, 2006.

TIMOTHY J. HOGAN, ESQ.
Lynch Ichida Thompson Kim & Hirota
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Attorney for Plaintiff
WHIRLPOOL CORPORATION

PAUL ALSTON, ESQ.
LOUISE K.Y. ING, ESQ.
Alston Hunt Floyd & Ing
1001 Bishop Street
Pacific Tower, 18th Floor
Honolulu, Hawaii 96813
Attorneys for Defendant
CIT GROUP/BUSINESS CREDIT, INC.

DATED: Honolulu, Hawaii, April 19, 2006.

/s/ Gary S. Miyamoto
JOHN S. NISHIMOTO
CALVIN E. YOUNG
GARY S. MIYAMOTO
STEVEN L. GOTO
Attorneys for Defendant
RAYMOND IWAMOTO