# Exhibit 3

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 31 2003

at 2 o'clock and 18 min P M.
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, Inc., a Hawai`i corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOES INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Crossclaim Defendants. | ) | CV. NO. 01-00187 DAE-BMK |

# ORDER AFFIRMING MAGISTRATE ORDER GRANTING PLAINTIFF WHIRLPOOL CORPORATION'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT

Pursuant to Local Rule 7.2(d), the court finds this matter suitable for disposition without a hearing. After reviewing Defendant/Cross-Claimant THE CIT GROUP/BUSINESS CREDIT, INC.'s ("CIT's") Appeal and the supporting and opposing memoranda, the court AFFIRMS the Magistrate Order Granting Plaintiff Whirlpool Corporation's Motion for Determination of Good Faith Settlement, filed August 12, 2003 ("Order").

## BACKGROUND

This case arises from the alleged bust-out and bankruptcy of MidPac Lumber Co., Ltd. Plaintiff Whirlpool Corporation ("Whirlpool") alleges Defendants ordered over $2.5 million in appliances with no intention of making payments. In a settlement agreement, Plaintiff Whirlpool released Defendants Edwin Bowling and Frances Haller-Bowling ("Bowlings") from all pending or future claims in connection with the allegations of fraud, fraud conspiracy, conversion, and any other claims asserted by Whirlpool, in exchange for $150,000.

In the August 1, 2003 Order, the Magistrate Judge granted Whirlpool's Motion for Determination of Good Faith Settlement ("Magistrate

Order"). The Magistrate Judge found that the settlement was in good faith, and that a "significant question of solvency and collectibility" made the settlement fall "within the reasonable range of the Bowling's proportional share of the comparative liability for the plaintiff's injuries." See, Magistrate Order at 2, 3.[1]

Defendant CIT appeals the Magistrate Order on the grounds that "the settling parties fail[ed] to meet key indicia of a good faith settlement." Defendant CIT's Statement of Appeal from the Magistrate Order, filed August 12, 2003 ("Appeal"), at 2. CIT argues that the Magistrate Judge "erred in basing his good faith determination on the key factor of lack of collectibility when the record bore no evidence of the Bowlings' poverty." Id. at 3.

The Bowlings filed a Response to Defendant CIT's Statement of Appeal from August 1, 2003 Magistrate Order ("Bowlings' Response") on August 22, 2003. On the same day, Whirlpool filed a Reply to CIT's Statement of Appeal from the Magistrate Order Granting Plaintiff Whirlpool's Motion for Determination of Good Faith Settlement ("Whirlpool Reply"). CIT filed an Amended Reply Memorandum in Support of Appeal ("CIT Reply") on September 15, 2003. On October 6, 2003, the court granted the Bowlings' Ex Parte Motion

---

[1] The Magistrate Order does not include page numbers. However, the court will cite to the Magistrate Order as though it were numbered pages one through four.

for Leave to Supplement Response to Defendant CIT's Statement of Appeal ("Bowlings' Supplemental Response"). Finally, on October 14, 2003, CIT filed an Ex Parte Motion for Leave to Supplement Record In Response to the Bowlings' Ex Parte Motion for Leave to Supplement Response.

STANDARD OF REVIEW

Pursuant to Local Rule 74.1, the district court may only set aside a magistrate judge's order of non-dispositive matters on appeal if it finds the order to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); LR 74.1. Thus, the district judge must affirm the magistrate judge unless the district judge is left with the "definite and firm conviction that a mistake has been committed." Burdick v. Commissioner, 979 F.2d 1369, 1370 (9th Cir. 1992). The reviewing court may not simply substitute its judgment for that of the deciding court, as it may under a de novo standard. See Grimes v. City & County of San Francisco, 951 F.2d 236, 241 (9th Cir. 1991).

A district court only reviews under a de novo standard those magistrate orders, findings, or recommendations that are "case dispositive." LR74.2. CIT claims the standard for reviewing this appeal should be de novo because the Magistrate Order "has the immediate effect of barring all contribution

and indemnity claims by CIT against the Bowlings."[2] As set forth below, claims of contribution and indemnity among joint intentional tortfeasors are unavailable to CIT under Hawai`i law. Therefore, the Magistrate Order is not dispositive of any claims, and a "clearly erroneous" standard is appropriate. 28 U.S.C. § 636(b)(1)(A); LR 74.1.

I. Contribution Among Joint Intentional Tortfeasors

CIT argues that since a judicial determination of a good faith settlement precludes claims for contribution and indemnity, effecting a "functional equivalent" to an involuntary dismissal, this court should review the Magistrate Order de novo, pursuant to 28 U.S.C. § 636(b)(1)(A). Defendant CIT's Memorandum in Support of Appeal ("Appeal Memo") at 5. The Magistrate Order would be the "functional equivalent" of an involuntary dismissal of the contribution and indemnity claims of any co-defendant, *if* such claims had been available prior to the Magistrate Judge's determination that Whirlpool and the

---

[2] Hawai`i Revised Statutes ("HRS") § 663-15.5 (d): A determination by the court that a settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

Haw. Rev. Stat. § 663-11: "Joint tortfeasors" are "two or more persons jointly and severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."

Bowlings settled in good faith. However, as set forth below, CIT does not have contribution or indemnity claims against the Bowlings because all of Whirlpool's remaining claims are for intentional torts or violations of the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. 1961 et seq. ("RICO"). See Whirlpool Reply at 12. Although Hawai`i law does not specifically speak to this particular issue, the general rule, found in the Restatement (Second) of Torts ("Second Restatement"), is that contribution and indemnity are not allowed among joint *intentional* tortfeasors. Restatement (Second) Torts § 886A(3).

In light of the Hawai`i legislature's treatment of other sections of the Second Restatement, this court determines that had the legislature wished to alter the general rule relating to contribution among intentional tortfeasors by statute, it would have done so. Further, the absence of any mention of the general rule in Hawai`i case law is not informative either way because the court cannot assume that the mere absence of an opportunity for Hawai`i courts to rule on the subject is evidence of an intent to follow the Second Restatement rule. However, Hawai`i's consistent acceptance of the Second Restatement, as well as the tendency of Hawai`i courts to look to California law when the precedent is silent, leads this court to believe that the state court would follow the Second Restatement in the instant situation. See, e.g., Hac v. Univ. of Hawai`i, 102 Haw. 92, 106-7, 73 P.3d

46, 60-1 (2003) (adopting the elements of intentional infliction of emotional distress set forth in the Second Restatement).

The Second Restatement states that "there is no right of contribution in favor of any tortfeasor who has intentionally caused the harm." Restatement (Second) Torts § 886A(3); see also, 18 Am. Jur. 2d Contribution § 41 (stating that "there is no right of contribution in favor of any tortfeasor who has intentionally caused or contributed to the injury . . . out of which liability has arisen"). Traditionally, the rules governing contribution extend to the equitable principle of indemnity; as between "intentional joint wrongdoers . . . neither the law nor equity will enforce contribution." See 18 Am. Jur. 2d Contribution § 41 (May 2002). The rationale behind this policy is that "no one should be permitted to found a cause of action on his own wrong." Herrero v. Atkinson, 227 Cal. App. 2d 69, 74 (1964).

Although the case law in Hawai`i is silent on the issue of contribution among intentional joint tortfeasors, contribution and indemnity are discussed in the areas of contract, insurance, employment, and negligence law.[3] Similarly,

[3] See, e.g., Espaniola v. Cawdrey Mars Joint Venture, 68 Haw. 171, 707 P.2d 365 (1985) (finding that a contract allowing for indemnification between contractor and sub-contractor was not barred); AIG Haw. Ins. Co. v. Estate of Caraang, 74 Haw. 620, 851 P.2d 321 (1993) (holding that an insurance company had to indemnify defendant driver pursuant to policy because shooting that caused

Hawai`i courts apply the Second Restatement, in whole or in part, in many situations.[4] Other cases discuss a particular legislative intent to derogate from particular general or Second Restatement rules.[5] However, nowhere in the

---

accident was determined to be "accidental"); see also, Kamali v. Hawaiian Elec. Co., 53 Haw. 153, 488 P.2d 1172 (1972) (concluding that contracts for indemnity are strictly construed).

4 See, e.g., Hong v. Estate of Graham, 2003 Haw. LEXIS 247 (holding that the Hongs waived all of their arguments with respect to an alleged duty to disclose by, among other things, failing to assert the arguments regarding Second Restatement § 551); Hac v. Univ. of Hawai'i, 102 Haw. 92, 73 P.3d 46 (2003) (adopting the approach set forth in the Second Restatement defining the elements of the tort of intentional infliction of emotional distress); Doe Parents No. 1 v. Dep't of Educ., 100 Haw. 34, 58 P. 3d 545, (2002) (relying on Second Restatement for definition of duty set forth in the Second Restatement § 314A); Gonsalves v. Nissan Motor Corp. in Haw., 100 Haw. 149, 170, 58 P. 3d 1196, 1217 (2002) (adopting Second Restatement § 577 by holding "If the circumstances indicated that communication to a third party is likely, however, a publication may properly be held to have occurred"); and see, McKenzie v. Haw. Permanente Med. Group, 98 Haw. 296, 47 P.3d 1209 (2002) (holding that Second Restatement § 302 does not establish per se that a doctor owes a duty to the plaintiff; it only describes the manner in which he may be negligent if he owed that duty); Zanakis-Pico v. Cutter Dodge, Inc., 98 Haw. 309, 47 P.3d 1222 (2002) (adopting Second Restatement § 552B as the definition of damages recoverable for a negligent misrepresentation).

5 See Saranillio v. Silva, 78 Haw. 1, 13, 889 P.2d 685, 696 (1995) (The Uniform Contribution Among Tortfeasors Act [HRS §§ 663-11 to 663-17] (UCATA) abrogates the common law rule that the release of an employee automatically releases the employer from vicarious liability); see also, Aga v. Hundahl, 78 Haw. 230, 891 P.2d 1022 (1995) (UCATA specifically alters common law rule where release of one joint tortfeasor released all tortfeasors from liability to plaintiff. UCATA intended to allow a plaintiff to settle with one defendant and retain her claim against any other joint tortfeasors and merely

Hawai`i precedential landscape is the right of an intentional tortfeasor to contribution or indemnity clearly established.

1. Applicability of the Restatement (Third) of Torts

The new Restatement (Third) Torts reflects a new approach taken in some jurisdictions: "[a] person who can otherwise recover contribution is not precluded from receiving contribution by the fact that he is liable for an intentional tort." Restatement (Third) Torts: Apportionment of Liability, § 23, Comment l. Jurisdictions that take this approach typically do so pursuant to a statute.[6] Absent a statute, most jurisdictions continue to look to the Second Restatement for guidance. See, e.g., Mackey v. Irisari, 445 S.E.2d 742, 747 (W.Va.,1994) (finding that in West Virginia one tortfeasor is entitled to contribution from another tortfeasor, except where the act is characterized by statute as malum in se). While

---

reducing the ultimate recovery by the amount paid by settling tortfeasor); Campo v. Taboada, 68 Haw. 505, 720 P.2d 181 (1986) (affirming that UCATA created a right to contribution among joint tortfeasors that did not exist at common law, with no mention of intentional tort actions).

[6] See Judson v. Peoples Bank & Trust Co. of Westfield, 110 A.2d 24, 31 (1954) (discussing a New Jersey statute providing for contribution where injury or damage is suffered by any person as result of wrongful act, neglect, or default of joint tortfeasors, which indicates legislative policy of allowing contribution even among intentional, including fraudulent, joint wrongdoers); Donajkowski v. Alpena Power Co., 596 N.W.2d 574 (Mich. 1999) (citing to M.C.L.A. § 600.2925a(1), a contribution statute, authorizing an intentional tortfeasor to seek contribution with some specific exceptions).

there is a trend in some jurisdictions to alter the Second Restatement rule barring contribution for intentional tortfeasors, the court finds that in the absence of a statute allowing for contribution among intentional tortfeasors, such a rule does not presently exist and cannot be created by this court.

CIT argues that because intentional torts are an exception to Hawai`i's abolition of joint and several liability, and because Hawai`i case law allows for apportionment of *legal* liability between intentional and negligent tortfeasors, intentional tortfeasors must also have a right to apportion *monetary* liability. Thus, CIT argues that it still has valid contribution and indemnity claims against the Bowlings, which the Magistrate Order eliminated. Amended Reply at 4 (citing Haw. Rev. Stat. § 663-10.9, Doe Parents No. 1 v. State Dept. Of Education, 100 Haw. 34, 93-94 (2002) (J. Acoba concurring opinion), Ozaki v. Association of Home Owners of Discovery Bay, 87 Haw. 265, 271 n.5, 954 P. 2d 644, 650 (1998)). CIT fails not in its reading of Hawai`i authority, but in its application to the issue at hand.

In its Amended Reply, CIT notes that HRS § 663-10.9 "allow[s] joint and several liability for intentional torts." CIT Reply, at 4. While this is true, it has no bearing on whether the legislature intended to abandon the common law regarding *contribution* among intentional tortfeasors. CIT cites Ozaki for the

proposition that fault may be apportioned based on intentional acts. Ozaki allows intentional conduct to be taken into account when determining overall percentages of fault in order to determine whether a party jointly liable for negligence will also become severally liable for the entire judgment. Ozaki, 87 Haw. at 270-71, 954 P. 2d at 649-50 (there is no discernible reason why a tortfeasor apportioned less fault by a jury should lose the protection of HRS § 663-31 merely because its codefendant committed an intentional tort).[7] CIT also correctly cites Doe Parents to establish that joint and several liability has been retained for intentional torts. Amended Reply at 4.

These observations, however, are insufficient to establish a clear intent on the part of Hawai`i courts to derogate from the general rule set forth in the Second Restatement. To the extent CIT asserts this argument to prove that it may seek contribution when there is an intentional tort involved, this argument is unavailing. While it is true that under Ozaki, fault may be apportioned even where one tortfeasor acted intentionally and one negligently, the Ozaki court addressed the apportionment issue as it related to HRS § 663-31, it did not specifically

---

[7] Haw. Rev. Stat. § 663-31 provides in relevant part that "if the [proportion of negligence attributable to the person, for whose injury, damage, or death recovery is sought,] is greater than the negligence of the person or . . . the aggregate negligence of such persons against whom recovery is sought, the court will enter judgment for the defendant."

address the issue of *contribution* between co-defendants in such cases. While HRS § 663-12 states that "the right of contribution exists among joint tortfeasors," no Hawai`i court has interpreted this provision to depart from the Second Restatement by creating a right to contribution between *intentional* tortfeasors.

The Hawai`i legislature enacted Uniform Contribution Among Tortfeasors Act [HRS §§ 663-11 to 663-17] ("UCATA") to encourage settlements and "ameliorate [the] harsh rule . . . [that] the release of one joint tortfeasor for any amount released all tortfeasors." Nobriga v. Raybestos-Manhattan, Inc., 67 Haw. 157, 162-63, 683 P.2d 389, 393, *reconsideration denied,* 67 Haw. 683, 744 P.2d 779 (1984); see also, Mitchell v. Branch, 45 Haw 128, 141-42, 36 P. 2d 969, 978 (Haw. 1961) (finding that UCATA was intended to end "[t]he inequity of equal contribution among joint tort-feasors" where one party had acted negligently and another had acted with "gross negligence and foolhardiness"); Ginoza v. Takai, d/b/a Takai Electric Co., 40 Haw. 691, 720 (1955) (stating that the "intent of the framers of the Uniform Act [was] to unequivocally abolish the technical rules governing releases which in their application to asserted liability of joint tortfeasors have on so many occasions constituted pitfalls for the unwary litigant"). UCATA created a right of contribution among joint tortfeasors which previously did not exist at common law." Campo v. Taboada, 68 Haw. at 507.

Legislative history and case law show that in enacting the UCATA, the Hawai`i legislature specifically intended to alter the general rule which dictated that the release of one defendant from liability resulted in release of all co-defendants. See, Nobriga, 67 Haw. at 162-63, 683 P.2d at 393. However, there is no legislative history which explicitly alters the general rule of disallowing contribution among *intentional* joint tortfeasors, and Hawai`i courts regularly utilize the Second Restatement.[8]

In light of the forgoing analysis, the court finds that the general rule, as set forth in the Restatement, applies here to bar contribution and indemnity claims among joint intentional tortfeasors.

This conclusion finds further support in the treatment of the issue in California, where Hawai`i courts often look when no explicit state authority exists

---

[8] The Hawai`i judiciary has mentioned the third Restatement on only two occasions. See Doe Parents, 100 Haw. 34, 96, 58 P.3d 545, 607 (Acoba, J., concurring, noted the Restatement (Third) of Torts § 14 (2000) cited to Ozaki for the proposition that the negligent tortfeasor who failed to protect the injured party should be liable for an intentional tortfeasor's share of comparative responsibility as well); Nielsen v. American Honda Motor Co., 92 Haw. 180, 989 P.2d 264 (1999) (citing, among other authorities, the Restatement (Third) of Torts § 1 (1997) to support the proposition that Plaintiff must also show the seller or distributor of the defective product is engaged in the business of selling or distributing such product); See also, Aku v. Lewis, 52 Haw. 366 (1970) (although the court cites to the "Restatement (Third) of Torts," it notes the date as "1938." After investigation, it is apparent to this court that Aku actually intended to cite to the first or second Restatement).

on an issue. See, e.g., Locricchio v. Legal Services Corp., 833 F.2d 1352, 1357 (9th Cir. 1987) (citing In re Pago Pago Aircrash, 525 F. Supp. 1007, 1021 (C.D. Cal. 1981) ("[t]he general trend of Hawai`i courts is to look to California law" in the absence of Hawai`i authority). California law on contribution is clear; they chose to codify the Second Restatement rule and specifically prohibit contribution between intentional tortfeasors.[9] However, California has made an exception in the area of indemnification.

Only one California Court of Appeal has recognized a right to indemnification in a case involving fraudulent joint tortfeasors. See Baird v. Jones, 21 Cal. App. 4th 684 (1993). The Baird case involved a suit for indemnity between joint intentional tortfeasors, one of whom "merely followed [the other's] advice and instructions" when perpetrating the fraud for which they were both found liable. Baird, 21 Cal. App. 4th at 693. The California Court of Appeal relied on the equitable principle of indemnity to prevent the "unconscionable" result of "reward[ing] the intentional tortfeasor who successfully hides his or her assets from a judgment creditor."[10] Id. This single case from a mid-level California

---

[9] Cal. Code. Civ. Pro. § 875. There shall be no right of contribution in favor of any tortfeasor who has intentionally injured the injured person.

[10] CIT also cites Galt G/S v. JSS Scandanavia, 142 F.3d 1150 (9th Cir. 1998) to illustrate a trend towards basing indemnity on comparative fault in the

court, however, is insufficient to establish a trend that Hawai`i would likely follow. Accordingly, the court finds that in the absence of a clear precedent to the contrary, as well as in light of California law, CIT does not have a right of contribution for the intentional torts alleged in the complaint against it.

2. <u>The Proper Standard of Review is "Clear Error"</u>

As established in the previous section, CIT is not losing any rights under the Magistrate Order because there is no clearly established right to contribution or indemnity between intentional tortfeasors under Hawai`i law. While it is true that some jurisdictions derogate from the Second Restatement rule and elect to recognize such a right, whether Hawai`i will join them is a matter for the Hawai`i legislature, and not for this court to decide.

In light of the above, the court finds that CIT has no claims that are dispositively determined by the Magistrate Order. Accordingly, pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 74.1, this court will only reverse the magistrate judge's determination if it finds the order to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); LR74.1.

---

Ninth Circuit. <u>Galt</u> is distinguishable, however, because it is based on a vessel owner's breach of his duty of care, and therefore is unpersuasive outside that narrow context.

DISCUSSION

The issue before this court is whether the Magistrate Judge erred in determining that the settlement between Whirlpool and the Bowlings was made in good faith. CIT argues that it is harmed by the settlement because it "faces a potentially grossly disproportionate share of damages as one of the last remaining defendants." Appeal Memo at 2.

For the first time, the Hawai`i Supreme Court considered and ruled on the applicable standard for reviewing a good faith settlement in Troyer v. Adams, 2003 WL 22211430 (Haw. Sept. 25, 2003).[11] However, this judgment was issued six weeks after the Magistrate Judge issued the Magistrate Order which is the subject of this appeal. Therefore, the Magistrate Judge applied the former standard of a good faith settlement set forth by the long-standing California Supreme Court case of Tech-Bilt, Inc. v. Woodward-Clyde & Associates, 698 P.2d 159 (Cal. 1985).[12] As discussed below, there are no grounds for finding that the

---

11 Although the opinion has not yet been released in a permanent law report, and, although a motion for reconsideration *may* be pending, Troyer is nevertheless compelling evidence of the existing standard in Hawai`i for determining if a settlement was entered into in good faith. In reviewing the Magistrate Order, however, the court will consider the more stringent test employed by the Tech-Bilt court.

12 The Hawai`i legislature patterned the good faith settlement law after similar California legislation. See Standing Committee, Senate Journal, Standing

Magistrate Judge erred in his determination that a good faith settlement existed between Whirlpool and the Bowlings under the factors set forth in Tech-Bilt. Moreover, the Magistrate Order satisfies the "totality of the circumstances" approach adopted by the Hawai`i Supreme Court in Troyer because the latter requires less scrutiny than the test established in Tech-Bilt.

The Tech-Bilt court noted that the major goals of tort contribution legislation are "first, equitable sharing of costs among parties at fault, and second, encouragement of settlements." River Garden Farms, Inc. v. Superior Court, 26 Cal. App. 3d 986, 993 (1972) (quoted in Tech-Bilt, 698 P. 2d at 163). Rejecting the lower court's holding that "good faith" was merely an "absence of tortious conduct," the Tech-Bilt court adopted a definition which "would enable the trial court to inquire, among other things, whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability." Tech-Bilt, 698 P.2d at 166. CIT argues that this factor outweighs the policy of encouraging settlements in this case because the Bowlings are not paying a settlement that accurately represents their share of the liability.

---

Com. Rep. 828 at 1252-1253 (2001 Session). Tech-Bilt addresses the requirements under that California statute.

This emphasis on equitable apportioning of liability in Tech-Bilt creates a rigorous standard. The Magistrate Judge recognizes in his order that the "controversy regarding the degree of responsibility by the Bowlings" for Whirlpool's injuries was extensive, suggesting that many issues are yet to be proven. Magistrate Order at 3. He notes that "CIT sets forth evidence highlighting the Bowlings involvement and asserts they were significant participants in the financial scheme." Magistrate Order at 3. However, Whirlpool contends that "as to Mrs. Bowling, there is little evidence to connect her with the wrongful conduct," and as to Mr. Bowling, "his involvement was limited." Magistrate Order at 3.

Whirlpool determined that the difficulty in establishing the fault of the Bowlings at trial is compounded by the necessity of obtaining a judgment against both Bowlings in order to collect on their only significant asset, their home. The problem for Whirlpool is that the Bowlings own their home as tenants by the entirety. In Hawai`i, when owners hold property in that form, the home is only subject to a judgment creditor if the judgment is against both of the owners. See, HRS § 572-23 (2003). "Facing the prospect of collecting upon an empty judgment, Whirlpool chose to settle." Id. at 5.

The holding in Tech-Bilt states that there are "a number of factors [to] be taken into account" when a court reviews a settlement for good faith, including "a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial." Tech-Bilt, 698 P.2d at 166. The court added that "other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of fraud, or tortious conduct aimed to injure the interests of the non-settling defendants." The court said the settlement must be "reasonable" in light of the settling defendant's liability, and that the party asserting the lack of good faith should show that the settlement figure is "out of the ballpark." Tech-Bilt, 698 P.2d at 167.

In this case, the Magistrate Judge properly found that the parties had satisfied the Tech-Bilt factors. The fact that the only significant asset of the Bowlings is their home, combined with the uncertainty of obtaining a judgment against both Bowlings, gives credibility to Whirlpool's claim that it had no intent to harm CIT by this settlement. Whirlpool represented to the Magistrate Judge that "[d]espite much discovery, there has been no evidence of Mrs. Haller-

Bowling making any representation" for which she could be found liable. Whirlpool Reply at 8. Although CIT made general references to the amount of money allegedly in the Bowlings' possession, it did not address Whirlpool's fear that it would not be able to hold Mrs. Haller-Bowling liable. Thus, even if CIT feels it would benefit from keeping the Bowlings in this action, it should not be able to do so by forcing Whirlpool to litigate the matter.

CIT alleges that the Bowlings wrongfully pocketed money from an account in which CIT held a security interest and that the money should have been used to pay Mid-Pac's creditors, including both Whirlpool and CIT. Appeal Memo at 2. The Bowlings allegedly used that money to purchase a home mortgage-free. CIT argues that the value of the home is significant enough to allow the Bowlings to pay more, as their liability to Whirlpool dictates, but this argument does not take into account Whirlpool's uncertainty in collecting against both Bowlings.

CIT also argues that Whirlpool failed to "explain to the court and to all other parties the evidentiary basis" for the agreed-upon settlement amount, including the issue of collectibility. Appeal Memo at 6 (citing Regan Roofing Company, Inc. v. Superior Court, 21 Cal. App. 4th 1685, 1700-01 (1994)). They allege that the Bowlings have significant assets, resulting in high living on their

"ill-gotten gains." See CIT Reply at 6. This may in fact be true, however, Whirlpool's decision to settle for less cash than it believed it would be able to recover through a judgment, which could be uncollectible, does not mean the settlement was made in bad faith. Even the Tech-Bilt court recognized that a settling defendant paying less than her theoretical fair share was evidence of, but not itself grounds for, a finding of bad faith. See Tech-Bilt, 698 P.2d at 166.

Additionally, HRS § 663-15.5 does not require that the settling parties present a record to the court explaining the basis for a settlement. In fact, the statute places the burden on the party challenging the good faith determination. Haw. Rev. Stat. § 663-15.5(b). In reviewing the challenger's case, the judge may base his decision on affidavits, declarations, or in the court's discretion, "other evidence." Haw. Rev. Stat. § 663-15.5(c)). In this case, there was sufficient evidence before the Magistrate Judge to support his Order.

The Magistrate Judge stated in his Order that "the settling parties assert that the agreement was not entered into in order to injure other non-settling defendants." Magistrate Order at 2. There is no evidence to contradict this assertion. In fact, Whirlpool asserts that it based its decision to settle on financial information it had obtained from the Bowlings; the Magistrate Judge found this information relevant to "determining the likelihood of collecting judgment."

Magistrate Order at 4. As noted above, CIT's claim that it is injured by the settlement because it loses its right to contribution is unavailing; CIT has no right to contribution in light of the intentional nature of Whirlpool's claims against it. Additionally, if CIT has stronger evidence of the Bowlings' liability, it may rely upon it in pursuing its direct claims against the Bowlings.

Essentially, CIT alleges that the Bowlings' settlement falls far below the amount of their proportional monetary fault. However, as discussed above, the "significant question of solvency and collectibility" as to a judgment against the Bowlings gave Whirlpool an understandable incentive to settle, even if for less money than it believed the Bowlings owed. Magistrate Order at 3. There is no evidence that Whirlpool made its decision to settle in bad faith. Rather, it constituted a strategic decision to guarantee some sort of recovery. Therefore, even though the settlement amount in fact may be less than the Bowlings' proportional share, the Magistrate Judge properly complied with the holding in Tech-Bilt by finding that Whirlpool could reasonably come to a good faith decision to settle, especially in light of the uncertainty that Whirlpool would be able to prove its case in court and actually collect on any judgment it obtained.

Although this court need only consider the Tech-Bilt factors adhered to by the Magistrate Judge, because the standard recently set forth by the Hawai`i Supreme Court in Troyer is relevant to this discussion, it is worth noting here. As stated above, the Troyer totality of the circumstances approach is more lenient than that of Tech-Bilt, and the Magistrate Order stands up to scrutiny under both cases. The Troyer Court criticized Tech-Bilt's emphasis on the equity of the amount of the settlement among the parties, holding that this consideration should be one of many factors to be considered by a court. Troyer, at 27 (concluding that "the price of settlement alone rarely appears to be the outcome-dispositive factor regarding a settlement's bad faith"). The Court discussed two approaches taken by courts in other jurisdictions: the "non-collusive" standard of good faith and the totality of the circumstances approach. Id., at 22. After a lengthy discussion, the Hawai`i Supreme Court adopted the totality of the circumstances approach to reviewing good faith settlements.

The Court stated its agreement "with the overwhelming majority of courts . . . [that] the 'good faith' provision [was intended] merely to provide the court with an opportunity to prevent collusive settlements aimed at injuring the interests of a non-settling joint tortfeasor." Id., at 25. It was the clear intention of the Troyer court to simplify the Tech-Bilt standard, and it noted that "a number of

courts have criticized the Tech-Bilt approach . . . on the basis that it discourages settlements and places a severe burden on the trial and appellate courts." Id., at 21. To this end, the court used a nine factor test for reviewing a good faith settlement.[13] Among the Troyer factors similar to those used under the Tech-Bilt standard are a realistic approximation of damages, relative fault, and solvency of the defendant. Additionally, Troyer takes into account the expense and complexity of the litigation, the relationship of the parties and whether it is conducive to collusion or wrongful conduct.[14]

These additional Troyer factors further support the determination of a good faith settlement here. There is no doubt that the claims and multi-party nature of this case create a daunting and expensive litigation prospect. As

---

13 In determining whether a settlement is entered into in good faith, the Troyer court listed nine factors which could be considered in the "totality of the circumstances" approach: 1) the type and difficulty of the case, 2) the realistic approximation of total damages plaintiff seeks, 3) the likelihood of plaintiff's success at trial, 4) predicted expense of litigation, 5) the relative degree of fault of each of the tortfeasors, 6) the amount of consideration paid in settlement, 7) the applicable insurance policy limits and solvency of tortfeasors, 8) whether the relationship among the parties is conducive to collusion or wrongful conduct, and 9) any other evidence of intent to injure non-settling tortfeasor or other wrongful purpose. Troyer at 27.

14 The court cited examples of bad faith, including settlements which were intended to shield family members from cross-claims, and settlements that allowed an indirect contribution from non-settling joint tortfeasor. Troyer at 91-2.

discussed above, Whirlpool has made an apparently reasonable "business decision" to settle with the Bowlings in light of the difficulties it foresees in obtaining an enforceable judgment against them. Moreover, there is no evidence that this decision was made with the intent to harm non-settling defendants, even though the consequence is to free the Bowlings from future litigation on the issue of contribution.

By statute, "[t]he party asserting a lack of good faith [of a settlement agreement] shall have the burden of proof on that issue." Haw. Rev. Stat. § 663-15.5(b). The Magistrate Judge properly determined that CIT did not meet its burden of disproving good faith. Despite CIT's suggestion that the Bowlings pocketed over $2 million, the Magistrate Judge found Whirlpool's evidence indicating that the Bowlings would have to enter bankruptcy proceedings if forced to pay more than $150,000 persuasive evidence of the collectibility issue. There is no basis under either Troyer or Tech-Bilt to find that the Magistrate Judge's determination that Whirlpool and the Bowlings had entered into their settlement agreement in good faith was "clearly erroneous or contrary to law."

The fact that CIT still may pursue its direct claims against the Bowlings mitigates any allegation of injury as a result of the settlement. If CIT believes it can meet the heightened standards of fraud and RICO against the

Bowlings, it may do so in its affirmative cross-claim. Whirlpool's belief to the contrary is reasonable in light of the circumstances. Accordingly, this court finds that the Magistrate Judge committed no clear error in granting Whirlpool's Motion for determination of good faith settlement.

## CONCLUSION

For the reasons stated above, the court AFFIRMS the August 1, 2003 Magistrate Order Granting Plaintiff Whirlpool Corporation's Motion of Determination of Good Faith Settlement.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, OCT 31 2003.

DAVID ALAN EZRA
CHIEF UNITED STATES DISTRICT JUDGE

Whirlpool Corporation vs. CIT Group/Business Credit, Inc., et al., Civil No. 01-00187 DAE-BMK; ORDER AFFIRMING MAGISTRATE ORDER GRANTING PLAINTIFF WHIRLPOOL CORPORATION'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT