IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; et al.,<br><br>Defendants,<br><br>and<br><br>F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Crossclaim Defendants. | Civil No. CV 01 00187 MEA-BMK (Tort and RICO)<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

**MEMORANDUM IN SUPPORT OF MOTION**

Defendant The CIT Group/Business Credit, Inc. (CIT) seeks in this motion to preclude Whirlpool from offering evidence or argument that CIT's Second Amended Crossclaim, filed February 3, 2003, contains or concedes CIT's participation in, cooperation with, joining in or agreement with a fraud conspiracy against Whirlpool.

Whirlpool has listed the SACC in its trial exhibit list as Ex. W906. CIT anticipates that Whirlpool will seek to use the allegations in the SACC as evidence of CIT's alleged liability for fraud conspiracy, even though this Court declined to adopt Whirlpool's arguments that the SACC reflects an admission by CIT that it participated in a fraud conspiracy. *See Memorandum Opinion and Order, at 17 ("Opinion").*

The allegations of the SACC are not probative of CIT's knowledge of or participation in the alleged fraud conspiracy. Whirlpool is deliberately misinterpreting the SACC, which was filed only to present damage claims because CIT was a victim of a fraudulent scheme.

In addition, Whirlpool's attempted use of the SACC as an admission of knowledge or participation by CIT would confuse the jury and prejudice CIT. It would improperly focus the jury's attention on the details of statements written by counsel based upon information gleaned through discovery, and not on actual evidence of "whether, in acting to protect its investment, CIT acted with the purpose of assisting any of the participants in the MidPac 'bust-out' to conceal their fraudulent activities." *Opinion, at 19.*

## I. BACKGROUND

Whirlpool originally filed suit against CIT, as well as principals of and the attorney for MidPac Lumber Company ("MidPac") and CG Investments, Inc., dba Maui Home Supply ("MHS") in 2001. On February 22, 2002, Whirlpool filed its Second Amended Complaint. In Count II, its Fraud Conspiracy claim, Whirlpool alleged that (A) MidPac and MHS principals, Michael Clifford, Kurt Glassman and Edwin Bowling, MidPac's lawyer Ray Iwamoto, and others formed a conspiracy to "bust-out" MidPac, that is, "extract large sums of money in fraud upon its creditors and then cease doing business", *SAC ¶ 30;* (B) the conspiracy included maintaining and using "a secret MidPac account held at City Bank. . . to hide funds of MidPac", *SAC ¶ 114;* (C) that CIT

joined the conspiracy at some point after June 22, 1999, when it agreed "to permit continuation of the fraud and bust-out in consideration for CIT not shutting down the Enterprise", *SAC, ¶ 124 (the sole paragraph in Count II addressing CIT's fraud conspiracy liability)*.

In response, CIT filed an answer and a counterclaim against its co-defendants. On February 3, 2003, CIT filed its Second Amended Crossclaim (SACC), alleging claims based on fraud conspiracy, interference, and other grounds against Glassman, Bowling, Bowling's wife and others, arising from their alleged scheme to extract millions of dollars from MidPac bank accounts over which CIT had a security interest, *SACC ¶ 27,* and then obtain working capital by misleading CIT into over-advancing loan funds by manipulating CIT's collateral (accounts receivable and inventory). *SACC ¶ 28.* CIT's allegations were similar in part, but not identical, to Whirlpool's. CIT claims that it was the victim of, not a participant, in a fraudulent scheme.

In February 2004, the parties filed motions for partial summary judgment against each other. Whirlpool argued in its Motion for Partial Summary Judgment as to CIT on Count V (RICO)and Count II (Fraud Conspiracy) (filed 2/2/04) ("Whirlpool's RICO MPSJ"), that CIT's SACC allegations of a fraudulent scheme constitute an admission that a conspiracy existed in which CIT cooperated, giving rise to RICO liability under 18 U.S.C. § 1962(d). *Memorandum in Support of Whirlpool's RICO MPSJ, at 2 (filed* 2/2/04). Whirlpool also argued that the SACC rendered CIT liable for fraud conspiracy because CIT

admitted in the SACC "the existence of a fraud conspiracy" and admitted that it cooperated with and assisted the conspiracy by continuing to fund MidPac, "working with an outside fraud specialist consultant and the outside inventory consultant to permit the conspirators to operate" while MidPac sought refinancing. *Id., at 27-28.*

In late December 2004, this Court issued its decisions on the partial summary judgment motions, including its Opinion on Whirlpool and CIT's motions against each other. This Court granted CIT summary judgment on Whirlpool's RICO claims (Count V) but denied summary judgment on Whirlpool's tort claims, including that for fraud conspiracy. This Court declined Whirlpool's effort to use the SACC as an admission or other evidence of CIT's participation in a conspiracy. This Court noted that "[d]emonstrating that CIT was aware of the ongoing fraud at MidPac is not sufficient to demonstrate agreement." *Opinion, at 17 (citing Robert's Hawaii Sch, Bus, Inc. V. Laupahoehoe Transp. Co., Inc., 982 P.2d 853, 889 n. 44* (Haw. 1999)). This Court focused instead on the existence of evidence: "whether there is evidence to suggest that CIT joined the alleged conspiracy", *id.*, and whether "CIT acted with the purpose of assisting any of the participants in the MidPac 'bust out' to conceal their fraudulent activities." *Id., at 19.*

## II. ARGUMENT

### A. The Evidence Is Not Relevant.

The allegations of the SACC are not relevant under FRE Rules 401 and 402. According to the Ninth Circuit Court of

Appeals, two distinct requirements are implicit in that definition: "(1) The evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." *United States v. Click*, 807 F.2d 847, 850 (9th Cir. 1987). Defendants fail the relevancy test.

Whirlpool will likely attempt to offer the SACC as evidence of CIT's agreement to participate in a fraud conspiracy. However, the SACC is not probative of this proposition. The SACC simply shows that CIT is alleging it was victimized by a conspiracy. To claim that the SACC shows that CIT participated or joined that conspiracy is absurd. The SACC is not probative of the proposition that Whirlpool needs to prove, *i.e.*, that CIT joined the conspiracy. Thus, this Court previously rejected this very argument by Whirlpool in deciding the summary judgment motions. *See Opinion at 17.*

**B. Even If Marginally Relevant, The Evidence Should Be Excluded Under FRE 403.**

Even assuming that Whirlpool could make a showing that the SACC is of marginal relevance to its fraud conspiracy claims, any such argument should be excluded under FRE 403 on the ground that its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FRE Rule 403.

Clearly, the SACC has no bearing on whether CIT agreed to join the conspiracy that had it as its prime victim. If

Whirlpool argues that the SACC is still relevant because at least it shows CIT's knowledge of the conspiracy, Whirlpool would be misrepresenting the import of this legal document which would be unfairly prejudicial to CIT and confusing to the jury.

The SACC is a notice pleading written with the benefit of hindsight years after the events in question. While it certainly reveals what CIT's understanding of the fraud conspiracy against it is as of the date it was filed, it would be misleading and confusing to the jury, and prejudicial to CIT, to characterize the SACC as revealing what CIT knew during the critical 1999 period.[1] In the same way, it would be misleading to characterize Whirlpool's claim for fraud conspiracy as revealing what it knew in 1999. Under these circumstances the danger of misleading the jury as to the state of CIT's knowledge during the relevant time period exceeds whatever minimal probative value there is in pointing out what CIT does not deny, that is, that there was a fraud conspiracy against it by its co-defendants. Further, to the extent that Whirlpool wants to use the SACC to argue that CIT had knowledge in 1999 of events learned only afterwards, reference to the SACC is unfairly prejudicial to CIT.

---

[1] For example, deposition testimony elicited by Whirlpool from CIT's employees showed that the extent of the MidPac and MHS principals' fraud only revealed itself over a long period of time. *See* Ex. 1, *Hayes R. 30(b)(6) Depo., vol. 1, at 212:24-213:21 (diversion of MidPac cash learned of post-Whirlpool suit); Ex. 2, Brichacek Depo., at 112:4-7 (believed on June 23, 1999, a fraud had been committed against CIT) at 176:23-177:12 (suspicious by 10/21/99 that MidPac money went to insiders but no paper trail); Ex. 1, Hayes R. 30(b)(6) Depo., vol. 1, at 66:25-67:15 (the "fraud" of which CIT was aware in June 1999, was inflation of borrowing base).*

Thus, since the minimal, if any, probative value of the SACC is outweighed by the danger of misleading and confusing the jury and unfair prejudice to CIT, "there is no other evidentiary rule that can operate to make the same evidence admissible." *United States v. Benavidez-Benevidez*, 217 F.3d 720, 725 (9th Cir. 2000).

**III. CONCLUSION**

For the foregoing reasons, this Court should grant CIT's motion to preclude Whirlpool from offering evidence or argument that CIT's SACC proves or tends to prove CIT's alleged participation in, cooperation with, joining in or agreement with a fraud conspiracy.

DATED: Honolulu, Hawaiʻi, June 13, 2006.

/s/ Louise K. Y. Ing
PAUL ALSTON
LOUISE K. Y. ING
THOMAS E. BUSH
ALLISON KIRK
Attorneys for Defendant/
Cross-claimant
THE CIT GROUP/BUSINESS CREDIT, INC.