IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO, and KURT GLASSMAN, DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants.<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Cross-Claim Defendants. | Civil No. CV01-00187 DAE BMK<br><br>(Tort and RICO) |

DEPOSITION OF ROBERT BRICHACEK

Taken on behalf of Plaintiff Whirlpool Corporation, at 2600 Mauka Tower, 737 Bishop Street, Honolulu, Hawaii, 96813, commencing at 9:22 a.m., on Thursday, November 21, 2002, pursuant to Notice.

REPORTED BY: JANIS K. FLOATE, RPR, CSR 254
Notary Public, State of Hawaii

EXHIBIT 2

APPEARANCES:

For Plaintiff Whirlpool Corporation:

TIMOTHY J. HOGAN, ESQ.
Lynch Ichida Thompson Kim & Hirota
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813

For Defendant CIT Group/Business Credit, Inc.:

LOUISE Y.K. ING, ESQ.
Alston Hunt Floyd & Ing
1800 Pacific Tower
1001 Bishop Street
Honolulu, Hawaii 96813

For Defendants Edwin Bowling and Frances Haller-Bowling:

JEANNETTE HOLMES, ESQ.
Bronster Crabtree & Hoshibata
2300 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813

For Defendants Michael Clifford, CGBN, Inc., and Additional Cross-Claim Defendant CG Development, Inc.:

ROGER S. MOSELEY, ESQ.
TED N. PETTIT, ESQ.
CHRISTOPHER J. MUZZI, ESQ.
Case Bigelow & Lombardi
2600 Mauka Tower
737 Bishop Street
Honolulu, Hawaii 96813

For Defendant Raymond Iwamoto:

CALVIN E. YOUNG, ESQ.
Ayabe Chong Nishimoto Sia & Nakamura
2500 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813

APPEARANCES (continued):

Speakerphone Appearance from Benton Harbor, Michigan:

DEB CLAWSON, ESQ.
Whirlpool Corporation
Legal Department
2200 M63
Mailbox No. 2200
Benton Harbor, Michigan 49022

Also Present:

SYLVIA M. LEE, Paralegal
Lynch Ichida Thompson Kim & Hirota

FRANCIS X. CHAFFIOTTE, ESQ.
Vice President and Assistant
Legal General Counsel

MS. ING: Object. Vague as to fraud. That's your interpretation.

BY MR. HOGAN:

Q. Did you suspect Kurt Glassman had committed a fraud June 23rd, 1999?

A. I believe he committed a fraud against CIT, yes.

Q. And at that same time, is it your statement that CIT's understanding of what inventory was at Maui was based on at least in part on Mr. Glassman's representations?

A. Can you repeat that, please.

Q. Okay. You believed in June 23rd, 1999, that Mr. Glassman had committed a fraud. Is that correct?

MS. ING: Object. Misstates his prior testimony. He said fraud against CIT.

BY MR. HOGAN:

Q. Fraud against CIT. That your prior testimony, that you believed in June 23rd, 1999, that Mr. Glassman committed a fraud against CIT?

A. Yes.

Q. At the time that you were trying to determine the amount of inventory that was located in Maui that would be subject to CIT's lien, did you

Q. Looking at Exhibit 93, the handwriting on Exhibit 93, do you recognize that as Kurt Glassman's handwriting?

A. I do.

Q. Including where it says Bayless, is that Kurt Glassman's handwriting?

A. Yes.

Q. Do you remember receiving this document?

A. Yes.

Q. After you received this document, what, if anything, did you do?

A. I can't recall with certainty, but after reviewing the document, it would appear that we made the request to change.

Q. Do you remember what you did with the changed document?

A. I don't recall.

Q. Earlier you said that you were suspicious about who the investors were, about them being insiders. What made you think that? Let me just narrow down the time frame.

A. Thank you.

Q. During this time period October 21, 1999, in and around has time, I believe you said that you were suspicious that the investors, with respect to

the refinancing of the CIT loan, were insiders. What made you suspicious?

A. Certainly the facts at hand pointed to the fact that, at a minimum, fictitious accounts had been assigned to CIT for the purposes of inflating the borrowing base. It was my personal belief, based on that knowledge, that that money had to leave the company somehow. Although we weren't able to find the paper trail showing how the money left the company, I believed that that money was advanced to insiders, was taken out, money, by insiders of the company.

Q. Your main point of contact while you were working with CIT and Midpac was Kurt Glassman, right?

A. That's true.

Q. So most, if not all, of the information you received was from Kurt Glassman with respect to Midpac, correct?

A. Correct.

Q. Then with respect to Exhibit 94 -- again, this is the letter addressed to Mr. Bowling -- did you ever discuss the contents of this letter with Mr. Bowling?

A. I did not.

C E R T I F I C A T E

STATE OF HAWAII ) 
) SS.
CITY AND COUNTY OF HONOLULU )

I, JANIS K. FLOATE, Notary Public, State of Hawaii, do hereby certify:

That on November 21, 2002, appeared before me Robert Brichacek, the witness whose deposition is contained herein; that prior to being examined, the witness was by me duly sworn;

That the deposition was taken down by me in machine shorthand and was thereafter reduced to typewriting under my supervision; that the foregoing represents to the best of my ability, a true and correct transcript of the proceedings had in the foregoing matter.

I further certify that I am not an attorney for any of the parties hereto, nor in any way concerned with the cause.

DATED this 6 day of Dec, 2002, in Honolulu, Hawaii.

Janis K. Floate

JANIS K. FLOATE, RPR, CSR 254
Notary Public, State of Hawaii
My Commission Exp: December 12, 2005