IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; et al.,<br><br>Defendants,<br><br>and<br><br>F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Crossclaim Defendants. | Civil No. CV 01 00187 MEA-BMK (Tort and RICO)<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

**MEMORANDUM IN SUPPORT OF MOTION**

Defendant The CIT Group/Business Credit, Inc. (CIT) seeks in this motion to preclude Whirlpool from offering evidence or argument about the "Bond Funds fraud"[2] on the same grounds that this Court rejected the "Bond fraud" as a theory of recovery against CIT under Whirlpool's Count V (Violations of the RICO Act). *See Memorandum Opinion and Order ("Opinion"), at 20-21.*

---

[2] The term "Bond Funds fraud" is used but not defined in Whirlpool's Second Amended Complaint. The alleged fraud appears to consist of MidPac's use in its daily operations of funds it received as a surety for bonded projects, CIT's alleged sweeping of the funds and CIT's alleged awareness that MidPac was using bond funds for its operating expenses. *SAC ¶ 38.*

Whirlpool's Objections to CIT's jury instructions and its exhibit list demonstrate that Whirlpool still intends to introduce evidence of CIT's participation in an alleged Bond Funds fraud as proof of CIT's fraud conspiracy liability. *See, e.g.*, Whirlpool Trial Ex. W93 (Bond Agreement), W177 (Bank of Hawaii Acct 0080-640668), W200 (checks written on FHB #570), W343 (Midpac ASB Acct 45-01050-3 re bond deposits), W354 (MidPac checks payable to MidPac), W382 (ASB Acct. Statement), W391 (ASB Acct. Statement), W420 (Bonded Jobs Summary), W421 (MidPac Deposit Schedule), W645 (Bonded Jobs summary).[3] *See also* Plaintiff's Objections to [CIT's] Second Proposed Jury Instructions (filed 3/15/06), at 11 (objecting to one of CIT's civil conspiracy instructions because "the conspiracy. . . also involves the bond fraud (CIT admits to getting bond funds)."

In light of this Court's granting of summary judgment to CIT on Whirlpool's RICO claims, which were based in part on the alleged Bond Funds fraud, evidence of the Bond Funds fraud and CIT's alleged participation in it is irrelevant under FRE 402 or at a minimum, prejudicial and confusing under FRE 403.

[3] Due to the overwhelming number of Whirlpool exhibits (971), the above list of bond-related exhibits is illustrative but not necessarily a complete summary of all the exhibits which Whirlpool is presumably seeking to proffer in support of its "Bond Funds Fraud" allegations. This motion seeks to preclude all such exhibits.

# I. INTRODUCTION

Whirlpool originally filed suit against CIT, as well as principals of and the attorney for MidPac Lumber Company ("MidPac")and CG Investments, Inc., dba Maui Home Supply ("MHS") in 2001. On February 22, 2002, Whirlpool filed its Second Amended Complaint ("SAC").

**Bond Funds fraud allegations.** The SAC alleges that MidPac principals formed a conspiracy to commit "Bond Funds fraud" which CIT joined. Whirlpool alleges in the factual recitations of its SAC that (A) MidPac acted as a surety for bonded construction projects and held in trust funds that were to be used to pay suppliers of goods and services on such projects, *SAC ¶ 14;* (B) in October 1998, CIT and MidPac entered into an amendment to their March 1998 loan agreement under which bond deposits from MidPac customers would be "remitted to a blocked account under terms and conditions acceptable to CIT", *SAC ¶ 36;* (C) CIT allegedly swept the bond accounts on unknown dates and acknowledged in a March 26, 1999 audit that MidPac used bond funds to "fund its daily operations", *SAC ¶ 38*.

In the sole paragraph describing CIT's liability under Whirlpool's Count IV (Fraud Conspiracy), Whirlpool alleges that on June 22, 1999, CIT's in-house counsel and MidPac's attorney "discussed issues related to CIT's liability for the Bond Funds fraud" and that "[t]hese discussions eventually culminated in an agreement between CIT and the Enterprise to permit continuation

of the fraud and bust-out in consideration for CIT not shutting down the Enterprise." *SAC, ¶ 124.* Whirlpool's Rule 30(b)(6) designee, Carl Smith, testified that all the factual bases for Whirlpool's fraud conspiracy claim against CIT could be found in the allegations of the Second Amended Complaint and the documents referred to in the complaint. *Ex. 1, Rule 30(b)(6) Deposition of Carl Smith, Vol. 3, at 358:6-24 ("Smith Rule 30(b)(6) Depo., Vol. 3").*

The other detail relating to CIT's role in the alleged Bond Funds fraud occurs in Count V (Violations of the RICO Act)in which Whirlpool alleges that CIT aided and abetted the "Bond Funds fraud" by (A) taking moneys "knowingly derived form this fraud", applying them to its loan balance and then making the funds "available to additional borrowers" and (B) assisting or participating in a fraud on Whirlpool to extract funds from Whirlpool that were "used to pay bond claimants and deter discovery of the Enterprise after June 1999." *SAC ¶ 268.*

Citing the allegations in paragraph 268 of Whirlpool's RICO allegations, this Court rejected Whirlpool's Bond Funds fraud theory against CIT, stating "these attempted links between racketeering proceeds and injury to Whirlpool are far too tenuous to support a § 1962(a) claim", and granted summary judgment in CIT's favor on that claim. *Opinion, at 21.*

Although this Court did not specifically discuss the viability of Whirlpool's Bond Funds fraud allegations in

paragraph 124 of the SAC, it did identify the fraud conspiracy issues for trial as "whether there is evidence to suggest that CIT joined the alleged conspiracy", *id.*, and whether "CIT acted with the purpose of assisting any of the participants in the MidPac 'bust out' to conceal their fraudulent activities." *Id.*, at 19.

## II. ARGUMENT

### A. The Evidence Is Not Relevant.

The Bond Funds fraud and CIT's alleged participation in it are not relevant under FRE Rules 401 and 402. According to the Ninth Circuit Court of Appeals, two distinct requirements are implicit in that definition: "(1) The evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." *United States v. Click*, 807 F.2d 847, 850 (9th Cir. 1987).

Defendants fail the relevancy test. For the same reasons that this Court saw no connection between CIT's alleged bond funds-related acts and any RICO injury suffered by Whirlpool, Whirlpool has failed to draw any connection between CIT's alleged actions and any damage Whirlpool may have suffered from the alleged fraud conspiracy. A critical element of a fraud conspiracy claim is whether the alleged conspiratorial combination "result[ed] in damage." *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 n. 3 (9th Cir. 1984).

The only evidence of CIT sweeping any bond funds account involved approximately $45,000 in deposits on June 17, 1999, which CIT's Robert Brichacek testified was inadvertently taken into CIT's account and which was, in any event, promptly returned to MidPac. *Ex. 2 (Deposition of Robert Brichachek, 11/21/02, at 163:6-16. See also Ex. 3(CIT Trial Ex. C26, 2-page expert report of Thomas E. Hayes, dated 3/21/03)*. Such a transaction which CIT quickly and unilaterally reversed with zero financial effect could hardly be deemed evidence of complicity in a conspiracy, much less a culpable act that prolonged a conspiracy or defrauded or damaged other creditors, including Whirlpool.

Indeed, Whirlpool's own Rule 30(b)(6) designee, Carl Smith, was unable to point to any damage caused by Whirlpool by the alleged Bond Funds fraud:

> The alleged bond fund fraud was part of the overall enterprise scheme. . . . Whirlpool was damaged by the entire racketeering operation. Maybe not specifically by this one, but by the entire operation.

*Ex. 1, Smith Rule 30(b)(6) Depo., Vol. 3,* at 529:1-6

> I don't recall anything that shows Whirlpool was damaged by the bond-specifically by the bond fund scheme.

*Id., at 529:11-13.*

If those admissions were not alone devastating to Whirlpool's effort to use Bond Funds evidence, Whirlpool's allegation in its fraud conspiracy claim about a June 22, 1999 telephone conversation between counsel for MidPac and CIT

discussing "issues related to CIT's liability for the Bond Funds fraud" also comes to naught. The reference appears to relate to a June 23, 1999 letter from MidPac's counsel Raymond Iwamoto to CIT's in-house counsel Grace Bowen in which Mr. Iwamoto wrote:

> During our discussions yesterday, someone said that bond moneys have been used to pay payables. The truth of the matter is that since CIT's financing of the company, more money has paid out on bonds than taken in for new bonds.

*Ex. 4, attached (p. 2 of Whirlpool Trial Ex. W474).*

In *Doleman*, one of the few cases shedding light on Hawai`i civil conspiracy law, the 9th Circuit Court of Appeals (interpreting Hawai`i law by looking to conspiracy law in other states) noted that "an alleged civil conspiracy must be established by *clear, cogent,* and convincing evidence." *727 F.2d at 1483 n. 3.* It also admonished that:

> courts should be especially careful to require that plaintiffs provide specific evidence of the alleged co-conspirators' agreement to engage in conduct designed to breach a fiduciary duty. Without such evidence of the parties' subjective intent, allegations of a conspiracy should not go to a jury lest they mistake traditional negotiating tactics with valid business purposes. . . as evidence of a conspiracy.

*Id.* The June 22, 1999, telephone conversation about the alleged Bond Funds fraud, as described in Mr. Iwamoto's June 23, 1999, letter, is not probative of any intent by CIT to assist or participate in any alleged Bond Funds fraud, much less any broader conspiracy.

**B. Even If Marginally Relevant, The Evidence Should Be Excluded Under FRE 403.**

Even assuming that Whirlpool could make a showing that the Bond Funds fraud is of marginal relevance to its conspiracy claim against CIT, any such evidence and argument should be excluded under FRE 403 on the ground that its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FRE 403.

According to the Ninth Circuit Court of Appeals, the U.S. Supreme Court has instructed district courts to balance "the probative value of a given evidentiary item against its prejudicial potential" using a two-step process. *United States v. Merino-Balderrama*, 146 F.3d 758, 761 (9th Cir. 1998). First, the court must "'decide whether a particular item of evidence raise[s] a danger of unfair prejudice.'" *Id.* (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)). Second, the court must "evaluate the degrees of probative value and unfair prejudice, not only for the item in question but for any actually available substitutes as well. If an alternative [is] found to have substantially the same or greater probative value but a lower danger of unfair prejudice,'" the probative value of the proffered evidence should be "'discounted.'" If the discounted probative value is "'substantially outweighed by the unfairly

prejudicial risk,'" the evidence must be excluded. *Id.* at 761-62 (quoting *Old Chief v. United States*, 519 U.S. at 180).

Here, any marginal relevance of the alleged Bonds Fund fraud is substantially outweighed by the danger of confusion and unfair prejudice. Whirlpool's allegations and the amount of exhibits it seeks to array against CIT are already profuse, wideranging, complex and confusing. To permit a "sideshow" presentation of evidence and testimony on an alleged scheme that is at most marginally relevant (and more likely entirely irrelevant) would unnecessarily prolong trial and confuse the jury. For CIT to provide an appropriate and necessary response to such irrelevant, confusing and highly prejudicial evidence, would require considerably more trial time to show the de minimis nature of the transactions at issue, the harmlessness of any communications about MidPac's use of the bond funds and the lack of any injury to Whirlpool.

Further, "[o]nce the probative value of a piece of evidence is found to be outweighed by the danger of unfair prejudice, there is no other evidentiary rule that can operate to make the same evidence admissible." *United States v. Benavidez-Benevidez*, 217 F.3d 720, 725 (9th Cir. 2000). Here, any marginal relevance of the Bond Funds fraud and CIT's alleged role in it is substantially outweighed by the danger of unfair prejudice to CIT. In this post-Enron environment, the jury could be swayed by any inflammatory mention of a "fraud", even though this

particular alleged fraud involved no active participation by CIT, a $45,000 transaction with zero financial effect on MidPac and no showing by Whirlpool that it suffered any resulting damage.

**III. CONCLUSION**

For the foregoing reasons, CIT's motion to preclude evidence of and argument about the alleged Bond Funds fraud should be granted.

DATED: Honolulu, Hawai'i, June 13, 2006.

/s/ Louise K. Y. Ing
PAUL ALSTON
LOUISE K. Y. ING
THOMAS E. BUSH
Attorneys for Defendant/Cross-claimant THE CIT GROUP/BUSINESS CREDIT, INC.