MARTIN ANDERSON
CONRAD M. WEISER
DAVID J. DEZZANI
RONALD H.W. LUM
DAVID J. REBER
JOHN R. LACY
RAYMOND S. IWAMOTO
THOMAS W. WILLIAMS, JR.
WILLIAM S. MILLER
JACQUELINE L.S. EARLE
LANI L. EWART
RANDALL K. STEVERSON
PATRICIA Y. LEE
GARY M. SLOVIN
LISA ...ES MUNGER
ERNEST J. T. LOO
BR... L. LAMON
PETER T. KASHIWA
RUSSELL S. KATO
LANT A. JOHNSON
VINCENT A. PIEKARSKI
MARK B. DESMARAIS
LEIGHTON J.H.S. YUEN
CORLIS J. CHANG
CARL J. SCHLACK, JR.

BARBARA A. PETRUS
PATRICIA M. NAPIER
MIKI OKUMURA
MARK R. ITO
WAYNE H. MURAOKA
AUDREY E. J. NG
GREGORY R. KIM
ALAN S. FUJIMOTO
WALTER C. DAVISON
RAYMOND K. OKADA
GAIL O. AYABE
DALE E. ZANE
LINDALEE K. FARM
MARGARET JENKINS LEONG
CAROL A. EBLEN
JEFFREY SCOTT PIPER
ROY JOHN TJIOE
KELLIE M. N. SEKIYA
JUDY Y. LEE
RICHARD PHILPOTT
LENNES N. OMURO
DEREK R. KOBAYASHI
PETER Y. KIKUTA

# GOODSILL ANDERSON QUINN & STIFEL

ATTORNEYS AT LAW

ALII PLACE, SUITE 1800 • 1099 ALAKEA STREET
HONOLULU, HAWAII 96813

MAIL ADDRESS: P.O. BOX 3196
HONOLULU, HAWAII 96801

TELEPHONE (808) 547-5600 • FAX (808) 547-5880
info@goodsill.com • www.goodsill.com

KURT K. KAWAFUCHI
LISA T. REDELL
MARY A. RENFER
THOMAS BENEDICT
EDMUND K. SAFFERY
RUSSELL ... KALIPU
LISA A. BAIL
CAROLYN K. GUGELYK
NORMAND R. LEZY
DARCY ENDO-OMOTO
KAHEO DYE-CHIEW

ERIC A. ELKIND
ELIZABETH H. LEE
KATHLEEN A. KELLY
TONYA C. KONO
TANISHA A. WOODSON
J. DENICE VON GNECHTEN
ADRIENNE Y. SHIMONISHI
DAVID P. CORNELL
TERESA K. FAVILLA
M. ELIZABETH BAXTER
ELIZABETH A. C. THOMPSON
ANNE T. HORIUCHI

OF COUNSEL
MARSHALL M. GOODSILL
WILLIAM F. QUINN
GENRO KASHIWA

COUNSEL
RANDALL W. ROTH
E. LAURENCE GAY
ALAN W.C. MA*
ERIC H. SONNENBERG

*ASIA LIAISON

June 23, 1999

19909/91370

VIA FAX

Grace K. Bowen, Esq.
The CIT Group/Credit Finance, Inc.
300 S. Grand Avenue, 3rd Floor
Los Angeles, CA 90071

Dear Ms. Bowen:

After our phone conference yesterday, I met with Kurt Glassman to discuss this matter further. I suggested to Kurt that I wanted to call you again to continue our dialogue. Upon reflection, I thought that it might be of some benefit if I put my thoughts in writing. Due to the gravity of the situation, I would like this letter to be subject to Rule 408 of the Hawaii Rules of Evidence. In other words, this is for discussion and settlement purposes and should not be used in the event of litigation.

Here is my take on the facts, based on discussions with Kurt. You probably know that Kurt took a much-needed vacation in Europe. It was during this vacation that there was an inadvertent double invoicing. A single non-segregated invoice (account receivable) was broken down into categories but the original non-segregated invoice was not cancelled, resulting in the double invoicing. CIT advanced not knowing that there was this doubling.

Upon return from Europe, Kurt discovered the inadvertent situation and it was Kurt who called it to CIT's attention. This inadvertent error is the only default.

Based on this error, CIT has reacted and appears to have overreacted by becoming suspicious of three sources of receivables upon which CIT has been advancing funds. These are called J&J, F&J and Spectrum. I understand that J&J does not have a good D&B report, while F&J and Spectrum, as new businesses, don't have any record.





EXHIBIT 4

Grace K. Bowen, Esq.
June 23, 1999
Page Two

I understand further that Kurt has explained the business reasons behind F&J and Spectrum and the business relationships. CIT is now investigating the validity of the receivables from these sources. I understand further that each of these entities has been paying their receivables in the ordinary course of business. We have no reason to believe that any of the receivables from these entities are worthless or should be discounted.

Faced with accusations, Kurt has reacted emotionally by telling CIT to go ahead and discount these receivables or treat them as if they were affiliate receivables. Kurt's reason for these statements is because he believes that there is adequate security even without these receivables. However, Kurt's statements may have backfired on him by causing CIT to believe that these receivables are worthless or that there may have been improper siphoning of funds.

The truth of the matter is that there has been no improper siphoning of funds. There has been permissible commingling as we discussed over the phone, but the inflow and outflow of funds can be accounted for. During our discussions yesterday, someone said that bond moneys have been used to pay payables. The truth of the matter is that since CIT's financing of the company, more money has paid out on bonds than taken in for new bonds. We also discussed the receivables. The receivables from J&J, F&J and Spectrum are backed by inventory or trade receivables from their respective customers.

The fact that Kurt assisted in helping F&J and J&J set up their businesses is another source of suspicion to CIT. Nevertheless, these are independent companies owned by independent individuals. Yesterday we spoke about there being no common ownership, equity interest, management or control but that there may be economic control. This was an incorrect choice of words. There is economic influence but no economic control.

For example, the Bank of Hawaii is one of our most important clients. As such, they exercise tremendous economic influence over us. Although we have been dissatisfied with the services received from their trust company, in connection with our pension plans, each time the subject came up in the past several years, we stuck with it. This is not to say that the Bank of Hawaii can instruct us to open our books to their creditors; neither would they ask.

Kurt is in the same situation. He cannot instruct nor would he ask J&J or F&J or Spectrum to open up their books to CIT. They are independent business entities. They are economically tied to MidPac through business arrangements but no more than what is the norm in American business. The ties are through contractual arrangements. The only failings might be a lack of documentation but even that is not uncommon in American business practice.

Grace K. Bowen, Esq.
June 23, 1999
Page Three

However, nothing prevents each of these companies from selling out to any of MidPac's competitors or of making other more advantageous business arrangements with MidPac's competitors.

None of these entities has defaulted in paying its invoices when due. There is no reason for CIT to discount receivables from them at this stage of the game. A lack of Dun & Bradstreet should have been noticed before advances were made based on the receivables. Payment experience since the first of the year for F&J and even longer for J&J and not so long for Spectrum should now take the place of the D&B.

However, based on our discussions, CIT is intent on investigating these companies as if they were affiliates of MidPac. They are not and Kurt cannot tell them to reveal their business practices. CIT has to apprise the strength of their receivables through their payment history. As for the mainland suppliers, Whirlpool, Kraftmaid, Stanley and others, the relationship that MidPac has with these companies are vital assets of MidPac that should not be jeopardized by CIT's inquiries.

Based on an inadvertent error while Kurt was in Europe, CIT has frozen cash accounts, jeopardized payroll, payroll taxes, bonding accounts and MidPac's payments to its normal trade creditors. CIT's reaction is an overreaction that has the potential of damaging MidPac and thereby damaging CIT's ability to be paid as well.

If CIT has lost confidence in Kurt, it should assist Kurt in refinancing this loan and Kurt and CIT should part company.

Very truly yours,

Ray Iwamoto

Raymond S. Iwamoto

RSI:ek
cc: Mr. Kurt S. Glassman (Via Fax)