IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; et al.,<br><br>Defendants,<br><br>and<br><br>F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Crossclaim Defendants. | Civil No. CV 01 00187 MEA-BMK (Tort and RICO)<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

**MEMORANDUM IN SUPPORT OF MOTION**

Defendant The CIT Group/Business Credit, Inc. (CIT) seeks in this motion to preclude Whirlpool from offering evidence or argument about an August 11, 1999, email from Ted Phelps to George Cleland of Collateral Risk Management (*Whirlpool Trial Ex. W642, attached as Ex. 1*), in which Mr. Phelps comments to Mr. Cleland about Mr. Glassman and others. We anticipate that Whirlpool will seek to use the email, which was not copied to CIT and was not among CIT's files, to argue improperly that CIT, through its alleged agents, participated in a "conspiracy to obtain a refinancing of" CIT's loan to MidPac Lumber.

## I. BACKGROUND

In the August 11, 1999, email, Mr. Phelps responded to a question from CRM's Gary Cleland about the status of refinancing negotiations with the following report and gratuitous comment:

> we received from City Bank a list of questions from First Hawaiian Bank that they want answers to prior to agreeing to participate. Some of the questions are pretty hard, but they are being propounded by a fairly junior person at the bank. Accordingly, I think that Kurt will be able to dance around them with enough finesse to keep it on track, particularly since he never allows the truth to be an impediment to any financing.

*W642*. Mr. Phelps also responded to Mr. Cleland's question about booking air travel to Hawai`i with an even more gratuitous comment that "All airline executives are pond scum." *Id.*

In Whirlpool's Motion for Partial Summary Judgment on its RICO and Fraud Conspiracy claims (filed 2/4/04), Whirlpool cited that email as evidence of a predicate bank fraud act under RICO and as evidence of a fraud conspiracy:

> CIT's "outside fraud specialist consultant, Ted Phelps" and "outside inventory consultant" discussed Mr. Glassman's ability to commit bank fraud by lying to a junior bank officer in order for the conspiracy to obtain a refinancing of the CIT loan."

*Whirlpool's Concise Statement in Support of Motion for Partial Summary Judgment as to Defendant CIT Group, Business Credit, Inc. on Count V (RICO) Under 18 U.S.C. § 1962(d); and Count II (Fraud Conspiracy) (WP RICO CS), at 5 (filed 2/2/04).*

Whirlpool made this argument in the face of a complete absence of evidence that CIT authorized the statements, knew of the statements, or was copied on the statement. When Whirlpool's counsel cross-examined CIT executive Thomas Hayes about the email, Mr. Hayes testified that he knew nothing of such discussions and had no understanding or awareness that Mr. Phelps would attempt to deceive a bank to obtain financing:

Q. Let's turn our attention to Exhibit 96.
You can look at this. It's an e-mail. I'm going to
focus on the second paragraph that starts with, as
to the bank.
A. Okay.

* * *

BY MR. HOGAN:
Q. Was it CIT's understanding that Mr. Phelps
was going to have anything at all, any
responsibility, either reporting or otherwise,
regarding the investor financing that they were
attempting to obtain?
A. Our understanding was that Ted was going
to help the company with its restructuring and
basically all the facets of that restructuring.
Q. Would it be CIT's understanding that Mr.
Phelps would also engage in attempting to deceive a
lending institution to obtain financing?
MS. ING: Object. Lacks foundation,
argumentative.
A. No.
BY MR. HOGAN:
Q. The answer is no?
A. The answer is no.
Q. Of course it's no.

00096
MS. ING: Object. Strike that comment.
BY MR. HOGAN:
Q. As to this e-mail, sir, were you aware
that Mr. Phelps was communicating with someone
regarding Kurt Glassman's ability to dance around
with the bank to finesse the loan where this
individual, Mr. Phelps, also concedes that Mr.
Glassman never allows the truth to be an impediment
to financing?

MS. ING: Object. Vague and ambiguous.
Answer if you understand the question.
A. I'm not a -- I was not aware of the
discussions surrounding the refinancing of the
Midpac loan.

*Ex. 2, Rule 30(b)(6) Deposition of Thomas A. Hayes, Vol. I (11/19/02), 94:20-96:14.*

Similarly, CIT's Robert Brichacek, the account executive for the MidPac loan, when shown the email, testified he had not seen it until the day before his deposition and was not aware that Mr. Glassman might be dishonest when applying for refinancing:

Q. Was it ever brought to your attention by
Mr. Phelps or anyone else that Kurt might be less
than forthright in applying for financing from City
Bank?
A. No.

*Ex. 2, Deposition of Robert Brichacek (11/21/02), at 273:7-11.* Whirlpool chose not to cross-examine Mr. Phelps about the statements. *Ex. 3, Rule 2004 Examination of Theodore G. Phelps (12/7/00), at 4.*

## II. ARGUMENT

### A. Mr. Phelps' Statement About Mr. Glassman is Inadmissible Hearsay

Under the Federal Rules of Evidence, hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FRE Rule 801(c). Hearsay is generally inadmissible except under limited circumstances not applicable here. *See FRE 802.*

The August 11th email contains inadmissible and unreliable hearsay. In Mr. Phelps' absence from trial, his comment about Mr. Glassman's state of mind in 1999 when seeking refinancing should not be used as evidence of CIT's liability. His statement about Mr. Glassman's honesty in negotiating refinancing should not be treated as an admission by CIT. There is no evidence that the author was acting as an agent of CIT in making the statement or that CIT authorized, knew of, received, ratified or adopted it. There is no proof of the accuracy of the statements, whether the author was fully informed, whether he really believed what he wrote and whether he wrote it with seriousness or levity.

**B. The August 11, 1999 Email is not Probative of Whether CIT Joined or Assisted the Alleged Conspiracy**

Mr. Phelps' comments about Mr. Glassman's state of mind (and about airline executives) are not relevant under FRE Rules 401 and 402. According to the Ninth Circuit Court of Appeals, two distinct requirements are implicit in that definition: "(1) The evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." *United States v. Click*, 807 F.2d 847, 850 (9th Cir. 1987).

The August 11, 1999 email is not probative of CIT's potential liability. In its decision on Whirlpool and CIT's respective motions for partial summary judgment, this Court ruled that the issue for trial on Whirlpool's fraud conspiracy claim is

whether "CIT joined the alleged conspiracy" (*"Memorandum Opinion and Order (filed 12/28/04), at 17)*; in other words, "whether, in acting to protect its investment, CIT acted with the purpose of assisting any of the participants in the MidPac "bust out" to conceal their fraudulent activities." *Opinion, at 19.*

Commentary about Mr. Glassman's refinancing efforts that was not authorized by or known to CIT are not probative of whether CIT joined and assisted an alleged conspiracy against Whirlpool. In order to establish Mr. Phelps' comment as a vicarious admission by CIT that it was aware of Mr. Glassman's alleged propensity to mislead a new set of banks, Whirlpool first would have to show Mr. Phelps was acting as CIT's agent in making the comments. Whirlpool has no evidence that any conduct or representations by CIT during this period would have led Mr. Phelps reasonably to believe that he was speaking as an agent of CIT. Moreover, the comment sheds no light on any alleged fraud or conspiracy directed at Whirlpool. Mr. Phelps' commentary about airline executives is totally irrelevant to any issues in this case.

**C. Even If Marginally Relevant, The Evidence Should Be Excluded Under FRE 403**

Even assuming that Whirlpool could make a showing that Mr. Phelps' statement about Mr. Glassman is of marginal relevance to its fraud conspiracy claims, any such evidence or argument should be excluded under FRE 403 on the ground that its "probative value is substantially outweighed by the danger of

unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FRE 403.

According to the Ninth Circuit Court of Appeals, the U.S. Supreme Court has instructed district courts to balance "the probative value of a given evidentiary item against its prejudicial potential" using a two-step process. *United States v. Merino-Balderrama*, 146 F.3d 758, 761 (9th Cir. 1998). First, the court must "'decide whether a particular item of evidence raise[s] a danger of unfair prejudice.'" *Id.* (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)). Second, the court must "evaluate the degrees of probative value and unfair prejudice, not only for the item in question but for any actually available substitutes as well. If an alternative [is] found to have substantially the same or greater probative value but a lower danger of unfair prejudice,'" the probative value of the proffered evidence should be "'discounted.'" If the discounted probative value is "'substantially outweighed by the unfairly prejudicial risk,'" the evidence must be excluded. *Id.* at 761-62 (quoting *Old Chief v. United States*, 519 U.S. at 180).

Here, any marginal relevance of the August 11, 1999 email is substantially outweighed by the danger of confusion and unfair prejudice. Permitting Whirlpool to use Mr. Phelps' comments to show CIT's knowledge of and participation in the alleged conspiracy would be highly prejudicial to CIT. It would

confuse the jury into thinking, without looking for further evidence, that Mr. Phelps believed and CIT shared, agreed with or authorized Mr. Phelps' comments about Mr. Glassman's refinancing efforts. In addition, the email could cause the jury to confuse knowledge of fraudulent acts with an agreement to join defrauding parties in a conspiracy, a distinction that this Court was careful to make in its Opinion: "Demonstrating that CIT was aware of the ongoing fraud at MidPac is not sufficient to demonstrate agreement." *Opinion, at 17 (citing Robert's Hawaii School Bus, Inc. V. Laupahoehoe Transp. Co., Inc., 982 P. 2d 853, 889 n. 44.*

Further, "[o]nce the probative value of a piece of evidence is found to be outweighed by the danger of unfair prejudice, there is no other evidentiary rule that can operate to make the same evidence admissible." *United States v. Benavidez-Benevidez*, 217 F.3d 720, 725 (9th Cir. 2000). Here, any marginal relevance of the SACC is substantially outweighed by the danger of unfair prejudice.

In *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480 (9th Cir. 1984), the 9th Circuit Court of Appeals (interpreting Hawai`i law by looking to conspiracy law in other states) admonished that:

> courts should be especially careful to require that plaintiffs provide specific evidence of the alleged co-conspirators' agreement to engage in conduct designed to breach a fiduciary duty. Without such evidence of the parties' subjective intent, allegations of a conspiracy should not go to a jury lest they mistake

> traditional negotiating tactics with valid business purposes. . . as evidence of a conspiracy.

1482 n. 3 (9th Cir. 1984). Likewise, the August 11, 1999 email is so unreliable an indicator of CIT's knowledge or intent to join or participate in an alleged conspiracy that this Court should not allow this document to go to the jury.

**III. CONCLUSION**

For the foregoing reasons, CIT's motion should be granted and Whirlpool should be precluded from eliciting evidence or making arguments about Mr. Phelps August 11, 1999 email.

DATED: Honolulu, Hawaiʻi, June 13, 2006.

/s/ Louise K. Y. Ing
PAUL ALSTON
LOUISE K. Y. ING
THOMAS E. BUSH
ALLISON KIRK
Attorneys for Defendant/Cross-claimant THE CIT GROUP/BUSINESS CREDIT, INC.