IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Cross-Claim Defendants. | CIVIL NO. 01-00187 MEA BMK (Tort and RICO)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Trial Date: November 6, 2006<br>Judge: Hon. Marvin E. Aspen |

[2001556/301209]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Statement of Facts

In this lawsuit, Plaintiff seeks damages from Defendant Raymond Iwamoto for: (1) conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and (2) conspiracy to commit fraud ("civil conspiracy"). Plaintiff also alleged that Mr. Iwamoto violated Section 1962(c) of RICO but its claim was dismissed pursuant to Mr. Iwamoto's motion for summary judgment. (See, Memorandum Opinion and Order filed December 30, 2004).

Plaintiff's RICO conspiracy claim is based on allegations concerning attempts to defraud Plaintiff and acts to defraud Plaintiff of its rights as a secured creditor. (Page 45 of Plaintiff's First Amended RICO Case Statement filed October 17, 2001). Plaintiff admits that it only had a security agreement with Maui Home Supply. (Deposition of Carl Smith, p. 98/ln. 10-25; p. 99/ln. 1-3 attached hereto as Exhibit B). It did not have a security agreement with MidPac Lumber Company, Ltd. ("MidPac"). (**Id**.). MidPac declined Plaintiff's request to sign a security agreement because the security agreement would conflict with MidPac's asset-based lending arrangement with CIT Group/ Business Credit Inc. ("CIT"). (**Id**., p. 90/ln. 11-25; p. 91/ln. 1-9).

At trial, Plaintiff is expected to introduce or make reference to financial information, statements or records (hereinafter collectively referred to as "financial information") of MidPac, CGBN, Inc. ("CGBN"), CG Investments, Inc. ("CGI"), CG Development, Inc. ("CGDI"), CG Acquisitions, Inc. ("CGAI") and

the Spectrum entities ("Spectrum"). Plaintiff may: (1) attempt to show that these companies were mismanaged; (2) criticize the absence of accurate financial information; and (3) argue that that financial information (including, but not limited to, entries for inventory and accounts receivable) was overstated.

Mr. Iwamoto is a licensed attorney who provided legal services for MidPac, CGBN, CGI, CGDI, CGAI, and Spectrum. He did not provide accounting services and did not prepare and maintain the financial information for these corporations. He has no background in accounting. (Deposition of Raymond Iwamoto ("Iwamoto deposition"), p. 9/ln. 23-25 attached hereto as Exhibit A).

Mr. Iwamoto rendered legal services to the corporations but he was not involved in managing the corporations. Representations made by his client provided the sole basis for his understanding regarding corporate operations. He believed his client's representations because he lacked independent knowledge concerning operations. (Iwamoto deposition, p. 150/ln. 5-9 attached hereto as Exhibit A). In reliance on his client's representations, Mr. Iwamoto believed that MidPac was a prosperous company that was making "tons of money." (**Id**., p. 127/ln. 5-12). His client told him:

> there's plenty of collateral, company is doing great guns, it's in fine shape.

(**Id**., p. 127/ln. 1-4). Mr. Iwamoto:

> had no involvement whatsoever with any operational aspects of the company, with any vendors, any products or how they would sell products or how they would buy products. I provided no services in connection with that. I had not just no involvement whatsoever with any of that.

(**Id.**, p. 86/ln. 11-19). He was "never involved with operations or vendors or how much was owed[.]" (**Id.**, p. 137/ln. 1-3). He had no "no knowledge whatsoever" about "any of the operational things, where the inventory is[.]" (**Id.**, p. 150/ln. 5-9).

His knowledge about MidPac's bank accounts was restricted to the names of banks and checking account numbers referenced in a document entitled Written Consent of the Board of Directors In Lieu of Meeting of MidPac Lumber Co., Ltd. (Iwamoto deposition, p. 38/ln. 1-24 attached hereto as Exhibit A).

## II. Argument

### A. The evidence is irrelevant to Plaintiff's conspiracy claims

The financial information concerning MidPac, CGBN, CGI, CGDI, CGAI, and Spectrum is irrelevant to Mr. Iwamoto's liability under Plaintiff's conspiracy claims. The financial information does not reflect that Mr. Iwamoto entered into a conspiracy agreement since the information does not reflect that Mr. Iwamoto conspired or took any action against Plaintiff.

The alleged mismanagement of the corporations and the inaccuracy of the financial information is not evidence of Mr. Iwamoto's involvement in a

conspiracy. Mr. Iwamoto cannot be responsible for these matters because he did not manage the corporations, provide accounting services, or maintain the financial records for these corporations. His role was confined to providing legitimate legal services in his capacity as corporate attorney.

He was unaware of any alleged improprieties because his knowledge was based exclusively on representations made by his client. He had no reason to question the truthfulness of his client's representations because he was not involved in managing or supervising these corporations.

The evidence is irrelevant because it does not reflect the existence of a conspiracy agreement to violate RICO. In order to prove a RICO conspiracy, Plaintiff must prove there was:

> [1] an agreement that is a substantive violation of RICO or [2] that the defendants agreed to commit, or participated in, a violation of two predicate offenses.

**Howard v. America Online Inc.**, 208 F.3d 741, 751 (9th Cir. 2000). (Citing **Baumer v. Pachl**, 8 F.3d 1341, 1346 (9th Cir. 1993)). Plaintiff must show that the Mr. Iwamoto "intend[ed] to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense[.]" **Salnias v. United States**, 522 U.S. 52, 65, 118 S. Ct. 469, 477, 139 L.Ed.2d 352 (1997). Plaintiff must demonstrate that Mr. Iwamoto "was aware of the essential nature and scope of the enterprise and intended to participate in it." **Baumer v. Pachl**, 8 F.3d at 1346.

Liability cannot be based solely on the legal services rendered by Mr. Iwamoto because:

> **a defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise**, and neither is the defendant who agrees to the commission of two criminal acts but does not consent to the involvement of an enterprise. If either aspect of the agreement is lacking then there is insufficient evidence that the defendant embraced the objective of the alleged conspiracy. **Thus, mere association with the enterprise would not constitute §1962(d) violation**. In a RICO conspiracy, as in all conspiracies, agreement is essential.

**Baumer v. Pachl**, 8 F.3d at 1346. (Emphasis added).

An attorney rendering legal services does not violate RICO when he does not manage the RICO enterprise. **Baumer v. Pachl**, 8 F.3d at 1344-1345. RICO does not "criminalize mere association with [a RICO] enterprise" (**Brouwer v. Raffensperger, Hughes & Co.**, 199 F.3d 961, 964, 965 (7th Cir. 2000)) because RICO:

> **does not criminalize the actions of everyone who works for a RICO enterprise, nor does it bring within RICO everyone who commits what would be two predicate acts.** It only applies to those who participate in the conduct of the enterprise through a pattern of racketeering activity.

***Id.***, 199 F.3d at 966. (Emphasis added).

Liability for civil conspiracy exists only when there is concerted action to accomplish an unlawful purpose. **Robert's Hawaii School Bus, Inc. v.**

**Laupahoehoe Transportation Company, Inc.**, 91 Haw. 224, 260-261, 982 P.2d 853 (1999). Plaintiff must establish the existence of a conspiracy agreement because:

> mere acquiescence or knowledge is insufficient to constitute a conspiracy absent approval, cooperation or agreement.

**Id.**, 91 Haw. at 260 fn. 44, 982 P.2d 853.

B. **The evidence did not cause Plaintiff's damages**

Evidence of the financial information and mismanagement should be excluded because the information did not cause Plaintiff's damages. The financial information and mismanagement did not defraud or affect Plaintiff's security interest under its RICO conspiracy claim.

The financial information and alleged mismanagement did not defraud Plaintiff or affect its security interest. Plaintiff retained its security interest regardless of the financial data or the manner in which the corporations were managed.

The financial information and alleged mismanagement did not induce Plaintiff to ship appliances because the record reflects that Plaintiff shipped appliances for other reasons. Plaintiff's credit representative, Donna Lynn Martin, confirmed that Plaintiff continued to ship merchandise because MidPac and MHS "paid very well". (Deposition of Donna Lynn Martin ("Martin deposition"), p.

78/ln. 16-25; p. 79/ln. 1-2 attached hereto as Exhibit C). MidPac's and MHS' accounts were past due but they were making payments pursuant to payment schedules for those accounts. (**Id**.). In order to support MidPac's and MHS's business, Ms. Martin requested and obtained an increase in the credit limits for these accounts that allowed Plaintiff to ship additional merchandise. (**Id**., p. 79/ln. 3-25; p. 80/ln. 1-15). She was not concerned about receiving payment on their accounts. (**Id**.). MidPac's and MHS' accounts were past due after the credit line was increased but Plaintiff continued to ship merchandise in reliance on a payment plan for this account and representations that payments would be made. (**Id**., p. 120-122, 127-130).

Plaintiff increased the credit limit for this account based on its account analysis. (Martin deposition, p. 88/ln. 12-24 attached hereto as Exhibit C). However, there is no evidence that it was aware of the inadvertent double billing or that its analysis was influenced by the double billing or the amount of MidPac's account receivables. Plaintiff's National manager of Trade Partner Financial Services, Carl Smith, testified that Plaintiff's credit underwriting analysis indicated MidPac and MHS were "very important customers to help us meet our business goals in Hawaii". (Smith deposition, p. 76/ln. 8-24 attached hereto as Exhibit B).

Damages are not recoverable in a RICO lawsuit unless the damages were proximately caused by the RICO violation. **Anza v. Ideal Steel Supply Corp.**, ___ U.S. ___ (No. 04-433 June 5, 2006). It is settled that:

> When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation **led directly to Plaintiff's injuries**.

(Slip op., p. 9; see also, p. 10). (Emphasis added). There must be a "direct relation between the RICO violation and the Plaintiff's damages because:

> the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages [are] attributable to the violation, as distinct from other, independent, factors.

(**Id.**, p. 6; **Holmes v. Securities Investor Protection Corporation**, 503 U.S. 258, 269, 112 S. Ct. 1311, 1318 (1992)). The proximate cause requirement recognizes a defendant should not be subject to limitless liability and prevents the imposition of an "infinite liability for all wrongful acts [that] would 'set society on edge and fill the courts with endless litigation.'" **Holmes v. Securities Investor Protection Corporation**, 503 U.S. at 266 fn. 10, 112 S. Ct. at 1316 fn. 10.

Plaintiff's civil conspiracy claim also requires a showing that Plaintiff's damages were proximately caused by the conspiracy. Tort principles require damages to have been proximately caused by the tortuous conduct. See generally, **Gibo v. City & County of Honolulu**, 51 Haw. 299, 459 P.2d 198

(1969) (damages recoverable in a tort action must be proximately cased by the defendant's conduct).

DATED: Honolulu, Hawaii, June 13, 2006 .

/s/ Gary S. Miyamoto
JOHN S. NISHIMOTO
CALVIN E. YOUNG
GARY S. MIYAMOTO
STEVEN L. GOTO
Attorneys for Defendant
RAYMOND IWAMOTO