IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Cross-Claim Defendants. | CIVIL NO. 01-00187 MEA BMK<br>(Tort and RICO)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Trial Date: November 6, 2006<br>Judge: Hon. Marvin E. Aspen |

[2001556/301267]

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. Statement of Facts

In this lawsuit, Plaintiff seeks damages from Defendant Raymond Iwamoto for: (1) conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and (2) conspiracy to commit fraud ("civil conspiracy"). Plaintiff also claimed that Mr. Iwamoto violated Section 1962(c) of RICO but that claim was dismissed pursuant to Mr. Iwamoto's motion for summary judgment. (See, Memorandum Opinion and Order filed December 30, 2004).

Count II of Plaintiff's complaint[1] is entitled "Fraud Conspiracy" and is directed against Defendant CIT Group/Business Credit, Inc., Mr. Iwamoto and other persons. It consists of a series of rambling allegations concerning unrelated events that did not involve Plaintiff. At best, the civil conspiracy claim is based on allegations that Plaintiff was fraudulently induced to ship merchandise. Counts I (claim for common law fraud[2]) includes allegations that Whirlpool was fraudulently induced to make shipments when the alleged RICO enterprise did not intend to make payment. (¶¶95-110 of Complaint).

At trial, Plaintiff is expected to introduce or make reference to stock transactions between Kurt Glassman, Edwin Bowling, and Frances Bowling in which Mr. Glassman purchased the Bowlings' shares of stock in CG Development, Inc., CG Investments, Inc., CGBN, Inc., and CG Acquisitions, Inc. Mr. Iwamoto

---

[1] Count II starts on page 36 of Plaintiff's complaint.
[2] Count I starts on page 30 of Plaintiff's complaint.

**was not** involved in the negotiations between Mr. Glassman and the Bowlings. (Deposition of Raymond Iwamoto ("Iwamoto deposition"), p. 47/ln. 21-23 attached hereto as Exhibit A). Paul Mancini, Esq., (not Mr. Iwamoto) drafted the stock purchase agreement. (Deposition of Paul Mancini, p. 11/ln. 18-23; p. 12/ln. 11-19; p. 16/ln. 7-15 attached hereto as Exhibit D). Mr. Iwamoto was unaware of Mr. Mancini's involvement until much later. (Iwamoto deposition, p. 53/ln. 2-9 attached hereto as Exhibit A).

He learned of the stock transaction after the transactions were consummated. (Iwamoto deposition, p. 47/ln. 21-25; p. 48/ln. 1-2, 18-25; p. 49/ln. 1-3 attached hereto as Exhibit A). He did not know the amount of monetary consideration that Mr. Glassman paid to the Bowlings to purchase the stock. (**Id**., p. 48/ln. 3-6). He did not know the source of moneys that Mr. Glassman paid to the Bowlings. (**Id**., p. 53/ln. 10-12).

Mr. Iwamoto's involvement in the transactions was confined to updating corporate records to reflect the transactions, cancel existing stock certificates and issue new stock certificates to Mr. Glassman. Mr. Iwamoto described his involvement as:

> document[ing] the assignment of the shares, the cancellation of the certificate for the assigned shares, and the issuance of the new shares.

(Iwamoto deposition, p. 47/ln. 7-14 attached hereto as Exhibit A).

## II. Argument

Evidence of the stock transactions should be excluded because the evidence is irrelevant to Plaintiff's conspiracy claims. The transactions do not evidence that Mr. Iwamoto entered into a conspiracy agreement against Plaintiff because he was not involved in the negotiations for the stock transactions. He first learned of the transactions after the transactions were consummated.

The evidence is also irrelevant because the transactions did not cause Plaintiff's damages. The transfers of stock did not: (1) affect Plaintiff's security interest; and (2) induce Plaintiff ship appliances to MidPac.

A. **The evidence is irrelevant to Plaintiff's conspiracy claims**

The evidence should be excluded because the stock transactions do not reflect that Mr. Iwamoto entered into a conspiracy agreement against Plaintiff. The stock transactions are not probative of the existence of a conspiracy agreement since the transactions did not refer to Plaintiff, its shipment of appliances or its security interest.

Mr. Iwamoto is not liable under Plaintiff's RICO conspiracy claim unless Plaintiff establishes that Mr. Iwamoto entered into a conspiracy agreement. Plaintiff must prove that Mr. Iwamoto entered into:

> [1] an agreement that is a substantive violation of RICO or [2] that [Mr. Iwamoto] agreed to commit, or participated in, a violation of two predicate offenses.

**Howard v. America Online Inc.**, 208 F.3d 741, 751 (9th Cir. 2000). (Citing **Baumer v. Pachl**, 8 F.3d 1341, 1346 (9th Cir. 1993)). It must show that Mr. Iwamoto: (1) "intend[ed] to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense" (**Salinas v. United States**, 522 U.S. 52, 65, 118 S. Ct. 469, 477, 139 L.Ed.2d 352 (1997)); and (2) "was aware of the essential nature and scope of the enterprise and intended to participate in it." **Baumer v. Pachl**, 8 F.3d at 1346.

There is no liability under Section 1962(d) unless Mr. Iwamoto agreed to violate RICO because:

> **a defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise**, and neither is the defendant who agrees to the commission of two criminal acts but does not consent to the involvement of an enterprise. If either aspect of the agreement is lacking then there is insufficient evidence that the defendant embraced the objective of the alleged conspiracy. **Thus, mere association with the enterprise would not constitute §1962(d) violation**. In a RICO conspiracy, as in all conspiracies, agreement is essential.

**Baumer v. Pachl**, 8 F.3d at 1346. (Emphasis added).

Evidence that an attorney provided legal services does not, by itself, subject the attorney to liability. **Baumer v. Pachl**, 8 F.3d 1341, 1344-1345 (9th Cir. 1993). RICO does not "criminalize mere association with [a RICO] enterprise" because RICO:

> **does not criminalize the actions of everyone who works for a RICO enterprise, nor does it bring within RICO everyone who commits what would be two predicate acts.** It only applies to those who participate in the conduct of the enterprise through a pattern of racketeering activity.

**Id.**, (**Brouwer v. Raffensperger, Hughes & Co.**, 199 F.3d 961, 964, 965, 966 (7th Cir. 2000)).

In the case at bar, the stock transactions are not evidence that Mr. Iwamoto conspired against Plaintiff. Mr. Iwamoto was not involved in the transactions because he was unaware that Mr. Glassman purchased the Bowlings' stock until some time after Mr. Glassman and the Bowlings consummated the transactions. He did not participate in the negotiations and did not draft the stock purchase agreements. He did not have detailed information regarding the transactions including the amount of monetary consideration paid by Mr. Glassman or where Mr. Glassman obtained the moneys paid to the Bowlings. Mr. Iwamoto's role was limited to updating corporate records, canceling existing stock certificates, and issuing new shares of stock to ensure that corporate records reflected the stock transfer and the shareholders' identities.

Liability cannot be based on the legal services rendered by Mr. Iwamoto. RICO does not criminalize the actions of all persons associated with a RICO enterprise since liability only accures as to persons managing the enterprise. **Baumer v. Pachl**, **supra**.

B. **The evidence is irrelevant to Plaintiff's civil conspiracy claim**

The evidence is irrelevant to Plaintiff's civil conspiracy claim because the stock transactions do no reflect that Mr. Iwamoto participated in a conspiracy to induce Plaintiff to ship appliances to MidPac. The legal services rendered by Mr. Iwamoto is not relevant to this claim because the cancellation and issuance of stock certificates did not influence Plaintiff's decision to make shipments.

Liability for a civil conspiracy to defraud only exists when the defendant was involved in concerted action to accomplish an unlawful purpose. **Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transportation Company, Inc.**, 91 Haw. 224, 260-261, 982 P.2d 853 (1999). Plaintiff must establish the existence of a conspiracy agreement because:

> mere acquiescence or knowledge is insufficient to constitute a conspiracy absent approval, cooperation or agreement.

**Id.**, 91 Haw. at 260 fn. 44, 982 P.2d 853.

C. **The stock transactions did not cause Plaintiffs' damages**

The evidence is irrelevant because the stock transactions did not cause Plaintiff's damages. The transactions are irrelevant to Plaintiff's RICO conspiracy claim because they did not affect Plaintiff's security interest. The transactions were confined to stock transfers that had no effect on Plaintiff or its security interest.

The transactions are irrelevant to Plaintiff's civil conspiracy claim. The stock transactions did not induce Plaintiff to ship appliances to MidPac since there is no evidence that Plaintiff was aware of the transactions prior to conducting discovery. Plaintiff shipped merchandise for unrelated reasons. Plaintiff's credit representative, Donna Lynn Martin, confirmed that Plaintiff continued to ship merchandise because MidPac and MHS "paid very well". (Deposition of Donna Lynn Martin ("Martin deposition"), p. 78/ln. 16-25; p. 79/ln. 1-2 attached hereto as Exhibit C). MidPac's and MHS' accounts were past due but they were making payments pursuant to payment schedules for those accounts. (**Id**.). In order to support MidPac's and MHS's business, Ms. Martin requested and obtained an increase in the credit limits for these accounts that allowed Plaintiff to ship additional merchandise. (**Id**., p. 79/ln. 3-25; p. 80/ln. 1-15). She was not concerned about receiving payment on their accounts. (**Id**.). MidPac's and MHS' accounts were past due after the credit line was increased but Plaintiff continued to ship merchandise in reliance on a payment plan for this account and representations that payments would be made. (**Id**., p. 120-122, 127-130).

Plaintiff increased the credit limit for this account based on its account analysis. (Martin deposition, p. 88/ln. 12-24 attached hereto as Exhibit C). However, there is no evidence that it was aware of the inadvertent double billing or that its analysis was influenced by the double billing or the amount of MidPac's

account receivables. Plaintiff's National manager of Trade Partner Financial Services, Carl Smith, testified that Plaintiff's credit underwriting analysis indicated MidPac and MHS were "very important customers to help us meet our business goals in Hawaii". (Smith deposition, p. 76/ln. 8-24 attached hereto as Exhibit B).

Damages are not recoverable in a RICO lawsuit unless the damages were proximately caused by the RICO violation. **Anza v. Ideal Steel Supply Corp.**, ___ U.S. ___ (No. 04-433 June 5, 2006). It is settled that:

> When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation **led directly to Plaintiff's injuries**.

(Slip op., p. 9; see also, p. 10). (Emphasis added). There must be a "direct relation between the RICO violation and the Plaintiff's damages because:

> the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages [are] attributable to the violation, as distinct from other, independent, factors.

(**Id.**, p. 6; **Holmes v. Securities Investor Protection Corporation**, 503 U.S. 258, 269, 112 S. Ct. 1311, 1318 (1992)). The proximate cause requirement recognizes a defendant should not be subject to limitless liability and prevents the imposition of an "infinite liability for all wrongful acts [that] would 'set society on edge and fill the courts with endless litigation.'" **Holmes v. Securities Investor Protection Corporation**, 503 U.S. at 266 fn. 10, 112 S. Ct. at 1316 fn. 10.

Plaintiff's civil conspiracy claim also requires a showing that Plaintiff's damages were proximately caused by the conspiracy. Tort principles require damages to have been proximately caused by the tortuous conduct. See generally, **Gibo v. City & County of Honolulu**, 51 Haw. 299, 459 P.2d 198 (1969) (damages recoverable in a tort action must be proximately cased by the defendant's conduct).

## III. Conclusion

The evidence should be excluded because the stock transactions and Mr. Iwamoto's legal services are irrelevant to Plaintiffs' conspiracy claims and damages. The jury should not hear evidence of the stock transactions or Mr. Iwamoto's legal services since these matters are not probative of Mr. Iwamoto's involvement in a conspiracy. The exclusion of evidence will ensure a fair trial because the jury will not erroneously infer that the transactions or Mr. Iwamoto's legal services were illegal, evidenced a conspiracy, or damaged Plaintiff.

The exclusion of the evidence would promote a fair trial because Plaintiff will be prevented from misleading the jury and distracting the jury from the relevant evidence. Valuable trial time should not be wasted on irrelevant evidence which would result in unnecessary testimony regarding the stock transaction and Mr. Iwamoto's lack of involvement.

DATED: Honolulu, Hawaii, June 13, 2006 .

/s/ Gary S. Miyamoto
JOHN S. NISHIMOTO
CALVIN E. YOUNG
GARY S. MIYAMOTO
STEVEN L. GOTO
Attorneys for Defendant
RAYMOND IWAMOTO