NOV 26 2002



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO, and KURT GLASSMAN, DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants.<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Cross-Claim Defendants. | Civil No. CV01-00187 DAE BMK<br><br>(Tort and RICO) |

DEPOSITION OF RAYMOND S. IWAMOTO

Taken on behalf of Plaintiff Whirlpool Corporation, at 2300 Pauahi Tower, 1001 Bishop Street, Honolulu, Hawaii, 96813, commencing at 9:05 a.m., on Tuesday, November 12, 2002, pursuant to Notice.

REPORTED BY: JANIS K. FLOATE, RPR, CSR 254

Notary Public, State of Hawaii

EXHIBIT A

Q. Do you ever discuss this case with Mr. Mancini?
A. No.
Q. Did you ever discuss this case with anyone at his law firm?
A. No.
Q. What was your role, if any, in the stock transfers between Mr. and/or Mrs. Bowling and Mr. Glassman?
A. I was --
MS. BRONSTER: Objection. Compound.
A. I documented the assignment of the shares, the cancellation of the certificate for the assigned shares, and the issuance of the new shares.
BY MR. HOGAN:
Q. And what function or role did you do that?
A. As corporate attorney.
Q. You were not an officer? Were you the secretary of the corporation?
A. No.
Q. Did you have any involvement in the negotiation of the stock purchase agreements?
A. No. I didn't even know about it.
Q. When did you learn about it?
A. After it had already been done. And I had

to transfer the shares and document the shares of the transfer.

Q. Did you have any knowledge of what consideration, if any, would be transferred to the seller in that transaction?

A. No.

Q. Did you have any knowledge at the time that this transaction was actually being finalized that the documents were being back-dated in that transaction?

A. The only, quote, back-dating had to do with -- as far as I recall, had to do with the resignations of Mr. Bowling from his positions. And when you say back-dating, it was explained to me that he had resigned back in January, but this explanation to me was being made in June. But he had resigned in January.

Q. But in regard to the stock purchase agreements, you have no knowledge that there was any back-dated documents connected to this, that transaction?

A. I never even knew the stock purchase agreement existed until after -- I mean I think when they told me to document the transfer of shares, I probably wasn't aware that there was an agreement at

that time. For all I know, they just transferred cash and transferred the shares. I had no knowledge until this thing blew up.

MR. HOGAN: We're going to go to the next document. This is where I got off track. This is 7A. This will be the next.

(Exhibit 8 marked for identification.)

BY MR. HOGAN:

Q. Back on the record.

Mr. Iwamoto, you have been handed a document marked as Exhibit 8. It is Bates stamp number G 11180. It is a one-page memorandum purporting to be from you to Kurt Glassman, dated December 3rd, 1998. Have you had a chance to look at it, sir?

A. Yes.

Q. If we look down, one, two, three, four what look like paragraphs where it says, "Please confirm that we will transfer stock from Frances Bowling trust to your trust, effective January 6, 1998, paren date of creation of your trust, close paren, and not Jan first. Are you talking about back dating a document there?

A. No, I don't think so.

Q. What does that mean?

A. I think so.

Q. Do you know of any documents that would predate the stock purchase agreement that would memorialize the agreement to sell stock prior to September of 1998?

A. I found out later that somebody had hired Mancini to draft that for them, but I found out later. By later I mean maybe 2000 or the end of 1999 or something.

Q. Did you ever have any understanding of where the money was coming from to buy the stock?

A. No, no understanding whatsoever.

Q. The bottom of that page, sir, there's a last sentence that states, quote, "I faxed you today a draft of your agreement with Mike Clifford," close quote. Do you see that, sir?

A. Yes.

Q. Do you know what agreement that is referring to?

A. No, I don't.

Q. Do you know of the existence of any agreement between Mike Clifford and Kurt Glassman individually?

A. I think they may have agreements. Like, for example, if one wants to sell their interest,

# C E R T I F I C A T E

STATE OF HAWAII )
) SS.
CITY AND COUNTY OF HONOLULU )

I, JANIS K. FLOATE, Notary Public, State of Hawaii, do hereby certify:

That on November 12, 2002, appeared before me Raymond S. Iwamoto, the witness whose deposition is contained herein; that prior to being examined, the witness was by me duly sworn;

That the deposition was taken down by me in machine shorthand and was thereafter reduced to typewriting under my supervision; that the foregoing represents to the best of my ability, a true and correct transcript of the proceedings had in the foregoing matter.

I further certify that I am not an attorney for any of the parties hereto, nor in any way concerned with the cause.

DATED this ______ day of____________,2002, in Honolulu, Hawaii.

_______________________________________
JANIS K. FLOATE, RPR, CSR 254
Notary Public, State of Hawaii
My Commission Exp: December 12, 2005