UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

WHIRLPOOL CORPORATION, a Delaware corporation,

Plaintiff,

vs.

CIT GROUP/BUSINESS CREDIT INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,

Defendants,

and

CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,

Additional Crossclaim Defendants.

Civil No. 01-00187DAE BMK (Tort and RICO)

Volume I

DEPOSITION OF CARL SMITH

Taken on behalf of Defendant, RAYMOND IWAMOTO, at the Law Offices of Ayabe, Chong, Nishimoto, Sia & Nakamura, 1001 Bishop Street, Suite 2500, Pauahi Tower, Honolulu, Hawaii, commencing at 9:00 a.m., on Tuesday, December 17, 2002, pursuant to notice.

REPORTED BY: CAROL E.M. SUGIYAMA, C.S.R. #295
Notary Public, State of Hawaii





APPEARANCES:

TIMOTHY HOGAN, ESQ.
Lynch Ichida Thompson Kim & Hirota
1132 Bishop Street
Suite 1405
Honolulu, Hawaii 96813

For Plaintiff WHIRLPOOL CORPORATION

CALVIN YOUNG, ESQ.
GARY MIYAMOTO, ESQ.
Ayabe Chong Nishimoto Sia & Nakamura
2500 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813

For Defendant ROY IWAMOTO, INC.

LOUISE K.Y. ING, ESQ.
CARL SOTO, eSQ.
Alston Hunt Floyd & Ing
1800 Pacific Tower
1001 Bishop Street
Honolulu, Hawaii 96813

For Defendant CIT GROUP/BUSINESS CREDIT, INC.

ROGER MOSELEY, ESQ.
CHRISTOPHER J. MUZZI, ESQ.
Case Bigelow & Lombardi
2600 Mauka Tower
Pacific Guardian Life Center
Honolulu, Hawaii 96813

For Defendants MICHAEL CLIFFORD, CGBN, INC., and Third-Party Defendant CG DEVELOPMENT, INC.





MARGERY S. BRONSTER, ESQ.
JEANNETTE HOLMES, ESQ.
Bronster, Crabtree & Hoshibata
1001 Bishop Street
Suite 2300, Pauahi Tower
Honolulu, Hawaii 96813

For Defendants EDWIN BOWLING and FRANCES HALLER-BOWLING

Also Present: Deb Clawson, Esq.





I N D E X


| EXAMINATION BY: | PAGE |
|---|---|
| MR. YOUNG | 5 |
| AFTERNOON SESSION | 120 |
| MS. ING | 149 |
| MS. BRONSTER | 257 |

| EXHIBITS FOR IDENTIFICATION | | PAGE |
|---|---|---|
| 195 | Plaintiff's Response to CIT Group Business Credit, Inc.'s First Request for Answers to Interrogatories | 210 |
| 196 | Calculations | 249 |




EXHIBIT B

obtaining cross corporate guarantees between these two entities?
A **It was not essential. It was a -- nice to have is an understatement. It would have been a good enhancement to the credit file and to the credit situation, but it was not essential.**
Q Why was it not essential?
A **Because each company's financial condition, as I recall, was sufficient to warrant the lines of credit that were offered.**
Q Was obtaining cross corporate guarantees one of the items listed as a credit file requirement?
A **On occasion. Of the ones I mentioned a minute ago, yes, it was in there.**
Q And do you have any understanding of whether or not that request was ever responded to?
A **No, I don't recall.**
Q Do you know if that request was ever refused?
A **I don't recall.**
Q If the request had been refused, what would be Whirlpool's steps taken, to your understanding, to protect Whirlpool's interest in 1999?
MR. HOGAN: Objection. Calls for speculation.
You can answer to the extent that you can.



MR. YOUNG: I don't think it calls for speculation.
Q You're the credit manager, and you knew what you would have done back in 1999?
MR. HOGAN: You asked him what Whirlpool would do.
MR. YOUNG: He is Whirlpool. He's the credit manager.
Q So I want to know what you would do.
A **Restate the question, please.**
Q In 1999, as the national credit manager for Whirlpool Corporation, if a request to allow cross corporate guarantees between two entities was refused, what would you have done as a national credit manager?
A **I would have reviewed the situation to see if we could justify the line of credit without the cross corporate guarantees.**
Q Would you have discussed it with Legal, as stated in the recommendation by Mr. Matlock?
A **The recommendation does not necessarily say discuss that we didn't get the cross corporate guarantees. It said if discussed, discuss the steps necessary to protect Whirlpool's interests. So the lack of a cross corporate guarantee was not**



**necessarily -- had been discussed with Legal, no.**
Q I don't think that's what I asked you, sir. I move to strike.
What I asked you was, if the request had been refused, would you, as the national credit manager, have addressed that subject with Legal, as recommended by Mr. Matlock?
A **Possibly.**
Q Would that have been something that you would have typically have done as a national credit manager in 1999?
A **Possibly.**
Q Do you know why Mr. Matlock would place that specific statement in this recommendation if that was not something that you would have done automatically?
A **No, I don't know why.**
Q Did you instruct Mr. Matlock to place such a recommendation within reviews such as this where you did not have cross corporate guarantees between entities as a national credit manager?
A **Restate that. I'm not sure I understand your question.**
Q In managing underwriters such as Mr. Matlock, in 1999, did you direct those individuals that if



they were to analyze the creditworthiness of related entities and cross corporate guarantees in favor of Whirlpool were not present, that a recommendation should be made to discuss the situation with Legal if the request was refused?
A **I don't believe that I instructed him to put that in there, no.**
Q In early 1999, late 1998, did you have the understanding that the sales side of Whirlpool Corporation had identified Maui Home Supply and MidPac Lumber Company as, quote, the, quote, business to meet their sales goals?
A **I'm not sure if I knew that at that time.**
Q Well, you did know it, but when you read this memo -- isn't that right? I'm talking about Exhibit 156.
A **Let's look and see.**
Q Well, look at the last bullet point on page 3.
A **Yes, I did.**
Q When you read this memo, what did you understand that statement to mean?
A **That these were very important customers to help us meet our business goals in Hawaii.**
Q Did that statement, the "the," in quotes

STATE OF HAWAII )
) SS.
)

I, CAROL E.M. SUGIYAMA, C.S.R., a Notary Public in and for the State of Hawaii, do hereby certify:

That on December 17, 2002, at 9:00 a.m. appeared before me CARL SMITH, the witness, whose testimony is contained herein; that, prior to being examined, the witness was, by me, duly sworn or affirmed; that the proceedings were taken in computerized machine shorthand by me and were thereafter reduced to print under my supervision; that the foregoing represents, to the best of my ability, a correct transcript of the proceedings had in the foregoing matter;

That, if applicable, the witness was notified through counsel by mail, or by telephone to appear and sign; that if transcription is not signed, either the reading and signing were waived by the witness and all parties, or the witness has failed to appear and the original is therefore kept on file without signature pursuant to Court rules.

I further certify that I am not counsel for any of the parties hereto, nor in any way interested in the outcome of the cause named in the caption.

DATED: ______________________________.

CAROL E.M. SUGIYAMA, C.S.R. #295
Notary Public, State of Hawaii
My commission expires 3/27/2003