IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Cross-Claim Defendants. | CIVIL NO. 01-00187 MEA BMK<br>(Tort and RICO)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Trial Date: November 6, 2006<br>Judge: Hon. Marvin E. Aspen |

[2001556/300407]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Statement of Facts

In this lawsuit, Plaintiff seeks damages from Defendant Raymond Iwamoto for: (1) conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and (2) conspiracy to commit fraud ("civil conspiracy"). Plaintiff also alleged that Mr. Iwamoto violated Section 1962(c) of RICO but its claim was dismissed pursuant to Mr. Iwamoto's motion for summary judgment. (See, Memorandum Opinion and Order filed December 30, 2004).

Plaintiff's civil conspiracy claim is based on allegations that Plaintiff was fraudulently induced to ship appliances. Count II of Plaintiff's complaint[1] is entitled "Fraud Conspiracy" and consists of a series of rambling allegations concerning unrelated events that did not involve Plaintiff. At best, the civil conspiracy claim is related to Count I (claim for common law fraud[2]) which alleges that Plaintiff was fraudulently induced to make shipments when the alleged RICO enterprise did not intend to make payment. (¶¶95-110 of Complaint).

At trial, Plaintiff is expected to introduce or make reference to documents drafted by Mr. Iwamoto in June 1999 concerning Edwin Bowling's resignation in January 1999 as MidPac's officer and director. Mr. Iwamoto drafted the documents as MidPac's corporate attorney for the sole purpose of documenting Mr. Bowling's resignation in MidPac's corporate records. (Deposition of Raymond Iwamoto ("Iwamoto deposition"), p. 88/ln. 10-25; p.89/ln. 1-17 attached

---

[1] Count II starts on page 36 of Plaintiff's complaint.
[2] Count I starts on page 30 of Plaintiff's complaint.

hereto as Exhibit A). Mr. Bowling resigned in January 1999 but Mr. Iwamoto was not informed of the resignation until June 1999. (**Id.**).

Mr. Iwamoto drafted the documents to have MidPac's corporate documents reflect Mr. Bowling's resignation. Paragraph 121 of Plaintiff's First Amended Complaint refers to a note from Mr. Iwamoto to his paralegal to review MidPac's records to determine when the resignation documents should be dated. However, Mr. Iwamoto asked his paralegal to review MidPac's records to ensure that Mr. Bowling did not sign corporate documents after his resignation date. (Iwamoto deposition, p. 89/ln. 22-25; p. 90/ln. 1-9 attached hereto as Exhibit A). Mr. Iwamoto explained why he drafted a document to reflect the resignation occurred in January 1999:

> I use the word back-date [in the note to his paralegal], although it's not really a back-dating because **I was told that's when it happened**, but as [the] corporate attorney, I wanted to make sure that we had an effective date that didn't complicate with any, for example, corporate resolutions that he had signed as a directed after January 1.
>
> So I instructed the paralegal to check these records out just to make sure that we're not going to be doing something inconsistent there.

(**Id.**, p., 89/ln. 25; p. 90/ln. 1-9). (Emphasis added).

The documents were drafted during the period when Defendant CIT Group/Business Credit, Inc. ("CIT") attempted to enforce its rights against MidPac. However, Mr. Iwamoto "never linked" the Bowling resignation with CIT's actions. (Iwamoto deposition, p. 90/ln. 17-22).

## II. Argument

### A. The evidence is irrelevant to Plaintiff's RICO conspiracy claim

The evidence should be excluded because it is irrelevant to Plaintiff's conspiracy claims. Mr. Iwamoto's drafting of the documents and the documents themselves do not show that Mr. Iwamoto conspired against Plaintiff because the documents only reflect: (1) Mr. Bowling's resignation as MidPac's officer and director; and (2) Mr. Iwamoto rendered legal services to MidPac. The undisputed evidence is that Mr. Iwamoto drafted the documents for the purpose of updating MidPac's corporate records to reflect Mr. Bowling's resignation..

The evidence is irrelevant because it does not reflect the existence of a conspiracy agreement to violate RICO. In order to prove a RICO conspiracy, Plaintiff must show there was:

> [1] an agreement that is a substantive violation of RICO or [2] that the defendants agreed to commit, or participated in, a violation of two predicate offenses.

**Howard v. America Online Inc.**, 208 F.3d 741, 751 (9th Cir. 2000). (Citing **Baumer v. Pachl**, 8 F.3d 1341, 1346 (9th Cir. 1993)). Plaintiff must establish that the Mr. Iwamoto "intend[ed] to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense[.]" **Salnias v. United States**, 522 U.S. 52, 65, 118 S. Ct. 469, 477, 139 L.Ed.2d 352 (1997). Plaintiff must demonstrate that Mr. Iwamoto "was aware of the essential nature and scope

of the enterprise and intended to participate in it." **Baumer v. Pachl**, 8 F.3d at 1346.

Evidence that Mr. Iwamoto rendered legal services cannot provide the basis of RICO liability because:

> **a defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise**, and neither is the defendant who agrees to the commission of two criminal acts but does not consent to the involvement of an enterprise. If either aspect of the agreement is lacking then there is insufficient evidence that the defendant embraced the objective of the alleged conspiracy. **Thus, mere association with the enterprise would not constitute §1962(d) violation**. In a RICO conspiracy, as in all conspiracies, agreement is essential.

**Baumer v. Pachl**, 8 F.3d at 1346. (Emphasis added). An attorney does not violate RICO by rendering legal services when he does not manage the RICO enterprise. **Id.**, 8 F.3d at 1344-1345. RICO does not "criminalize mere association with [a RICO] enterprise" (**Brouwer v. Raffensperger, Hughes & Co.**, 199 F.3d 961, 964, 965 (7th Cir. 2000)) because RICO:

> **does not criminalize the actions of everyone who works for a RICO enterprise, nor does it bring within RICO everyone who commits what would be two predicate acts.** It only applies to those who participate in the conduct of the enterprise through a pattern of racketeering activity.

***Id.***, 199 F.3d at 966. (Emphasis added).

The drafting of the documents is not probative of Mr. Iwamoto's liability for civil conspiracy when the documents were not fraudulent. **Weinberg**

**v. Mauch**, 78 Haw. 40, 49, 890 P.2d 277, 286 (1995); **Ellis v. Crockett**, 51 Haw. 45, 57, 451 P.2d 814, 822 (1969). Liability exists only when there is concerted action to accomplish an unlawful purpose. **Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transportation Company, Inc.**, 91 Haw. 224, 260-261, 982 P.2d 853 (1999). Plaintiff must establish the existence of a conspiracy agreement because:

> mere acquiescence or knowledge is insufficient to constitute a conspiracy absent approval, cooperation or agreement.

**Id.**, 91 Haw. at 260 fn. 44, 982 P.2d 853.

In the case at bar, the documents are irrelevant because the documents do not reflect that Mr. Iwamoto was involved in a RICO or civil conspiracy. There is no evidence that contradicts Mr. Iwamoto's testimony that he drafted the documents for the sole purpose of reflecting Mr. Bowling's resignation in MidPac's corporate records. (Iwamoto deposition, p. 88/ln. 10-25; p.89/ln. 1-17 attached hereto as Exhibit A). There is no evidence of any other reason that Mr. Iwamoto drafted the documents for reasons other than for the legitimate purpose of ensuring that MidPac's records were accurate and current.

Mr. Iwamoto would have breached his duty as the corporate attorney if he did not draft the documents. MidPac's records would have been out of date and misleading because the records would have shown that Mr. Bowling was a officer and director despite his resignation. The documents protected MidPac from

liability based on apparent authority by providing notice that Mr. Bowling was no longer an officer and director. The documents also protected Mr. Bowling from liability by reflecting that he was relieved of his duties as MidPac's officer and director.

The existence of a conspiracy is not shown by evidence that Mr. Iwamoto did not draft the documents in January 1999 when Mr. Bowling resigned. Mr. Iwamoto could not have drafted the documents contemporaneously with the resignation because he was unaware of resignation until he learned of the resignation in June 1999. (Iwamoto deposition, p. 88/ln. 24-25; p. 89/ln. 1-10 attached hereto as Exhibit A). He drafted the documents to reflect Mr. Bowling's resignation in January 1999[3] in reliance on his client's representations.

Evidence of Mr. Iwamoto's position as MidPac's attorney and his legal services are not probative of the existence of a conspiracy or Mr. Iwamoto's alleged involvement in a conspiracy. **Baumer v. Pachl**, **supra**. An association with an alleged RICO enterprise does not, by itself, reflect that Mr. Iwamoto conspired to violate RICO or that he "was aware of the essential nature and scope of the [RICO] enterprise and intended to participate in it." **Id**.

---

[3] Evidence that Mr. Iwamoto asked his paralegal to review MidPac's records does not reflect the existence of a conspiracy. MidPac's records were reviewed to ensure that Mr. Bowling did not sign corporate documents after the effective date of his resignation. (**Id**., p. 89/ln. 22-25; p. 90/ln. 1-9).

Evidence of Mr. Iwamoto's position as MidPac's attorney and his legal services are not probative of the existence of a conspiracy or Mr. Iwamoto's alleged involvement in a conspiracy. **Baumer v. Pachl**, **supra**. An association with an alleged RICO enterprise does not, by itself, reflect that Mr. Iwamoto conspired to violate RICO or that he "was aware of the essential nature and scope of the [RICO] enterprise and intended to participate in it." **Id**.

B. **The evidence is irrelevant to Plaintiffs' claim for damages**

The evidence is inadmissible because the drafting of the resignation documents did not cause of the damages claimed by Plaintiffs. The documents did not defraud Plaintiff or harm its security interest as alleged in Plaintiff's RICO conspiracy claim. The resignation documents could not have damaged Plaintiff or harmed its security interest because the documents did not refer to Plaintiff or its security interest.

The resignation documents did not induce Plaintiff to ship merchandise to MidPac. There is no evidence that Plaintiff was even aware of Mr. Bowling's resignation until documents were produced during discovery. Plaintiff shipped merchandise to MidPac for reasons unrelated to Mr. Bowling's resignation and the resignation documents.

III. **Conclusion**

The exclusion of the evidence will prevent Plaintiff from misleading or confusing the jury with factually unsupported allegations of conspiracy. Excluding the evidence will promote a fair trial because the jury must decide this lawsuit only on the basis of the relevant evidence and without being distracted or confused by irrelevant matters. Valuable trial time should not be wasted regarding Mr. Bowling's resignation because there is no evidence that he drafted the documents were drafted as part of a conspiracy.

DATED: Honolulu, Hawaii, June 13, 2006 .

/s/ Gary S. Miyamoto
JOHN S. NISHIMOTO
CALVIN E. YOUNG
GARY S. MIYAMOTO
STEVEN L. GOTO
Attorneys for Defendant
RAYMOND IWAMOTO