LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Telephone: (808) 528-0100
Fax No. (808) 528-4997

Attorney for Plaintiff
WHIRLPOOL CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, Inc. a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; and KURT GLASSMAN, DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20.<br><br>Defendants. | Civil No. CV01 00187 DAE BMK (TORT AND RICO)<br><br>**PLAINTIFF WHIRLPOOL CORPORATION'S RESPONSE TO THE CIT GROUP/BUSINESS CREDIT, INC.'S FIRST REQUEST FOR ANSWERS TO INTERROGATORIES PROPOUNDED UPON PLAINTIFF WHIRLPOOL CORPORATION** |

**PLAINTIFF WHIRLPOOL CORPORATION'S RESPONSE TO THE CIT GROUP/BUSINESS CREDIT, INC.'S FIRST REQUEST FOR ANSWERS TO INTERROGATORIES PROPOUNDED UPON <u>PLAINTIFF WHIRLPOOL CORPORATION</u>**

Comes now Plaintiff WHIRLPOOL CORPORATION (hereinafter "Whirlpool") by and through its attorneys Lynch Ichida Thompson Kim & Hirota, and hereby responds to Defendant's First Request for Answers to Interrogatories Propounded Upon Plaintiff Whirlpool Corporation

EXHIBIT 1

as follows.

Dated: Honolulu, Hawaii, 12-12-2002.

TIMOTHY J. HOGAN
Attorney for Plaintiff
WHIRLPOOL CORPORATION

specific acts or omissions. Therefore, Whirlpool cannot further respond to this interrogatory.

9. Describe how the damages identified in your response to interrogatory no. 7 were proximately caused by each act or omission identified in your response to interrogatory no. 6.

Answer:

Interrogatory No. 7 did not address damages. Interrogatory No. 6 did not seek information regarding any acts or omissions.

10. Identify with specificity each and every invoice or other documents that comprise the "losses in excess of $800,000" that Whirlpool would have avoided if, as alleged in paragraph 96 of the Second Amended Complaint, Phelps had told Whirlpool about the "significant fraud at MidPac."

Answer:

Objection. The information sought may be derived or ascertained from the business records produced by Whirlpool. In addition, CIT has admitted in the deposition of Robert Brichacek that over $1,000,000.00 of inventory was found on June 24, 1999 at Maui Home Supply. Additional factual support are contained in the CRM documents that are in CIT's possession. Specifically, Bates No. AL000210 to AL000229. In addition, the February 2, 1996 security interest, that CIT has received in disclosures and knew of no later than June 18, 1999, gave Whirlpool a first priority lien over all property of CGI dba Maui Home Supply so that the amount of Whirlpool's collateral was in excess of $800,000 on or about June 24, 1999. Discovery is still ongoing and this interrogatory may be supplemented.

TIMOTHY J. HOGAN
Attorney for Plaintiff

11. Identify all individuals with knowledge of your contention, as alleged in ¶97 of your Second Amended Complaint, that CIT intended only to increase its collateral base by placing or having placed orders with vendors that CIT reasonably knew would never be repaid." Discovery is still ongoing and this interrogatory may be supplemented.

Answer:

| Account Number | Corrected Invoice Date | Invoice Number | Amount | Bates Number |
|---|---|---|---|---|
| 441834 | 4/15/99 | 1621127 | $ 58,466.88 | A01670 |
| 441834 | 4/21/99 | 1648938 | $ 186.00 | A01693 |
| 441834 | 5/3/99 | 1700366 | $ 1,770.00 | A01727 |
| 441834 | 5/7/99 | 1724489 | $ 396.00 | A01749 |
| 441834 | 5/20/99 | 1780034 | $ 396.00 | A01813 |
| 441834 | 5/25/99 | 1798217 | $ 2,376.00 | A01835 |
| 441834 | 5/25/99 | 1798219 | $ 4,752.00 | A01836 |
| 441834 | 5/26/99 | 1805258 | $ 4,938.00 | A01848 |
| 441834 | 6/4/99 | 1845489 | $ 5,149.00 | A01874 |
| 441834 | 6/9/99 | 1862361 | $ 1,873.32 | A01887 |
| 441834 | 6/24/99 | 1938197 | $ 402.00 | A01977 |
| 441834 | 6/24/99 | 1938198 | $ 11,306.26 | A01921 |
| 441834 | 6/29/99 | 1960097 | $ 9,834.93 | A01933 |
| 441834 | 7/6/99 | 1993605 | $ 11,708.26 | A01951 |
| 441834 | 7/13/99 | 2028404 | $ 11,306.25 | A01978 |
| 441834 | 7/13/99 | 2029584 | $ 402.00 | A01979 |
| 441834 | 8/9/99 | 2184778 | $ 3,746.64 | A02005 |

20. Identify with particularity all Whirlpool proceeds, other than proceeds generated from the sale of invoiced goods listed in Exhibits "A" and "B" to the Second Amended Complaint, which you claim CIT improperly converted.

Answer:

CIT had no security interest in proceeds of sales of CGI-Maui Home Supply products and no legal debtor creditor relationship with CGI-Maui Home Supply of any kind prior to August 3, 1999. CIT knowingly received numerous transfers of money from CGI-Maui Home Supply from and after March 1998. Whirlpool continues to investigate these transfers and will

supplement this interrogatory.

On June 24, 1999, when CIT took control of CGI-Maui Home Supply, CIT concedes there was over $1 million in inventory at Maui Home. No less than $450,000 of that inventory was subject to Whirlpool's senior lien. CIT further allowed Maui Home Supply to order product for MidPac and then swept the proceeds of the sales to pay down its loan. Each of these sweeps constituted a further conversion of Whirlpool property. Whirlpool has produced its business records and Whirlpool is conducting further investigation to determine the extent of its injury. This information is presently known to CIT but may not be known to Whirlpool. This answer may be supplemented.

21. For the proceeds identified by you in your response to interrogatory no. 20, state each and every fact on which you base your contention that CIT improperly converted these proceeds.

Answer:

CIT had taken control of Maui Home Supply to operate it as a conduit for conversion of Whirlpool collateral. CIT had no enforceable lien on any of the property at Maui Home, and therefore its act of selling this property constitutes conversion. The UCC protects the rights of secured creditors and CIT, as a commercial lender, knew it was committing conversion but did so to collect upon its loan. By causing Kurt Glassman to falsely represent that the property at Maui Home belonged to MidPac CIT further demonstrated its knowing and intentional wrongful conduct.

Phelps' request of Whirlpool to give CIT a full release of claims in return for CIT's release of its claim to a lien on the Navy contract proceeds is evidence of CIT knowledge of its intentional conversion of Whirlpool's collateral and violation of Hawaii state prohibition on interference with secured creditor rights.

22. Identify with particularity each and every fact that supports your contention that an agency relationship existed between CIT and Ted Phelps.

Answer:

CIT had prior dealings with Mr. Phelps involving The Individual Group and City National Bank. CIT paid Phelps by wire transfer. Phelps agreed to accept the assignment regarding MidPac without even knowing the name of the debtor. This is because Phelps knew that he was working for CIT and not the debtor. In addition, CIT and Mr. Phelps were engaged in a background check of Kurt Glassman prior to Mr. Phelps' introduction to Mr. Glassman regarding the "Probe" report. There was an exchange of money in regard to that "Probe" inquiry. In conducting this investigation, Mr. Phelps was acting as a private investigator for his principal,

VERIFICATION

STATE OF Tennessee )
) SS:
COUNTY OF Knox )

CARL SMITH, being first duly sworn on oath, deposes and says: That he is the National Credit Manager, Retail Accounts of Whirlpool Corporation and that he is an agent of Whirlpool Corporation for the purpose of answering the foregoing interrogatories and for making this verification; that he has read said interrogatories and the foregoing answers thereto, and the answers are true according to his knowledge, information and belief, and contains information which was made available to him through the assistance of others.

[signature]
CARL SMITH
Its National Manager, TPFS

Subscribed and sworn to before me this
12 day of December, 2002.

[signature]
Notary Public, State of Tenn

My commission expires: ____________
Notary Public, State of ____________

Printed Name of Notary KIMBERLY M. JEFFERS

My commission expires:

My Commission Expires Sept. 4, 2006.