IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO, and KURT GLASSMAN, DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants.<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Cross-Claim Defendants. | Civil No. CV01-00187 DAE BMK<br><br>(Tort and RICO)<br><br>VOLUME I (of two)<br>Pages 1 - 274<br><br>30(b)(6) |

DEPOSITION OF THOMAS A. HAYES

Taken on behalf of Plaintiff Whirlpool Corporation, at 2600 Mauka Tower, 737 Bishop Street, Honolulu, Hawaii, 96813, commencing at 9:17 a.m., on Tuesday, November 19, 2002, pursuant to Notice.

REPORTED BY: JANIS K. FLOATE, RPR, CSR 254
Notary Public, State of Hawaii

EXHIBIT 3

APPEARANCES:

For Plaintiff Whirlpool Corporation:

TIMOTHY J. HOGAN, ESQ.
Lynch Ichida Thompson Kim & Hirota
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813

For Defendant CIT Group/Business Credit, Inc.:

PAUL ALSTON, ESQ.
LOUIS Y.K. ING, ESQ.
Alston Hunt Floyd & Ing
1800 Pacific Tower
1001 Bishop Street
Honolulu, Hawaii 96813

For Defendants Edwin Bowling and Frances Haller-Bowling:

JEANNETTE HOLMES, ESQ.
Bronster Crabtree & Hoshibata
2300 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813

For Defendants Michael Clifford, CGBN, Inc., and Additional Cross-Claim Defendant CG Development, Inc.:

TED N. PETTIT, ESQ.
ROGER S. MOSELEY, ESQ.
CHRISTOPHER J. MUZZI, ESQ.
Case Bigelow & Lombardi
2600 Mauka Tower
737 Bishop Street
Honolulu, Hawaii 96813

For Defendant Raymond Iwamoto:

CALVIN E. YOUNG, ESQ.
Ayabe Chong Nishimoto Sia & Nakamura
2500 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813

APPEARANCES (continued):

Speakerphone Appearance from Benton Harbor, Michigan:

DEB CLAWSON, ESQ.
Whirlpool Corporation
Legal Department
2200 M63
Mailbox No. 2200
Benton Harbor, Michigan 49022

Also Present:

SYLVIA M. LEE, Paralegal
Lynch Ichida Thompson Kim & Hirota

FRANCIS X. CHAFFIOTTE, ESQ.
CIT Assistant General Counsel

MIKE CLEARY

CARL SOTO

Supply?

MR. HOGAN: Maui Home Supply.

A. What I'm saying is that we were not -- we did a field exam where we tried to determine some of the issues, but we were not receiving reporting from Maui Home Supply. So what we were given were the records of Midpac and we did attempt to confirm and verify the information that had been provided to us by Midpac.

BY MR. HOGAN:

Q. Did CIT receive from Midpac information regarding inventory that was not subject to the CIT lien that was located in Maui?

A. Repeat the question.

Q. Okay. Did CIT in '99, June July period receive from Midpac any information that would identify inventory in Maui that was not subject to CIT's lien?

A. I'm not aware of any such information.

Q. Was there any inventory on Maui regarding which sales were made and proceeds not deposited to the benefit of CIT?

A. You mean Maui Home Supply sales?

Q. June and July of 1999.

A. Yes. I believe all the sales of Maui were

not -- none of the sales of Maui were retained by CIT.

Q. Your testimony is that the -- you're making the distinction between the collateral that was Midpac's collateral in Maui?

A. Yes.

Q. And how much was that at the time that CIT went and did its accounting in June or July?

A. In total, I think it had a book value of approximately a million dollars.

Q. And what happened to that million dollars?

A. Of inventory?

Q. Correct.

A. It was liquidated. It was sold, basically.

Q. Where did the money go?

A. The money was paid to Midpac.

Q. And then was it your understanding that that money would then be swept into the CIT account?

A. Yes.

Q. Is it your testimony that, in fact, it was swept into the CIT account?

A. Yes, I believe it was swept into the CIT account. It was deposited directly into the Maui Home Supply account which CIT swept.

Q. Did CIT ever attempt to rectify any perceived violation of secured creditor rights by informing Whirlpool that they had swept proceeds of Whirlpool collateral into its account?

MR. ALSTON: Objection. Assumes facts not in evidence.

A. To the best of our knowledge, we never received Whirlpool's proceeds of Whirlpool's collateral.

BY MR. HOGAN:

Q. But, in fact, you have testified that you have sold Whirlpool products on Maui.

A. No, no.

Q. Of that million dollars in inventory, how much of it was products that contained the trademarks Whirlpool, Roper and/or KitchenAid?

A. The best information we have is it was about $450,000.

Q. Is it your testimony that that $450,000 was sold and converted to cash proceeds and do you understand how much those cash proceeds were?

A. I do not.

Q. Do you know if anybody at CIT has that information?

A. No, I don't know if we do or don't.

C E R T I F I C A T E

STATE OF HAWAII )
) SS.
CITY AND COUNTY OF HONOLULU )

I, JANIS K. FLOATE, Notary Public, State of Hawaii, do hereby certify:

That on November 19, 2002, appeared before me Thomas A. Hayes, the witness whose deposition is contained herein; that prior to being examined, the witness was by me duly sworn;

That the deposition was taken down by me in machine shorthand and was thereafter reduced to typewriting under my supervision; that the foregoing represents to the best of my ability, a true and correct transcript of the proceedings had in the foregoing matter.

I further certify that I am not an attorney for any of the parties hereto, nor in any way concerned with the cause.

DATED this 6th day of Dec, 2002, in Honolulu, Hawaii.

Janis K Floate
JANIS K. FLOATE, RPR, CSR 254
Notary Public, State of Hawaii
My Commission Exp: December 12, 2005