NOV 26 2002



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO, and KURT GLASSMAN, DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants.<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Cross-Claim Defendants. | Civil No. CV01-00187 DAE BMK<br><br>(Tort and RICO) |

DEPOSITION OF RAYMOND S. IWAMOTO

Taken on behalf of Plaintiff Whirlpool Corporation, at 2300 Pauahi Tower, 1001 Bishop Street, Honolulu, Hawaii, 96813, commencing at 9:05 a.m., on Tuesday, November 12, 2002, pursuant to Notice.

REPORTED BY: JANIS K. FLOATE, RPR, CSR 254
Notary Public, State of Hawaii

EXHIBIT A

Q. Did you know who she was?
A. No.
Q. Did anyone ever tell you who she was?
A. No.
Q. Then it talks about Whirlpool. Did you have any understanding of what was meant by the use of the word Whirlpool?
A. No.
Q. Did anyone ever discuss F&J Movers in relation to Whirlpool?
A. No one at Midpac or at any of these companies ever discussed with me anything about Whirlpool until after June of 1999. I had no involvement whatsoever with any operational aspects of the company, with any vendors, any products or how they would sell products or how they would buy products. I provided no services in connection with that. I had just no involvement whatsoever with any of that.
Q. Now, do you have any idea when you came back from the mainland in June of 1999?
A. As I recall, it wasn't a long trip. Maybe soon after this.
Q. When you came back, did you have any opportunity to discuss any of these corporations

think that's what he told Whirlpool.

Q. I wouldn't be surprised at that.

MR. YOUNG: Let me make a belated objection. I think your question was asking him to speculate, but he answered you in the context of what Phelps was telling him at the time. So I think the answer to the question and the question itself are not consistent, and I object to the question as calls for speculation.

THE WITNESS: I don't remember what the question was.

MR. YOUNG: The question was, given what you know now. I think that he then answered what he knew in 1999.

BY MR. HOGAN:

Q. Did Mr. Phelps ever talk to you about Whirlpool?

A. Mr. Phelps talked to me about most of the major vendors, including Whirlpool.

Q. Did Mr. Phelps talk to you about the navy contract?

A. Yeah, and I knew that there was a big navy contract that -- and I don't recall what the problems were with it, but I do recall there was a very good business navy contract. It was good

business for Midpac if they could only have carried it through.

Q. Had you ever discussed the navy contract with anyone at CIT?

A. I think so, in terms of -- I'm trying to recall whether it was in terms of releasing funds so that they could carry out the navy contract, because then they would be able to buy the product on C.O.D. But they would need funds from CIT to do that with. I think we discussed that in those terms.

Q. In this same Exhibit 49 it talks in the second -- towards the bottom it appears to have been formatted as one paragraph, but from the fifth line from the bottom on the right-hand side it says, "CIT has to bite the bullet and fund bonding money or the bond situation could bring the thing down."

A. Yes.

Q. What did you mean by that?

A. Well, as I had maintained all along, the bond money was not owned by Midpac and, therefore, CIT did not have any way to get any interest in the bonding money and they needed -- they had no right to take control of those funds and they had to release the funds. So if they didn't release the funds and some lender, who had paid that money or

did you have a belief that, were Midpac to be refinanced, it could be a viable company?

A. Oh, yes.

Q. Did you have any belief that at this time that once CIT was paid off, Midpac would just be left as a shell company?

A. No.

Q. Do you have any understanding of whether this letter was part of any agreement between CIT and Midpac to induce investors to buy into a company that would not survive?

A. No.

Q. Was this letter part of any agreement to lull vendors of Midpac to continue doing business with Midpac?

A. No.

Q. Was this agreement aimed at inducing Whirlpool to continue selling to Midpac at the risk of not being paid?

A. No. Whirlpool had been selling only on C.O.D.

MS. ING: I don't have any other questions at this point. I'll turn it over to Margery.

C E R T I F I C A T E

STATE OF HAWAII )
) SS.
CITY AND COUNTY OF HONOLULU )

I, JANIS K. FLOATE, Notary Public, State of Hawaii, do hereby certify:

That on November 12, 2002, appeared before me Raymond S. Iwamoto, the witness whose deposition is contained herein; that prior to being examined, the witness was by me duly sworn;

That the deposition was taken down by me in machine shorthand and was thereafter reduced to typewriting under my supervision; that the foregoing represents to the best of my ability, a true and correct transcript of the proceedings had in the foregoing matter.

I further certify that I am not an attorney for any of the parties hereto, nor in any way concerned with the cause.

DATED this ______ day of____________,2002, in Honolulu, Hawaii.

______________________________________
JANIS K. FLOATE, RPR, CSR 254
Notary Public, State of Hawaii
My Commission Exp: December 12, 2005