IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Cross-Claim Defendants. | CIVIL NO. 01-00187 MEA BMK<br>(Tort and RICO)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Trial Date: November 6, 2006<br>Judge: Hon. Marvin E. Aspen |

[2001556/303373]

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Statement of Facts

In this lawsuit, Plaintiff seeks damages from Defendant Raymond Iwamoto for: (1) conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and (2) conspiracy to commit fraud ("civil conspiracy"). Plaintiff also claimed that Mr. Iwamoto violated Section 1962(c) of RICO but that claim was dismissed pursuant to Mr. Iwamoto's motion for summary judgment. (See, Memorandum Opinion and Order filed December 30, 2004).

Plaintiff's RICO conspiracy claim is based on allegations concerning attempts to defraud Plaintiff of its rights as a secured creditor. (Page 45 of Plaintiff's First Amended RICO Case Statement filed October 17, 2001). Plaintiff admits that it only had a security agreement with Maui Home Supply. (Deposition of Carl Smith, p. 98/ln. 10-25; p. 99/ln. 1-3 attached hereto as Exhibit B). It did not have a security agreement with MidPac Lumber Company, Ltd. ("MidPac"). (**Id**.). MidPac declined Plaintiff's request to sign a security agreement because the security agreement would conflict with MidPac's asset-based lending arrangement with CIT Group/ Business Credit Inc. ("CIT"). (**Id**., p. 90/ln. 11-25; p. 91/ln. 1-9).

Plaintiff's civil conspiracy claim is based on allegations that Plaintiff was fraudulently induced to ship appliances. Count II of Plaintiff's complaint[1] is entitled "Fraud Conspiracy" and is directed against Mr. Iwamoto and other

---

[1] Count II starts on page 36 of Plaintiff's complaint.

defendants. It consists of a series of rambling allegations concerning unrelated events that did not involve Plaintiff. At best, the civil conspiracy claim is related to Count I (claim for common law fraud[2]) which alleges that Plaintiff was fraudulently induced to make shipments when the alleged RICO enterprise did not intend to make payment. (¶¶95-110 of Complaint).

At trial, Plaintiff is expected to introduce evidence of or make reference to Mr. Iwamoto's statement to CIT in June 1999 that CIT should be careful when contacting MidPac's vendors. CIT suspected possible fraud by MidPac based on an invoicing error.

Mr. Iwamoto made his statement because he was concerned that CIT was interfering with MidPac's business operations. (Deposition of Raymond Iwamoto ("Iwamoto deposition"), p. 127/ln. 5-15; p. 128/ln. 9-14 attached hereto as Exhibit A). He warned CIT not to make unsubstantiated allegations of fraud to MidPac's vendors:

> And I'm saying to them be careful in how you talk to the trade creditors. You can't go around saying that there has been fraud when you don't know if there is fraud.

(**Id.**, p. 128/ln. 24-25; p. 129/ln. 1-2). He testified:

> Now, I'm talking to CIT and saying be careful, because our relationship with our vendors is very important, a very valuable asset. So you cannot make false accusation to these vendors that will stop them from supporting the company. I'm fighting to keep this

[2] Count I starts on page 30 of Plaintiff's complaint.

> company going. I'm believing that this company—up to this point and I believe it, this company was making tons of money. You know? And the employees, you know, hundreds of employees would have lost their jobs and everything. I'm fighting for this company.

(**Id**., p. 127/ln. 5-15).

His statement was based on assurances by Kurt Glassman that the invoicing error was not fraudulent and that the business was doing well. Mr. Glassman assured Mr. Iwamoto that the invoicing error was:

> all inadvertent, there's plenty of collateral, company is doing great guns, it's in fine shape.

(Iwamoto deposition, p. 127/ln. 1-4 attached hereto as Exhibit A). Mr. Glassman told Mr. Iwamoto that MidPac was making "tons of money" (**Id**., p. 127/ln. 10-12) and that there were "inadvertent mistakes, [but] there was no fraud whatsoever." (**Id**., p. 209/ln. 22-25). Mr. Iwamoto did not investigate the allegations of fraud because he relied on Mr. Glassman's representations. (**Id**., p. 129/ln. 3-7).

Mr. Iwamoto was not responsible for the invoicing error because he did not manage MidPac's operations. He provided legitimate legal services in his capacity as corporate attorney but he:

> had no involvement whatsoever with any operational aspects of the company, with any vendors, any products or how they would sell products or how they would buy products. I provided no services in connection with that. I had not just no involvement whatsoever with any of that.

(Iwamoto deposition, p. 86/ln. 11-19 attached hereto as Exhibit A).

## II. Argument

### A. The evidence is irrelevant to Plaintiff's conspiracy claims

The evidence is irrelevant to Plaintiff's conspiracy claims because Mr. Iwamoto's statement does not reflect the existence of a conspiracy against Plaintiff. The undisputed evidence is that Mr. Iwamoto made this statement innocently because he was unaware of any fraud or wrongdoing by MidPac or Mr. Glassman whereas he relied on Mr. Glassman's representations that there was "no fraud" and that MidPac was "doing great guns", was "in fine shape", and making "tons of money." He was concerned that CIT would disrupt MidPac's business and cause the loss of hundreds of jobs by acting on unfounded suspicions of fraud.

The evidence is irrelevant because it does not reflect the existence of a conspiracy agreement to violate RICO. In order to prove a RICO conspiracy, Plaintiff must show there was:

> [1] an agreement that is a substantive violation of RICO or [2] that the defendants agreed to commit, or participated in, a violation of two predicate offenses.

**Howard v. America Online Inc.**, 208 F.3d 741, 751 (9th Cir. 2000). (Citing **Baumer v. Pachl**, 8 F.3d 1341, 1346 (9th Cir. 1993)). Plaintiff must establish that the Mr. Iwamoto "intend[ed] to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense[.]" **Salnias v. United States**, 522 U.S. 52, 65, 118 S. Ct. 469, 477, 139 L.Ed.2d 352 (1997). Plaintiff

must demonstrate that Mr. Iwamoto "was aware of the essential nature and scope of the enterprise and intended to participate in it." **Baumer v. Pachl**, 8 F.3d at 1346.

Evidence that Mr. Iwamoto rendered legal services cannot provide the basis of RICO liability because:

> **a defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise**, and neither is the defendant who agrees to the commission of two criminal acts but does not consent to the involvement of an enterprise. If either aspect of the agreement is lacking then there is insufficient evidence that the defendant embraced the objective of the alleged conspiracy. **Thus, mere association with the enterprise would not constitute §1962(d) violation**. In a RICO conspiracy, as in all conspiracies, agreement is essential.

**Baumer v. Pachl**, 8 F.3d at 1346. (Emphasis added). An attorney does not violate RICO by rendering legal services when he does not manage the RICO enterprise. **Id.**, 8 F.3d at 1344-1345. RICO does not "criminalize mere association with [a RICO] enterprise" (**Brouwer v. Raffensperger, Hughes & Co.**, 199 F.3d 961, 964, 965 (7th Cir. 2000)) because RICO:

> **does not criminalize the actions of everyone who works for a RICO enterprise, nor does it bring within RICO everyone who commits what would be two predicate acts.** It only applies to those who participate in the conduct of the enterprise through a pattern of racketeering activity.

***Id.***, 199 F.3d at 966. (Emphasis added).

Liability for a civil conspiracy to defraud only exists when there is concerted action to accomplish an unlawful purpose. **Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transportation Company, Inc.**, 91 Haw. 224, 260-261, 982 P.2d 853 (1999). Plaintiff must establish the existence of a conspiracy agreement because:

> mere acquiescence or knowledge is insufficient to constitute a conspiracy absent approval, cooperation or agreement.

**Id.**, 91 Haw. at 260 fn. 44, 982 P.2d 853.

In the case at bar, Mr. Iwamoto's statement does not establish the existence of a conspiracy agreement. Mr. Iwamoto did not attempt to conceal fraud from Plaintiff because the undisputed evidence is that Mr. Iwamoto acted in complete reliance on Mr. Glassman's assurances that there was "no fraud" and that MidPac was making "tons of money." He was not acting for purpose of harming Plaintiff because his sole objective was to prevent CIT from making unsubstantiated accusations of fraud to MidPac's vendors that would disrupt MidPac's operations, interfere with MidPac's relationship with its vendors, and cause the loss of hundreds of jobs.

These facts establish that Mr. Iwamoto did not agree to conspire to violate RICO and was not involved in any concerted action to defraud Plaintiff. These facts require the exclusion of Mr. Iwamoto's statement to prevent Plaintiff

from misleading the jury with arguments that Mr. Iwamoto attempted to harm Plaintiff when there is no evidentiary support for that argument. Valuable trial time should not be wasted on Mr. Iwamoto's statement when the statement is irrelevant to Plaintiff's claims.

B. **Mr. Iwamoto's statement did not cause Plaintiff's damages**

Mr. Iwamoto's statement should be excluded from evidence because it did not cause Plaintiff's damages. The statement did not defraud Plaintiff or harm its security interest under Plaintiff's RICO conspiracy claim. Mr. Iwamoto only cautioned CIT about expressing its concerns to MidPac's vendors. There is no evidence that CIT took any action against Plaintiff's security interest as a result of Mr. Iwamoto's statement which did not refer to security interests held by Plaintiff or any other entity.

Mr. Iwamoto's statement is irrelevant to Plaintiff's civil conspiracy claim. The statement did not induce Plaintiff to ship appliance because: (1) there is no evidence that Plaintiff was aware of Mr. Iwamoto's statement when it shipped appliances; or (2) it shipped appliances in reliance on the statement. Plaintiff shipped appliances for other reasons including the payment histories of MidPac and Maui Home Supply, the existence of a payment schedule, assurances that future payments will be made, and its desire to meet sales quotas. The discussion of Plaintiff's reasons for making shipments and case law concerning

proximate cause on pages 6 through 8 of Mr. Iwamoto's memorandum in support of his Motion in Limine No. 1 to Exclude Evidence That MidPac Lumber Company, Limited, Maui Home Supply or Other Entities Fraudulently or Illegally Transferred Inventory Between Warehouses are incorporated by reference.

DATED: Honolulu, Hawaii, June 13, 2006.

/s/ Gary S. Miyamoto
JOHN S. NISHIMOTO
CALVIN E. YOUNG
GARY S. MIYAMOTO
STEVEN L. GOTO
Attorneys for Defendant
RAYMOND IWAMOTO