NOV 26 2002



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO, and KURT GLASSMAN, DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants.<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Cross-Claim Defendants. | Civil No. CV01-00187 DAE BMK<br><br>(Tort and RICO) |

DEPOSITION OF RAYMOND S. IWAMOTO

Taken on behalf of Plaintiff Whirlpool Corporation, at 2300 Pauahi Tower, 1001 Bishop Street, Honolulu, Hawaii, 96813, commencing at 9:05 a.m., on Tuesday, November 12, 2002, pursuant to Notice.

REPORTED BY: JANIS K. FLOATE, RPR, CSR 254
Notary Public, State of Hawaii

EXHIBIT A

Q. Did you know who she was?
A. No.
Q. Did anyone ever tell you who she was?
A. No.
Q. Then it talks about Whirlpool. Did you have any understanding of what was meant by the use of the word Whirlpool?
A. No.
Q. Did anyone ever discuss F&J Movers in relation to Whirlpool?
A. No one at Midpac or at any of these companies ever discussed with me anything about Whirlpool until after June of 1999. I had no involvement whatsoever with any operational aspects of the company, with any vendors, any products or how they would sell products or how they would buy products. I provided no services in connection with that. I had just no involvement whatsoever with any of that.
Q. Now, do you have any idea when you came back from the mainland in June of 1999?
A. As I recall, it wasn't a long trip. Maybe soon after this.
Q. When you came back, did you have any opportunity to discuss any of these corporations

under CIT financing. I speak to my client. My client tells me it's all inadvertent, there's plenty collateral, company is doing great guns, it's in fine shape.

Now, I'm talking to CIT and saying be careful, because our relationship with our vendors is very important, a very valuable asset. So you cannot make false accusations to these vendors that will stop them from supporting the company. I'm fighting to keep this company going. I'm believing that this company -- up to this point and I believe it, this company was making tons of money. You know? And the employees, you know, hundreds of employees would have lost their jobs and everything. I'm fighting for this company.

Q. Did you discuss with Kurt Glassman the issue of having CIT inquire regarding, say, Whirlpool and call Whirlpool to verify payables, that sort of thing?

A. I don't recall. You mean before this letter when I was writing this letter?

Q. Obviously Whirlpool was an important customer or supplier, vendor. Did Kurt ever say anything to you about not letting this get back to Whirlpool?

A. No.

Q. Specifically?

A. No.

Q. So that was put in here by you on your own?

A. In response to -- I don't know if the word threat is the right word, but if you look at this -- and I'm trying to refresh my memory.

At this point, all I know is that there has been inadvertent error, just an inadvertent error, yet CIT has frozen accounts, jeopardized payroll tax, bonding accounts and its payments to its normal trade creditors, which would include Whirlpool and Kraftmaid and all of that. And they are insisting that Glassman turn over the books of these other companies, which I am telling them he has no control over because I believed it at the time, that these are owned by separate, different, unrelated individuals. Even though Kurt may have helped them by creating these companies, he had no control over them.

Now, probably from my phone conversations with CIT they were talking about contacting all the trade creditors. And I'm saying to them be careful in how you talk to the trade creditors. You can't

go around saying that there has been fraud when you don't know if there is fraud.

Q. Now, did you do any other investigation other than to talk to Kurt Glassman to verify that there was no fraud prior to writing this letter?

A. I trusted my client. I did not investigate whether he was lying to me or not.

Q. Why is that?

A. Because I trusted him.

Q. Now, at the same time -- let me make sure. Were you aware that you had formed W Spectrum, that documents had just a couple weeks before been prepared for that company, and is it your testimony that you didn't feel any need to go and investigate any further regarding the CIT allegations that would be pointed directly at Mr. Glassman as having been a participant in a fraud to verify, in fact, if CIT was correct?

MR. PETTIT: Objection, form of the question.

MS. ING: Join in the objection.

BY MR. HOGAN:

Q. You had documents that showed that you had just formed Spectrum two weeks before.

A. Yes.

those words ever being used?

MR. PETTIT: I'll object again because you're attempting to utilize the information contained in Ted Phelps' Rule 2004 examination and simply recharacterizing the question. Same objection.

MR. HOGAN: You believe it's abusive process to ask a question --

MR. PETTIT: I've stated my objection, counsel.

MR. HOGAN: Were you aware that your client was noticed in this 2004 examination prior to this?

MR. PETTIT: I don't think the purpose of this deposition is to argue the legal points.

BY MR. HOGAN:

Q. How many discussions have you had with Kurt Glassman in which Ted Phelps was present?

A. Several.

Q. In any of those discussions were the issues regarding Spectrum raised and discussed?

A. As far as I can remember, for a very, very long time Mr. Glassman maintained that everything had been done properly, that there was inadvertent mistakes, there was no fraud whatsoever. Later on

# C E R T I F I C A T E

STATE OF HAWAII )
) SS.
CITY AND COUNTY OF HONOLULU )

I, JANIS K. FLOATE, Notary Public, State of Hawaii, do hereby certify:

That on November 12, 2002, appeared before me Raymond S. Iwamoto, the witness whose deposition is contained herein; that prior to being examined, the witness was by me duly sworn;

That the deposition was taken down by me in machine shorthand and was thereafter reduced to typewriting under my supervision; that the foregoing represents to the best of my ability, a true and correct transcript of the proceedings had in the foregoing matter.

I further certify that I am not an attorney for any of the parties hereto, nor in any way concerned with the cause.

DATED this ______ day of____________,2002, in Honolulu, Hawaii.

_______________________________________
JANIS K. FLOATE, RPR, CSR 254
Notary Public, State of Hawaii
My Commission Exp: December 12, 2005