IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Cross-Claim Defendants. | CIVIL NO. 01-00187 MEA BMK (Tort and RICO)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Trial Date: November 6, 2006<br>Judge: Hon. Marvin E. Aspen |

[2001556/303475]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Statement of Facts

In this lawsuit, Plaintiff seeks damages from Defendant Raymond Iwamoto for: (1) conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and (2) conspiracy to commit fraud ("civil conspiracy"). Plaintiff also claimed that Mr. Iwamoto violated Section 1962(c) of RICO but that claim was dismissed pursuant to Mr. Iwamoto's motion for summary judgment. (See, Memorandum Opinion and Order filed December 30, 2004).

Plaintiff's civil conspiracy claim is based on allegations that Plaintiff was fraudulently induced to ship appliances. Count II of Plaintiff's complaint[1] is entitled "Fraud Conspiracy" and is directed against Mr. Iwamoto and other defendants. It consists of a series of rambling allegations concerning unrelated events that did not involve Plaintiff. At best, the civil conspiracy claim is related to Count I (claim for common law fraud[2]) which alleges that Plaintiff was fraudulently induced to make shipments when the alleged RICO enterprise did not intend to make payment. (¶¶95-110 of Complaint).

At trial, Plaintiff is expected to introduce evidence and testimony that Mr. Iwamoto served as a director of MidPac Lumber Company, Ltd. ("MidPac"). Corporate records show that Mr. Iwamoto served as a director from January 1, 1999 to October 1999. However, the documents reflecting Mr. Iwamoto's

---

[1] Count II starts on page 36 of Plaintiff's complaint.
[2] Count I starts on page 30 of Plaintiff's complaint.

appointment as director were drafted in June 1999 when Mr. Iwamoto was informed of Edwin Bowling's resignation as MidPac's director and officer. On or about June 10, 1999, Mr. Iwamoto learned that Mr. Bowling resigned on January 1, 1999 when Kurt Glassman asked him to document the resignation. (Deposition of Raymond Iwamoto ("Iwamoto deposition"), p. 88/ln. 14-25; p. 89/ln. 1-25; p. 90/ln. 1-9 attached hereto as Exhibit A).

Mr. Iwamoto testified as follows concerning the circumstances of his appointment as director:

> Q. When were you a director of MidPac Lumber?
>
> A. I became a director, I believe, effective January 1, 1999.
>
> Q. When you say effective, is what you mean you may have actually performed the paperwork at a different time to note that?
>
> A. To the best of my recollection, after I was informed that Mr. Bowling had resigned as being a director, I had noticed that the bylaws of the company required three directors. So I agreed I would serve that function until we could amend the bylaws to change it so that only two directors would be required.
>
> Q. Is it fair to say that that decision to have you replace Mr. Bowling actually occurred in June of 1999?
>
> A. I think that was about right, yeah. I think what this is is a resolution[3] to replace Mr. Bowling with Mr. Fujioka in those positions?

[3] Mr. Iwamoto is referring to Exhibit 11 to his Deposition which was the Written Consent of the Board of Directors of MidPac Lumber Co., Ltd.

Q. As a vice president and treasurer?

A. Yes.

(Iwamoto deposition, p. 61/ln. 24-25; p. 62/ln. 1-19 attached hereto as Exhibit A).

Mr. Iwamoto did not manage or supervise MidPac after his appointment as director. He:

> had no involvement whatsoever with any operational aspects of the company, with any vendors, any products or how they would sell products or how they would buy products. I provided no services in connection with that. I had not just no involvement whatsoever with any of that.

(Iwamoto deposition, p. 86/ln. 11-19 attached hereto as Exhibit A). He was "never involved with operations or vendors or how much was owed[.]" (**Id.**, p. 137/ln. 1-3). He had no "no knowledge whatsoever" about "any of the operational things, where the inventory is[.]" (**Id.**, p. 150/ln. 5-9).

Mr. Iwamoto was unaware of any illegal activity. Mr. Glassman told Mr. Iwamoto that MidPac was making "tons of money" and that:

> there's plenty of collateral, company is doing great guns, it's in fine shape.

(Iwamoto deposition, p. 127/ln. 1-12 attached hereto as Exhibit A). He was told MidPac was making "tons of money". Mr. Iwamoto was assured "there was no fraud whatsoever." (**Id.**, p. 209/ln. 22-25). He relied on Mr. Glassman's representations. (**Id.**, p. 129/ln. 3-7).

## II. Argument

A. **The evidence is irrelevant to Plaintiff's conspiracy claims**

Evidence of Mr. Iwamoto's status as MidPac's director is irrelevant to Plaintiff's conspiracy claims. The evidence does not reflect that he conspired against Plaintiff because he agreed to serve as MidPac's director for the sole purpose of allowing MidPac to have three directors as required by its Bylaws.

Mr. Iwamoto was a director by title only. He did not take action as MidPac's director against Plaintiff or its security interest because he did not manage MidPac's operations or order merchandise from Plaintiff. His knowledge of MidPac's operations was limited to Mr. Glassman's representations that MidPac was earning "tons of money" and was "doing great guns" and was in "great shape."

These circumstances refute the existence of a conspiracy agreement which is is critical to Plaintiff's RICO conspiracy claim. Plaintiff must prove that Mr. Iwamoto entered into:

> [1] an agreement that is a substantive violation of RICO or [2] that [Mr. Iwamoto] agreed to commit, or participated in, a violation of two predicate offenses.

**Howard v. America Online Inc.**, 208 F.3d 741, 751 (9th Cir. 2000). (Citing **Baumer v. Pachl**, 8 F.3d 1341, 1346 (9th Cir. 1993)). Plaintiff must show that Mr. Iwamoto: (1) "intend[ed] to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense" (**Salinas v. United States**, 522 U.S. 52, 65, 118 S. Ct. 469, 477, 139 L.Ed.2d 352 (1997)); and (2)

"was aware of the essential nature and scope of the enterprise and intended to participate in it." **Baumer v. Pachl**, 8 F.3d at 1346.

There is no liability under Section 1962(d) unless Mr. Iwamoto agreed to violate RICO because:

> **a defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise**, and neither is the defendant who agrees to the commission of two criminal acts but does not consent to the involvement of an enterprise. If either aspect of the agreement is lacking then there is insufficient evidence that the defendant embraced the objective of the alleged conspiracy. **Thus, mere association with the enterprise would not constitute §1962(d) violation**. In a RICO conspiracy, as in all conspiracies, agreement is essential.

**Baumer v. Pachl**, 8 F.3d at 1346. (Emphasis added).

Mr. Iwamoto's agreement to serve as director is not evidence of a conspiracy agreement. RICO does not "criminalize mere association with [a RICO] enterprise" because RICO:

> **does not criminalize the actions of everyone who works for a RICO enterprise, nor does it bring within RICO everyone who commits what would be two predicate acts.** It only applies to those who participate in the conduct of the enterprise through a pattern of racketeering activity.

**Baumer v. Pachl**, 8 F.3d 1341, 1344-1345 (9th Cir. 1993); **Brouwer v. Raffensperger, Hughes & Co.**, 199 F.3d 961, 964, 965, 966 (7th Cir. 2000)).

The existence of a conspiracy agreement is also critical to Plaintiff's civil conspiracy claim because liability only exists when there is concerted action to accomplish an unlawful purpose. **Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transportation Company, Inc.**, 91 Haw. 224, 260-261, 982 P.2d 853 (1999). Plaintiff must establish the existence of a conspiracy agreement because:

> mere acquiescence or knowledge is insufficient to constitute a conspiracy absent approval, cooperation or agreement.

**Id.**, 91 Haw. 224, 260 fn. 44, 982 P.2d 853 (1999).

B. **The evidence is irrelevant to Plaintiff's claim for damages**

The evidence should be excluded because Mr. Iwamoto's position as MidPac's director did not cause Plaintiff's damages. Mr. Iwamoto position as MidPac's director did not defraud Plaintiff or affect its security interest under its RICO conspiracy claim. He served as a director as an accommodation to his client but he did not manage or control MidPac's operations or take any action that caused Plaintiff's damages.

The evidence is not probative of Plaintiff's civil conspiracy claim. There is no evidence that: (1) Mr. Iwamoto's actions as a director induced Plaintiff to ship merchandise; or (2) Plaintiff shipped merchandise in reliance on Mr. Iwamoto's role as MidPac's director. Plaintiff shipped merchandise for other

reasons including the payment histories of MidPac and Maui Home Supply, the existence of a payment schedule, assurances that future payments will be made, and its desire to meet sales quotas. The discussion of Plaintiff's reasons for making shipments and case law concerning proximate cause on pages 6 through 8 of Mr. Iwamoto's memorandum in support of his Motion in Limine No. 1 to Exclude Evidence That MidPac Lumber Company, Limited, Maui Home Supply Or Other Entities Fraudulently or Illegally Transferred Inventory Between Warehouses are incorporated by reference.

DATED: Honolulu, Hawaii, June 13, 2006.

/s/ Gary S. Miyamoto
JOHN S. NISHIMOTO
CALVIN E. YOUNG
GARY S. MIYAMOTO
STEVEN L. GOTO
Attorneys for Defendant
RAYMOND IWAMOTO