IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Cross-Claim Defendants. | CIVIL NO. 01-00187 MEA BMK<br>(Tort and RICO)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Trial Date: November 6, 2006<br>Judge: Hon. Marvin E. Aspen |

[2001556/301833]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Statement of Facts

In this lawsuit, Plaintiff seeks damages from Defendant Raymond Iwamoto for: (1) conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and (2) conspiracy to commit fraud ("civil conspiracy"). Plaintiff also alleged that Mr. Iwamoto violated Section 1962(c) of RICO, but its claim was dismissed pursuant to Mr. Iwamoto's motion for summary judgment. (See, Memorandum Opinion and Order filed December 30, 2004).

Plaintiff's RICO conspiracy claim is based on allegations concerning attempts to defraud Plaintiff or acts to defraud Plaintiff of its rights as a secured creditor. (Page 45 of Plaintiff's First Amended RICO Case Statement filed October 17, 2001). Plaintiff was not affected by the conveyance because Plaintiff admits that it only had a security interest on personal property owned by Maui Home Supply. (Deposition of Carl Smith, p. 98/ln. 10-25; p. 99/ln. 1-3 attached hereto as Exhibit B). It did not have a security agreement with MidPac Lumber Company, Ltd. ("MidPac"). (**Id**.). MidPac declined Plaintiff's request to sign a security agreement because the security agreement would conflict with MidPac's asset-based lending arrangement with CIT Group/ Business Credit Inc. ("CIT"). (**Id**., p. 90/ln. 11-25; p. 91/ln. 1-9).

Plaintiff's civil conspiracy claim is based on allegations that Plaintiff was fraudulently induced to ship appliances. Count II of Plaintiff's complaint[1] is

---

[1] Count II starts on page 36 of Plaintiff's complaint.

entitled “Fraud Conspiracy” and is directed against Defendant CIT Group/Business Credit, Inc., Mr. Iwamoto and other persons. It consists of a series of rambling allegations concerning unrelated events that did not involve Plaintiff. At best, the civil conspiracy claim is based on allegations that Plaintiff was fraudulently induced to ship merchandise because Count I (claim for common law fraud[2]) alleges that Whirlpool was fraudulently induced to make shipments when the alleged RICO enterprise did not intend to make payment. (¶¶95-110 of Complaint).

At trial, Plaintiff is expected to introduce evidence of or make reference to documents drafted by Mr. Iwamoto that conveyed real property from CG Investments, Inc. (“CG Investments”) to CG Development, Inc. (“CG Development”). (See, paragraph 116 of Plaintiff's First Amended Complaint).

The conveyance of real property does not reflect any attempt to defraud. Mr. Iwamoto’s client, Kurt Glassman, decided to transfer the property from CG Investments to CG Development as part of a corporate reorganization. Mr. Glassman wanted CG Development’s operations to be limited to owning real estate. (Deposition of Raymond Iwamoto (“Iwamoto deposition”), p. 172/ln. 22-25; p. 173/ln. 1-3 attached hereto as Exhibit A). CG Investments would be focused on business operations. (**Id.**).

---

[2] Count I starts on page 30 of Plaintiff's complaint.

CG Development subleased the real property to CG Investments after CG Development acquired the real property. (Iwamoto deposition, p. 172/ln. 22-25; p. 173/ln. 1-3 attached hereto as Exhibit A).

Mr. Iwamoto's role was confined to providing legal services in his capacity as corporate attorney. He did not manage, supervise, or control the operations of these corporations. (Iwamoto deposition, p. 136/ln. 24-25; p. 137/ln. 1-3 attached hereto as Exhibit A). He provided legitimate legal services but he:

> had no involvement whatsoever with any operational aspects of the company, with any vendors, any products or how they would sell products or how they would buy products. I provided no services in connection with that. I had not just no involvement whatsoever with any of that.

(**Id**., p. 86/ln. 11-19). Mr. Iwamoto had no reason to suspect there was any wrongdoing. He received assurances that "everything had been done properly…[and] there was no fraud whatsoever." (Iwamoto deposition, p. 209/ln. 22-25 attached hereto as Exhibit A).

## II. Argument

### A. The evidence is irrelevant to Plaintiff's RICO conspiracy claim

The evidence should be excluded because the conveyance documents are irrelevant to Plaintiff's conspiracy claims. The drafting of conveyance documents does not reflect Mr. Iwamoto's agreement to conspire against Plaintiff

because the conveyance documents were legitimate legal services rendered by Mr. Iwamoto to his client.

The evidence is irrelevant because it does not reflect the existence of a conspiracy agreement to violate RICO. In order to prove a RICO conspiracy, Plaintiff must show there was:

> [1] an agreement that is a substantive violation of RICO or [2] that the defendants agreed to commit, or participated in, a violation of two predicate offenses.

**Howard v. America Online Inc.**, 208 F.3d 741, 751 (9th Cir. 2000). (Citing **Baumer v. Pachl**, 8 F.3d 1341, 1346 (9th Cir. 1993)). Plaintiff must establish that the Mr. Iwamoto "intend[ed] to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense[.]" **Salnias v. United States**, 522 U.S. 52, 65, 118 S. Ct. 469, 477, 139 L.Ed.2d 352 (1997). Plaintiff must demonstrate that Mr. Iwamoto "was aware of the essential nature and scope of the enterprise and intended to participate in it." **Baumer v. Pachl**, 8 F.3d at 1346.

Evidence that Mr. Iwamoto rendered legal services cannot provide the basis of RICO liability because:

> **a defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise**, and neither is the defendant who agrees to the

> commission of two criminal acts but does not consent to the involvement of an enterprise. If either aspect of the agreement is lacking then there is insufficient evidence that the defendant embraced the objective of the alleged conspiracy. **Thus, mere association with the enterprise would not constitute §1962(d) violation**. In a RICO conspiracy, as in all conspiracies, agreement is essential.

**Baumer v. Pachl**, 8 F.3d at 1346. (Emphasis added). An attorney does not violate RICO by rendering legal services when he does not manage the RICO enterprise. **Id.**, 8 F.3d at 1344-1345. RICO does not "criminalize mere association with [a RICO] enterprise" (**Brouwer v. Raffensperger, Hughes & Co.**, 199 F.3d 961, 964, 965 (7th Cir. 2000)) because RICO:

> **does not criminalize the actions of everyone who works for a RICO enterprise, nor does it bring within RICO everyone who commits what would be two predicate acts.** It only applies to those who participate in the conduct of the enterprise through a pattern of racketeering activity.

**Id.**, 199 F.3d at 966. (Emphasis added).

Liability for a civil conspiracy to defraud only exists when there is concerted action to accomplish an unlawful purpose. **Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transportation Company, Inc.**, 91 Haw. 224, 260-261, 982 P.2d 853 (1999). Plaintiff must establish the existence of a conspiracy agreement because:

> mere acquiescence or knowledge is insufficient to constitute a conspiracy absent approval, cooperation or agreement.

**Id.**, 91 Haw. at 260 fn. 44, 982 P.2d 853.

In the case at bar, the drafting of the conveyance documents do not reflect Mr. Iwamoto conspired against Plaintiff. The drafting of conveyance documents is not evidence of a conspiracy because the documents represented legitimate legal services that served to memorialize the transfer of real property.

Mr. Iwamoto cannot be liable if Mr. Glassman had any ulterior motive for the conveyance. Mr. Iwamoto was unaware of ulterior motives because he drafted the documents in reliance on Mr. Glassman's representations that the conveyance was part of a corporate reorganization. He had no knowledge whether there were other reasons for the conveyance since he did not manage the corporate operations.

B. **The evidence did not cause Plaintiff's damages**

The evidence should be excluded because the conveyance documents were not the proximate cause of Plaintiff's damages. The documents did not defraud Plaintiff or harm its security interest under Plaintiff's RICO conspiracy claim because Plaintiff did not hold a mortgage on the real property. Plaintiff only held a security interest on personal property owned by Maui Home Supply.

The conveyance documents are irrelevant to Plaintiff's civil conspiracy claim because the documents did not induce Plaintiff to ship

merchandise. There is no evidence that: (1) Plaintiff was aware of the conveyance documents or (2) it relied on the documents when shipping merchandise. The record reflects that Plaintiff shipped merchandise for unrelated reasons including the payment histories of MidPac and Maui Home Supply, the existence of a payment schedule, assurances that future payments will be made, and its desire to meet sales quotas.

DATED: Honolulu, Hawaii, June 13, 2006.

/s/ Gary S. Miyamoto
JOHN S. NISHIMOTO
CALVIN E. YOUNG
GARY S. MIYAMOTO
STEVEN L. GOTO
Attorneys for Defendant
RAYMOND IWAMOTO