NOV 26 2002



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO, and KURT GLASSMAN, DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants.<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Cross-Claim Defendants. | Civil No. CV01-00187 DAE BMK<br><br>(Tort and RICO) |

DEPOSITION OF RAYMOND S. IWAMOTO

Taken on behalf of Plaintiff Whirlpool Corporation, at 2300 Pauahi Tower, 1001 Bishop Street, Honolulu, Hawaii, 96813, commencing at 9:05 a.m., on Tuesday, November 12, 2002, pursuant to Notice.

REPORTED BY: JANIS K. FLOATE, RPR, CSR 254
Notary Public, State of Hawaii

EXHIBIT A

sentence on this first page. Midpac has been successful in buying time from appliance and cabinet manufacturers. Now, that would have been told to me by Ted Phelps.

Q. Do you believe that's who told you?

A. I'm pretty sure it was Ted Phelps telling me that.

Q. Why would you presume that?

A. Because his job was to talk to all these vendors and to tell them that CIT had stepped in on Midpac and to let them know. And I think he did that.

Q. Did he ever discuss Whirlpool with you around that time?

A. Yeah, I think as one of the vendors, but they were the same as Kraftmaid or lumber vendors.

Q. Did he ever explain to you that he was having a hard time getting his fax to Whirlpool during this time?

A. No, he did not explain that to me. I did learn about it subsequently because he said something about inadvertently they were the only vendors that got a delayed notice or something.

Q. Was there a larger vendor with Midpac than Whirlpool?

A. I don't know. I was never involved with their operations or vendors or how much was owed or how they were owed with any of these vendors.

Q. On the second page it says the consultant; I presume that means Mr. Phelps?

A. Uh-huh.

Q. And Tom Hayes had gained much comfort after visiting Honolulu and Maui --

A. See, that's Phelps. He was here already.

Q. Right. Do you understand what was meant when you said that they gained much comfort?

A. Yes.

Q. What was that?

A. Oh, you know, this Hayes fellow and I think Inbum, a fellow named Inbum after coming in and looking at the situation, examining the books and examining the situation, doing an audit maybe, they felt pretty comfortable that things were not bad. And that more and more reinforced my faith in my client that nothing wrong had been done.

Q. Did you ever discuss the inventory that was over in Maui with Mr. Phelps?

A. I don't think I did that at this time. I think subsequently I found out that, Jesus Christ, inventory was mixed up here and there, but I had no

Q. Do you believe that the reference in Exhibit 36 to the agreement between CG and Midpac is the lease purported agreement that's attached to Exhibit 42?

A. Let me read paragraph one.

MR. YOUNG: If it is, you have solved the mystery that you stated on the record that no one produced it to you.

MR. HOGAN: For the record --

A. It would be consistent to have -- to request that such a statement be added to what is already here in paragraph one of this agreement. It would be consistent. And, therefore, I don't recall, but it looks like this is the agreement that's being referred to.

BY MR. HOGAN:

Q. Regarding the CG Development lease to Midpac, it was my understanding that Maui Home, that CG Investments, had leased the entire South Hana Highway property. Is that incorrect?

A. Let's determine at what point in time.

Q. Okay. I'll see if I can walk through it. There was a sale to -- or a transfer of the property to CG Investments, then a transfer to CG Development and a lease back to CG Investments.

A. Yes. It was decided that Development would be the real estate owning company and Investments would be the business operating company.

Q. Was there any portion of the land not subleased or leased back to CG Investments?

A. I don't think so. Hang on. It's not clear in my mind. CG Development became the lessee of the entire property, the entire ground, the entire land upon which there were buildings. I don't recall if the lease back to Investments was just for the building or portions of the building. I don't recall that. We would have to look.

Q. Is it your understanding that there was a sublease to -- or I guess a sublease from CG Development to Midpac of property that was not within the Maui Home facility? It would be outside of it, then?

A. I was hoping that the Exhibit B would be attached to this thing so I could refresh my memory, but it's not here. But that would answer your question.

Q. Based on your understanding of the rights that CG Investment got from its lease from CG Development, if it leased the entire property from CG Development, in your understanding, could CG

those words ever being used?

MR. PETTIT: I'll object again because you're attempting to utilize the information contained in Ted Phelps' Rule 2004 examination and simply recharacterizing the question. Same objection.

MR. HOGAN: You believe it's abusive process to ask a question --

MR. PETTIT: I've stated my objection, counsel.

MR. HOGAN: Were you aware that your client was noticed in this 2004 examination prior to this?

MR. PETTIT: I don't think the purpose of this deposition is to argue the legal points.

BY MR. HOGAN:

Q. How many discussions have you had with Kurt Glassman in which Ted Phelps was present?

A. Several.

Q. In any of those discussions were the issues regarding Spectrum raised and discussed?

A. As far as I can remember, for a very, very long time Mr. Glassman maintained that everything had been done properly, that there was inadvertent mistakes, there was no fraud whatsoever. Later on

C E R T I F I C A T E

STATE OF HAWAII )
) SS.
CITY AND COUNTY OF HONOLULU )

I, JANIS K. FLOATE, Notary Public, State of Hawaii, do hereby certify:

That on November 12, 2002, appeared before me Raymond S. Iwamoto, the witness whose deposition is contained herein; that prior to being examined, the witness was by me duly sworn;

That the deposition was taken down by me in machine shorthand and was thereafter reduced to typewriting under my supervision; that the foregoing represents to the best of my ability, a true and correct transcript of the proceedings had in the foregoing matter.

I further certify that I am not an attorney for any of the parties hereto, nor in any way concerned with the cause.

DATED this ______ day of____________,2002, in Honolulu, Hawaii.

_______________________________________

JANIS K. FLOATE, RPR, CSR 254
Notary Public, State of Hawaii
My Commission Exp: December 12, 2005