SHEET 1 PAGE 1

1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

WHIRLPOOL CORPORATION, a Delaware corporation,

Plaintiff,

vs.

CIT GROUP/BUSINESS CREDIT INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,

Defendants,

and

CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,

Additional Crossclaim Defendants.

Civil No. 01-00187DAE BMK (Tort and RICO)

Volume I

DEPOSITION OF CARL SMITH

Taken on behalf of Defendant, RAYMOND IWAMOTO, at the Law Offices of Ayabe, Chong, Nishimoto, Sia & Nakamura, 1001 Bishop Street, Suite 2500, Pauahi Tower, Honolulu, Hawaii, commencing at 9:00 a.m., on Tuesday, December 17, 2002, pursuant to notice.

REPORTED BY: CAROL E.M. SUGIYAMA, C.S.R. #295
Notary Public, State of Hawaii

PAGE 2

2

APPEARANCES:

TIMOTHY HOGAN, ESQ.
Lynch Ichida Thompson Kim & Hirota
1132 Bishop Street
Suite 1405
Honolulu, Hawaii 96813

For Plaintiff WHIRLPOOL CORPORATION

CALVIN YOUNG, ESQ.
GARY MIYAMOTO, ESQ.
Ayabe Chong Nishimoto
Sia & Nakamura
2500 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813

For Defendant ROY IWAMOTO, INC.

LOUISE K.Y. ING, ESQ.
CARL SOTO, eSQ.
Alston Hunt Floyd & Ing
1800 Pacific Tower
1001 Bishop Street
Honolulu, Hawaii 96813

For Defendant CIT GROUP/BUSINESS CREDIT, INC.

ROGER MOSELEY, ESQ.
CHRISTOPHER J. MUZZI, ESQ.
Case Bigelow & Lombardi
2600 Mauka Tower
Pacific Guardian Life Center
Honolulu, Hawaii 96813

For Defendants MICHAEL CLIFFORD, CGBN, INC., and Third-Party Defendant CG DEVELOPMENT, INC.

PAGE 3

3

MARGERY S. BRONSTER, ESQ.
JEANNETTE HOLMES, ESQ.
Bronster, Crabtree & Hoshibata
1001 Bishop Street
Suite 2300, Pauahi Tower
Honolulu, Hawaii 96813

For Defendants EDWIN BOWLING and FRANCES HALLER-BOWLING

Also Present: Deb Clawson, Esq.

PAGE 4

4

I N D E X


| EXAMINATION BY: | PAGE |
|---|---|
| MR. YOUNG | 5 |
| AFTERNOON SESSION | 120 |
| MS. ING | 149 |
| MS. BRONSTER | 257 |

| EXHIBITS FOR IDENTIFICATION | | PAGE |
|---|---|---|
| 195 | Plaintiff's Response to CIT Group Business Credit, Inc.'s First Request for Answers to Interrogatories | 210 |
| 196 | Calculations | 249 |




EXHIBIT A

THE REPORTER: Our disclosure is complete and available for everyone to review. It will be attached to the deposition transcript.

CARL SMITH

called as a witness on behalf of the Defendant, after having been first duly sworn to tell the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

EXAMINATION

BY MR. YOUNG:

Q Good morning, Mr. Smith. My name is Calvin Young, and I represent Raymond Iwamoto.

Can you please state your full name for the record?

A **Carl Truitt Smith.**

Q Have you ever been deposed before?

A **Yes, I have.**

Q How many occasions?

A **Once, I believe.**

Q And was that in a matter in which you were testifying as an employee or representative of Whirlpool Corporation?

A **Yes, it was.**

Q When was that, please?

A **Late '70s, early '80s.**





Q Maybe we should talk about a few ground rules so that I won't assume that you have in your mind all the ground rules that may have been applicable at that deposition. So we'll just go over a few ground rules so that we're all operating under the same understanding today.

First of all, as I'm sure you recall from your prior experience, a deposition is an informal process, but you are placed under oath as if you are in a court of law. Your testimony is being recorded just as you would -- as it would be in a court of law. And we consider your testimony to be -- provided in this situation as if you were testifying before a fact finder, such as a judge or a jury. The only difference, of course, is that you have a scone in front of you, and I have an Aloha shirt on.

Otherwise, it's a very serious matter; and even though we may make light-hearted remarks at times, we do consider this to be very serious.

Your testimony is being recorded, like I noted. And I don't know if you had an opportunity the last time you were deposed, but you will be provided with an opportunity to review your transcript.





Everything that is being said in this room, unless we agree to go off the record, is being taken down by the court reporter. The court reporter will place all of your testimony in a booklet, and you will be given an opportunity to review your testimony to ensure its accuracy.

You are also given an opportunity to change your testimony, but please keep in mind that if you change your testimony, we have an opportunity to question why your testimony is different later than what you tell us today. We can bring that before -- we can bring that out before the jury, or we can try to seek other remedies before the Court.

When you review your transcript and you have an opportunity to change your testimony, please keep in mind that your transcript must show verbal responses. It must read verbal responses.

Like right now, I just waved my hand at you. Ordinarily, in every day conversation, you would understand certain verbal gestures -- or I'm sorry -- hand gestures in conjunction with a verbal response to have a certain meeting. Unfortunately on the deposition transcript, it doesn't pick that up.

So, for instance, in every day conversation,





you might actually say, no, but really mean, yes. But in a transcript, it would just come out as being only a verbal response.

So what I'm telling you is that you must respond verbally to any question that is posed to you. And if you do not answer -- I'm sorry -- if you do not understand the question, you must tell us that you do not understand the question. Because any verbal response that you make is going to be assumed by --

MR. HOGAN: Off the record.

(Off-the-record discussion was held.)

MR. YOUNG: Back on the record.

Q What I was saying is that please remember to make all of your responses verbal, so that we can have a proper and complete transcript.

Now, you heard us speaking off the record that we anticipate that the deposition will run all day. I want to assure you up front, this is not an endurance contest.

Anytime you need a break, for any reason whatsoever, just ask for one, and we'll take it. You do not have to articulate to me why you need to take a break. I believe in the utmost courtesy when I take a deposition.

I do have one rule, though. If I have a question pending to you, I would appreciate it if you would answer that question before we take a break. Quite frankly, if we take a break, I'll never remember what I was trying to ask you about. So when you come back and you answer the question, I won't, myself, understand whether or not you fully answered my question or not.

There are a number of other rules that I want to make sure that you understand. There may be objections being made from time to time. If those objections are made, I would ask that you try to keep the question in mind and respond to the question. Unless you are instructed not to answer a question, I would like you to answer every question to the best of your ability.

Please do not guess. If you make a flat out guess, we don't want it. But if you are able to answer the question by making reasonable and considered response, we would like that. Even if you feel that it's at most a response with a small degree of certainty, that's still better than a wild guess. Just tell us that you are qualifying your answer.

Now, lastly, I want to tell you that you may



find that some of the questions we're asking you may be irritating or annoying. You may also feel that some of these questions are intrusive. You may even feel that we're prying into some of the private aspects of your life.

Please understand that Whirlpool Corporation has filed very serious claims against my client and the other parties who have attorneys present today. We consider the allegations to be very serious. We believe we are doing our jobs by asking you questions. And we would please ask that you keep that in mind when you answer the questions that are being posed to you.

I want to clear something up before we start. Is Mr. Hogan acting as your attorney today?

A **Yes, he is.**

Q Again, if Mr. Hogan places an objection on the record, we would like you to try to keep the question in mind. If you forget the question, we can always have the court reporter read it back. Unless Mr. Hogan instructs you not to answer, we will expect for you to give us your full and complete answer.

All right. Let's go ahead and get started. We had a little issue yesterday because Donna



Martin wasn't feeling very well. So, first of all, I'd like to know, are you well today, sir?

A **Yes, I am.**

Q Do you feel that you are able to go forward with the deposition and answer all the questions posed to you?

A **Yes.**

Q Have you taken any prescription medication in the last 24 hours?

A **No.**

Q Now, you told us that this prior deposition that you had given was 20 years ago; is that right?

A **Approximately, yes.**

Q Why don't you tell me how long you have been an employee of Whirlpool?

A **Twenty-nine years.**

Q And can you tell me who your current employer is?

A **Whirlpool Corporation.**

Q Have you been an employee of Whirlpool Corporation for the last 29 years?

A **Yes, I have.**

Q I understand that there are related entities to Whirlpool. During that 29-year period, have you ever been an employee of any of those related



entities?

A **I misspoke a moment ago. Yes, I have.**

Q All right. Maybe we can clear that up, sir.

Can you tell me, during the 29 years, which entities, either Whirlpool or related, that you have been an employee of?

A **Employee of Whirlpool Corporation and of Whirlpool Financial Corporation.**

Q Please tell me when -- during what period of time you were an employee of Whirlpool Financial Corporation?

A **I don't recall the exact dates.**

Q Can you tell me generally how many years you were an employee of Whirlpool Financial Corporation?

A **I believe that to be a year and a half.**

Q Do you recall when that year-and-a-half period ended?

A **Again, I would have to guess at that. I could be close, but I would have to guess.**

Q Can you tell me if it was during the '90s or the '80s?

A **It was during the '90s.**

Q What is your current job title?

A **I have two job titles, the first being**

Q And those are your initials?
**A Those are my initials.**
Q So you added her as somebody --
**A I added Jean, and I circled Diana as one which probably was not involved.**
Q Going on to No. 3, do you who Tom Klee and Steven Singer are?
**A Yes.**
Q Who are they?
**A Tom Klee was a Whirlpool account manager. Steve Singer was at one time a Whirlpool employee, who had a number of different positions, including the sales manager position.**
Q Do you know how they were involved with the MidPac, Maui Home accounts?
**A I'm sorry. I don't recall.**
Q Now, going on to No. 4, which asks to identify personnel who were involved in the process of collections or overseeing collections for MidPac and Maui Home Supply. Deb Clawson's name is mentioned. What was Deb Clawson's role?
**A Deb is in-house attorney for Whirlpool. And when it became evident that the customer was unable to pay, we got Deb involved in helping us review options.**





Q At what point did you get Deb Clawson involved?
**A I don't recall.**
Q Given that Whirlpool filed suit the first time in the end of October of 1999, do you have any recollection of how soon before that Deb Clawson got involved?
**A It was certainly prior to that and sometime after July 23rd.**
Q Can you pin it down any more precisely than that?
**A Not where I would be comfortable giving you an answer that you could rely on.**
Q Going on to No. 6, directing your attention to the third line. It says, "Ted Phelps was CIT's agent with regard to the MidPac matter."
**A Pardon me. Which question is this again?**
Q No. 6, the third line. And I'm looking at part of the sentence, which says -- I'll go back a little further -- "The evidence will show that Ted Phelps was CIT's agent with regard to the MidPac matter." Do you see that?
**A Correct.**
Q Do you have any personal knowledge about that assertion?





MR. HOGAN: Objection. Vague as to permanent knowledge as to that assertion.
MS. ING: Okay.
Q Can you answer that?
**A I have no personal knowledge of that. The Whirlpool complaint probably best describes it.**
Q You're talking about the complaint that was filed in this lawsuit?
**A Yes.**
Q With respect to the next sentence, part of which reads, "Mr. Phelps acted as a conduit for other CIT agents directing Mr. Phelps to misrepresent many material facts."
Do you have personal knowledge of that statement?
**A I do not have personal knowledge, no.**
Q Do you know who does at Whirlpool?
**A Yes, I do.**
Q Who would that be?
**A Ernie Matlock.**
Q And with respect to what I just asked you about Mr. Phelps was CIT's agent, do you know of anybody at Whirlpool who has personal knowledge?
**A Could you ask that question again. I'm sorry. I thought I just answered that.**





Q I know that you don't have personal knowledge that Ted Phelps was CIT's agent with regards to the MidPac matter, and you said that I should look at the complaint. Right? And I'm wondering if anybody at Whirlpool has personal knowledge?
**A Yes.**
Q Who would that be?
**A That would be, again, Ernie Matlock. And I think the second question -- Ernie Matlock should have been the answer to the first question. Further, "Mr. Phelps acted as a conduit for other CIT agents directing Mr. Phelps to misrepresent many material facts," limited to the status of Maui Home, Whirlpool Security, I believe that Mr. Hogan has knowledge of that.**
Q Anyone at Whirlpool who has personal knowledge of that?
**A Mr. Hogan is the attorney representing Whirlpool.**
Q Right. But I'm asking with respect to people actually employed by Whirlpool?
**A No, not that I know of, no.**
Q Okay. Then, going on, there is -- the sentence goes on to describe some of the misrepresentations or alleged misrepresentations,

STATE OF HAWAII )
) SS.
)

I, CAROL E.M. SUGIYAMA, C.S.R., a Notary Public in and for the State of Hawaii, do hereby certify:

That on December 17, 2002, at 9:00 a.m. appeared before me CARL SMITH, the witness, whose testimony is contained herein; that, prior to being examined, the witness was, by me, duly sworn or affirmed; that the proceedings were taken in computerized machine shorthand by me and were thereafter reduced to print under my supervision; that the foregoing represents, to the best of my ability, a correct transcript of the proceedings had in the foregoing matter;

That, if applicable, the witness was notified through counsel by mail, or by telephone to appear and sign; that if transcription is not signed, either the reading and signing were waived by the witness and all parties, or the witness has failed to appear and the original is therefore kept on file without signature pursuant to Court rules.

I further certify that I am not counsel for any of the parties hereto, nor in any way interested in the outcome of the cause named in the caption.

DATED: ______________________.

CAROL E.M. SUGIYAMA, C.S.R. #295
Notary Public, State of Hawaii
My commission expires 3/27/2003