IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Cross-Claim Defendants. | CIVIL NO. 01-00187 MEA BMK (Tort and RICO)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES |

[2001556/303953]

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Statement of Facts

In this lawsuit, Plaintiff seeks damages from Defendant Raymond Iwamoto for: (1) conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and (2) conspiracy to commit fraud ("civil conspiracy"). Plaintiff also claimed that Mr. Iwamoto violated Section 1962(c) of RICO but that claim was dismissed pursuant to Mr. Iwamoto's motion for summary judgment. (See, Memorandum Opinion and Order filed December 30, 2004).

Plaintiff's civil conspiracy claim is based on allegations that Plaintiff was fraudulently induced to ship appliances. Count II of Plaintiff's complaint[1] is entitled "Fraud Conspiracy" and consists of a series of rambling allegations concerning unrelated events that did not involve Plaintiff. At best, the civil conspiracy claim is related to Count I (claim for common law fraud[2]) which includes allegations that Plaintiff was fraudulently induced to make shipments when the alleged RICO enterprise did not intend to make payment. (¶¶95-110 of Complaint).

At trial, Plaintiff may introduce lay and expert opinions by Debra Clawson, Esq., Carl Smith and other witnesses regarding the standard of care for attorneys, the conduct of Raymond Iwamoto, and RICO violations. However, Plaintiff has not made disclosure of their experts' identities and provided experts'

---

[1] Count II starts on page 36 of Plaintiff's complaint.
[2] Count I starts on page 30 of Plaintiff's complaint.

reports by July 15, 2002 pursuant to the Rule 16 Scheduling Order ("Scheduling Order") filed December 5, 2001.

Debra Clawson, Esq., is Plaintiff's in-house counsel. Carl Smith is Plaintiff's National Manager of Trade Partner Financial Services who testified that his job responsibilities include monitoring Plaintiff's accounts for money laundering activity. (Deposition of Carl Smith, p. 12/ln. 24-25; p. 13/ln. 1-17 attached hereto as Exhibit A).

Mr. Smith testified that Plaintiff investigated whether there was money laundering at MidPac Lumber Company, Ltd. ("MidPac") and Maui Home Supply ("MHS"). (Smith deposition, p. 14/ln. 17-25; p. 15/ln. 1-10 attached hereto as Exhibit A). The investigation was conducted by Mr. Smith, Ms. Clawson, Ernie Matlock, Jean Penwell, and Plaintiff's counsel, Timothy Hogan, Esq. (**Id**., p. 15/ln. 6-10). He said information was discovered that "[led] us to believe that there may have been predicate acts to money laundering situations." (**Id**., p. 14/ln. 22-25; p. 15/ln. 1-2). Mr. Smith disclosed that Ms. Clawson and Plaintiff's counsel determined there was evidence of money laundering. (**Id**., p. 16/ln. 15-25; p. 24/ln. 1-10).

Plaintiff's counsel invoked the attorney-client privilege when Mr. Smith was asked to identify persons who analyzed transactions involving MidPac and MHS for evidence of money laundering. (Smith deposition, p. 24/ln. 1-12

attached hereto as Exhibit A). The attorney-client privilege was also invoked when Mr. Smith was asked to:

- identify specific transactions involving MidPac and MHS that were suspected to involve money laundering (**Id**., p. 24/ln. 20-25; p. 25/ln. 1; p. 27/ln. 10-16);
- confirm that no transactions with MidPac and MHS raised concerns of money laundering (**Id**., p. 25/ln. 2-9); and
- identify persons associated with MidPac and MHS who were involved with money laundering. (**Id**., p. 29/ln. 7-17);
- identify circumstances that caused him to suspect money laundering occurred. (**Id**., p. 151/ln. 10-21; p. 154/ln. 9-25; p. 155/ln. 1-2).

Plaintiff's counsel instructed Mr. Smith not to respond to questioning whether Mr. Smith reported the possibility of money laundering to law enforcement officials. (**Id**., p. 27/ln. 23-25; p. 28/ln. 1-22).

Mr. Smith accused MidPac and MHS of defrauding Plaintiff. (Smith deposition, p. 228/ln. 2-25; p. 229/ln. 1-4 attached hereto as Exhibit A). However, he testified the attorney-client privilege prevented him from describing the fraud (Deposition of Carl Smith (Vol. II), p. 288/ln. 19-25; p. 289/ln. 1-17 attached hereto as Exhibit B) or the factual basis for his accusation. (Smith deposition, p. 228/ln. 2-25; p. 229/ln. 1-4 attached hereto as Exhibit A).

## II. Argument

Plaintiff is barred from introducing lay and expert opinions as a result of its failure to provide disclosure of said opinions prior to trial. Plaintiff cannot

ambush Mr. Iwamoto with opinions that were not disclosed during discovery or which were not disclosed based on the attorney-client privilege. Mr. Iwamoto's defense will be unfairly prejudiced by the introduction of expert opinions under these circumstances because Mr. Iwamoto did not have a reasonable opportunity to conduct discovery with respect to these opinions or prepare his rebuttal to those opinions.

### A. Expert opinions should be excluded based on Plaintiff's failure to disclose the opinions pursuant to the Scheduling Order

Plaintiff cannot introduce opinions concerning an attorney's standard of care and Mr. Iwamoto's conduct. Those opinions are inadmissible as a result of Plaintiff's failure to disclose the identities of their experts and their experts' opinions pursuant to the Scheduling Order and FRCP Rule 26(a)(2). Mr. Iwamoto will be denied a fair trial if the opinions are introduced because he will not have a reasonable opportunity to prepare for and defend against those opinions.

The Scheduling Order was intended to prevent Plaintiff from ambushing Mr. Iwamoto with expert opinions by requiring Plaintiff to disclose expert witnesses and expert reports by **July 15, 2002 (4 years ago)**. The Scheduling Order mandates complete disclosure to prevent unfair surprise at trial (6 Moore's Federal Practice §26.23[2][b][ii] (2006)) and to:

> give parties a reasonable opportunity to prepare an effective cross-examination of the opposing parties' expert witnesses and, if necessary, arrange for testimony from other experts.

6 Moore's Federal Practice §26.23[2][a] (2006). Plaintiff was obliged to supplement its expert witness disclosures without requests from Mr. Iwamoto or a motion to compel disclosure. 6 Moore's Federal Practice §26.131[2] and [3] (2006).

Plaintiff's experts' opinions should be excluded as a result of its failure to disclose the opinions pursuant to the Scheduling Order. The exclusion of the opinions is warranted because Mr. Iwamoto should not be burdened with having to depose Plaintiffs' experts, conduct discovery with respect to the experts' opinions, and find rebuttal expert witnesses on the eve of trial. 6 Moore's Federal Practice 26.23[2][a] and §26.132[7][a] (2006) (undisclosed expert opinions may be excluded to cure the prejudice sustained by the opposing party). Allowing the introduction of expert opinions will disrupt the orderly process contemplated by the Scheduling Order which contemplated disclosure of opinions by July 15, 2002 to allow Mr. Iwamoto and the other defendants an opportunity to prepare their defense to the opinions.

All opinions regarding an attorney's standard of care, Mr. Iwamoto's conduct, fraud, money laundering, and RICO are expert opinions that should have been disclosed pursuant to the Scheduling Order. A layperson lacks the specialized knowledge of an expert to determine: (1) the standard of care applicable to Mr. Iwamoto's services; (2) whether Mr. Iwamoto breached the

standard of care; (3) the elements of fraud and money laundering; (4) whether the facts reflect that fraud and money laundering occurred; (5) the elements of a RICO claim; and (6) whether the facts reflect that RICO was violated. Plaintiff should have identified all witnesses testifying to these issues as expert witnesses because:

> **It is not permissible to disclose a person as a fact witness and then use that person as an expert witness.** The reasoning behind this rule is that parties prepare for expert testimony differently than for the testimony of a fact witness. For example, time may be needed to develop grounds for disqualification of the expert, to retain rebuttal experts, and to learn the substance of the expert's opinions.

(**Id.**). (Emphasis added and footnote omitted).

B. **Opinions should be excluded based on Plaintiff's assertion of the attorney-client privilege**

Plaintiff's assertion of the attorney-client privilege prevents Plaintiff from introducing lay and expert opinions during trial. By invoking the privilege, Plaintiff interfered with Mr. Iwamoto's defense whereas Mr. Iwamoto was prevented from obtaining relevant information concerning Plaintiff's RICO claim and its allegations of fraud and money laundering..

Plaintiff cannot invoke the attorney-client privilege to prevent discovery since discovery's purpose was to ensure a fair trial through the disclosure of relevant information. Mr. Iwamoto was denied discovery as to Plaintiff's RICO claim when Plaintiff asserted the privilege to prevent Mr. Smith from testifying. Mr. Iwamoto was entitled to discovery because Plaintiff seeks

recovery of substantial damages based on allegations that Mr. Iwamoto entered into a conspiracy agreement to violate RICO. He should have been allowed to exhaust his examination to obtain facts known to Mr. Smith in order to prepare for Mr. Smith's trial testimony and his defense to Plaintiff's claim.

Plaintiff also prevented Mr. Iwamoto from examining Mr. Smith regarding accusations of alleged money laundering and fraud. Mr. Iwamoto was entitled to discovery as to these accusations in reference to Plaintiff's RICO claim since Plaintiff may allege that money laundering and fraud establish the existence of a RICO enterprise. By asserting the privilege, Plaintiff preventing Mr. Iwamoto from obtaining relevant information including (1) the factual basis for the accusations (Smith deposition, p. 151/ln. 10-21; p. 154/ln. 9-25; p. 155/ln. 1-2 attached hereto as Exhibit A); (2) the specific transactions that evidence money laundering (**Id.**, p. 24/ln. 20-25; p. 25/ln. 1; p. 27/ln. 10-16), and (3) the identities of persons involved in money laundering. (**Id.**, p. 29/ln. 7-17).

Exclusion of the opinion testimony is the proper remedy. Plaintiff should bear the consequences of its decision to invoke the privilege because the privilege was being used to deny discovery instead of its intended purpose of facilitating communications between attorney and client.

DATED: Honolulu, Hawaii, June 13, 2006 .

/s/ Gary S. Miyamoto
JOHN S. NISHIMOTO
CALVIN E. YOUNG
GARY S. MIYAMOTO
STEVEN L. GOTO
Attorneys for Defendant
RAYMOND IWAMOTO