IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Crossclaim Defendants. | Civil No. CV 01 00187 MEA-BMK (Tort and RICO)<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

**MEMORANDUM IN SUPPORT OF MOTION**

## I. INTRODUCTION

On November 8, 2002, CIT Group/Business Credit, Inc. ("CIT") served a First Amended deposition notice on Whirlpool Corporation ("Whirlpool") pursuant to Fed. R. Civ. P., Rule 30(b)(6)(FRCP, Rule 30(b)(6)), requesting Whirlpool "to designate one or more officers, directors or managing agents, or other person who consent to testify on its behalf" on thirty subject areas.

In response, Whirlpool named as its Rule 30(b)(6) designees, authorized to speak on behalf the corporation: Alex Holton, a division director in contract sales for Whirlpool's southern Pacific region; Joe Higgins, regional director in retail sales for Whirlpool's western region; Ernest Matlock, senior financial analyst at Whirlpool, and Carl Smith, national manager of Whirlpool's Trade Partner Financial Services and Compliance Coordinator for Whirlpool's Money Laundering Prevention Program.

As to many questions, the witnesses provided specific and unequivocal substantive testimony; as to other matters, they were either uninformed or in doubt. Examples of some of the areas covered and testimony given are set forth below:

On November 15, 2002, Alex Holton testified that

- He considered MidPac and MHS as one entity because they were represented to him as one company by Ed Bowling, in charge of overall sales. *Ex. 1, 21:11-22:4*
- His role in sales on the "MidPac/Maui Home Supply" account in 1999-2000 was "relationship building", he played very little role in monitoring payments, and he received little information from Whirlpool's credit department except in the October 1999 timeframe when he learned MidPac/Maui were past due. *Ex. 1, 41:12-43:5*
- From February 1999 to January 2000, ordering for MidPac/Maui was done by Ed Bowling with the assistance of Al "G"; Whirlpool made delivery to MidPac and some portion of

inventory was then "disseminated to Maui Home." *Ex. 1, 50:15-51:13.*

- Whirlpool made sales to MidPac for the Navy Contract (alleged in Whirlpool's Second Amended Complaint) only until the credit department "raised the past due" around Summer 1999 and that no further sales were made thereafter. *Ex. 1, 67:7-20.*
- Whirlpool's local sales staff called on MidPac and Maui Home Supply "at least once or twice a week" and this continued after summer 1999. The purpose of the sales calls was to "continue support and sales." *Ex. 1, 72:4-73:14.*
- One of Whirlpool's local sales staff, Harris Fujita, was terminated from Whirlpool for "bad communications, poor follow-up." *Ex. 1, 79:7-17.*

On December 17, 2002, February 14 and 15, 2003, Carl Smith testified

- Janet Rowan was removed from releasing orders for the MidPac and Maui Home Supply accounts after July 23, 1999, because "performance and her management of the account" was below expectations. She also exercised "poor judgment" in releasing orders even when they exceeded MidPac and Maui Home's credit lines, a payment had been returned for insufficient funds and payments had not been made. *Ex. 2, 168:20-172:13.*

- The bases for Whirlpool's claims relating to the alleged Bonds Fund fraud could all be found in the Second Amended Complaint and documents referred to in the Complaint, and Whirlpool did not suffer any damage from the alleged Bond Funds fraud. *Ex. 3, 368:6-24, 529:1-6, 11-13.*

- His individual and Rule 30(b)(6) testimony on Whirlpool's damages would be the same. During his individual deposition, he at first claimed no knowledge of Whirlpool's damage claim, then returned from a break with handwritten damages calculations on notepaper which added up Exhibits A and B of the Second Amended Complaint, made some adjustments, and resulted in the sum of $2.49 million. *Ex. 3, 519:16-24; Ex. 4, 244:3-250:16.*

On January 21, 2003, Joe Higgins testified

- MidPac and Maui Home Supply's share of Whirlpool's sales in Hawai`i in 1998-99 were significant. In 1998, at $5 million, they accounted for about 50% of Hawai`i sales, and in 1999,at about $3.5 million in sales, they accounted for over one-third of Hawai`i sales. Had they continued their past trends, they would have been Whirlpool's two largest accounts, excluding national accounts. *Ex. 5, 19:16-40:11.*

- Whirlpool's credit and sales departments had different roles. Sales' function was "to get as much credit and as many terms . . . and business as we can"; then "carry that

to the credit department and then it's hands off at that point." *Ex. 5, 44:10-25.*

- He described the Whirlpool credit department's approach: "if someone is not paying us, we stop shipment. . . . To me, it's fairly black and white." *Ex. 5, 14-25.*
- Whirlpool's credit department made the decision to stop shipping "before I would have ever made a recommendation like that." He became aware of problems with those accounts in mid-summer 1999. "They examined the problem to me and how deep it was." *Ex. 5, 57:15-58:18.*
- Whirlpool's main contact persons at MidPac and Maui Home Supply for placing orders were Al "G" and Ed Bowling. He was not aware of CIT placing orders nor of CIT directing Al G or Ed Bowling to do so. *Ex. 5, at 61:8-25.*

On December 14, 2002, Ernest Matlock testified about Whirlpool's credit decisionmaking procedures, which were based on flowcharts in effect from 1997-2002. *Ex. 6, 11:1-12:12.*

## II. ARGUMENT

### A. Pursuant to FRCP, Rule 30(b)(6), Whirlpool should be precluded from offering testimony that is inconsistent or contradictory to the testimony of its corporate designee.

Pursuant to FRCP, Rule 30(b)(6), "[a] party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity

the matters on which examination is requested." By doing this, "the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify" and "[t]he persons so designated shall testify as to matters known or reasonably available to the organization."[1] The purpose of a FRCP, Rule 30(b)(6) deponent is to "curb any temptation a corporation might have to shunt a discovering party from 'pillar to post' by presenting deponents who each disclaim knowledge of facts clearly known to someone in the corporation."[2]

Courts interpreting FRCP, Rule 30(b)(6) have held "the corporation being deposed must designate persons having knowledge of the subject areas identified by the discovering party and 'prepare them so that they may give complete, knowledgeable and *binding* answers on behalf of the corporation.'"[3] As explained by the court in *Rainey v. American Forest and Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 95-96 (D.D.C. 1998), a party's FRCP,

---

1 Id.

2 *Federal Deposit Ins. Corp. v. C.H. Butcher*, 116 F.R.D. 196, 199 (E.D.Tenn. 1986)(quoting Cates v. LTV Aerospace Corp., 480 F.2d 620, 623 (5th Cir. 1973).

3 *Sony Electronics, Inc. v. Soundview Technologies, Inc.*, 217 F.R.D. 104, 112 (D.Conn. 2002)(quoting Gucci America, Inc. v. Costco Co., Inc., 2000 WL 60209 (S.D.N.Y. Jan. 4, 2000) (emphasis added);see also *Sanders v. Circle K Corp.*, 137 F.R.D. 292, 293 (D.Ariz. 1991)("[t]he purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation") (citing GTE Products Corp. v. Gee, 115 F.R.D. 67, 68 (D.Mass.1987).

Rule 30(b)(6) deponent "binds the corporate party to the position taken by its [designees] so that opponents are, by and large, insulated from trial by ambush." Courts have even gone as far as finding that "testimony given by a non-responsive deponent (e.g. "I don't know") 'may be deemed binding on the corporation' so as to prohibit it from offering contradictory evidence at trial."[4] Therefore, unless a corporation can prove that the information provided in the FRCP, Rule 30(b)(6) deposition by its designee was not known or reasonably available to the corporation at the time given, the "corporation cannot later proffer new or different allegations that could have been made at deposition."[5]

By designating Alex Holton, Ernest Matlock, Joe Higgins and Carl Smith as FRCP, Rule 30(b)(6) designees, Whirlpool authorized them to "speak for the corporation"[6] and their testimony presents the "corporation's 'position' on the topic."[7] Whirlpool, therefore, had "a duty to *prepare* its 30(b)(6)

---

[4] Wilson v. Lakner, 228 F.R.D. 524, 530 (D.MD. 2005).

[5] Rainey, 26 F.Supp.2d at 94; see also Ierardi v. Lorillard, Inc., 1991 WL 158911, at *2-3 (E.D. Pa. Aug. 13, 1991)(admissions made by the 30(b)(6) deponent "will be binding on his principal").

[6] United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C. 1996).

[7] Id. (quoting U.S. v. Massachusetts Indus. Finance Agency, 162 F.R.D. 410, 412 (D.Mass. 1995)).

witnesses to speak *for the corporation* on all discoverable information and to give full, complete and unevasive answers."[8]

Accordingly, this Court should preclude Whirlpool, at trial, from offering testimony that is inconsistent with the testimony already provided by its FRCP, Rule 30(b)(6) designees (unless such testimony was corrected by the deponent through timely corrections or timely supplementations, as permitted under FRCP, Rule 30(e) and FRCP, Rule 26(e)(2), respectively).[9]

**III. CONCLUSION**

For the foregoing reasons, CIT respectfully requests that this Court grant its Motion in Limine to preclude Whirlpool from offering testimony that controverts the testimony given by its 30(b)(6), deponents.

DATED: Honolulu, Hawaii, June 13, 2006.

/s/ Louise K. Y. Ing
PAUL ALSTON
LOUISE K. Y. ING
THOMAS E. BUSH
ALLISON KIRK
Attorneys for Defendant/Cross-claimant THE CIT GROUP/BUSINESS CREDIT, INC.

---

8 *C.H. Butcher*, 116 F.R.D. at 201 (E.D. Tenn. 1986)(citing *Mitsui & Co. v. Puerto Rico Water Resource Authority*, 93 F.R.D. 62, 66 (D.P.R.1981).

9 *Ierardi*, 1991 WL 158911, at 3 (corporation "will not be allowed effectively to change its [designees] answers by introducing evidence during trial" noting that Rule 26(e)(2) imposes a duty on the corporation to timely amend its designee's response).