UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Crossclaim Defendants. | CIVIL NO. 01-00187DAE BMK (Tort and RICO)<br><br>30(b)(6) Deposition<br><br>(SEALED DEPOSITION)<br><br>Volume II (Pages 62 - 279) |

30(b)(6) DEPOSITION OF CARL SMITH

taken on behalf of the Defendant Raymond Iwamoto at the offices of Ayabe, Chong, Nishimoto, Sia & Nakamura, 1001 Bishop Street, Suite 2500, Honolulu, Hawaii 96813, commencing at 9:10 a.m. on Friday, February 14, 2003, pursuant to the Hawaii Rules of Civil Procedure.

BEFORE: LYNN NISHIMURA, CSR. NO. 273
Notary Public, State of Hawaii

EXHIBIT 2

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | TIMOTHY J. HOGAN, ESQ.<br>WESLEY W. ICHIDA, ESQ.<br>Lynch Ichida Thompson Kim & Hirota<br>1132 Bishop Street<br>Suite 1405<br>Honolulu, Hawaii 96813 |
| For the Defendant Raymond Iwamoto: | CALVIN E. YOUNG, ESQ.<br>Ayabe, Chong, Nishimoto, Sia & Nakamura<br>2500 Pauahi Tower<br>1001 Bishop Street<br>Honolulu, Hawaii 96813 |
| For the Defendant CIT Group/Business Credit, Inc.: | LOUISE K. Y. ING, ESQ.<br>Alston Hunt Floyd & Ing<br>1800 Pacific Tower<br>1001 Bishop Street<br>Honolulu, Hawaii 96813 |
| For the Defendant Michael Clifford, CGBN, Inc. and Third-Party Defendant CG Development, Inc.: | ROGER S. MOSELEY, ESQ.<br>Case Bigelow & Lombardi<br>2600 Mauka Tower<br>737 Bishop Street<br>Honolulu, Hawaii 96813 |
| Also Present: | Debra Clawson, Esq. |

D O N N A B A B A & A S S O C I A T E S

220 South King Street, Suite 919
Honolulu, Hawaii 96813

(808) 537-9975

Q. Okay. All the people that you just talked about for December you'd also spoken to --
A. Yes. Excuse me.
Q. Post December you spoke to previously.
A. I felt that was understood they were inclusive.
Q. Okay. So you went back and spoke to some of the people that you indicated earlier --
A. Yes.
Q. -- after your December testimony.
A. Right.
Q. Okay. Did you review your entire -- I think there were three volumes of your deposition transcripts. Did you review all three volumes?
A. Yes.
Q. Would it be fair to say that your discussions with those Whirlpool employees you named after your December sessions, were those to prepare yourself to testify as a Rule 30(b)(6) witness?
A. Yes, that would be fair to say.
Q. Okay. And what did you review with Susan Hutcheson?
A. The situation with Janet Rowan, collection situations involving Maui and MidPac. That's all I recall at the moment.
Q. Susan was Janet Rowan's supervisor?

A. That's correct.

Q. So Susan was supervising the collection effort of Whirlpool from Maui and MidPac, at least to some point in time?

A. Yes.

Q. Okay. Now, I think in your prior testimony as an individual deposition deponent you had said that after July 23rd you and Ernie were put on the MidPac and Maui accounts by Jean Penwell to develop a plan for getting repaid.

A. Right; that's correct.

Q. Okay. That's still your testimony?

A. Sure.

Q. Okay. And at that point Donna Martin and Janet Rowan were basically removed from the account, would that be fair to say?

A. Donna was not totally removed from the account. Donna still had some activities that she performed for us. She was not necessarily in a decision-making -- at a high level decision-making capacity on this. Donna was releasing orders, Donna was talking with the people at MidPac and Maui about orders that were being placed, Donna was making sure that we received the payment before we released the orders or the orders were released in such a manner that we would not be

increasing our outstanding with Maui/MidPac. So Donna was still actively involved in the account. Janet was not involved in the account.

Q. And why after July 23rd was Janet taken off the account, as opposed to Donna who remained involved?

A. Janet was taken off of the account because it was felt that Janet's performance and her management of the account was not what was expected, was less than would have been expected.

Q. Okay. And would it be fair that that had to do with what you just testified in response to Mr. Young about checks being returned NSF but orders being continued to be shipped?

A. That was a portion of it, yes.

Q. What other portion was a problem?

A. Janet released orders over credit line.

Q. Anything else?

A. When the payment commitment, the payoff commitment was not honored, Janet didn't stop orders. She continued to release orders or instruct that orders be released after that. The terms of the payment commitment were not followed up on a timely basis.

Q. Anything else?

A. There may be more. That's what I recall.

Q. Okay. And that's information that you got from

Susan Hutcheson?

A. That's correct.

Q. Okay. Did you get that information from any other source?

A. I don't believe so.

Q. One of the areas that you were designated to talk about was the Whirlpool personnel that handled collection of accounts from MidPac and Maui Home Supply. And so in the course of becoming the designated person for that testimony, which is question No. 7 in our notice, did you get any information about why Janet did those things that you just mentioned? You know, the releasing over credit lines, shipping despite NSF, not following up on terms of payment, and releasing orders when payment wasn't honored, did you ever find out why she did that?

MR. HOGAN: I'll object. Compound.

THE WITNESS: Poor judgment was a portion of that, just poor judgment to do that. Now, and I think we've discussed earlier that we were in the middle of an SAP conversion, changing operating systems from an operating system that was an in-house developed system to a purchased SAP system. And unless you've been involved in one of those before, you can't really appreciate the size and just the total job that becomes

encompassed in doing that. Janet had some responsibilities in that area as well that probably took her eye off the ball.

BY MS. ING:

Q. Any other reasons or do you see the poor judgment and I guess the demands of the computer conversion of being the main reasons that she failed to do the things you testified about?

A. The poor judgment was the primary reason, even with the SAP responsibilities she had or certain primary responsibilities that she should be watching. And this was certainly -- a customer who's in a payout plan is one that should be watched very closely.

Q. Now, I understand that Ms. Rowan left the employment of Whirlpool fairly recently.

A. Yes.

Q. When was that?

A. I don't know the exact date.

Q. Do you know why she left?

A. She was terminated.

Q. Do you know why she was terminated?

A. I can give you general information on that. It was behaviors and... Behaviors in creating an unpleasant work environment for people that she worked with. It also involved misallocation of product.

STATE OF HAWAII )
) SS.
CITY AND COUNTY OF HONOLULU )

I, LYNN NISHIMURA, CSR NO. 273, Notary Public in and for the State of Hawaii, do hereby certify:

That on Friday, February 14, 2003, at 9:10 a.m. appeared before me CARL SMITH, the witness whose 30(b)(6) deposition is contained herein; that prior to being examined, the deponent was by me duly sworn; that the deposition was taken in machine shorthand by me and was thereafter reduced to typewriting under my supervision; that the foregoing represents, to the best of my ability, a correct transcript of the deposition had at that time;

That the deponent was notified through counsel, by mail or by telephone to appear and sign; that if the deposition is filed without signature, either the reading and signing of the deposition were waived by stipulation of all parties or the deponent has failed to appear, and the deposition is therefore kept on file without signature pursuant to Court rules.

I further certify that I am not counsel for any of the parties hereto nor in any way interested in the outcome of the cause named in the caption.

Date: 2/23/03

LYNN NISHIMURA, CSR NO. 273
Notary Public, State of Hawaii
My Commission Expires: 2-4-07

LYNN NISHIMURA NOTARY PUBLIC STATE OF HAWAII