UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Crossclaim Defendants. | Civil No. 01-00187DAE BMK<br>(Tort and RICO)<br><br>Volume I<br><br>COPY |

DEPOSITION OF CARL SMITH

Taken on behalf of Defendant, RAYMOND IWAMOTO, at the Law Offices of Ayabe, Chong, Nishimoto, Sia & Nakamura, 1001 Bishop Street, Suite 2500, Pauahi Tower, Honolulu, Hawaii, commencing at 9:00 a.m., on Tuesday, December 17, 2002, pursuant to notice.

REPORTED BY: CAROL E.M. SUGIYAMA, C.S.R. #295
Notary Public, State of Hawaii



EXHIBIT 4

APPEARANCES:

TIMOTHY HOGAN, ESQ.
Lynch Ichida Thompson Kim & Hirota
1132 Bishop Street
Suite 1405
Honolulu, Hawaii 96813

For Plaintiff WHIRLPOOL CORPORATION

CALVIN YOUNG, ESQ.
Ayabe, Chong, Nishimoto,
Sia & Nakamura
2500 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813

For Defendant RAYMOND IWAMOTO

LOUISE K.Y. ING, ESQ.
Alston Hunt Floyd & Ing
1800 Pacific Tower
1001 Bishop Street
Honolulu, Hawaii 96813

For Defendant CIT GROUP/BUSINESS CREDIT, INC.

ROGER MOSELEY, ESQ.
CHRISTOPHER MUZZI, ESQ.
Case Bigelow & Lombardi
737 Bishop Street
2600 Mauka Tower
Pacific Guardian Life Center
Honolulu, Hawaii 96813

For Defendants MICHAEL CLIFFORD, CGBN, INC., and Third-Party Defendant CG DEVELOPMENT, INC.

MARGERY S. BRONSTER, ESQ.
JEANNETTE HOLMES, ESQ.
Bronster, Crabtree & Hoshibata
1001 Bishop Street
Suite 2300, Pauahi Tower
Honolulu, Hawaii 96813

For Defendants EDWIN BOWLING and FRANCES HALLER-BOWLING

Also Present: Deb Clawson, Esq.

of the credit function that you do?
A No. In the normal course of business, no.
Q Do you have any personal knowledge of the amount of damages that Whirlpool is seeking against CIT?
A I do not.
Q Do you have any personal knowledge of how those damages have been calculated?
A No, I do not.
Q Given your lack of personal knowledge on many of these Interrogatories, what is your qualification for verifying or being able to verify these Answers to Interrogatories?
MR. HOGAN: Objection. Calls for a legal conclusion.
THE WITNESS: I'm sorry. I'm unable to answer your question.
Q (By Ms. Ing) Why are you unable to answer? You don't know the answer or you --
A I don't know the answer.
Q Okay. Have you taken any steps to verify the accuracy of the Answers to these Interrogatories that are in Exhibit 195?
A No.
MS. ING: It's five to 5:00. At this point,

I have taken a lot of time so I'm going to turn over the table to others. I may have some questions after I look at my notes.

Off the record.

(A brief recess was taken.)

MS. ING: On the record.

Mr. Smith has informed us that he has some additions to his answers before the break based on discussions with his counsel.

Mr. Smith?

THE WITNESS: Okay. First of all, I have verified the amount of the damages to Whirlpool. I spent several hours reviewing documentation on Sunday to verify the invoices and go back over the statements and verify the amounts.

And as far as the accuracy of the Answers to the Interrogatories, I have reviewed those, I have talked with Whirlpool employees, I have reviewed documents pertaining to those, and I have spoken with both in-house and external counsel about these. So, yes, I do believe and have knowledge that the answers are correct.

Q (By Ms. Ing) Okay. Why was it that you didn't know this before the break?

A I believe possibly I was tired and did not

understand the question.

Q And since you say you have verified the amount of the damages, based on several hours of review of documents, what is the amount of damages that Whirlpool is claiming against CIT?

A It's two point...

MS. BRONSTER: Do you need a document to refresh your recollection?

THE WITNESS: Yes, I do.

MS. ING: What document are you referring to?

MR. HOGAN: For the record, these are statements of Exhibit A and B of the complaint, including statements that were provided in disclosure. And I can get the Bates stamp numbers.

MS. ING: Are those the statements dated October 10, 2002?

MR. HOGAN: That's correct.

MS. ING: So you are looking at the statements as well as Exhibits A and B to the complaint?

MR. HOGAN: That's correct.

MS. ING: And the number that you have gotten based on those statements on Exhibits A and B is?

THE WITNESS: We'll need a few minutes to do this.

MS. ING: Off the record.

(Off-the-record discussion was held.)

MS. ING: Back on the record. Let the record reflect that we have just taken a ten-minute break so that Mr. Smith can calculate the damages that Whirlpool is claiming against CIT.

Q And the number is?

A 2,492,685.69.

Q And, Mr. Smith, you used a sheet of paper to calculate your damages?

A Yes.

Q Whirlpool's damages. I would like to mark that as an exhibit.

A Okay.

Q The damages of 2 point -- almost 5 million that you mentioned, is that the same amount of damages that you are claiming against the other parties or do you have different damage claims for the other parties?

A That's the total damages that Whirlpool is claiming, so that would be the damages against all, I believe.

Q And in reproducing the calculations, you referred to a number of documents. Would it be fair to say that the documents referred to were

Exhibits A and B to the complaint as well as statements dated October 10, of 2002?

A Yes.

MS. ING: Off the record.

(Off-the-record discussion was held.)

MR. HOGAN: I'll say for the record, the number may be in variance with what is in B, and we'll be submitting an amended disclosure on damages that will be more clear about these numbers.

MS. ING: Also, for the record, we have just spent a little time comparing the documents that Mr. Smith used to calculate the damages.

And as I said, they are Exhibits A and B to the Second Amended Complaint, together with statements produced by Whirlpool, dated October 10, 2002, which have already been put into deposition exhibits as Exhibits 69 through 72.

MR. HOGAN: Again, I believe that to be so, but I haven't verified the Bates stamp numbers.

MS. ING: Shall we do that?

MR. HOGAN: What might be easier is to just put this on the record as an exhibit.

MR. HOGAN: I'd have to sit down and compare the pages to be able to verify the record.

(Off-the-record discussion was held.)

MS. ING: Back on the record.

We've had some off-the-record discussions, and have revised Depo Exhibit 196 so that it now consists of Mr. Smith's handwritten calculations, as well as the statement dated 10/10/2002, that's Bates stamped A07304 to 7308; Exhibit A, which is taken from the Second Amended Complaint; and Exhibit B from the Second Amended Complaint; another Whirlpool statement from Maui Home Supply, Bates stamped A07309 to 7317; a MidPac Lumber statement from Whirlpool, A07333 to 7356; and a Maui Home Supply retail statement from Whirlpool, all of these dated 10/10/2002, A07318 through 7332. And that is Exhibit 196.

(Exhibit No. 196 was marked for identification.)

Q Okay. Can you explain how you arrived at the calculations based on the documents in Exhibit 196, what numbers you were looking at?

A Yes.

Q Because when I add them up, they don't add up to me the same way.

So if you can go ahead.

A How I came up with the numbers? I took the

total off of the Exhibit A, added to it the total off of Exhibit B.

Q So the total off of Exhibit A, was that the 2 point --

MR. HOGAN: 2,376,000 --

THE WITNESS: -- 228.53. The total off of Exhibit B is 1,123,754.42. Added those together, and came up with 2,499,982.95.

And in reviewing the statements, dated October 10th, that you referred to, there are some credit memos that were in there that were not reflected on here that totaled $7,297.26, which should be used to reduce the 2,000,000 -- almost 2 million five balance.

And by subtracting that, I came up with $2,492,685.69.

Q (By Ms. Ing) Okay. And what is the basis for -- strike that.

Mr. Smith, with respect to your statement after the break, that you were able to verify the Answers to Interrogatories based on reviewing documents and talking to Whirlpool employees and counsel, does that change any of the answers -- other than the verification answer and your ability to verify, does that change any of the answers you

STATE OF HAWAII )
) SS.
)

I, CAROL E.M. SUGIYAMA, C.S.R., a Notary Public in and for the State of Hawaii, do hereby certify:

That on December 17, 2002, at 9:00 a.m. appeared before me CARL SMITH, the witness, whose testimony is contained herein; that, prior to being examined, the witness was, by me, duly sworn or affirmed; that the proceedings were taken in computerized machine shorthand by me and were thereafter reduced to print under my supervision; that the foregoing represents, to the best of my ability, a correct transcript of the proceedings had in the foregoing matter;

That, if applicable, the witness was notified through counsel by mail, or by telephone to appear and sign; that if transcription is not signed, either the reading and signing were waived by the witness and all parties, or the witness has failed to appear and the original is therefore kept on file without signature pursuant to Court rules.

I further certify that I am not counsel for any of the parties hereto, nor in any way interested in the outcome of the cause named in the caption.

DATED: ______________________________________.

[signature]

CAROL E.M. SUGIYAMA, C.S.R. #295
Notary Public, State of Hawaii
My commission expires 3/27/2003

CAROL E.M. SUGIYAMA NOTARY PUBLIC STATE OF HAWAII