LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Telephone: (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WHIRLPOOL CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, Inc. a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO, and KURT GLASSMAN, DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20.<br><br>Defendants.<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA, | Civil No. CV01 00187 MEA BMK (TORT AND RICO)<br><br>PLAINTIFF WHIRLPOOL CORPORATION'S TRIAL BRIEF<br><br>TRIAL DATE: November 6, 2006.<br>JUDGE: Hon. Marvin Aspen |

Additional Cross-claim Defendants.

**PLAINTIFF WHIRLPOOL CORPORATION'S TRIAL BRIEF**

COMES NOW, Plaintiff Whirlpool Corporation ("Whirlpool"), by and through its undersigned counsel and hereby respectfully submits its trial brief.

I. DISCUSSION.

A. Phelps' Out of Court Statements Can Be Admitted Against CIT.

At trial, certain of Ted Phelps' statements will be sought to be admitted against CIT as admissions of CIT's agent. These statements will be offered, in part, through the testimony of Whirlpool employees who spoke with Mr. Phelps. These statements include, but are not limited to, Mr. Phelps' statements to Whirlpool that the MidPac financial difficulties did not extend to Maui Home Supply, that he was a certified fraud examiner and there was no fraud at MidPac and that he had fax difficulties for nearly a month that prevented him from informing Whirlpool that there would be no payments on antecedent debt.

During the period of that delay, MidPac continued to order and receive shipments of Whirlpool appliances worth over $311,000 despite the fact that CIT and Mr. Phelps knew MidPac had no present intention to pay Whirlpool for them.

The Court should admit the statements of Ted Phelps because there is more than sufficient evidence to find that Mr. Phelps was CIT's agent.

> Section 801(d)(2)(D) provides that "A statement is not hearsay if . . .the statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship". The existence of an agency relationship is a question for the judge under Rule 104(a) and must be proved by substantial evidence but not by a preponderance of the evidence.

*Hilao v. Estate of Marcos*, 103 F.3d 767, 775 (9th Cir. 1996) *citing United States v. Flores*, 679 F.2d 173, 178 (9th Cir. 1982), *cert. denied*, 459 U.S. 1148, 74 L. Ed. 2d 996, 103 S. Ct. 791 (1983).

In its Memorandum Opinion and Order Dated December 28, 2004 (the "CIT Order"), the Court concluded that the evidence raised in the summary judgment motions demonstrated that "it was reasonable for Phelps to consider himself acting on CIT's behalf. The operative question is, however, if his authority to act on CIT's behalf extended to Phelps' dealings with MidPac's creditors. . ." A true and correct copy of the CIT Order is attached to the Declaration of Timothy J. Hogan as Exhibit "1."

At trial, Whirlpool will put forward evidence that, after Whirlpool attempted to contact CIT to inquire regarding issues related to MidPac and Maui Home, Mr. Phelps called Whirlpool on CIT's behalf stating that Whirlpool was to contact him because he was CIT's "eyes and ears" at MidPac. CIT Order at page 15, Hogan Dec. Exhibit "1." This statement is evidence that Mr. Phelps believed he was authorized to deal with creditors on CIT's behalf. The Ninth Circuit has held that this type of out of court statement may be admitted to preliminarily determine the existence of an agency for evidentiary purposes even though the evidence of the agency is derived from the same out of court statement.

> This court, relying on *Bourjaily*, has held that "out-of-court statements may themselves be considered in determining the preliminary question, under Rule 801(d)(2)(D), of the scope of [the agent's] employment duties."

*Estate of Marcos*, 103 F.3d at 775.

In addition to Mr. Phelps' statements made directly to Whirlpool, in the Deposition of Edwin Bowling, Mr. Bowling agreed he had testified in an earlier Fed. R. Bankr. P. 2004 examination that Mr. Phelps had told him he (Mr. Phelps) worked "officially for CIT" as follows:

8. Question: "At this point was Mr. Phelps - - who

9. did Mr. Phelps appear to be working for to you, at least as far as

10. far as you understood it? Who did he tell you he was
11. working for?”
12. And you answered, “He told me he was working
13. officially for CIT, being paid by Glassman.”
14. A. Yes.
15. Q. Do you recall that, sir?
16. A. Yes, I recall it now.

Deposition of Edwin Bowling taken in the instant case on March 11, 2003 at page 81:8-16. Hogan Dec. Exhibit “6.”

A few moments later in his deposition Mr. Bowling testified as follows:

8. Q. Did Mr. Phelps ever say anything to you about who
9. he was working for?
10. Mr. Bush: Objection, asked and answered. He
11. already testified, he said he never said who he worked for.
12. Ms. Bronster: I believe that misstates his
13. testimony.
14. Q. (By Mr. Hogan) Answer the question, sir, if you

understand it?
A. I think he told me he reported to CIT, I think.
Q. And do you have any idea when that might have
been that he said that?
That would have been the last part of June.

Deposition of Edwin Bowling taken in the instant case on March 11, 2003 at page 83:8-19. Hogan Dec. Exhibit “6.”

Mr. Bowling testified that when first asked about what Mr. Phelps may have said, he testified that Mr. Phelps had told him that he (Mr. Phelps) worked for “officially for CIT.” Later, when presented with the earlier sworn testimony, Mr. Bowling conceded giving the earlier testimony and restated his belief regarding Mr. Phelps’ statement. The statements made by Mr. Phelps to Mr. Bowling evidence who Phelps believed he was working for in June 1999 and can form the basis for the Court’s ruling that Mr. Phelps’ statements are admissible against CIT as the statements of CIT’s agent.

Even if Mr. Phelps had not admitted his agency to Whirlpool and to Mr. Bowling, the other evidence that was presented in regard to the summary judgment motions makes more than a sufficient foundation for the Court to rule that Mr.

Phelps' out of court statement may be introduced at trial. This includes, Mr. Phelps' prior relationship with CIT. It is not disputed that Mr. Phelps had worked in association with CIT on an earlier case and was hired to work on MidPac because of his extensive fraud expertise. Mr. Phelps was also a licensed private investigator. If not the first, then one of the earliest, services performed by Mr. Phelps was to conduct a background check of Kurt Glassman and his assets prior to accompanying CIT to Hawaii. Finally, Mr. Phelps had confidences with CIT not shared with Kurt Glassman. CIT Order at pages 13 & 14, Hogan Dec. Exhibit "1."

> Agency is a relation based upon the manifestations of consent of the parties and hence, except where the manifestations do not have legal effect, the duties of both parties are based upon them. Unless the parties have manifested an intent otherwise, the agreement is interpreted to be that which, in view of the conduct of the parties in light of all the circumstances, reasonable men in the position of the principal and agent would expect. <u>Ordinarily, the duties of the agent are the result of inferences from the conduct of the parties</u>.

Restatement 2d of Agency, § 376 comment a, (emphasis added).

At this preliminary stage, the Court should rule that Phelps' out of court statements are admissible against CIT.

B. The Phelps And Iwamoto Statements Are also Statements

Admissible Because The Evidence Shows That They Were Made By Co-Conspirators.

There is no dispute between Whirlpool and CIT regarding the existence of the fraud and fraud conspiracy in regard to MidPac. CIT has claimed in its Second Amended Cross-Claim that, like Whirlpool, it was a victim of fraud conspiracy. Mr. Iwamoto claims that he did not assist the conspiracy but has not argued that the fraud and conspiracy did not exist. Out of court statements made by member of a conspiracy are admissible against co-conspirators as non hear-say. Fed. R. Evid. 801(d)(2)(E). The Court should make an initial determination whether to admit these statements against CIT and Mr. Iwamoto as non-hearsay.

> The co-conspirator exception to the hearsay rule, on the other hand, is merely a rule of evidence founded, to some extent, on concepts of agency law. It may be applied in both civil and criminal cases. Its rationale is the common sense appreciation that a person who has authorized another to speak or to act to some joint end will be held responsible for what is later said or done by his agent, whether in his presence or not.
>
> When the co-conspirator rule of evidence is invoked, either in civil or criminal proceedings, its applicability is for the court to decide as a question of the competence of evidence. To determine whether the evidence is competent as against the nondeclarant, the trial judge determines whether it has been proved, by a preponderance of the evidence, that a joint undertaking existed at the time of the statement or action.

*United States v. Trowery*, 542 F.2d 623, 626-627 (3d Cir. 1976), *cert denied* (1977) 429 US 1104, 51 L Ed 2d 555, 97 S Ct 1132 (emphasis added).

The Court, in its Orders related to the summary judgment motions, set forth several facts that a jury could find evidence that CIT and Iwamoto joined in the fraud scheme. As to Iwamoto, the Court addressed the voluminous evidence to support a finding that Mr. Iwamoto actively assisted Glassman in advancing the fraud. Iwamoto Order at pages 3 to 6. This conduct is sufficient to permit the statements of co-conspirators at trial to be admitted against Mr. Iwamoto.

Additional proof of the agreement to advance the fraud on behalf of CIT was evidenced by the email correspondence of two of CIT's agents regarding the conduct of Kurt Glassman and his ability to deceive a potential lender. This email, that discusses the use of fraud to accomplish the CIT goal of being paid, evidences that the statements should be admitted against CIT:

> As to the bank, we received from City Bank a list of questions from First Hawaiian Bank that they want answers to prior to agreeing to participate. Some of the questions are pretty hard, but they are being propounded by a fairly junior person at the bank. Accordingly, <u>I think that Kurt will be able to dance around them with enough finesse to keep it on track, particularly since he never allows the truth to be an impediment to any financing.</u>

Whirlpool Corporation's Response to Concise Statement of Facts of Defendant CIT's Renewed Motion for Partial Summary Judgment on Count I (Fraud) and Count II (Fraud Conspiracy), and the Declaration of Timothy J. Hogan (the "Hogan MSJ Dec.") filed in support on March 4, 2004, at its Exhibit "O". Hogan Dec. Exhibit "7."

Likewise, when Mr. Iwamoto wrote to City Bank to advance the MidPac-City Bank loan, he instructed his assistant to remove from the draft letter any reference to the word "fraud." *See* Memorandum Opinion and Order dated December 30, 2004. (The Iwamoto Order") at page 6. Hogan Dec. Exhibit "5." By this time, Mr. Iwamoto clearly had more than sufficient knowledge of the existence of a fraud, but rather than ensuring that no further fraudulent acts occurred on his watch, he carefully made sure that the new lenders would not be told the truth about the fraud's existence.

Ted Phelps' statements to Gary Cleland of CRM in the above cited email, related to the plan to defraud a new lender, should be admitted against CIT either as admissions of CIT's agent or an admission of a co-conspirator. The statement is additionally admissible against Mr. Iwamoto as statements of co-conspirators in light of his own intent to misrepresent the true financial situation at MidPac. In a letter directed to the same lender, Mr. Iwamoto carefully avoided the word "fraud"

though he knew at the time that a fraud had been committed. Iwamoto Order, Hogan Dec. Exhibit “5” at page 6.

Additional proof of Mr. Iwamoto and CIT’s knowledge and their active roles in the fraud related to the bond fund fraud is set forth in Mr. Iwamoto’s email where he wrote, “CIT has to bite the bullet and fund bonding moneys or the bond situation could bring the whole thing down.” Iwamoto Order, Hogan Dec. Exhibit “5” at pages 7 & 14. This evidence, along with the other evidence cited by the Court in the CIT and Iwamoto Order, is sufficient for the statements of the other conspirators to be admitted not only as to CIT, but Mr. Iwamoto as well.

DATED: Honolulu, Hawai’i, June 14, 2006.

/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff
WHIRLPOOL CORPORATION