AYABE, CHONG, NISHIMOTO,
SIA & NAKAMURA
A Limited Liability Law Partnership

JOHN S. NISHIMOTO 1820-0
CALVIN E. YOUNG 3278-0
GARY S. MIYAMOTO 3233-0
Pauahi Tower, Suite 2500
1001 Bishop Street
Honolulu, Hawaii 96813
Telephone No. (808) 537-6119
Facsimile No. (808) 526-3491
john.nishimoto@hawadvocate.com
calvin.young@hawadvocate.com
gary.miyamoto@hawadvocate.com

Attorneys for Defendant
RAYMOND IWAMOTO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation, | ) | CIVIL NO. 01-00187 MEA BMK (Tort and RICO) |
| Plaintiff, | ) | DEFENDANT RAYMOND IWAMOTO'S TRIAL MEMORANDUM; CERTIFICATE OF SERVICE |
| vs. | ) | |
| CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER | ) | Judge: Honorable Marvin E. Aspen<br><br>Trial: November 6, 2006 |

ENTITIES 1-20, )
)
Defendants, )
)
and )
)
)
CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA, )
)
Additional Crossclaim Defendants. )
)

[2001556/303955]

DEFENDANT RAYMOND IWAMOTO'S TRIAL MEMORANDUM

Comes now, Defendant Raymond Iwamoto ("Iwamoto"), by and through his attorneys, Ayabe Chong Nishimoto Sia & Nakamura, and hereby respectfully submits his Trial Memorandum.

I. Introduction.

If the Court looks past Plaintiff's efforts to overreach, it becomes clear that this case is simply one for breach of contract. Plaintiff Whirlpool Corporation ("Whirlpool") sold $2,492,685.69 worth of appliances, did not get paid and is trying to recover the value of the appliances it shipped to Hawaii.

To that end, Whirlpool commenced litigation to recover its money on October 29, 1999 by filing suit in Hawaii State Court against MidPac Lumber Company, Ltd. ("MidPac"), MidPac shareholder Kurt Glassman ("Glassman"),

and other related entities. But Whirlpool's effort to collect its delinquent balance from MidPac, et al was frustrated when MidPac and its sister company, CG Investments, Inc. dba Maui Home Supply ("MHS") were forced into bankruptcy in early 2000. Unable to recoup its losses in the bankruptcy forum, Whirlpool devised a new strategy.

Whirlpool filed this suit in 2001 and alleged that it was the target of a fraudulent scheme called a "bust out." Whirlpool claimed that Glassman and another MidPac shareholder, Edwin Bowling ("Bowling") artificially inflated the financial success of MidPac to induce Whirlpool to sell and ship appliances to MidPac that Glassman and Bowling never intended to pay for. Whirlpool alleged that MidPac's asset based lender CIT Group/ Business Credit, Inc. ("CIT") uncovered the fraudulent scheme in June 1999 and together with MidPac's lawyer, Raymond Iwamoto ("Iwamoto"), conspired to allow the scheme to continue to the detriment of Whirlpool.

But the facts of this case will show that a lot more happened. Whirlpool ignored good business practice and its own financial policies and procedures by allowing MidPac to buy excessive numbers of appliances. Whirlpool pursued MidPac's patronage to reach its company sales goals. Whirlpool ignored numerous signs of MidPac's financial distress, made ill advised credit decisions and knowingly continued to ship appliances to MidPac even after

it was evident that MidPac was not paying its bills and was in default under Whirlpool's guidelines.

A further part of the "bust out" scheme involved Glassman and Bowling improperly inducing CIT to loan MidPac millions of dollars that also were not paid back. CIT loaned money to MidPac based upon a formula that essentially involved the value of its inventory. CIT monitored its loan through quarterly audits. But these regular comprehensive audits failed to alert CIT that its money was being improperly siphoned.

MidPac conducted its normal banking transactions with Bank of Hawaii, First Hawaiian Bank and/ or American Savings Bank. Unknown to Whirlpool's credit department, CIT's auditors and **most importantly**, to Iwamoto, MidPac had a bank account at City Bank, #01-012932-01. Through this account, Glassman, and Bowling (and Mrs. Bowling) "secretly" withdrew over $8 million that essentially led to MidPac being insolvent by June 1999.

Contrary to Whirlpool's contention that CIT and Iwamoto "conspired" to defraud Whirlpool, the facts will show that CIT and Iwamoto were adversaries. In June 1999 CIT became suspicious of MidPac's finances and declared a default of its loan. CIT took steps to collect the millions of dollars MidPac owed it and Iwamoto was engaged by Glassman to deal with the CIT default. CIT's legal counsel and Iwamoto negotiated an agreement that provided CIT would refrain

from exercising its default rights and remedies. Notwithstanding that agreement, within months of declaring the default, CIT seized Glassman's residence to satisfy the debt MidPac owed.

Whirlpool knows that MidPac and MHS were unable to pay for the $2,492,685.69 worth of appliances because MidPac's principals, Glassman and Bowling, withdrew company funds for their own benefit through the use of the "secret" City Bank account. During the course of this litigation, Whirlpool has reached settlement agreements with both Glassman and Bowling.

Thus, after years of litigation, an extensive motion practice, and a sua sponte bifurcation order, the first phase of this case comes up for trial in four months. The only parties involved in this initial phase are Whirlpool, CIT and Iwamoto. Of the various counts alleged in its Second Amended Complaint, only the claims for fraud conspiracy and facilitation of a RICO conspiracy remain against Iwamoto. The claims against CIT are for fraud, fraud conspiracy, conversion and tortious interference with contracts.

II. The competent evidence shows Iwamoto acted within the law and was not a part of any fraudulent conspiracy.

On December 30, 2004 this Court ruled there was "no evidence to suggest that [Iwamoto] managed or operated" the alleged "bust out". This Court recognized that Iwamoto did not participate in, nor did he benefit from, the diversion of funds withdrawn from MidPac's secret City Bank account. As

MidPac's outside counsel, Iwamoto did not have access to, control over, or responsibility for, MidPac's financial records. Iwamoto simply provided legitimate legal services in connection with MidPac's business affairs. As such, this Court dismissed the direct RICO claim brought against Iwamoto by Whirlpool.

Whirlpool clings to its remaining conspiracy claim relying on disparate and disconnected facts in the desperate hope that the jury will be misled into seeing something that is not there. However, inasmuch as there is no evidence, no testimony, and no trail of money to tie Iwamoto to the *intentional* fraud or *knowingly* conspiring with Glassman and Bowling, it is certain that Whirlpool will not meet its burden of proof.

Iwamoto cannot be liable for conspiracy as Whirlpool lacks any evidence to show that he had actual knowledge of ***and*** agreed to participate in the alleged plan to defraud Whirlpool. ***Baumer v. Pachl***, 8 F.3d 1341 (9th Cir. 1993). There is no evidence that Iwamoto knowingly conspired in any plan to defraud Whirlpool. There is no testimony by Whirlpool, CIT, Glassman, Bowling, or any other witness, that Iwamoto was a co-conspirator. Indeed, Whirlpool cannot establish that Iwamoto pocketed a single dollar (no money) of its alleged $2 million loss.

Whirlpool readily concedes that it relies on a few unconnected "facts" to support its conspiracy claim but argues that the nature of its claim requires that

its proof be established through circumstantial evidence. However, in reality, when placed in their proper context, Plaintiff's "evidence" will not prove that Iwamoto knowingly conspired to commit fraud or violate RICO. Whirlpool has full access to Iwamoto's file, including the fee bills sent by Iwamoto and his firm's internal memos and email. Yet, this 'inside' view of the record fails to muster any 'smoking gun' evidence because Whirlpool's conspiracy claim lacks merit.

The few "facts" Whirlpool points to in support of its claim are briefly discussed below.

<u>Formation of "Spectrum" Entities</u>

Iwamoto does not deny that he was asked to form the "Spectrum" entities but as this Court has recognized, there is nothing inherently improper or fraudulent about forming corporations for a client. Absent evidence that Iwamoto had contemporaneous knowledge that those entities were going to be used to aid the diversion of funds, and that Iwamoto intended to further the plan – of which there is no such evidence – Iwamoto cannot be held liable for participating in a fraudulent RICO conspiracy.

<u>Iwamoto's Invoice Re: "Double Billing"</u>

Whirlpool points to a fee entry in May 1999 that references "double billing" and Iwamoto's June 23, 1999 letter that uses the same phrase and argues in this virtual vacuum that the subject matters are related and the same. Again, this

arbitrary argument does not connect Iwamoto to an alleged conspiracy. The billing statement only reflects the existence of a conversation without disclosing the substance of the conversation. To prove the substance of the conversation proves its claim, Whirlpool needs the corroborating testimony of a participant. It has neither. Iwamoto will explain there is no connection. Indeed, none of the known conspirators, all of whom have already settled with Whirlpool, have identified Iwamoto as a co-conspirator.

Iwamoto's June 23, 1999 Letter re: "Spectrum"

Whirlpool relies heavily on Iwamoto's June 23, 1999, letter to Grace Bowen, CIT's in-house attorney, to evidence Iwamoto's participation in the conspiracy. In the letter, Iwamoto explains to Bowen that the single instance of "double billing" was an accounting error and was corrected. He further tries to allay CIT's concerns that although Glassman helped to set up J&J and F&J, those companies were independently owned but were economically tied to MidPac.

Although it has *since* been discovered how Glassman was using J&J and F&J to further the "bust out", there is no evidence that Iwamoto was a knowing participant in the scheme at the time the letter was written. Iwamoto was not aware of the scheme, he did not benefit from the apparent deception, and indeed, he has not even been fully paid for his legal services. Iwamoto was not only duped, but he has been left innocently holding an empty bag. Iwamoto

believes the jury will "follow the money", instead of subscribing to Whirlpool's own economically driven deception.

Iwamoto's Negotiations with CIT

Whirlpool's allegation that Iwamoto and CIT agreed to defraud Whirlpool is baseless. Iwamoto negotiated the terms of the forbearance agreement with CIT, in order to save the company from being found in default. Iwamoto did not know that MidPac's principals were improperly diverting funds from the company. Indeed, when Glassman agreed to mortgage his own residence as security for the CIT forbearance agreement, Iwamoto's belief in Glassman's stated intent to try and rehabilitate the company was reinforced. CIT foreclosed on the house and defaulted MidPac. There was no conspiracy.

Moreover, Iwamoto's warning to CIT that it's investigation should not jeopardize MidPac's relationships with its suppliers was perfectly valid and well within Iwamoto's responsibilities as an advocate to protect MidPac's interests. If Glassman was correct that the company remained solvent, but CIT's investigation caused its vendors to stop supplying product, MidPac might have had a viable claim for tortious interference with contract/business advantage. Iwamoto's actions do not evidence knowledge of, and participation in, a conspiracy to defraud.

SEC Investor Memorandum

Iwamoto ***was not*** involved in the securities offering by CGB Enterprises. The evidence will show that the documents Whirlpool points to pertain to separate issues and parties. Further, these documents are of questionable relevance to Whirlpool's conspiracy claims since it is clear that Whirlpool did not rely upon these documents.

III. Conclusion.

Therefore, as Whirlpool will be unable to introduce: (a) any testimony of the known conspirators that Iwamoto was a co-conspirator (no testimony), (b) any documents to prove that Iwamoto was aware of Glassman and Bowling's fraudulent scheme to divert funds using a secret bank account, and (c) any evidence that Iwamoto financially benefited from his alleged participation in the fraudulent scheme to divert funds from MidPac (no money), it is respectfully submitted that Iwamoto is entitled to judgment as a matter of law.

DATED: Honolulu, Hawai'i, June 14, 2006.

/s/ Gary S. Miyamoto
JOHN S. NISHIMOTO
CALVIN E. YOUNG
GARY S. MIYAMOTO
Attorneys for Defendant
RAYMOND IWAMOTO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Crossclaim Defendants. | CIVIL NO. 01-00187 DAE BMK<br>(Tort and RICO)<br><br>CERTIFICATE OF SERVICE<br><br>TRIAL DATE: May 13, 2003 |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was duly served on the following parties listed below, through electronic transmission on June 14, 2006.

TIMOTHY J. HOGAN, ESQ.
Lynch Ichida Thompson Kim & Hirota
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Attorney for Plaintiff
WHIRLPOOL CORPORATION

PAUL ALSTON, ESQ.
LOUISE K.Y. ING, ESQ.
Alston Hunt Floyd & Ing
1001 Bishop Street
Pacific Tower, 18th Floor
Honolulu, Hawaii 96813
Attorneys for Defendant
CIT GROUP/BUSINESS
CREDIT, INC.

DATED: Honolulu, Hawai'i, June 14, 2006.

/s/ Gary S. Miyamoto
JOHN S. NISHIMOTO
CALVIN E. YOUNG
GARY S. MIYAMOTO
Attorneys for Defendant
RAYMOND IWAMOTO