AYABE, CHONG, NISHIMOTO,
SIA & NAKAMURA
A Limited Liability Law Partnership

JOHN S. NISHIMOTO 1820-0
CALVIN E. YOUNG 3278-0
GARY S. MIYAMOTO 3233-0
STEVEN L. GOTO 6041-0
Pauahi Tower, Suite 2500
1001 Bishop Street
Honolulu, Hawaii 96813
Telephone No. (808) 537-6119
Facsimile No. (808) 526-3491
john.nishimoto@hawadvocate.com
calvin.young@hawadvocate.com

Attorneys for Defendant
RAYMOND IWAMOTO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20, | ) | CIVIL NO. 01-00187 MEA BMK<br>(Tort and RICO)<br><br>DEFENDANT RAYMOND IWAMOTO'S OBJECTIONS TO PLAINTIFF WHIRLPOOL CORPORATION'S DESIGNATION OF EXAMINATION OF TED PHELPS TAKEN ON DECEMBER 7, 2000; CERTIFICATE OF SERVICE<br><br>Trial Date: November 6, 2006<br>Judge: Hon. Marvin E. Aspen |

Defendants,

and

CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,

Additional Cross-Claim Defendants.

[2001556/302149]

**DEFENDANT RAYMOND IWAMOTO'S OBJECTIONS TO PLAINTIFF WHIRLPOOL CORPORATION'S DESIGNATION OF EXAMINATION OF TED PHELPS TAKEN ON DECEMBER 7, 2000**

Comes Now, Defendant Raymond Iwamoto, by and through his attorneys, Ayabe Chong Nishimoto Sia & Nakamura, and for his Objections to Plaintiff Whirlpool Corporation's Designation of Examination of Ted Phelps Taken on December 7, 2000 as follows:

A. **The testimonies are inadmissible under Rule 801(d)(1) of the Federal Rules of Evidence**

Rule 801(d)(1) of the Federal Rules of Evidence ("FRE") does not authorize the introduction of the testimonies. FRE Rule 801(d)(1) does not allow the introduction of prior statements as a substitute for live testimony. FRE Rule 801(d)(1) allows the introduction of a witness' prior statement only when the witness testifies at trial and is subject to cross-examination. 5 Weinstein's Federal Evidence §801.20[1] (2003). FRE Rule 801(d)(1) states:

> A statement is not hearsay if—
>
> (1) *Prior Statement by witness*---The declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person[.]

FRE Rule 804(d)(1) does not allow the introduction of prior statements as substantive evidence because prior statements are admissible only for the purpose of impeaching the declarant's credibility, rehabilitating the declarant's credibility, or for purposes of identification.

### B. The testimonies should be excluded pursuant to FRE Rule 804(b)(1)

FRE Rule 804(b)(1) prevents the introduction of Mr. Phelps' testimony because Mr. Iwamoto was not a party to the bankruptcy proceedings, did not receive notice of the examination and did not have an opportunity to cross-examine Mr. Phelps concerning Plaintiff's conspiracy claims. Introduction of Mr. Phelps' testimony under these circumstances will violate Mr. Iwamoto's constitutional right of confrontation, due process, and fair trial.

FRE Rule 804(b)(1) restricts the admissibility of former testimony to instances when: (1) the witness is unavailable; and (2) the opposing party or its

predecessor in interest had an opportunity or the same motive to cross-examine the witness. FRE Rule 804(b)(1) states:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness;
>
> (1) *Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, **if the party against whom the testimony is now offered**, or, in a civil action or proceeding, a predecessor in interest, **had an opportunity or similar motive to develop the testimony by direct, cross, or redirect examination**.

(Emphasis added).

The opportunity to cross-examine is an essential requirement because the testimony is inadmissible if the opposing party did not have an opportunity to cross-examine the witness. 5 Weinstein's Federal Evidence §804.04[3][a] (2003). The testimony lacks the guarantee of trustworthiness that warrants an exception to the hearsay rule unless the opposing party was granted an opportunity to cross-examine the witness. 5 Jones on Evidence §36.26 (2003).

Even if a party had an opportunity to cross-examine a witness, the witness' prior testimony is inadmissible when the issues at the prior proceeding differed substantially from issues at trial. The testimony is inadmissible in that circumstance because the issues at the prior proceeding may not have motivated the opposing party to question the witness. Mueller & Kirkpatrick, Federal Evidence §490 at p. 776 (1994); Jones on Evidence §36.26 (2003). A similar

motive exists only when the testimony was subjected to the "scrutiny of a party interested in thoroughly testing its validity." 5 Jones on Evidence §36.28 (2003).

When deciding whether to allow the introduction of former testimony, the trial court should consider whether there is a need for the evidence which requires consideration of the testimony's significance and the availability of other evidence. 5 Weinstein's Federal Evidence §804.04[3][c][ii] (2003).

In the case at bar, FRE Rule 804(b)(1) requires the exclusion of Mr. Phelps' testimony. Mr. Iwamoto did not have the opportunity to cross-examine Mr. Phelps and obtain testimony relevant to the defense of Plaintiff's conspiracy claim. He was denied this opportunity because he was not a party to the bankruptcy proceedings and was not present when Mr. Phelps testified.

Mr. Iwamoto will be denied a fair trial if the testimony is introduced. Whereas Mr. Iwamoto could not cross-examine the witnesses, the jury will hear only testimony elicited by Plaintiff and CIT supporting their positions in the litigation. The jury will be denied the benefit of testimony favorable to Mr. Iwamoto's defense to Plaintiff's claims that could have been elicited during cross-examination.

The testimony would be inadmissible even if the Court finds that Mr. Iwamoto had an opportunity to cross-examine the witnesses. The motivation for cross-examining the witnesses in the bankruptcy proceedings differed from the

motivation in examining the witnesses for this trial. At the time of the bankruptcy proceedings, the examination was not focused on allegations of RICO conspiracy violations or wrongdoing against Mr. Iwamoto. The testimony concerned the assets and operations of MidPac Lumber Company, Ltd. ("MidPac") and claims against Edwin Bowling. Questions were raised about Mr. Iwamoto's involvement with MidPac but the questioning was limited and did not relate to Mr. Iwamoto's alleged involvement in a conspiracy or whether he was liable for Plaintiff's damages.

Plaintiff and CIT were certainly not representing Mr. Iwamoto's interests when Mr. Phelps was questioned. Plaintiff and CIT were pursuing their own interests including, but not limited to, their individual claims for amounts owed by MidPac. As such, Plaintiff and CIT did not have any motive to examine the witnesses with respect to any matter concerning Plaintiff's conspiracy claims against Mr. Iwamoto in this lawsuit.

C. **The testimonies are inadmissible under FRCP Rules 30 and 32(a)**

The evidence cannot be introduced pursuant to FRCP Rules 30 and 32(a) because there is no evidence that the bankruptcy examination was scheduled and taken pursuant to Federal Rules of Civil Procedure. The transcript of the examination does not establish that Mr. Phelps was examined pursuant to FRCP Rule 30 because the transcript does not refer to FRCP Rule 30, the Federal Rules

of Civil Procedure, or any other rule or statutory authority that authorized the examination.

The examination is inadmissible even if the examination was taken under FRCP Rule 30 because Mr. Iwamoto was not given reasonable notice of the examination. Reasonable notice is an express condition of taking depositions because Rule 30(b)(1) specifies that reasonable notice in writing must be given to each party as to the name and address of the person being examined and the date and time of the examination. FRCP Rule 32(a) also requires that notice be given to the opposing party. It provides that depositions are admissible only against any party who was present or "who had reasonable notice thereof[.]"

The absence of reasonable notice was prejudicial to Mr. Iwamoto because Plaintiff seeks to introduce testimony from an examination that Mr. Iwamoto did not attend or have an opportunity to cross-examine Mr. Phelps. Mr. Iwamoto is not bound by the cross-examination conducted by the other parties because those parties did not share Mr. Iwamoto's interests and motives. The examination did not involve claims against Mr. Iwamoto because it occurred **one year before** Plaintiff filed this lawsuit. If Mr. Phelps' testimony was relevant to Plaintiff's claims, he should have been deposed after the lawsuit was filed.

FRCP Rule 32(a) restricts the use of deposition taken in other proceedings. Depositions from other proceedings are inadmissible when: (1) a

litigant was not a party in the other proceeding; (2) the parties in the other proceeding and the litigant did not share the same interest and motives; and (3) the other proceeding and the pending lawsuit involved different issues. 8A Wright Miller & Marcus, Federal Practice & Procedure §2150 (1994); 7 Moore's Federal Practice §32.63[1] (2006).

In the case at bar, Mr. Phelps' testimony cannot be used against Mr. Iwamoto because he was not present during the proceedings and did not have an opportunity to question Mr. Phelps concerning Plaintiff's conspiracy claims. Mr. Iwamoto will be denied his constitutional right of confrontation, due process and fair trial if the testimony is introduced because he could not rely on the other parties to protect his interests. Those parties did not share Mr. Iwamoto's interests and motives. They did not question the witnesses concerning Plaintiff's conspiracy claims against Mr. Iwamoto because their interests were focused on their competing claims to the assets of the bankrupt estate.

The bankruptcy proceedings and the case at bar did not involve similar issues. The bankruptcy proceedings did not involve allegations that Mr. Iwamoto: (1) operated a RICO enterprise; (2) was involved in a RICO or civil conspiracy against Plaintiff; or (3) damaged Plaintiff. The examination involved different issues since the proceedings focused on the assets of the bankruptcy estate.

### D. Introduction of the testimonies would violate Mr. Iwamoto's constitutional rights

Mr. Iwamoto's constitutional rights would be violated if the testimony is introduced into evidence. Mr. Iwamoto would be denied his constitutional rights of confrontation, fair trial and due process because he would be denied an opportunity to cross-examine the witnesses in reference to the Plaintiff's conspiracy claims.

The right of cross-examination is critical to this lawsuit since Mr. Phelps is a key person who was involved in MidPac's operation and management. The jury should not consider his testimony when Mr. Iwamoto was denied cross-examination concerning Plaintiff's conspiracy claims.

Mr. Iwamoto's constitutional rights will be prejudiced if the jury considers the testimony. The jury will only hear testimony elicited by other parties which does not provide a balanced-view of Mr. Iwamoto's involvement with MidPac and the circumstances of MidPac's failure and its default on its account with Plaintiff.

In light of the substantial damages sought by Plaintiff, Mr. Iwamoto's constitutional rights must be enforced to prevent an unjust and unfair verdict from being entered in this lawsuit. Mr. Iwamoto's constitutional rights outweigh any need that another party may have for introducing the testimony particularly when that party could have scheduled Mr. Phelps' deposition which would have allowed

all parties (including Mr. Iwamoto) to examine Mr. Phelps in reference to the claims in this lawsuit.

E. **The testimony is irrelevant to Plaintiff's claims**

The testimony should be excluded because it is irrelevant to Plaintiff's conspiracy claims against Mr. Iwamoto. Testimony concerning assets of the bankruptcy estate is not probative as to Mr. Iwamoto's liability because the testimony does not reflect that Mr. Iwamoto was ever involved in a RICO or civil conspiracy.

The testimony should be excluded in its entirety to prevent valuable trial time from being wasted. The testimony would only serve to confuse the jury and distract their attention from the relevant evidence.

In the event that Mr. Phelps' testimony is read to the jury, Mr. Iwamoto's specific objections to Whirlpool's designation of Mr. Phelps' testimony are as follows:

| Page | Line | Objection |
|---|---|---|
| 13<br>14<br>15<br>16<br>17 | 18-25<br>1-25<br>1-25<br>1-25<br>1-17 | The questions and testimony are irrelevant to the claims against Mr. Iwamoto and CIT. The testimony concerns Mr. Phelps' work concerning a corporation having no connection to MidPac Lumber Company, Ltd. or any other entity in this lawsuit. The introduction of this testimony will result in a waste of time, confuse the jury and distract the jury from the relevant evidence. |

| | | |
|---|---|---|
| 26<br>27 | 22-25<br>1-10, 19-24 | The questions and testimony are irrelevant to the claims against Mr. Iwamoto and CIT. Mr. Glassman's reaction during a meeting and the reference to Coastal Construction are irrelevant to the claims against Mr. Iwamoto and CIT. |
| 27<br>28 | 25<br>1-19 | The questions and testimony are irrelevant to the claims against Mr. Iwamoto and CIT. The testimony is also inadmissible because there is a lack of foundation for his testimony concerning Mr. Glassman's and CIT's knowledge, whether CIT was suspicious, and the reason for CIT's suspicions. He admits on page 28/ln. 7-10 that he does not know how CIT was notified of an alleged problem.<br><br>Mr. Phelps' testimony should be excluded because it is non-responsive to the question. |
| 29 | 10-14 | The questions and testimony concerning Rene Costa are irrelevant to the claims against Mr. Iwamoto and CIT. The testimony also consists of inadmissible hearsay. |
| 30 | 13-16 | The testimony is vague and ambiguous with respect to the reference to "invoices got assigned twice." The testimony is also irrelevant because Plaintiff's damages were not caused by the Spectrum invoices. |
| 30 | 17-23 | The testimony is inadmissible because of a lack of foundation as to why the invoices raised a "red flag" and whether the invoices raised concerns with CIT. |
| 30<br>31 | 24-25<br>1-17 | The question on page 30/ln. 24-25 and page 31/ln. 1-7 is vague, ambiguous and unintelligible. Counsel's comments on page 30/ln. 24-25 and page 31/ln. 1-4 should be stricken because counsel is testifying by making factual assertions instead of asking a question.<br><br>The testimony on page 31/ln. 8-11 should be stricken because it is non-responsive to the question. The [Continued on next page] |

| | | |
|---|---|---|
| | | testimony on page 31/ln. 8-17 is inadmissible because of a lack of foundation as to the basis of Mr. Phelps' testimony regarding: (1) the reasons for CIT's concern regarding the invoicing; and (2) the amount involved. He admits that he was "speculating" with respect to what triggered CIT's concerns. (Page 31/ln. 11-13).<br><br>Foundation is not laid with respect to how Mr. Phelps reached that understanding regarding the amount of the invoices. He confirms he does not recall the amount of invoicing. (Page 30/ln. 13-16; page 31/ln. 10-11) but he claimed "it was over a million dollars." |
| 31 | 18-23 | The testimony is inadmissible because of a lack of foundation. Mr. Phelps did not explain the basis for his understanding that the invoices involved the sale of appliances. He did not testify that he actually reviewed the invoices. |
| 31<br>32 | 24-25<br>1-4 | The testimony is inadmissible because of a lack of foundation. Mr. Phelps did not testify that he actually reviewed the invoices or the basis of his understanding.<br><br>The answer is vague and ambiguous because it is unclear whether Mr. Phelps is testifying to the brands of appliances sold by MidPac or whether the brands were reflected in the invoices. |
| 32 | 5-20 | The testimony on lines 9-15 should be stricken because it is not responsive to the question. The testimony also consists of inadmissible hearsay.<br><br>The testimony concerning an alleged inability to obtain information about bank accounts and to trace the movements of inventory are irrelevant to the claims against Mr. Iwamoto and CIT. |
| 32<br>33 | 21-25<br>1-22 | The testimony is irrelevant to Plaintiff's damages. The formation and operation of Spectrum did not cause [Continued on next page] |

| | | |
|---|---|---|
| | | Plaintiff's damages. Mr. Phelps testified that Spectrum was formed to "draw upon the CIT credit facility and take money from CIT." (Page 35/ln. 1-3). He did not testify that Spectrum was formed to defraud or damage Plaintiff.<br><br>The testimony consists of inadmissible hearsay. Alleged statements by Mr. Glassman are not admissions with respect to Mr. Iwamoto or CIT. Mr. Glassman is not a "party-opponent" under Rule 801(d)(2) of the Federal Rules of Evidence ("FRE") because claims against Mr. Glassman will not be litigated during trial.<br><br>The testimony on page 33/ln. 19-22 concerning Mr. Iwamoto is vague and ambiguous with respect to whether Mr. Glassman made admissions in Mr. Iwamoto's presence. Mr. Phelps refers to admissions made by Mr. Glassman in the presence of CIT's representatives. Mr. Phelps then refers to statements by Mr. Iwamoto to Grace Bowen of CIT that he incorporated Spectrum; however, Mr. Phelps does not clarify whether Mr. Iwamoto was present at the time of Mr. Glassman's admissions to CIT. |
| 34 | 3-9 | Testimony concerning the reasons for creating Spectrum are inadmissible because it is: (1) irrelevant to the claims against Mr. Iwamoto and CIT; and (2) it is not responsive to the question. Mr. Glassman's purpose in forming Spectrum is irrelevant because Plaintiff's damages were not caused by Spectrum's formation and operation. Mr. Phelps testified that Spectrum was formed to "draw upon the CIT credit facility and take money from CIT." (Page 35/ln. 1-3). He did not testify that Spectrum was formed to defraud or damage Plaintiff.<br><br>The testimony is inadmissible based on a lack of foundation. Mr. Phelps does not state that he actually asked Mr. Glassman or anyone else for the reason for [Continued on next page] |

| | | |
|---|---|---|
| | | creating the Spectrum corporation. His comment could not be directed towards Mr. Iwamoto since Mr. Phelps testified Mr. Iwamoto did not know the business purpose for creating the corporation. (Page 34/ln. 5-7).<br><br>The testimony is also vague and ambiguous. The testimony implies that he asked Mr. Glassman for the reasons for creating the corporation but he does not testify to discussing this issue with Mr. Glassman. Mr. Phelps' testimony could have been an afterthought triggered by his testimony that Mr. Iwamoto did not know the reason why Mr. Glassman created Spectrum.<br><br>The testimony is also inadmissible under FRE Rule 403 because the testimony results. The vagueness and ambiguity of Mr. Phelps' testimony will result in jury confusion and unfair prejudice. The jury may misconstrue the testimony to mean that Mr. Iwamoto did not provide Mr. Phelps with the business reason for creating Spectrum even though Mr. Phelps testified that Mr. Iwamoto did not know Mr. Glassman's reason for creating the corporation. |
| 34 | 10-17 | The testimony is irrelevant to Plaintiff's damages. The formation and operation of Spectrum did not cause Plaintiff's damages. Mr. Phelps testified that Spectrum was formed to "draw upon the CIT credit facility and take money from CIT." (Page 35/ln. 1-3). He did not testify that Spectrum was formed to defraud or damage Plaintiff.<br><br>The testimony is inadmissible based on a lack of foundation. Mr. Phelps does not explain the factual basis for his testimony regarding when the alleged sham transactions occurred or when Mr. Glassman issued credit memos. |
| 34<br>35 | 18-25<br>1-4 | The testimony is also irrelevant to Plaintiff's claim for damages. Mr. Phelps did not testify that Plaintiff was [Continued on next page] |

| | | |
|---|---|---|
| | | damaged by Spectrum's formation or operation. The testimony is irrelevant to Plaintiff's damages. Mr. Phelps testified that Spectrum was formed to "draw upon the CIT credit facility and take money from CIT." (Page 35/ln. 1-3). He did not testify that Spectrum was formed to defraud or damage Plaintiff.<br><br>The testimony is inadmissible based on a lack of foundation. Mr. Phelps does not explain the factual basis for his testimony. Plaintiff's counsel admitted that the testimony represented a "speculation of opinion." (Page 34/ln. 20). |
| 37 | 1-9 | Mr. Phelps' interpretation of CIT's questions as indicating suspicions of false invoicing should be excluded. Mr. Phelps is speculating with respect to CIT's perception, suspicions, or state of mind.<br><br>Testimony that CIT suspected or accused Mr. Glassman of false invoicing is irrelevant to Plaintiff's damages. False invoicing did not cause Plaintiff's damages because Mr. Phelps testified that Spectrum was formed to "draw upon the CIT credit facility and take money from CIT." (Page 35/ln. 1-3). He did not testify that Spectrum was formed to defraud or damage Plaintiff. |
| 38 | 2-25 | Testimony concerning false invoicing is irrelevant to Plaintiff's damages. False invoicing did not cause Plaintiff's damages because Mr. Phelps testified that Spectrum was formed to "draw upon the CIT credit facility and take money from CIT." (Page 35/ln. 1-3). He did not testify that Spectrum was formed to defraud or damage Plaintiff.<br><br>Alleged statements by Mr. Glassman are inadmissible hearsay. The statements are not admissions under FRE Rule 801(d)(2) because Mr. Glassman is not a party opponent with respect to the claims to be litigated during trial. |

| | | |
|---|---|---|
| | | The testimony is also irrelevant to Plaintiffs' claim for damages because Plaintiff 's damages were not caused by Spectrum's invoices or its formation and operation. |
| 39<br>40 | 1-25<br>1-22 | Testimony whether Mr. Glassman had "potential criminal exposure" and Mr. Phelps' prior experience with other companies is irrelevant to this lawsuit. Claims against Mr. Glassman will not be litigated during trial.<br><br>Mr. Iwamoto will be prejudiced by the reference to "potential criminal exposure" because the jury may erroneously infer that Mr. Iwamoto was also subject to "potential criminal exposure" based on his position as Mr. Glassman's attorney. |
| 42<br>43 | 12-25<br>1-3 | Testimony whether Mr. Glassman had "potential criminal exposure" and Mr. Phelps' prior experience with other companies is irrelevant to this lawsuit. Claims against Mr. Glassman will not be litigated during trial.<br><br>Mr. Iwamoto will be prejudiced by the reference to "potential criminal exposure" because the jury may erroneously infer that Mr. Iwamoto was also subject to "potential criminal exposure" based on his position as Mr. Glassman's attorney. |
| 43 | 4-10 | Testimony concerning CIT's audit and information available to them is irrelevant to the claims against Mr. Iwamoto and CIT. |
| 44 | 2-12 | Testimony is inadmissible based on a lack of foundation. Mr. Phelps did not explain the factual basis for this testimony.<br><br>The testimony is irrelevant to Plaintiff's claim for damages because Plaintiff's damages were not caused by whether Spectrum's payments were credited in [Continued on next page] |

| | | |
|---|---|---|
| | | MidPac's accounting records.<br><br>The reference to "concentration" on page 44/ln. 8 is vague and ambiguous. |
| 44<br>45 | 13-25<br>1-14 | Testimony is inadmissible because it is: (1) irrelevant to the claims against Mr. Iwamoto and CIT; and (2) not responsive to the question.<br><br>The formation and operation of Spectrum did not cause Plaintiff's damages because Mr. Phelps testified that Spectrum was formed to "draw upon the CIT credit facility and take money from CIT." (Page 35/ln. 1-3). He did not testify that Spectrum was formed to defraud or damage Plaintiff.<br><br>The scope of Mr. Phelps' testimony is confined to CIT because he only refers to CIT's suspicion of being defrauded (Page 45/ln. 1-2) and Mr. Glassman's statement that CIT received "bad paper". (Page 45/ln. 6-7). He does not refer to Plaintiff or that Plaintiff was defrauded. He does not claim that Plaintiff received "bad paper."<br><br>The testimony should also be excluded because it is inadmissible hearsay. The statements are not admissions under FRE Rule 801(d)(2) because Mr. Glassman is not a party opponent with respect to the claims to be litigated during trial.<br><br>The testimony regarding statements allegedly made by Mr. Iwamoto are not statements against interest under FRE Rule 804(b)(3). The statement was not "so far contrary to [Mr. Iwamoto's] pecuniary or proprietary interest" since Mr. Iwamoto did not admit liability or involvement in any alleged fraud. |

| | | |
|---|---|---|
| 46<br>47 | 4-25<br>1-5 | Testimony concerning Mr. Clifford is irrelevant to this lawsuit because: (1) claims against Mr. Clifford are not being litigated at trial; and (2) attempts to borrow moneys from City Bank are not probative of Plaintiff's claims. |
| 48<br>49<br>50 | 6-25<br>1-25<br>1-19 | Testimony is inadmissible based on a lack of foundation. Mr. Phelps did not explain the factual basis for his testimony.<br><br>Testimony concerning MidPac's financial statements are irrelevant to this lawsuit. The evidence reflects that Plaintiff shipped merchandise to MidPac based on: (1) MidPac's prior payment history; (2) MidPac's status as a very important customer in Hawaii; (3) a payment schedule negotiated by Plaintiff and MidPac; and (4) assurances from MidPac that payments would be made. Deposition of Donna Lynn Martin, p. 78, 79, 120-122, and 127-130; Deposition of Carl Smith, p. 76. |
| 50<br>51<br>52<br>53 | 20-25<br>1-25<br>1-25<br>1-6 | The questions and testimony regarding undisclosed bank accounts, the absence of bank account records, and tracing payments are irrelevant to the claims against Mr. Iwamoto and CIT. Claims against Mr. Glassman are not against Mr. Iwamoto and CIT. Mr. Glassman's actions are irrelevant to the claims against Mr. Iwamoto and CIT.<br><br>Testimony regarding CIT's concerns and plans to install controls are irrelevant because CIT's concerns and plans are not probative of Plaintiff's claims in this lawsuit.<br><br>The testimony is also inadmissible based on a lack of foundation because Mr. Phelps did not explain the factual basis for his testimony concerning CIT's concerns. |

| | | |
|---|---|---|
| 55<br>56 | 10-25<br>1-5 | The questions and testimony regarding Mr. Phelps' communications with CIT are irrelevant to the claims against Mr. Iwamoto and CIT.<br><br>The testimony on page 55/14-22 is inadmissible because it is non-responsive to the question. |
| 56<br>57<br>58 | 6-25<br>1-25<br>1-19 | The questions and testimony concerning MidPac's accounting system and the handling of bond moneys are irrelevant to the claims against Mr. Iwamoto and CIT. |
| 58<br>59 | 20-25<br>1 | The questions and testimony concerning the use of bond moneys for operations are irrelevant to the claims against Mr. Iwamoto and CIT. Plaintiffs' damages were not caused by the manner that MidPac handled bond moneys.<br><br>The testimony is also inadmissible based on a lack of foundation. Mr. Phelps did not explain the factual basis for his testimony. |
| 59<br>60 | 2-25<br>1-6 | The question and testimony concerning the possibility of bankruptcy proceedings, loans from City Bank, and advanced funds from CIT are irrelevant to the claims against Mr. Iwamoto and CIT. |
| 66<br>67 | 10-25<br>1-20 | The questions and testimony concerning Collateral Risk Management's working relationship with CIT and its inventory reports is irrelevant to the claims against Mr. Iwamoto and CIT. |
| 67<br>68 | 21-25<br>1-7 | The question on page 67/ln. 21-25 and page 68/ln. 1 should not be read to the jury. Counsel rephrased the question on page 68/ln. 8-10. |

| | | |
|---|---|---|
| 68 | 8-24 | The term "“potential competing security interest” is vague and ambiguous.<br><br>Collateral Risk Management’s knowledge of a “potential competing security interest” is irrelevant to the claims against Mr. Iwamoto and CIT.<br><br>The testimony on page 68/ln. 11-24 is non-responsive to the question. |
| 77 | 1-14 | The reference to “false invoices” on page 77/ln. 3, “issues” on page 77/ln. 7 and “problems” on page 77/ln. 10 is vague and ambiguous.<br><br>The questions and testimony are irrelevant to the claims against Mr. Iwamoto and CIT. Plaintiffs’ claims are not based on Mr. Phelps’ or CIT’s nondisclosure of the “false invoices” or “problems.”<br><br>The evidence reflects that Plaintiff shipped merchandise to MidPac based on: (1) MidPac’s prior payment history; (2) MidPac’s status as a very important customer in Hawaii; (3) a payment schedule negotiated by Plaintiff and MidPac; and (4) assurances from MidPac that payments would be made. Deposition of Donna Lynn Martin, p. 78, 79, 120-122, and 127-130; Deposition of Carl Smith, p. 76. |
| 77 | 15-23 | The questions and testimony concerning reclamation rights are irrelevant to the claims against Mr. Iwamoto and CIT. |
| 79 | 5-18 | The question on page 79/ln. 5-8 is vague, ambiguous and unintelligible particularly with respect to the reference to “MidPac security interest” and the reference to “when they buy one, they get one”.<br><br>The questions and testimony concerning whether Maui Home Supply’s customers receive a Whirlpool [Continued on next page] |

| | | |
|---|---|---|
| | | appliance covered by a Midpac security interest and the customer base for MidPac and Maui Home Supply are irrelevant to the claims against Mr. Iwamoto and CIT. |
| 83<br>84<br>85<br>86 | 21-25<br>1-9, 21-25<br>1-20<br>8-16 | The questions and testimony concerning whether Mr. Phelps was engaged from conducting a fraud examination or was forbidden from conducting a fraud examination is irrelevant to the claims against Mr. Iwamoto and CIT.<br><br>The questions prejudices Mr. Iwamoto because they imply that Plaintiff was defrauded by MidPac and/or Mr. Glassman. The jury may erroneously infer that Mr. Iwamoto was involved in the alleged fraud based on his status as counsel for MidPac and Mr. Glassman. |
| 87 | 4-22 | The questions and testimony concerning moneys were withdrawn by or wired to MidPac are irrelevant to the claims against Mr. Iwamoto and CIT because there is no evidence that Mr. Iwamoto and CIT were involved in the money transactions.<br><br>The testimony is inadmissible based on a lack of foundation concerning the factual basis for his testimony. He admits that he did not review bank account records. (Page 87/ln. 18-22). |
| 87<br>88 | 23-25<br>1 | The question and testimony concerning whether CIT received copies of MidPac's bank account records is irrelevant to Plaintiffs' claims against Mr. Iwamoto and CIT. |
| 88<br>89 | 2-25<br>1-17 | The questions and testimony concerning a secured lender's review of bank account records, CIT's request for the bank account records, the auditor's frustration, and whether Mr. Phelps discovered the flow of money are irrelevant to Plaintiff's claims against Mr. Iwamoto and CIT. |

| | | |
|---|---|---|
| 91<br>92<br>93 | 5-25<br>1-25<br>1-17 | The questions and testimony are irrelevant to the claims against Mr. Iwamoto and CIT. Mr. Phelps testified to comments concerning a document that he had not seen prior to this line of questioning. |
| 93 | 18-25 | The questions and testimony concerning Mr. Phelps' opinion regarding MidPac's viability and the decision to liquidate MidPac are irrelevant to the claims against Mr. Iwamoto and CIT. |
| 94<br>95 | 1-25<br>1-11 | The questions and testimony concerning CIT's knowledge of the decision to liquidate MidPac, attempts to obtain financing from City Bank and Mr. Bowling, and whether CIT would collect its loan balance are irrelevant to the claims against Mr. Iwamoto and CIT. |
| 95 | 12-25 | The question and objection on page 95/ln. 12-16 should not be read because counsel re-stated his question on page 95/ln. 18-20.<br><br>The question and testimony on page 95/ln. 18-25 are irrelevant because Mr. Phelps' knowledge regarding negotiations for the CIT loan and City Bank loan are irrelevant to the claims against Mr. Iwamoto and CIT. |
| 96 | 1-13 | The question and testimony concerning the liquidation of MidPac are irrelevant to claims against Mr. Iwamoto and CIT. |
| 97<br>98 | 5-25<br>1-18 | The questions and testimony concerning the Bank of Hawaii account and Mr. Glassman's alleged refusal to provide account statements is irrelevant to claims against Mr. Iwamoto and CIT. |
| 98<br>99 | 19-25<br>1-8 | The questions and testimony concerning whether Mr. Phelps could sign checks and his involvement with accounts with First Hawaiian Bank are irrelevant to claims against Mr. Iwamoto and CIT. |

| | | |
|---|---|---|
| 104 | 12-17 | The questions and testimony are irrelevant to the claims against Mr. Iwamoto and CIT. The testimony concerns shipments of lumber instead of shipments of Whirlpool's merchandise. |
| 104<br>105 | 18-25<br>1-4 | The questions and testimony concerning shipments of merchandise are irrelevant to claims against Mr. Iwamoto and CIT. Mr. Phelps denied that Whirlpool appliances were sold at auction. |
| 105<br>106 | 5-25<br>1-12 | The statements by counsel on page 105/ln. 5-6, 8-9, and 12-14 should be excluded because counsel makes extraneous statements and testifies his contact with Mr. Phelps.<br><br>Questions and testimony concerning a Navy contract and Mr. Phelps' knowledge of the contract are irrelevant to the claims against Mr. Iwamoto and CIT particularly when Mr. Phelps confirms that Plaintiff was paid for the appliances delivered to the Navy. (Page 107/ln. 19-25; page 128/ln. 21-25; p. 129/ln. 1).<br><br>The question also lacks foundation as to the factual basis for Mr. Phelps' testimony.<br><br>The questions and testimony on page 106/ln. 6-12 should be excluded because Mr. Phelps admits he does not know how the payments on the Navy contract would be handled. |
| 106<br>107<br>108 | 13-16, 25<br>1-25<br>1-7 | The question is vague and ambiguous with respect to the reference to the use of a "lot of Whirlpool appliances". The cited testimony does not reflect in what context were a "lot of Whirlpool appliances" being used.<br><br>The questions and testimony concerning the appliances sold and the delivery of the appliances are irrelevant to the claims against Mr. Iwamoto and CIT particularly when Mr. Phelps testified that Plaintiff was paid for the [Continued on next page] |

| | | |
|---|---|---|
| | | appliances delivered to the Navy. (page 107/ln. 19-25; page 128/ln. 21-25; p. 129/ln. 1).<br><br>The testimony is inadmissible based on a lack of foundation. Mr. Phelps did not testify to the factual basis for his testimony that Whirlpool appliances were sold as part of the Navy contract.<br><br>The reference to "special inventory" on page 107/ln. 4-6 is vague and ambiguous. |
| 108 | 17-19 | The cited lines are limited to a statement by counsel. There was no question or response by the witness. Mr. Phelps did not confirm there was a meeting with Mr. Iwamoto.<br><br>If the cited lines are a question, it is vague, ambiguous and unintelligible. |
| 109<br><br>110<br>111<br>112<br>113<br>114 | 7-10, 19-25<br>1-25<br>1-25<br>1-25<br>1-25<br>1-7 | The questions and testimony concerning Mr. Phelps' meeting with counsel and the status of the Navy contract are irrelevant to the claims to the claims being litigation during trial.<br><br>Testimony and questions concerning the Navy contract are irrelevant to this lawsuit because Mr. Phelps confirmed that Plaintiff was paid for the appliances delivered to the Navy. (Page 107/ln. 19-25; page 128/ln. 21-25; p. 129/ln. 1). |
| 114<br>115<br>116<br>117 | 8-25<br>1-25<br>1-25<br>1-11 | The questions and testimony concerning the bankruptcy proceedings, liquidation, auction and collection of accounts receivable are irrelevant to the claims against Mr. Iwamoto and CIT. |

| | | |
|---|---|---|
| 119<br>120<br>121<br>122<br>123<br>124<br><br>125 | 14-25<br>1-25<br>1-25<br>1-25<br>1-2, 18-25<br>1, 11-18,<br>19-25<br>1-13 | The questions and testimony concerning Mr. Phelps' letter, bankruptcy and CIT's decision to provide financing are irrelevant to the claims against Mr. Iwamoto and CIT. |
| 128<br>129 | 16-25<br>1 | The question and testimony concerning appliances for the Navy contract are irrelevant because Mr. Phelps testified that Plaintiff received payment for the appliances. (See also, p. 107/ln. 18-22). |
| 129<br>130 | 2-25<br>1-22 | The questions and testimony concerning the handling of Plaintiff's account, Mr. Phelps' knowledge of the amount owed to Plaintiff, and MidPac's financial statements are irrelevant to the claims against Mr. Iwamoto and Plaintiff. |
| 130<br>131 | 23-25<br>1-9 | The question and testimony concerning Mr. Phelps' opinions whether MidPac could continue operations and the amount of cash flow from the Navy contract are irrelevant to the claims against Mr. Iwamoto and CIT. |
| 132 | 4-17 | The question and testimony concerning shipments made pursuant to the Navy contract are irrelevant to the claims against Mr. Iwamoto and CIT. Mr. Phelps confirmed that Plaintiff was paid for the appliances delivered to the Navy. (Page 107/ln. 19-25; page 128/ln. 21-25; p. 129/ln. 1).<br><br>The question on page 132/ln. 18-23 should not be read because the witness did not respond to the question. |
| 133<br>134<br>135 | 2-25<br>1-25<br>1-20 | The questions and testimony concerning the Navy contract and the effect of MidPac's default under the Navy contract are irrelevant to the claims against Mr. Iwamoto and CIT. The dialogue between counsel on [Continued on next page] |

| | | |
|---|---|---|
| | | page 133/ln. 9-25, page 134/ln. 1-3, 19-25; page 135/ln. 1-3 should not be read to the jury.<br><br>Mr. Phelps' statement on page 135/ln. 4-7 should not be read because it is not responsive to a question. |
| 135<br>136 | 21-25<br>1-6, 10 | The questions and testimony concerning bankruptcy proceedings are irrelevant to the claims against Mr. Iwamoto and CIT.<br><br>The question should be stricken because the witness' response is not designated. |
| 136<br>137<br>138 | 25<br>1-25<br>1-21, 23 | The questions and testimony concerning Mr. Phelps' letter, MidPac's budget, guarantees given by Mr. Glassman to CIT, and Mr. Phelps' knowledge regarding the reasons why Mr. Glassman signed guarantees are irrelevant to the claims against Mr. Iwamoto and CIT.<br><br>The question on page 138/ln. 23 should not be read because the response to the question was not designated. Even if the answer was designated, it should be excluded because it is irrelevant to the claims against Mr. Iwamoto and CIT. |
| 140<br>141<br>142<br><br>143<br>144<br>145 | 2-25<br>1-25<br>1-12, 14-25<br>1-25<br>1-25<br>1-24 | The questions and testimony concerning bank loans to MidPac, Enterprise Computer System, Mr. Phelps' letters, possible capital contributions by shareholders, operating cash for the merged entities, Mr. Clifford's guarantee for a bank loan, and Mr. Clifford's financial information are irrelevant to the claims against Mr. Iwamoto and CIT. |
| 149<br>150<br>151<br>152<br>153 | 5-25<br>1-25<br>1-25<br>1-25<br>1-3 | The questions and testimony concerning Mr. Phelps' letter, Glenda Bayliss, Glenda Corp., potential investments into MidPac by Mr. Bowling and other persons, private placements, Mr. Bowling's decision not to invest moneys into MidPac, and Mr. Glassman's response are irrelevant to the claims in this lawsuit. |

| | | |
|---|---|---|
| 153<br>154 | 4-25<br>1-2 | The questions and testimony concerning the balances that Midpac owed to creditors are irrelevant to the claims against Mr. Iwamoto and CIT |
| 154 | 3-17 | The questions and testimony concerning Mr. Glassman's plans for MidPac are irrelevant to the claims against Mr. Iwamoto and CIT. The testimony is also inadmissible because: (1) foundation for the testimony has not been established; and (2) the testimony is based on inadmissible hearsay. |
| 154<br>155 | 18-25<br>1-14 | The questions and testimony concerning MidPac's cash flow, MidPac's loan with CIT, and MidPac's account receivable with Spectrum are irrelevant to the claims against Mr. Iwamoto and CIT. |
| 155<br>156 | 15-25<br>1-2 | The questions and testimony concerning Mr. Glassman's plans, potential bank loans with City Bank and First Hawaiian Bank, and mergers are irrelevant to the claims against Mr. Iwamoto and CIT. |
| 156<br>157 | 3-25<br>1-9 | The questions are vague and ambiguous. Counsel's statements on page 156/ln. 8-14 are unsupported by evidence.<br><br>The questions and testimony concerning the amount that Mr. Glassman intended to borrow under bank loans and loan officers with First Hawaiian Bank and City Bank are irrelevant to the claims against Mr. Iwamoto and CIT. |
| 157<br>158<br>159 | 10-25<br>1-25<br>1-8 | The testimony and questions concerning Mr. Phelps' letter and financing from City Bank are irrelevant to the claims against Mr. Iwamoto and CIT. |
| 161<br>162 | 5-25<br>1-4 | The testimony and questions concerning shipments of merchandise between MidPac and Maui Home Supply are irrelevant to the claims against Mr. Iwamoto and CIT. |

| | | |
|---|---|---|
| 166<br>167 | 24-25<br>1-10 | The question on page 166/ln. 24-25 and page 167/ln. 1 regarding "that kind of information" is vague, ambiguous and overly broad. The question and testimony concerning a lender's rights and information required for loans are irrelevant and inadmissible based on a lack of foundation. |
| 167<br>168 | 11-25<br>1-2 | The questions and testimony concerning the unavailability of financial records and fraud investigations are irrelevant to the claims against Mr. Iwamoto and CIT particularly when Plaintiff admits that Mr. Phelps was not retained by CIT to conduct a fraud investigation. (Page 167/ln. 11-13). |
| 168 | 3-21 | The questions and testimony concerning whether CIT considered commencing involuntary bankruptcy proceedings are irrelevant to the claims against Mr. Iwamoto and CIT. |
| 170<br>171 | 8-25<br>1-6 | The questions and testimonies regarding spreadsheets prepared or received by Mr. Phelps are irrelevant to the claims against Mr. Iwamoto and CIT. |
| 180<br>181 | 1-25<br>14 | The questions and testimonies regarding the cash receipts register and MidPac's monthly revenues are irrelevant to the claims against Mr. Iwamoto and CIT.<br><br>The dialogue between counsel and Mr. Phelps on page 180/ln. 1-21 should not be read because questions are not being posed to Mr. Phelps. |

DATED: Honolulu, Hawaii, June 15, 2006.

/s/ Gary S. Miyamoto
JOHN S. NISHIMOTO
CALVIN E. YOUNG
GARY S. MIYAMOTO
STEVEN L. GOTO
Attorneys for Defendant
RAYMOND IWAMOTO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Cross-Claim Defendants. | CIVIL NO. 01-00187 MEA BMK<br>(Tort and RICO)<br><br>CERTIFICATE OF SERVICE<br><br>Trial Date: November 6, 2006<br>Judge: Hon. Marvin E. Aspen |

[2001556/302149]

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was duly served on the following parties listed below, through electronic transmission on June 15, 2006.

TIMOTHY J. HOGAN, ESQ.
Lynch Ichida Thompson Kim & Hirota
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Attorney for Plaintiff
WHIRLPOOL CORPORATION

PAUL ALSTON, ESQ.
LOUISE K.Y. ING, ESQ.
Alston Hunt Floyd & Ing
1001 Bishop Street
Pacific Tower, 18th Floor
Honolulu, Hawaii 96813
Attorneys for Defendant
CIT GROUP/BUSINESS CREDIT, INC.

DATED: Honolulu, Hawaii, June 15, 2006.

/s/ Gary S. Miyamoto
JOHN S. NISHIMOTO
CALVIN E. YOUNG
GARY S. MIYAMOTO
STEVEN L. GOTO
Attorneys for Defendant
RAYMOND IWAMOTO