LYNCH ICHIDA THOMPSON KIM& HIROTA

TIMOTHY J. HOGAN 5312
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WHIRLPOOL CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation, et al.,<br><br>Defendants. | Civ. No. CV01 00187 MEA-BMK<br>(TORT AND RICO)<br><br>**WHIRLPOOL CORPORATION'S OPPOSITION TO DOCKET NO. 788 CIT'S MOTION IN LIMINE TO PRECLUDE USE OF AND ARGUMENT RE: TED PHELPS' AUGUST 11, 1999 EMAIL**<br><br>TRIAL<br>DATE: November 6, 2006<br>JUDGE: Honorable Marvin Aspen<br>NO HEARING DATE SET |

**WHIRLPOOL CORPORATION'S OPPOSITION TO DOCKET NO. 788 CIT'S MOTION IN LIMINE TO PRECLUDE USE OF AND ARGUMENT RE: TED PHELPS' AUGUST 11, 1999 EMAIL**

Comes now Plaintiff Whirlpool Corporation, by and through its undersigned counsel and hereby respectfully submits its opposition to Docket No. 788 CIT's Motion in Limine to Preclude Use of and Argument Re: Ted Phelps' August 11, 1999 Email (the "Motion").

It is quite clear that CIT does not want the jury to see the e-mail that is the subject of the instant Motion. The fact is, however, that a reasonable juror could find that the two individuals communicating through e-mail, Mr. Phelps and Mr. Cleland were CIT's agents. *See* Declaration of Timothy J. Hogan (the "Hogan Dec.") Exhibit "1," the CIT Agreement with Collateral Risk Management ("CRM"), evidencing that CRM's employee, Mr. Gary Cleland was acting under CIT's control, the self serving disclaimer in the agreement, notwithstanding.

Similarly, Mr. Phelps believed he was CIT's agent and said so to Mr. Bowling in June 1999. *See* Bowling Deposition Transcript taken herein on March 11, 2002 at Hogan Dec. Exhibit "2."

8. Question: "At this point was Mr. Phelps - - who
9. did Mr. Phelps appear to be working for to you, at least as far as
10. far as you understood it? Who did he tell you he was

working for?"
And you answered, "He told me he was working
officially for CIT, being paid by Glassman."
A. Yes.
Q. Do you recall that, sir?
A. Yes, I recall it now.

Deposition of Edwin Bowling taken in the instant case on March 11, 2003 at page 81:8-16. Hogan Dec. Exhibit "6."

A few moments later in his deposition Mr. Bowling testified as follows:

Q. Did Mr. Phelps ever say anything to you about who
he was working for?
Mr. Bush: Objection, asked and answered. He
already testified, he said he never said who he worked for.
Ms. Bronster: I believe that misstates his
testimony.
Q. (By Mr. Hogan) Answer the question, sir, if you
understand it?
A. I think he told me he reported to CIT, I think.
Q. And do you have any idea when that might have

18. been that he said that?

19. That would have been the last part of June.

Deposition of Edwin Bowling taken in the instant case on March 11, 2003 at page 83:8-19. Hogan Dec. Exhibit "2."

The statements contained in Mr. Phelps' email are not hearsay, may be imputed to CIT, and may be admitted for the truth of the matter asserted - that Kurt Glassman was about to knowingly engage in bank fraud. It is strong evidence that CIT, through knowledge imputed through its agents, was fully aware of the intent to commit bank fraud. CIT's agent's casual disregard of the seriousness of this issue is evidence that may be imputed to CIT to prove its conduct and its agreement to join the Glassman fraud, as well as to rebut the testimony of CIT's lending expert, Mr. Teich.

First, it is not necessary that CIT specifically authorize this statement if it is the statement of its agent within the scope of the agency. Even if Mr. Phelps were only found to be Glassman's agent, or his co-conspirator, the statement would be admissible as a statement of a co-conspirator.

Secondly, this statement is proof that Mr. Phelps was engaged in conduct that was inappropriate. CIT in opposition to Whirlpool's motions for summary judgment put forward proof that was meant to prove Mr. Phelps was not in any

way involved in any of the Glassman related misdeeds. CIT will likely do the same at trail. This evidence casts Mr. Phelps in a light that evidences his knowledge of the ongoing Glassman fraud and his apparent ratification of Glassman's conduct. At a minimum, telling it to Mr. Cleland of the inventory management company CIT hired is evidence of CIT's knowledge of the ongoing fraud on August 11, 1999 because that knowledge can be imputed to CIT through Mr. Cleland. This is relevant evidence and should be admitted. Despite the self serving disclaimer in the CRM agreement with CIT, the indicia of agency of agreement to the control of the principal (CIT) is evident from the agreement.

CIT acknowledges that the Court has ruled the principal issue in this case is whether "CIT joined the alleged conspiracy." *See* Memorandum in Support of Motion at p. 6. This evidence shows Mr. Phelps being comfortable enough with CIT's agent to feel safe when he joked about Kurt Glassman's ability to commit bank fraud. Mr. Phelps' e-mail casts CIT in a light that is no doubt troubling to CIT but nonetheless admissible in this proceeding.

Hawaii law provides for liberal admissibility of evidence in cases of fraud and conspiracy:

> Fraud opens wide the door for all fairly relevant evidence including evidence as to similar but unconnected facts in order to show systematically fraudulent intention on the part of the party sought to be charged.

> Great latitude should be accorded the admission of circumstantial evidence of this nature if in any reasonable manner it tends to establish a conspiracy or connects those aiding, advising, abetting or encouraging the conspiracy sought to be proved. It is no objection that the evidence sought to be introduced embraces numerous other transactions and extends over a prolonged period of time. The limits of admissibility rest in the sound discretion of the trial judge. The exercise of that discretion will not be disturbed where, such as here, it tends even in a remote degree to establish the ultimate facts sought to be proved.

*Hashimoto v. Halm*, 40 Haw. 354, 360-361 (Haw. 1953) (citations omitted).

CIT argues that the e-mail is not probative of its own conduct. Whirlpool disagrees. First, a reasonable juror could find that both Mr. Cleland and Mr. Phelps were CIT's agent and that this communication was made in the course of that relationship. Were Mr. Phelps making a joke to someone not connected to CIT about Mr. Glassman, that evidence, it could be argued, would not be probative of anything related to CIT. But here, Mr. Phelps is speaking to CIT's collateral agent, someone else under CIT's direct control at Maui Home Supply and MidPac. In this case, the ability of two agents to discuss openly such shockingly inappropriate conduct by Mr. Glassman, is more than adequate connection to CIT to make it probative and relevant to whether CIT joined the conspiracy. The jury should be permitted to determine whether CIT had engaged

in inappropriate conduct in regard to MidPac and Maui Home Supply..

For those reasons, the Motion should be denied.

DATED: Honolulu, Hawai’i, June 26, 2006.

/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff
WHIRLPOOL CORPORATION