# Exhibit 1

# INVENTORY MANAGEMENT SERVICE AGREEMENT

THIS AGREEMENT, made and entered into this 15th day of July, 1999, by and among COLLATERAL RISK MANAGEMENT, INC. (CRM), with its principal office at 1750 N. Collins Blvd., Suite 102, Richardson, Texas 75080 MidPac Lumber Co., Ltd. (COMPANY) with its principal office at 1001 Ahua Street, Honolulu, Hawaii. and The CIT Group / Credit Finance, Inc. (LENDER) with its principal office at 300 South Grand Avenue, Third Floor, Los Angeles, California.

WHEREAS, LENDER and COMPANY have requested CRM to provide its Inventory Management Service as outlined below on certain premises owned or leased by COMPANY; and

WHEREAS, CRM has agreed to provide its Inventory Management Service subject to the terms and conditions stated herein;

NOW, THEREFORE, in view of the premises and mutual considerations contained herein, the parties hereto agree as follows:

**1. CRM agrees:**

(a) To institute, supervise, control and maintain records on COMPANY's and CRM's premises, which are satisfactory for the performance of its obligations hereunder.

(b) To deliver to LENDER an initial Collateral Report based on a physical inventory certifying to the quantity and the value of the inventory specified by LENDER computed at values supplied by COMPANY and approved or otherwise designated or determined by LENDER, or both, and to provide LENDER additional Collateral Reports at periodic intervals agreed upon between LENDER and CRM.

(c) To comply with written instructions received and accepted by CRM, from LENDER specifying the manner in which COMPANY may remove inventory subject to LENDER's interest and to allow no further removals of such inventory by COMPANY when the limit set forth in the LENDER's instructions has been reached; and to permit further removals only upon the advice of the LENDER.

(d) To report to LENDER any instances of improper care or condition of the inventory which CRM may reasonably observe in the course of its regular inspections of the inventory or as revealed by CRM's agents, and to report to LENDER should the inventory be missing, lost or destroyed.

(e) That COMPANY may give instructions to the agents referred to in Paragraph 3.(d) hereof provided that such instructions do not conflict with CRM's instructions in any manner.

(f) To indemnify LENDER against loss suffered by LENDER as a result of a reasonable reliance upon CRM's Collateral Report(s) to the extent that CRM's material representations thereon are false or inaccurate or to the extent that the inventory shown thereon was false or inaccurate.

(g) That it is not the agent or employee of LENDER and is acting solely as an independent contractor. CRM agrees to indemnify and hold LENDER harmless, including reimbursing LENDER for its reasonable attorneys fees and costs, for any actions or inaction of CRM relating directly or indirectly to COMPANY, this Agreement, or the premises or inventory of COMPANY. CRM warrants and agrees to maintain professional liability insurance in an amount of not less than two million dollars in connection with CRM's duties hereunder, the COMPANY, and the premises of COMPANY.

**2. LENDER agrees:**

(a) To furnish to CRM and COMPANY instructions in written form describing the inventory subject to LENDER's interest and specifying the manner or amounts in which COMPANY may remove such inventory. Such written instructions shall be binding on CRM only upon written acknowledgment by CRM.

(b) That CRM shall have no responsibility or liability for the validity or priority of LENDER's security interest under the Uniform Commercial Code or the Bankruptcy Code.

(c) Except to the extent CRM receives such information from COMPANY, to disclose to CRM any information of a material adverse change in the financial condition of COMPANY within a reasonable time upon learning thereof.

(d) That CRM shall have no responsibility to determine or verify the actual market value of inventory as designated or approved by LENDER, and that CRM's liability herein shall be limited to the actual market values, loan values, the values CRM has been instructed to use by the LENDER, or LENDER's Actual Loss, whichever is lowest. In no event shall any liability incurred by CRM in providing its services hereunder exceed $1,000,000.00.

(e) That "Actual Loss" as used in Paragraph 2.(d) above, shall mean the amount of unreimbursed principal advances or purchase price, payment or deposit, exclusive of interest, attorneys' fees or other charges or penalties, made to COMPANY by LENDER in reasonable reliance upon material representations in Collateral Reports issued by CRM.

(f) That CRM shall have no liability for any loss suffered by LENDER which is occasioned by fraud or intentional wrongdoing on the part of COMPANY or COMPANY's employees, including those agents referred to in Paragraph 3.(d), except where CRM knew or should have known of such fraud or intentional wrongdoing.

3. **COMPANY agrees:**

(a) To extend full cooperation to CRM in connection with its requirements to perform its services and to fulfill COMPANY's obligations set forth herein.

(b) To not permit inventory to be removed except in accordance with terms of instructions issued by LENDER pursuant to Paragraph 2.(a) above and any delivery or removal of inventory in violation of said instructions shall constitute a default under the terms of the security agreement with LENDER.

(c) That CRM, at its sole option and discretion, shall be permitted to institute whatever control measures it deems necessary, including installing its own locks, to supplement COMPANY's control measures; that CRM may restrict all removals of inventory by any means CRM deems necessary including, but not limited to, the use of its own locks or the transfer of the inventory to other storage areas, all at COMPANY's cost and expense, if any of the following conditions occur:

(1) the removal of inventory would, in CRM's opinion, constitute a violation of LENDER's instructions;

(2) COMPANY fails to comply with its obligations hereunder.

(3) CRM's agent is not on the premises;

and that CRM shall not be responsible for any loss or damage of any kind or nature arising out of any action taken under this paragraph, or any other action taken by CRM occasioned by a violation of this Agreement by COMPANY.

(d) To lease or cause to be leased to CRM, sufficient space as may be required by CRM for the conduct of its service; to refer qualified personnel satisfactory to CRM to act as CRM's agents in properly conducting CRM's operations therein, and to take, compile and prepare, under CRM's supervision and direction, inventory reports in final form for presentation to CRM and/or LENDER, and the COMPANY agrees to certify as to the description, quantity, value and condition or, and title to inventory listed on such reports and the basis of any pricing set forth therein.

(e) That CRM and LENDER may disclose to each other any information in their possession relating to COMPANY's financial condition.

(f) That completion of this Agreement does not constitute a commitment on behalf of LENDER to extend credit to COMPANY.

(g) To furnish to CRM once each year as soon as practicable after the end of COMPANY's fiscal year and during each year, financial statements, including notes thereto, prepared in the regular course of COMPANY's business which accurately and completely reflect COMPANY's financial condition.

(h) To have CRM named as an additional insured as its interest may appear on all insurance policies carried by COMPANY covering the inventories on which CRM issues its Collateral Reports, and to waive all rights of subrogation against CRM under all insurance policies insuring in any way real or personal property of COMPANY, if the policies permit such a waiver, and if not, to obtain the insurer's consent thereto.

(i) That any amounts paid by LENDER under this Agreement, shall be charged to COMPANY's loan account with LENDER.

(j) That COMPANY shall have the sole responsibility for the care and condition of inventory and for the maintenance of safe and satisfactory storage conditions for such inventory, and COMPANY hereby holds CRM harmless from any damage to, or loss or shortage of, any inventory stored on COMPANY's premises or on premises which COMPANY leases or causes to be leased to CRM.

(k) All personnel referred to in Paragraph 3.(d) hereof are to take instructions solely from CRM in regard to additions and removals of all inventories for which CRM has issued its documents or has otherwise assumed liability.

(l) To make available to CRM and its agents any and all of its records which CRM deems necessary to examine in the course of its operations with the COMPANY and/or LENDER, and to allow CRM unrestricted access to COMPANY's premises during the term of this Agreement.

(m) To defend, indemnify and hold CRM harmless from and against any and all financial loss or any other loss, damage, claim, legal liability, or other expense including, but without limitation, attorneys' fees and interest expense resulting directly or indirectly from any acts or omissions of the COMPANY, its officers, agents, employees, or the agents refereed to in Paragraph 3.(e) hereof, whether such acts shall be consummated directly or in connivance with others.

(n) That in the event any agents appointed by CRM breach any of the terms and conditions of the Agency Agreement between CRM and such agent, COMPANY will take whatever action CRM deems necessary in order to assist CRM to correct such breach.

4. That CRM shall have no responsibility or liability for the contents of boxes, packages, or other containers which may be improperly marked, nor for the grade, quality, title, care or condition of the inventories on which it is certifying but shall be entitled to rely upon COMPANY's representations with respect thereto.

5. If COMPANY has interfered with CRM's activities or in any other way violates the terms of this Agreement, or the Billing Agreement, CRM shall have the right to terminate this Agreement by giving five (5) days advance written notice thereof to COMPANY and LENDER, or to suspend further certification. or both, and CRM and LENDER shall have the right to terminate this Agreement at any time by giving ten (10) days advance written notice thereof to all parties hereto. Except as hereinbefore provided, this Agreement shall continue in full force and effect for one (1) year from the date hereof, and thereafter for successive one (1) year terms unless any party gives to the others notice of intention to terminate at least ninety (90) days prior to the expiration of the then current term. No termination notice by COMPANY or LENDER shall become effective until the LENDER and COMPANY have executed and delivered to CRM a Release Agreement and all outstanding charges due CRM have been paid.

6. This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which shall together constitute one and the same instrument.

7. This Agreement shall be binding upon and inure to the benefit of the successors and assigns of the parties hereto.

8. This Agreement shall be governed by and construed under the laws of the State of California without regard to conflicts of law principles.

**Collateral Risk Management, Inc.**

By ____________________

Title ____________________

**The CIT Group/Credit Finance, Inc.**

By ____________________

Title ____________________

**MidPac Lumber Co., Ltd.**

By Kurt Ahlgren (signature)

Title PRESIDENT

# GUARANTEE AGREEMENT

In consideration of the execution by COLLATERAL RISK MANAGEMENT, INC. (CRM) of the Inventory Management Service Agreement (Agreement) with MidPac Lumber Co., Ltd. (COMPANY), we, the undersigned, as officers, agents, directors, or shareholders or partners, or as a person or persons otherwise interested in COMPANY obtaining the benefits of CRM's Inventory Management Service, hereby unconditionally agree jointly and severally, personally and individually, to defend, indemnify and hold CRM harmless from and against any and all financial loss or any other loss, damage, claim, legal liability or other expense including, but without limitation, attorney's fees and interest expense resulting directly or indirectly from any of the acts or omissions of COMPANY, its officers, agents, employees, or the agents referred to in Paragraph 3.(d) of the Agreement, whether such acts shall be consummated directly or in connivance with others.

It is agreed by the undersigned that this Guarantee Agreement shall remain in full force and effect notwithstanding any changes, amendments or modifications to said Agreement and leases, and the undersigned hereby waives the right to have notice of any such changes, amendments or modifications. The undersigned agree to provide CRM with a current financial statement annually or upon request by CRM.

It being further understood that the said Agreement will be executed by CRM only on the condition that this Agreement will be executed by the undersigned.

| | |
|---|---|
| ____________________ (An individual) | ____________________ (Witness) |
| ____________________ (An individual) | ____________________ (Witness) |
| ____________________ (An individual) | ____________________ (Witness) |