LYNCH ICHIDA THOMPSON KIM& HIROTA

TIMOTHY J. HOGAN 5312
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WHIRLPOOL CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation, et al.,<br><br>Defendants. | Civ. No. CV01 00187 MEA-BMK<br>(TORT AND RICO)<br><br>**WHIRLPOOL CORPORATION'S OPPOSITION TO DOCKET NO. 798 REGARDING CIT MOTION IN LIMINE TO PRECLUDE ARGUMENT THAT CIT ADMITTED TO TAKING $1 MILLION OF WHIRLPOOL'S COLLATERAL IN MAUI HOME SUPPLY**<br><br>TRIAL<br>DATE: November 6, 2006<br>JUDGE: Honorable Marvin Aspen<br>NO HEARING DATE SET |

**WHIRLPOOL CORPORATION'S OPPOSITION TO DOCKET NO. 798 REGARDING CIT MOTION IN LIMINE TO PRECLUDE ARGUMENT THAT CIT ADMITTED TO TAKING $1 MILLION OF WHIRLPOOL'S COLLATERAL IN MAUI HOME SUPPLY**

Comes now Plaintiff Whirlpool Corporation, by and through its undersigned counsel and hereby respectfully submits its opposition to Docket No. 798 Regarding CIT Motion in Limine to Preclude Argument That CIT Admitted to Taking $1 Million of Whirlpool's Collateral in Maui Inc. (the "Motion").

Contrary to CIT's Motion, Whirlpool has been able to quantify the amount of its conversion damages. It's the $1.0 million that CIT admitted was the amount of inventory at Maui in the Deposition of Mr. Hayes and was also represented in the audit findings of CIT's Paul Dybczak, *see* CIT Exhibit 2, excerpts. What CIT forgets, and obviously ignored in the summer of 1999, is that Whirlpool had a blanket security interest over the collateral at Maui Home, not just a purchase money secured interest in inventory Whirlpool sold to Maui Home. CIT goes on in an irrelevant and time consuming discussion of drop shipments and other things that have nothing at all to do with whether CIT took Whirlpool's collateral. CIT has no claim to any of the inventory at Maui and the Court has already ruled to that effect in its Memorandum Opinion and Order in regard to the Motions for Summary Judgment. Much of CIT's argument claims that if, in fact, MidPac

transferred the property to Maui, then CIT retained its security interests in the "MidPac" inventory because they weren't sales in the ordinary course of business. This position is directly contrary to CIT's earlier claim that, in fact, these were ordinary course transactions and CIT should now be estopped from arguing inconsistent positions and from arguing something contrary to what the Court has already decided.

CIT evidences from its Memorandum that it knew of shipments regarding sales from MidPac to Maui. It persists in claiming that these were shipments of "MidPac inventory" to Maui, although it has nothing to evidence MidPac's ownership except hearsay representations made by Mr. Glassman when CIT caught him. Whirlpool, on the other hand, has multiple invoices and account statements evidencing its sales to Maui Home. CIT's final claim is that, although it admits there was $1.0 million of Whirlpool collateral at Maui, that the net it received when it fenced the collateral was less than $1.0 million so it should be excused from its conversion because it didn't get a good price for the converted property. This is not the law of conversion and Whirlpool is allowed to have the reasonable value of its property paid as damages. The reasonable value is the value that CIT placed on it when it took control of it, not the value that it got after it ran Maui Home into the ground at a bust-out fire sale. The issue is simply whether CIT took

Whirlpool's collateral and how much was it worth at the time that it took it. The evidence that CIT cites in the Hayes Deposition as well as the Dybczak audit report clearly established the value of this collateral at $1.0 million. Because CIT had control of the collateral and the records of MidPac and Maui during this period, CIT cannot now claim that Whirlpool was somehow remiss from not uncovering the truth of facts that, up to now, have been withheld by CIT. For these reasons, the Motion should be denied.

Also worth noting, the Court earlier ruled that Whirlpool needed to show that MidPac took the proceeds from Maui Home. That conduct is apparently admitted in page 4 of the Memorandum in Support of CIT's Motion, where CIT admits that "a summary prepared by CIT's counsel staff of Maui Home Supply's daily sales report as well as Maui Home Supply's checks to MidPac and MidPac's deposit slips show that Maui Home Supply had a total net sales for July 26, 1999 through September 13, 1999 of $567,954.00 of which approximately $369,461,00 had been remitted to MidPac, citing its Exhibit "8." It goes on to state that "[a] Maui Home Supply sales report for December 11, 1999, showed a total remittance that was close to the summary's MidPac remittance figure: $377,987," citing its Exhibit 5. It makes one wonder what the other Maui Home Supply sales reports say for the period from September 14, 1999 through December 10, 1999.

Finally, the Court has already ruled that the trial will be bifurcated regarding damages. The Motion appears to be premature. CIT's admissions are however, relevant to its motive not only regarding conversion but as to fraud conspiracy and should be admitted.

DATED: Honolulu, Hawai'i, June 26, 2006.

/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff
WHIRLPOOL CORPORATION