LYNCH ICHIDA THOMPSON KIM& HIROTA

TIMOTHY J. HOGAN 5312
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WHIRLPOOL CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation, et al.,<br><br>Defendants. | Civ. No. CV01 00187 MEA-BMK (TORT AND RICO)<br><br>**WHIRLPOOL CORPORATION'S OPPOSITION TO DOCKET NO. 803 REGARDING RAYMOND IWAMOTO'S MOTION IN LIMINE NO. 12 TO EXCLUDE EVIDENCE OF WAREHOUSE RECEIPT FORMS**<br><br>TRIAL<br>DATE: November 6, 2006<br>JUDGE: Honorable Marvin Aspen<br>NO HEARING DATE SET |

**WHIRLPOOL CORPORATION'S OPPOSITION TO DOCKET NO. 803 REGARDING RAYMOND IWAMOTO'S MOTION IN LIMINE NO. 12 TO EXCLUDE EVIDENCE OF WAREHOUSE RECEIPT FORMS**

Comes now Plaintiff Whirlpool Corporation, by and through its undersigned counsel and hereby respectfully submits its Opposition to Docket No. 803 Regarding Raymond Iwamoto's Motion in Limine No. 12 to Exclude Evidence of Warehouse Receipt Forms (the "Motion").

Mr. Iwamoto apparently does not remember that the warehouse receipts he created, except for two related to F&J Movers (a warehouse located next to MidPac), evidence that MidPac was storing Maui Home Supply's goods and not the other way around. At least, that is what the story was on June 17, 1999 when, after getting off a call with CIT "re Spectrum" he began creating them. *See* Mr. Iwamoto's time and billing records, Declaration of Timothy J. Hogan Exhibit "1."

The jury can reasonably infer that the call from CIT alerted Mr. Iwamoto, by now a director of MidPac by his own choosing, that the fraud had been discovered. He then began to create the warehouse receipts, not to support the idea that the inventory squirreled away was all MidPac inventory subject to CIT's secured interest but, rather, most of the warehouse receipts evidence that MidPac and others were holding Maui Home Supply's inventory (Whirlpool's collateral). Days later, after CIT caught the Spectrum (Rene Costa) fax being sent to CIT from

Mr. Iwamoto's own fax machine, CIT flew to Hawaii for the June 23, 1999 meeting. Then the story changed.

These warehouse receipts are clearly relevant to the issue of Mr. Iwamoto's agreement to defraud under both fraud conspiracy and RICO. If Mr. Iwamoto claims these were not fraudulent when he drafted them, then these documents are evidence that "MidPac's" inventory located at F&J Movers and at MidPac was subject to Whirlpool's security interest because it was actually Maui Home Supply's goods that were transferred to MidPac in violation of Whirlpool's security interest.

These documents evidence that the story that CIT and, apparently now Mr. Iwamoto, both claim is true, that MidPac was selling to Maui Home Supply, is simply a fiction created on June 23, 1999. This is when CIT agreed with Kurt Glassman to pass the damages on to Whirlpool by seizing its collateral on Maui and deceiving it regarding what was really happening, and Mr. Iwamoto worked feverishly with CIT to create a false paper trail to create a defense to the instant case. There is no logical relevance basis to exclude these warehouse receipts because they are clearly relevant evidence.

Hawaii law provides that the Court should permit this type of evidence:

> Fraud opens wide the door for all fairly relevant evidence including evidence as to similar but unconnected facts in

> order to show systematically fraudulent intention on the part of the party sought to be charged.
>
> Great latitude should be accorded the admission of circumstantial evidence of this nature if in any reasonable manner it tends to establish a conspiracy or connects those aiding, advising, abetting or encouraging the conspiracy sought to be proved. It is no objection that the evidence sought to be introduced embraces numerous other transactions and extends over a prolonged period of time. The limits of admissibility rest in the sound discretion of the trial judge. The exercise of that discretion will not be disturbed where, such as here, it tends even in a remote degree to establish the ultimate facts sought to be proved.
>
> *Hashimoto v. Halm*, 40 Haw. 354, 360-361 (Haw. 1953) (citations omitted).

In the instant case, the warehouse receipts play a critical role in the presentation of a time-line related to Mr. Iwamoto's conduct after he learned of what he called the "double invoice issue" on or about June 15, 1999 to the date that CIT and Mr. Iwamoto began to work co-operatively against Whirlpool starting on or about June 18, 1999 when CIT sent back to Mr. Iwamoto the Spectrum (Rene Costa) fax related to the over $800,000 false Spectrum receivable.

Because Mr. Iwamoto claims he was simply assisting his client, and he does not claim the warehouse receipts are false, he has to admit that they are circumstantial evidence of what Kurt Glassman actually believed was the status of the inventory. The fact that just about one week later, after meeting with the CIT

fraud team, Mr. Iwamoto changed his tune is admissible evidence of CIT's agreement to join the Glassman fraud.

For that reason the Motion should be denied.

DATED: Honolulu, Hawai'i, June 26, 2006.

/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff
WHIRLPOOL CORPORATION