# Exhibit 1

Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys At Law
A Law Corporation

PAUL ALSTON 1126-0
LOUISE K. Y. ING 2394-0
CARL D. SOTO 7809-0
18th Floor, Pacific Tower
1001 Bishop Street
Honolulu, Hawai'i 96813
Telephone: 524-1800
Facsimile: 524-4591
palston@ahfi.com
ling@ahfi.com
csoto@ahfi.com

Attorneys for Defendant/Cross-claimant
THE CIT GROUP/BUSINESS CREDIT, INC.

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 16 2003

at 2 o'clock and 45 min. ___M.
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, Inc., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, | Civil No. CV 01 00187 DAE BMK<br>(Tort and RICO)<br><br>NOTICE OF HEARING MOTION; **CIT GROUP/ BUSINESS CREDIT, INC.'S MOTION TO COMPEL FURTHER INDIVIDUAL AND 30(B)(6) DEPOSITION TESTIMONY FROM CARL SMITH;** *(caption continued on next page)*<br>DATE: ~~JAN 24 2003~~<br>TIME: 2:00 pm<br>JUDGE: ~~BARRY M. KURREN~~<br>Trial Date: May 13, 2003 |

216053-1/6527-1

| | | |
|---|---|---|
| CORPORATIONS OR OTHER ENTITIES 1-20, | ) | MEMORANDUM IN SUPPORT OF MOTION TO COMPEL; DECLARATION OF CARL D. SOTO; EXHIBITS "A" - "F"; CERTIFICATE OF SERVICE |
| Defendants, | ) | |
| and | ) | |
| CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA, | ) | |
| Additional Crossclaim Defendants. | ) | |

## NOTICE OF HEARING MOTION

TO: TIMOTHY J. HOGAN, ESQ.
Lynch Ichida Thompson & Kim
1132 Bishop Street, Suite 1405
Honolulu, Hawai`i 96813
**Attorney for Plaintiff**

MARGERY S. BRONSTER, ESQ.
JEANNETTE E. HOLMES, ESQ.
Bronster Crabtree & Hoshibata
2300 Pauahi Tower
1001 Bishop Street
Honolulu, Hawai`i 96813
**Attorneys for Defendants**
**Edwin Bowling and Frances Haller-Bowling**

JOHN S. NISHIMOTO, ESQ.
CALVIN E. YOUNG, ESQ.
Ayabe Chong Nishimoto Sia & Nakamura
Suite 2500, Pauahi Tower
1001 Bishop Street
Honolulu, Hawai`i 96813
**Attorneys for Defendant Raymond S. Iwamoto**

TED N. PETTIT, ESQ.
Case Bigelow & Lombardi
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 2600
Honolulu, Hawai`i 96813
**Attorney for Defendants Michael Clifford, CGBN, Inc. and CG Development, Inc.**

ROBERT E. BADGER, ESQ.
Suite 702, Topa Financial Center, West Tower
745 Fort Street
Honolulu, Hawai`i 96813
**Attorney for Defendants Kurt Glassman and Renee K. Costa**

ERIC J. GLASSMAN, ESQ.
Mennemeier, Glassman & Stroud LLP
980 9th Street, Suite 1700
Sacramento, California 95814
**Attorney for Defendant Kurt Glassman**

PLEASE TAKE NOTICE that the following CIT GROUP/ BUSINESS CREDIT, INC.'S MOTION TO COMPEL FURTHER INDIVIDUAL AND 30(B)(6) DEPOSITION TESTIMONY FROM CARL SMITH will be heard before the Honorable BARRY M. KURREN in his courtroom in the United States Courthouse, 300 Ala Moana Boulevard, Honolulu, Hawai'i on JAN 24 2003, at 2:00 p.m., or as soon thereafter as counsel can be heard.

DATED: Honolulu, Hawaii, January 15, 2003.

PAUL ALSTON
LOUISE K.Y. ING
CARL D. SOTO
Attorneys for Defendant/Cross-claimant
THE CIT GROUP/BUSINESS CREDIT, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, Inc., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Crossclaim Defendants. | Civil No. CV 01 00187 DAE BMK (Tort and RICO)<br><br>**CIT GROUP/BUSINESS CREDIT INC.'S MOTION TO COMPEL FURTHER INDIVIDUAL AND RULE 30(B)(6) DEPOSITION TESTIMONY FROM CARL SMITH** |

**CIT GROUP/BUSINESS CREDIT, INC.'S MOTION TO COMPEL FURTHER INDIVIDUAL AND RULE 30(B)(6) DEPOSITION TESTIMONY FROM CARL SMITH**

Defendant CIT Group/Business Credit, Inc. ("CIT"), seeks an order compelling Whirlpool Corporation ("Whirlpool") to produce its employee Carl Smith ("Smith") for further deposition testimony in both his individual capacity and in his capacity as Whirlpool's Rule 30(b)(6) corporate designee. CIT moves for an order to compel on the ground that, as a matter of law, it is entitled to further depose Smith in his Rule 30(b)(6) capacity. CIT also moves to depose Smith in his individual capacity on the grounds that during the course of Smith's prior deposition held on December 17 and 21, 2002, Whirlpool engaged in the following misconduct:

1. Smith improperly asserted the attorney-client privilege in response to questions that sought factual information;
2. Smith was inadequately prepared to testify and he repeatedly claimed to have no knowledge of factual issues that directly pertained to Whirlpool's allegations against CIT and other Defendants;
3. Smith expressly admitted that he had taken no steps to verify the accuracy of the interrogatory answers he had signed on behalf of Whirlpool, however, after consulting with his attorneys Smith recanted his admission and then testified to having taken steps to verify the accuracy of the interrogatory answers;
4. Smith also recanted all prior testimony regarding his personal

knowledge of matters raised in Whirlpool's interrogatory answers, and he further testified that he would need to hear each question again in order to give accurate testimony;

5. Smith terminated his deposition before CIT had an opportunity to re-question him in his individual capacity on the testimony he had recanted, and before CIT had the opportunity to ask any questions of Smith in his Rule 30(b)(6) capacity.

***

As a result of these discovery violations Whirlpool must be compelled to produce Smith again so that CIT may question him further in his individual capacity, and also in his capacity as Whirlpool's Rule 30(b)(6) designee. Additionally, Whirlpool must be admonished to prepare Smith adequately – or any other corporate designee Whirlpool may appoint – to provide knowledgeable testimony in response to CIT's Rule 30(b)(6) deposition topics. CIT has met and conferred with Whirlpool regarding this discovery dispute, but informal negotiations have failed to resolve this matter adequately.

This motion is brought pursuant to Fed. R. Civ. P. Rules 7, 26, 30 and 37, and is based upon the attached memorandum, the declaration of Carl D. Soto, the files and records herein, and such further matters that may be presented during

the hearing of this motion.

DATED: Honolulu, Hawaiʻi, January 15, 2003.

PAUL ALSTON
LOUISE K.Y. ING
CARL D. SOTO
Attorneys for Defendant/Cross-claimant
THE CIT GROUP/BUSINESS CREDIT, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, Inc., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Crossclaim Defendants. | Civil No. CV 01 00187 DAE BMK (Tort and RICO)<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL** |

## TABLE OF CONTENTS


I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

A. CIT Is Entitled to Depose Smith in His Rule 30(b)(6) Capacity . . . . . . . . . . . . . . . . . . . . . . . 11

B. Smith Impeded or Delayed His Individual Examination . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1. Smith Improperly Asserted the Attorney-Client Privilege When Asked About Relevant Factual Matters . . . . . . . . . . . . . . . . . . . . . . . 14

2. Smith Recanted His Prior Testimony. . . . . . . . . . . . . . 16

3. Smith Was Improperly Prepared . . . . . . . . . . . . . . . . . 17

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bleecker v. Standard Fire Insurance Co.*,
130 F. Supp. 2d 726 (E.D.N.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Calzaturficio S.C.A.R.P.A. S.P.A. v. Fabiano Shoe Co., Inc.*,
201 F.R.D. 33 (D. Mass. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Casson Const. Co., Inc. v. Armco Steel Corp.*, 91 F.R.D. 376
(D. Kan. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Nutmeg Insurance Co. v. Atwell, Vogel, & Sterling*, 120 F.R.D. 504
(W.D. La. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494
(D. Md. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Protective National Insurance Co. of Omaha v. Commonwealth Insurance Co.*, 137 F.R.D. 267
(D. Neb. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16

*Quantachrome Corp. v. Micromeritics Instrument Corp.*,
189 F.R.D. 697 (S.D. Fla. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Shepard v. ABC*, 62 F.3d 1469 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 17

*Starlight Intern. Inc. v. Herlihy*, 186 F.R.D. 626
(D. Kan. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Taylor*, 166 F.R.D. 356 (M.D.N.C. 1996) . . . . . . . . . . . 14, 18, 20

## STATUTES

F.R.C.P. Rule 30(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 8, 9, 10, 11, 12
13, 14, 15, 16, 17, 18, 19, 20, 21

F.R.C.P. Rule 33(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL

## I. INTRODUCTION

On December 17 and 21, 2002, Whirlpool employee Carl Smith was deposed in his individual capacity and in his capacity as Whirlpool's FRCP Rule 30(b)(6) designee. Smith has been employed with various Whirlpool entities for over 29 years. He currently holds the titles of National Manager of Trade Partner Financial Services, and Compliance Co-ordinator for Whirlpool's Money Laundering Prevention Program. In addition to being one of Whirlpool's Rule 30(b)(6) designees, Smith was also the corporate representative designated by Whirlpool to sign and verify its answers to interrogatories that were propounded by CIT.

Notwithstanding his designations as one of Whirlpool's Rule 30(b)(6) designees and the corporate representative charged with verifying Whirlpool's interrogatories – Smith provided little useful testimony during his depositions. More often than not, when asked to provide information regarding Whirlpool's allegations against CIT or other defendants, Smith either asserted the attorney-client privilege or claimed to have no personal knowledge. Smith also claimed to have no personal knowledge of the assertions made in the interrogatory answers he signed on behalf of Whirlpool. In fact, at one point during his deposition Smith expressly admitted to not having done any investigation or verification of

Whirlpool's answers. Shortly after making this statement (and after consulting with his counsel), Smith recanted his admission. He also recanted all prior testimony he had given on the extent of his personal knowledge – or lack thereof – concerning Whirlpool's interrogatory answers. Smith now claims to have taken steps to verify Whirlpool's answers. He also states that he needs each question concerning his knowledge of Whirlpool's interrogatory answers asked again in order to determine what personal knowledge he had on each subject. In other words, Smith himself states that he needs to be re-questioned on his prior testimony.

CIT was denied the opportunity to do so. Smith terminated his deposition before CIT could question him further in his individual capacity. Nor was CIT ever given the opportunity to pose any questions to Smith in his capacity as Whirlpool's Rule 30(b)(6) designee. As a result of these tactics, CIT has been unable to gain information to which it is entitled in order to properly prepare its defenses. Whirlpool must be compelled to present Smith again and he must testify fully as to any facts of which he has personal knowledge. Whirlpool must also be compelled to *adequately prepare* Smith, or any other corporate designees, to provide substantive testimony regarding the topics identified in CIT's Rule 30(b)(6) deposition notice.

## II. FACTS

On November 8, 2002, CIT served an amended notice of Whirlpool's deposition pursuant to FRCP Rule 30(b)(6). (Exhibit "A"). CIT identified 30 specific topics for the deposition. On November 13, 2002, Whirlpool designated Carl Smith as its Rule 30(b)(6) designee for 22 of the deposition topics listed by CIT.[1] (Exhibit "B") Defendant Raymond Iwamoto then noticed the taking of Smith's deposition in both his individual capacity and in his capacity as Whirlpool's Rule 30(b)(6) designee. (Exhibit "C"). In addition to being individually deposed and also being designated as a Rule 30(b)(6) representative, on December 12, 2002, Smith also verified and signed Whirlpool's answers to CIT's interrogatories. (Exhibit "D").

Smith's deposition was held on December 17, and 21, 2002. During the course of his two days of deposition testimony Smith repeatedly asserted the attorney-client privilege when asked to provide factual information relevant to Whirlpool's allegations against CIT and other defendants. For example, Smith refused to respond to a line of questioning regarding possible money laundering investigations conducted by Whirlpool:

---

[1]Whirlpool objected to the scope and wording of CIT's Rule 30(b)(6) deposition notice and filed a motion for protective order. Whirlpool's motion was granted in part and denied in part. Thereafter, on December 4, 2002, CIT served a second amended Rule 30(b)(6) deposition notice. Whirlpool, however, has never filed an amended designation.

Q. Can you tell me whether or not, to your knowledge, any transaction...fits into the category of red flag transactions for money laundering purposes in Whirlpool's view?
A. I'm unable to answer that for attorney-client privileged information.
Q. All right. Would it be fair to say that prior to 2000, the year 2000, that you were not aware of any 'red flag' transactions pertaining to Maui Home Supply and MidPac Lumber Company that would have raised in your mind, money laundering issues?
A. Again, I don't believe I can answer that for divulging attorney-client privileged information.

***

Q. During the course of your involvement in any investigation Whirlpool has conducted with respect to any money laundering transaction, have you identified any individuals that you believe were involved in those transactions ?
A. Are we talking about Maui/MidPac, or are we talking about a broader scale?
Q. We're only talking about Maui Home Supply and MidPac.
A. I'm unable to answer that because it would be revealing attorney-client privileged information.

Smith deposition, Vol. 1, pp. 24:20-25, 25:1-9, 29:7-17 (Exhibit "E").

Smith also asserted the attorney-client privilege when asked about the following topics:

- Information gathered by Whirlpool pertaining to payments by Maui Home Supply and MidPac of each other's invoices. Smith depo, p.151:10-20 (Exhibit "E");

- Changes in Whirlpool's "assessment" of its practices of billing MidPac for goods shipped to Maui Home Supply and vice-versa. *Id.* at p. 161:7-10 (Exhibit "E");
- Information pertaining to Whirlpool's allegation that CIT converted Whirlpool's inventory at Maui Home Supply. *Id.* at pp. 241:21-25, 242:1 (Exhibit "E");
- CIT's alleged involvement in MidPac and Maui Home Supply's cessation of payments to Whirlpool. *Id.* at p. 255:5-9 (Exhibit "E").
- Information pertaining to alleged phone calls between members of the alleged RICO enterprise. *Id.* at pp. 320 - 322 (Exhibit "E");
- Information pertaining to Whirlpool's factual investigation of its allegation that CIT entered into an agreement with the RICO enterprise to permit a bust-out of MidPac and Maui Home Supply. *Id.* at pp. 325:1-25, 326:1.

***

Smith was questioned at length by CIT's counsel about his personal knowledge of Whirlpool's answers to interrogatories propounded by CIT. Smith repeatedly asserted, however, that he had no personal knowledge about the assertions raised in Whirlpool's answers. For instance:

Q. Going on to [interrogatory] no. 6, directing your

attention to the third line. It says, "Ted Phelps was CIT's agent with regard to the Midpac matter." Do you see that?

A. Pardon me. Which question is this again?

Q. No. 6, the third line. And I'm looking at part of the sentence, which says – I'll go back a little further – "the evidence will show that Ted Phelps was CIT's agent with regard to the MidPac matter." Do you see that?

A. Correct.

Q. Do you have any personal knowledge of that assertion?

***

A. I have no personal knowledge of that. The Whirlpool Complaint probably best describes it.

Q. You're talking about the complaint that was filed in this lawsuit?

A. Yes

Q. With respect to the next sentence, part of which reads "Mr. Phelps acted as a conduit for other CIT agents directing Mr. Phelps to misrepresent many material facts." Do you have personal knowledge of that statement?

A. I do not have personal knowledge, no.

Smith depo., pp. 214:14-25, 215:1-16. (Exhibit "E").

Smith went on to deny any personal knowledge of all or parts of the assertions made in Whirlpool's interrogatory answers no.s 7, 10, 12, 13, 14, 16, 18, 22, and 23. *Id.* at 224 - 243 (Exhibit "E"). Confronted with Smith's lack of personal knowledge on almost all of Whirlpool's interrogatory answers, CIT's counsel pointedly asked Smith if he had even bothered to take any steps to verify Whirlpool's answers. Smith candidly answered – no:

Q. Given your lack of knowledge on many of these interrogatories, what is your qualification for verifying

or being able to verify the answers to interrogatories?

***

A. I'm sorry. I'm unable to answer your question.
Q. Why are you unable to answer? You don't know the answer or you-
A. I don't know the answer.
Q. Okay. Have you taken any steps to verify the accuracy of the answers to these interrogatories...?
A. No.

*Id.* at 244:10-24.

This exchange occurred at 5p.m. and was immediately followed by a brief recess. During the recess Smith consulted with his counsel and upon returning to the deposition Smith recanted his admission:

CIT: Mr. Smith has informed us that he has some additions to his answers before the break based on discussions with his counsel. Mr. Smith?
Smith: Okay...As far as the accuracy of the answers to the interrogatories, I have reviewed those, I have talked with Whirlpool employees, I have reviewed documents pertaining to those, and I have spoken with both in-house and external counsel about these. So, yes, I do believe and have knowledge that the answers are correct.

*Id.* at 245:6-22 (Exhibit "E").

Smith then went on to recant _all_ of his prior testimony regarding his personal knowledge of Whirlpool's interrogatory answers:

Q. Mr. Smith, with respect to your statement after the break, that you were able to verify the answers to

interrogatories based on reviewing documents and talking to Whirlpool employees and counsel...does that change any of the answers you gave me over the last two hours and a half when we went through each of those interrogatories, when I asked you about your personal knowledge?

A. I would have to hear all the questions again to be able to answer that completely. I don't think so. But, without hearing the questions again, I don't believe I can answer that.

*Id.* at pp. 250:19-25, 251:1-8 (Exhibit "E").

The deposition concluded an hour later with the understanding that Smith would be produced again for further individual and Rule 30(b)(6) deposition testimony on December 21, 2002. On December 21, Smith was deposed in his individual capacity by defendants Edwin and Francis Haller Bowling, and Michael Clifford. Defendant Raymond Iwamoto deposed Smith in his capacity as Whirlpool's Rule 30(b)(6) designee for two hours. The deposition ran from 9 a.m. to 6:30 p.m. At 6:30 p.m., Whirlpool's counsel announced that he was terminating the deposition. Rule 30(b)(6) deposition of Carl Smith, pp. 57-58 (Exhibit "F"). The deposition was terminated before CIT had an opportunity to re-question Smith regarding his recanted testimony, or to ask Smith any questions in his Rule 30(b)(6) capacity. Accordingly, CIT (as well as defendants Raymond Iwamoto and Michael Clifford) reserved the right to recall Smith for further deposition testimony. *Id.* At 58-59 (Exhibit "F"). Whirlpool has refused to

produce Smith again.

To date, CIT estimates there has been approximately 5.5 hours of Rule 30(b)(6) testimony from Whirlpool's designated representatives.[2] CIT requires approximately two to three more hours of Rule 30(b)(6) testimony from Smith.

Additionally, the 15 deponent per side limit previously set by this court may also need to be expanded at some point. According to the FRCP each person designated under Rule 30(b)(6) should be considered a separate deponent. Whirlpool has designated four of its employees as its Rule 30(b)(6) representatives and Defendants have already scheduled or identified another 20 deponents. Unfortunately, Whirlpool has refused to provide Defendants any indication of the depositions it plans to notice. As a result, defendants are unable to determine whether their deponent list overlaps with any of Whirlpool's depositions.[3]

On January 13, 2002, the attorneys for CIT and Whirlpool met and conferred in an effort to reach an agreement to produce Smith for further

---

[2]Mr. Alex Holton was deposed in his Rule 30(b)(6) capacity for 3 hours; Mr. Ernie Matlock's Rule 30(b)(6) testimony ran ½ hour; and Mr. Smith has been deposed in his 30(b)(6) capacity for 2 hours. *See* declaration of Carl D. Soto.

[3]CIT has not met and conferred with Whirlpool on the issue of expanding the number of depositions per side, and CIT is not moving for such an order in this motion. Rather, CIT brings this issue to the Court's attention because it is intertwined with the issues raised in the instant motion.

deposition testimony; however, the parties' informal efforts failed to resolve this discovery dispute. (*See* declaration of Carl D. Soto). CIT now moves to compel Smith's production.

## III. ARGUMENT

Whirlpool asserts that it is unreasonable and harassing to expect Smith to testify again given that he has already been deposed for over 14 hours. Whirlpool ignores the fact that Smith is being deposed in two separate capacities – individually and as Whirlpool's Rule 30(b)(6) designee. Only two hours have been spent deposing Smith in his Rule 30(b)(6) capacity. As for the amount of time that has been purportedly spent deposing Smith in his individual capacity – much of this time was given over to Smith having to review documents he should have read *prior* to his deposition.

Moreover, Whirlpool has filed an 80 page complaint that raises a bewildering host of allegations including fraud, fraud conspiracy and civil RICO conspiracy claims against seven separate defendants. The complexity of these allegations alone merit a substantial extension of time beyond the seven hours that depositions are normally limited to.

Whirlpool's misconduct further warrants an extension of time beyond the seven hour limit. Smith was inadequately prepared to testify on relevant matters, and his reversal of testimony and improper assertions of the attorney-

client privilege impeded and delayed the examination. Under these circumstances additional time should be allowed and Whirlpool must be compelled to produce Smith again for further examination in both his individual capacity and his capacity as Whirlpool's Rule 30(b)(6) designee.

### A. CIT Is Entitled to Depose Smith in His Rule 30(b)(6) Capacity.

Smith has been deposed for approximately 14 hours. Of that total only two hours were Rule 30(b)(6) testimony. Whirlpool takes the position that, in addition to Smith, it has already produced two other designees in response to CIT's Rule 30(b)(6) deposition notice. According to Whirlpool's calculations when the Rule 30(b)(6) deposition testimony of these various designees is totaled, Defendants have only one hour left out of their allotted seven hour maximum. CIT disagrees with Whirlpool's calculations. According to CIT's count, to date, only 5.5 hours of Rule 30(b)(6) deposition testimony has been taken. In any event, Whirlpool's position is simply unreasonable. Smith's Rule 30(b)(6) deposition should be allowed to exceed the aggregated seven hours.

This is a fact intensive multi-party case spanning two years, involving several corporations, dozens of witnesses, and tens of thousands of documents. It is inherently the type of case that warrants an extension of the seven hour time limit: "In multi-party cases, the need for each party to examine the witness may

warrant additional time..." Fed R. Civ. P. 30, advisory committee's note to the 2000 amendment (West Supp. 2002). In view of the complexity of this case Whirlpool should be compelled to produce Smith for several more hours of Rule 30(b)(6) testimony.

Moreover, according to the official advisory committee notes to the 2000 Amendment to Rule 30, parties should not aggregate the Rule 30(b)(6) depositions of different designees to reach the seven hour cut-off: "For purposes of this [seven hour] durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a _separate_ deposition." *Id.*, advisory committee's note to the 2000 amendment (West Supp. 2002) (emphasis added). Because Smith has only testified for two hours in his Rule 30(b)(6) capacity, as a matter of law, Defendants are entitled to at least five more hours of Rule 30(b)(6) deposition testimony from him.

The parties to this lawsuit initially assumed that the Rule 30(b)(6) depositions of Whirlpool's various representatives had to be aggregated together in calculating the seven hour time limit. Whether the depositions of Whirlpool's Rule 30(b)(6) designees are treated as an aggregate deposition or separate ones, the point is the same: flexibility in time limits or deponent limits is required because of the complex nature of the case and Mr. Smith's central role as a Whirlpool witness. The aggregation approach has simply proved to be

unworkable. Good faith attempts have been made to parse out slivers of time to each Defendant to depose each designated Rule 30(b)(6) representative. Unfortunately, this effort at 'time sharing' did not allow enough time for each Defendant to adequately examine the deponent. As previously noted, Smith has been designated as Whirlpool's representative in 22 of the 30 topics identified in CIT's Rule 30(b)(6) deposition notice. He has also verified Whirlpool's interrogatory answers. Clearly, Smith is a key witness and CIT's efforts in developing its defenses will be seriously hampered if it is not allowed to depose him. CIT is entitled to Smith's testimony and Whirlpool must be compelled to produce him for further Rule 30(b)(6) testimony.

### B. Smith Impeded or Delayed His Individual Examination.

Whirlpool claims Smith has already been deposed in his individual capacity for approximately 12 hours and that it is unreasonable and harassing to expect him to submit to further individual examination. CIT disagrees. The seven hour time limit specified in FRCP 30(d)(2) may be extended "for a fair examination of the deponent or if the deponent...impedes or delays the examination." Fed. R. Civ. P. 30(d)(2). Smith impeded and delayed his individual deposition by improperly asserting the attorney-client privilege, by recanting prior testimony, and by being poorly prepared.

### 1. Smith Improperly Asserted the Attorney-Client Privilege When Asked About Relevant Factual Matters.

Smith repeatedly asserted the attorney-client privilege when asked to provide factual information relevant to Whirlpool's allegations against CIT and other defendants. This was improper; regardless of how Smith obtained this information he must disclose it. "There is simply nothing wrong with asking for facts from a deponent even though those facts may have been communicated to the deponent by the deponent's counsel." *Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 280 (D. Neb. 1989) (rejecting corporation's argument that Rule 30(b)(6) representative could not testify about facts communicated to her by corporation's lawyers). Likewise, "[c]ourts have consistently held that the work-product concept furnishes no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he has learned such facts, or the existence of documents, even though the documents themselves may not be subject to discovery." *Casson Const. Co., Inc. v. Armco Steel Corp.*, 91 F.R.D. 376, 385 (D. Kan. 1980) (quoting 8 Charles A. Wright et al., *Federal Practice and Procedure* § 2023 (1970 & Supp. 1978)). *Accord United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996) (Rule 30(b)(6) deponent required to testify about facts within the corporation's knowledge as well as corporation's subjective

beliefs and opinions).

The case of *Nutmeg Ins. Co. v. Atwell, Vogel, & Sterling*, 120 F.R.D. 504 (W.D. La. 1988) is on point. In *Nutmeg*, a Rule 30(b)(6) corporate representative claimed that his sole source of information was provided by the corporation's attorney. When questioned about the facts underlying the basis of the lawsuit, the corporate representative was instructed not to answer based on attorney-client privilege and the work-product doctrine. The court rejected the privilege claims and ordered the party either to produce a more qualified representative with personal knowledge or to redepose the original representative.

The *Nutmeg* court concluded that so long as questions that implicated plaintiff's counsel's mental impressions were avoided: "Defendant's counsel may inquire into the substance of the witness's knowledge concerning matters relevant to the subject matter of this action *regardless of whether the knowledge was at some time discussed with counsel*." *Id.* at 509 (emphasis added). *See also Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 278 (D. Neb. 1989) (rejecting as "plainly wrong" the position that Rule 30(b)(6) representative could not testify about what had been communicated to her by corporation's lawyers).

Here, Smith was designated by Whirlpool to sign and verify its interrogatory answers. Yet he repeatedly asserted the privilege in response to

questions seeking factual information about these answers, and other matters that are undeniably relevant to Whirlpool's allegations. For instance, Defendants' questions about investigations conducted by Whirlpool regarding money laundering at MidPac and MHS go directly to Whirlpool's RICO allegation of money laundering. The questions pertaining to payments by MidPac and MHS of each other's debts are relevant to Whirlpool's conversion claims. Questions probing any factual basis for Whirlpool's claims of conversion and RICO conspiracy are obviously directly related to those claims. Regardless of whether Smith was being questioned in his individual capacity or as Whirlpool's Rule 30(b)(6) designee, *Nutmeg* and *Protective Nat'l Ins. Co. of Omaha* plainly instruct that Smith's assertion of the attorney-client privilege in response to these questions was improper. Smith impeded and delayed his individual deposition by improperly asserting the privilege and he must be compelled to testify again in his personal capacity as to these matters.

**2. Smith Recanted His Prior Testimony.**

Smith further impeded and delayed his individual deposition by explicitly repudiating significant portions of his prior deposition testimony. FRCP 33 permits a corporate representative to verify the corporation's answers to interrogatories without personal knowledge of every response "by furnishing such information as is available to the party." Fed. R. Civ. P. 33(a). However, "the

representative *must have a basis* for signing the responses and for thereby stating on behalf of the corporation that the responses are accurate." *Shepard v. ABC*, 62 F.3d 1469, 1482 (D.C. Cir. 1995) (emphasis added). Smith explicitly admitted to having taken no steps to verify the accuracy of interrogatory answers he signed on behalf of Whirlpool.

This amounts to a significant omission on Whirlpool's part that, if true, could completely invalidate Whirlpool's interrogatory responses. Immediately after making this troubling admission Smith consulted with his counsel and then completely reversed his testimony. Smith now testifies that he has in fact taken steps to verify Whirlpool's interrogatory answers. Not only did he contradict himself, he then went on effectively to repudiate *all* of his prior testimony about any knowledge of the bases for Whirlpool's interrogatory answers. Smith Depo., p. 251:4-8 (emphasis added) (Exhibit "E").

According to his own testimony Smith must be re-questioned regarding his knowledge of Whirlpool's interrogatory answers. CIT must be given the opportunity to do so, and Whirlpool must be compelled to produce Smith for further individual deposition questioning.

**3. Smith Was Improperly Prepared.**

Smith also impeded and delayed his individual deposition by not being adequately prepared to testify as to substantive matters. FRCP Rule

30(b)(6) requires a corporation to designate persons to "testify as to matters known or reasonably available to the organization." In order to satisfy this obligation a corporation must do more than "present[] a human body to speak on the corporation's behalf." *Quantachrome Corp. v. Micromeritics Instrument Corp.*, 189 F.R.D. 697, 699 (S.D. Fla. 1999) (granting motion to compel and sanctions). Rather, "[t]he law is well established that a 30(b)(6) deponent does have an *affirmative obligation to educate himself* as to matters regarding the corporation." *Calzaturficio S.C.A.R.P.A. S.P.A. v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33, 36 (D. Mass. 2001) (granting motion to compel) (emphasis added).

To fulfill this affirmative duty, the corporate representative needs to review documents, to confer with other corporate agents and employees, and to take steps to understand the full limits of the corporation's knowledge about the pertinent issues. The corporation must prepare its representative "to the extent matters are reasonably available, whether from documents, past employees, or other sources." *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996). This affirmative duty applies even if the documents are voluminous and review is burdensome. *See Fabiano Shoe Co.*, 201 F.R.D. at 37. Even where preparation is time consuming or complicated, "a party does not meet its obligations under Rule 26 or 30(b)(6) by figuratively 'throwing up its hands in a gesture of helplessness.'" *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 504-5 (D.

Md. 2000) (granting sanctions).

A lawyer cannot carry the representative's burden by shaping the representative's views on behalf of the corporation. *See Quantachrome Corp.*, 189 F.R.D. at 699 ("Testimony taken during a deposition is to be completely that of the deponent, not a version of the testimony which has been edited or glossed by the deponent's lawyer."). In *Starlight Intern. Inc. v. Herlihy*, 186 F.R.D. 626, 636 (D. Kan. 1999), the court concluded that the corporation's representative was not adequately prepared to testify at the Rule 30(b)(6) deposition. *Id.* at 639. The deponent made no inquiries on his own about the relevant topics. He made no effort to contact the owner, officer, or director of the pertinent corporate entities. He did not review his own files. Instead, the representative's sole means of preparation was speaking with counsel and reviewing previously produced documents supplied by the lawyers. *Id.* at 636.

In condemning this means of preparation, the court explained that the corporation must prepare the representative to give "complete, knowledgeable and binding answers on behalf of the corporation." *Id.* at 637. To accomplish this, the representative must "review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition." *Id. See also Fabiano Shoe Co.*, 201 F.R.D. at 37 (granting motion to compel because representatives reviewed no company records or correspondence, even though some documents were in

lawyer's possession); *Bleecker v. Standard Fire Ins. Co.*, 130 F. Supp. 2d 726, 737 (E.D.N.C. 2000) (granting motion to compel because corporate deponent reviewed only 15 of 125 files that were potentially responsive to deposition topic).

Similarly, in *Taylor*, the court ordered a Rule 30(b)(6) deposition to resume and threatened sanctions because the corporation failed to produce an adequately prepared representative. 166 F.R.D. at 363. The corporation argued that it could deny corporate knowledge at the Rule 30(b)(6) deposition and then rely on documents and testimony of others to represent corporate knowledge at trial. *Id.* at 362. The court rejected this position, saying "[t]he attorney for the corporation is not at liberty to manufacture the corporation's contentions. Rather the corporation may designate a person to speak on its behalf and it is this position which the attorney must advocate." *Id.* at 361-62. A representative cannot claim to have no knowledge of facts that are clearly within the corporation's knowledge. "If the corporation has knowledge or a position as to a set of alleged facts or area of inquiry, it is its officers, employees, agents, or others who must present the position, give reasons for the position, and, more importantly, stand subject to cross-examination. A party's trial attorney normally does not fit that bill." *Id.* at 362.

*Herlihy* and *Taylor* clearly establish the scope of Whirlpool's duty fully to prepare its Rule 30(b)(6) designee to testify. Judging from Smith's

performance during his individual deposition, Whirlpool failed to satisfy this duty. Had Smith been adequately prepared to testify on behalf of the corporation he would necessarily also have personal knowledge of these matters. However, as previously discussed, Smith claimed to have little or no personal knowledge on virtually all of the substantive questions put to him. Either Smith was ill prepared or he misconstrued what was being asked of him.[4] Regardless of the cause, the effect was to deny CIT and others the opportunity to probe Smith's knowledge of Whirlpool's allegations.

## IV. CONCLUSION

Whirlpool cannot have its lawyers mold and shape its deponents' knowledge and then conceal and withhold the sources of that knowledge under the guise of the attorney-client privilege or work product doctrine. Nor can Whirlpool produce a Rule 30(b)(6) designee that has not been adequately prepared to provide substantive testimony. CIT respectfully requests that this motion be granted and that Whirlpool be compelled to:

1. Produce Carl Smith for further individual deposition testimony as to all matters over which he improperly asserted the attorney-client privilege, and for re-questioning by CIT on his recanted testimony;

---

[4]During the course of CIT's meet and confer with Whirlpool, counsel for Whirlpool implied Smith mistook personal knowledge for percipient knowledge.

2. Produce Carl Smith properly prepared to testify as Whirlpool's corporate designee on the topics identified in CIT's second amended Rule 30(b)(6) deposition notice.

DATED: Honolulu, Hawai'i, January 15, 2003.

PAUL ALSTON
LOUISE K.Y. ING
CARL D. SOTO
Attorneys for Defendant /Cross-claimant
THE CIT GROUP/BUSINESS CREDIT, INC.