LYNCH ICHIDA THOMPSON KIM& HIROTA

TIMOTHY J. HOGAN 5312
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WHIRLPOOL CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation, | Civ. No. CV01 00187 MEA-BMK (TORT AND RICO) |
| Plaintiff, | **WHIRLPOOL CORPORATION'S OPPOSITION TO DOCKET NO. 787 CIT'S MOTION IN LIMINE TO PRECLUDE USE OF AND ARGUMENT RE: THE "BOND FUNDS FRAUD" AS EVIDENCE OF CIT'S LIABILITY** |
| vs. | |
| CIT GROUP/BUSINESS CREDIT, INC., a New York corporation, et al., | |
| Defendants. | TRIAL<br>DATE: November 6, 2006<br>JUDGE: Honorable Marvin Aspen<br>NO HEARING DATE SET |

**WHIRLPOOL CORPORATION'S OPPOSITION TO DOCKET NO. 787 CIT MOTION IN LIMINE TO PRECLUDE USE OF AND ARGUMENT RE: THE "BOND FUNDS FRAUD" AS EVIDENCE OF CIT'S LIABILITY**

Comes now Plaintiff Whirlpool Corporation, by and through its undersigned counsel and hereby respectfully submits its opposition to Docket No. 787 CIT's Motion in Limine to Preclude Use of and Argument Re: the "Bond Funds Fraud" as Evidence of CIT's Liability (the "Motion").

CIT's argument against allowing admission of evidence related to the bond funds fraud at MidPac, if reduced to a simple descriptive statement, would be that CIT doesn't want this evidence because it makes CIT look bad.

The Court will recall that MidPac was operating as a surety with no reserve for any of its customers. CIT knew, and its documents confirm, that if MidPac went under, federally insured lenders would suffer a loss because it was using the banks' bond funds to operate its business. It is unclear why CIT does not believe this is relevant to CIT's conduct and, specifically, whether it was engaged in a conspiracy in regard to MidPac.

First, just because MidPac conspired against CIT does not mean that MidPac and CIT didn't conspire together. CIT cites to the Court's ruling regarding the 1962(a) allegations in the Complaint regarding the investment of the proceeds of the racketeering enterprise where the Court had found that the connection was to

tenuous to support a 1962(a) claim. By no means did the Court rule that in fact CIT's conduct in regard to the bond issues related to MidPac was not evidence of a continued and ongoing fraudulent conduct after the time that CIT became fully aware of the extent of MidPac's malfeasance.

The bond fraud is relevant to the agreement between CIT and the participants in the Glassman fraud. The Raymond Iwamoto e-mail to his colleagues in which he states that "CIT will have to bite the bullet and fund bonding moneys or the bond situation could bring the whole thing down". Declaration of Timothy J. Hogan, Hogan Dec. Exhibit "1". In addition, there is no question that CIT has admitted that it obtained some of these funds. CIT admits it and, though it claims to have given them back, it has curiously never produced any evidence of it. Under the mandatory disclosure rules of Fed. R. Civ. P. 26, CIT was required to produce this evidence but didn't. It didn't even attach any document evidencing the actual return of the bond money as an Exhibit to support its motion, perhaps hoping no one would notice it only attached its testimony. Simply because CIT says it's so, doesn't make it so.

CIT admits in its Motion that monies were being swept from these bond funds into its coffers when they fully knew that banks would be exposed to potential harm. CIT took no action to protect the banks. CIT has an expert, Erwin

Teich, who CIT hopes will testify regarding asset based lending practices. Ignoring the fact that his report and his testimony should be barred for violating the rules related to expert testimony, it will no doubt be helpful to Mr. Teich if he is allowed to ignore CIT's lending practices evidenced by its conduct related to the bond funds. It would however, keep relevant evidence from the jury.

Moreover, the June 23, 1999 letter from MidPac's counsel Raymond Iwamoto to CIT's in-house counsel Grace Bowen, evidences admissible evidence of the offer and acceptance in regard to the agreement to continue to conspire and to defraud at MidPac. Hogan Dec. Exhibit "2." Clearly the jury could find that Mr. Iwamoto's letter was an improper inducement to CIT reminding it of its own liability in regard to the bond funds. The fact that CIT agreed to not inform Whirlpool after Mr. Iwamoto brought up the subject makes the issue of the bond money clearly relevant. Mr. Iwamoto was right that this issue would get CIT's attention. A reasonable juror could find this to be circumstantial evidence of an agreement to continue the fraud conspiracy that CIT joined on June 23, 1999 when it failed to take appropriate action to put an end to MidPac's malfeasance even in the face of Mr. Iwamoto's extortionate threats. The evidence and reasonable inferences show that a reasonable juror could find that, at that moment, CIT had a choice to make and the choice it made was to continue the fraud. While it is

obvious why CIT wants to keep this evidence away from a jury, it is nonetheless clearly relevant and admissible evidence and it should be allowed to go to the jury. The motion should be denied.

DATED: Honolulu, Hawai'i, June 26, 2006.

/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff
WHIRLPOOL CORPORATION