Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys At Law
A Law Corporation

PAUL ALSTON 1126-0
LOUISE K. Y. ING 2394-0
THOMAS E. BUSH 4737-0
ALLISON KIRK 8156-0
18th Floor, ASB Tower
1001 Bishop Street
Honolulu, Hawai'i 96813
Telephone: 524-1800
Facsimile: 524-4591
palston@ahfi.com
ling@ahfi.com
tbush@ahfi.com
akirk@ahfi.com

Attorneys for Defendant/Cross-claimant
THE CIT GROUP/BUSINESS CREDIT, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE | ) | Civil No. CV 01 00187 MEA-BMK (Tort and RICO)<br><br>DEFENDANT THE CIT GROUP/BUSINESS CREDIT, INC.'S **MEMORANDUM IN PARTIAL OPPOSITION TO DEFENDANT RAYMOND IWAMOTO'S MOTION IN LIMINE #1 RE: TO EXCLUDE EVIDENCE OF STOCK TRANSACTIONS BETWEEN KURT GLASSMAN, EDWIN** |

| | | |
|---|---|---|
| PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Crossclaim Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **BOWLING, AND FRANCES BOWLING**, FILED 6/13/06; CERTIFICATE OF SERVICE<br><br>JUDGE: Hon. Marvin E. Aspen<br><br>TRIAL: November 6, 2006 |

**DEFENDANT THE CIT GROUP/BUSINESS CREDIT, INC.'S MEMORANDUM IN PARTIAL OPPOSITION TO DEFENDANT RAYMOND IWAMOTO'S MOTION IN LIMINE #1 RE: TO EXCLUDE EVIDENCE OF STOCK TRANSACTIONS BETWEEN KURT GLASSMAN, EDWIN BOWLING, AND FRANCES BOWLING, FILED 6/13/06**

The CIT Group/Business Credit, Inc. hereby opposes in part Defendant Raymond Iwamoto's Motion in Limine #1 to the extent it seeks total exclusion of evidence of stock transactions between Kurt Glassman, Edwin Bowling and his wife, Frances Haller Bowling. CIT contends that these transactions constituted the sham vehicles which Kurt Glassman and Edwin Bowling designed, with Frances Haller Bowling's cooperation and assistance, to funnel over $2 million of MidPac's money - CIT's collateral from a City Bank account in which it had a secured interest - into the Bowlings' bank accounts.

*CIT's Second Amended Crossclaim (filed 2/3/03)* ("SACC"), ¶¶ 24, 25, 27, 27.c., 28.c., 28.e. Those transactions are relevant for explaining the fraudulent scheme hatched by MidPac principals that victimized CIT and explaining why MidPac then needed to generate cash by causing CIT to over-advance loan funds through a manipulation of MidPac's borrowing base of eligible accounts receivable and inventory. *Id.,* ¶¶ 28, 29, 30.

Such evidence is relevant to CIT's defense against Whirlpool's fraud conspiracy claim. CIT strongly denies that it participated in a conspiracy to defraud Whirlpool. *See* SACC ¶ 36 (CIT would not have entered into the forbearance agreement had it known the true extent of . . . misrepresentations and diversion of funds"). Rather, CIT will show, through evidence like that involving the phony stock transactions, that upon acquiring MidPac, Glassman and Bowling embarked on a fraudulent scheme that had CIT as its main target. *See* SACC ¶ 23. CIT will show that its actions were not those of a co-conspirator with persons who had just harmed it; rather, upon discovering what it thought to be MidPac's fraudulent scheme (the false invoicing and the movement of MidPac's inventory to Maui Home Supply), CIT acted to protect its legitimate interests as MidPac's creditor. *See* SACC ¶ 31. The stock transaction evidence is relevant to CIT's contention that the true source of Whirlpool's grievances is the reprehensible and

self-dealing conduct of Glassman, the Bowlings and Clifford. *See* SACC ¶¶ 23, 26.

CIT takes no position on Mr. Iwamoto's arguments that evidence of the stock transactions is irrelevant to Plaintiffs' RICO conspiracy and civil conspiracy claims against him. However, to the extent Whirlpool argues in opposition to Mr. Iwamoto's motion that such evidence is relevant to CIT's liability for fraud, fraud conspiracy or other claims, CIT strongly disagrees because there is no evidence linking CIT to knowledge of or participation in those transactions. In order to avoid jury confusion and undue trial time, CIT suggests that the court grant the lesser relief of either a limiting jury instruction on use of evidence of the stock transactions (e.g., that it is not to be considered circumstantial evidence of a fraud conspiracy as to Defendants Iwamoto and CIT, or at least CIT) and/or that the Court direct the parties to develop stipulations of facts and documents relating to the negotiation, documentation, timing and purpose of the stock transactions and the persons involved, so that undue court time is not consumed in establishing the relevant background facts and documents.

For the foregoing reasons, the Court should deny the motion in part and allow the parties to elicit evidence of the stock transactions, but should grant the motion in part by (A) instructing the jury not to consider it as circumstantial evidence of fraud conspiracy as to Defendants Iwamoto and CIT, or at least CIT,

and (B) directing the parties to introduce the evidence of the stock transactions in the form of stipulated facts and documents.

DATED: Honolulu, Hawai‘i, June 26, 2006.

/s/ Louise K. Y. Ing
PAUL ALSTON
LOUISE K. Y. ING
THOMAS E. BUSH
ALLISON KIRK
Attorneys for Defendant/Cross-claimant THE CIT GROUP/BUSINESS CREDIT, INC.