CADES SCHUTTE FLEMING & WRIGHT
A Limited Liability Law Company

NICHOLAS C. DREHER 1299-0
THEODORE D. C. YOUNG 5735-0
1000 Bishop Street, 12th Floor
Honolulu, Hawaii 96813
Telephone: (808) 521-9200

NEAL L. WOLF (CA Bar No. 202129)
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, 32nd Floor
Los Angeles, California 90017-5832
Telephone: (213) 629-2020
Facsimile: (213) 612-2499

Attorneys for THE CIT GROUP/BUSINESS CREDIT, INC.

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 11 2002

at 2 o'clock and 28 min. P M
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>MIDPAC LUMBER COMPANY, LTD.,<br><br>Debtor. | CIVIL NO. 01-00732 DAE-KSC<br><br>**ANSWERING BRIEF OF APPELLEE THE CIT GROUP/BUSINESS CREDIT, INC.; CERTIFICATE OF SERVICE**<br><br>APPEAL FROM ORDER GRANTING THE CIT GROUP/BUSINESS CREDIT, INC.'S MOTION FOR RELIEF FROM AUTOMATIC STAY FILED ON JUNE 1, 2001<br><br>(Bk. No. 00-00136) |

EXHIBIT A

## TABLE OF CONTENTS

Page

I. INTRODUCTION. .... 2

II. STATEMENT OF FACTS. .... 3

III. STANDARD OF APPELLATE REVIEW .... 6

IV. ARGUMENT. .... 7

A. Whirlpool Neither Contests the Fact that the Bankruptcy Estate Has Absolutely No Interest in the Subject Assets nor Explains How the Bankruptcy Court Could Have Abused its Discretion by Terminating the Automatic Stay in that Circumstance. .... 7

B. The Bankruptcy Court Did Not Err In "Permitting CIT to File a Second Motion." .... 8

C. The Bankruptcy Court was Required to Enter a Stay Relief Order Under Section 362(a)(2) of the Bankruptcy Code. .... 11

1. CIT's Burden Was Only To Prove That The Debtor Had No Equity In the Cash Collateral Account, A Fact That Whirlpool Does Not Dispute. .... 12

2. The Bankruptcy Court Has No Jurisdiction To Hear Inter-Creditor Disputes In Which The Estate Has No Interest. .... 13

3. Whirlpool Has Admitted In Pleadings In This Court That The Estate Has No Interest In This Matter .... 14

4. Relief From Stay Is A Limited Proceeding, In Which It Is Not Appropriate To Adjudicate Inter-Creditor Issues. .... 16

D. The Bankruptcy Court Never Ruled That CIT Violated the Automatic Stay; Moreover, Even If It Had, Because The Estate Was Not Damaged By Any Such Breach, The Court Properly Exercised Its Discretion In Granting Stay Relief. .... 17

1. CIT Did Not Violate the Automatic Stay. .... 17

2. The Estate Was Not Damaged By CIT's Alleged Breach of the Stay. .... 18

V. CONCLUSION. .... 20

## TABLE OF AUTHORITIES

Page

### CASES

*In re Adams*,
212 B.R. 703 (Bankr. D. Mass. 1997) .......... 18

*In re Al's Den, Inc.*,
81 B.R. 47 (Bankr. D. Haw. 1987) .......... 16

*In re Beguelin*,
220 B.R. 94 (9th Cir. BAP 1998) .......... 6

*Benedor Corp. v. Conejo Enters. (In re Conejo Enters.)*,
96 F.3d 346 (9th Cir. 1996) .......... 7

*Biggs v. Stovin (In re Luz Int'l)*,
219 B.R. 837 (9th Cir. BAP 1998) .......... 16

*In re Bill Cullen Electrical Contracting Co.*,
160 B.R. 581 (Bankr.N.D.M. 1993) .......... 13, 14

*In re Charter First Mortg., Inc.*,
56 B.R. 838 (Bankr. D. Or. 1985) .......... 13

*In re Chateaugay Corp.*,
880 F.2d 1509 (2d Cir. 1989) .......... 9

*In re Essex Properties, Ltd.*,
430 F. Supp. 1112 (N.D. Cal. 1977) .......... 16

*Estate of Ashman v. Commissioner*,
231 F.3d 541 (9th Cir. 2000) .......... 15

*In re Fischer*,
136 Bankr. 819 (Bankr. D. Alaska 1992) .......... 19

*Grella v. Salem Five Cent Sav. Bank*,
42 F.3d 26 (1st Cir. 1994) .......... 16

*In re Haukos Farms, Inc.*,
68 B.R. 428 (Bankr. D. Minn. 1986) .......... 11

*In re John Fernandez*,
227 B.R. 174 (9th Cir. 1999) .......... 18

## TABLE OF AUTHORITIES


Page

*In re Johnson*,
756 F.2d 738 (9th Cir.), *cert. denied*, 474 U.S. 828 (1985) .... 16

*In re Kemble*,
776 F.2d 802 (9th Cir. 1985) .... 11

*In re Leavitt*,
171 F.3d 1219 (9th Cir. 1999) .... 7

*Mataya v. Kissinger (In re Kissinger)*,
72 F.3d 107 (9th Cir. 1995) .... 20

*Meronk v. Arter & Hadden. L.L.P. (In re Meronk)*,
249 B.R. 208 (9th Cir. BAP 2000) .... 15

*In re Price*,
179 B.R. 209 (Bankr. E.D. Cal. 1995) .... 19

*In re Ramirez*,
188 B.R. 413 (9th Cir. BAP 1995) .... 11

*Rissetto v. Plumbers & Steamfitters Local 343*,
94 F.3d 597 (9th Cir. 1996) .... 15

*Ryan Operations G.P. v. Santiam Midwest Lumber Co.*,
81 F.3d 355 (3d Cir. 1996) .... 15

*Schwartz v. United States (In re Schwartz)*,
954 F.2d 569 (9th Cir. 1992) .... 17

*In re Siverling*,
179 B.R. 909 (Bankr. E.D. Cal. 1995) .... 19

*Stoubmos v. Whitesides*,
988 F.2d 949 (9th Cir. 1993), .... 13

*In re Tucson Estates*,
912 F.2d 1162 (9th Cir. 1990) .... 11

*Whitt v. Philadelphia Housing Authority (In re Whitt)*,
79 B.R. 611 (Bankr. E.D. Pa. 1987) .... 18

*In re World Wines, Ltd.*,
77 Bankr. 653 (Bankr.N.D. Ill. 1987) .... 13

## TABLE OF AUTHORITIES

**Page**

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
235 F.3d 1184, 1190 (9th Cir. 2000) ....................15

*In re Xonics, Inc.*,
813 F.2d 127 (7th Cir. 1987) ....................14

**STATUTES**

11 U.S.C. § 362(d)(2) ....................8, 12, 18

S. Rep. 95-989 (1978) ....................16

H. Rep. 95-595 (1977) ....................16

**MISCELLANEOUS**

3 *Collier on Bankruptcy* ¶ 362.07, at 362-78 (15th ed. Revised 2000) ....................8

**ANSWERING BRIEF OF APPELLEE THE CIT GROUP/BUSINESS CREDIT, INC.**

Appellee The CIT Group/Business Credit, Inc. ("CIT") respectfully submits its opposition in response to the Opening Brief of Appellant Whirlpool Corporation ("Whirlpool") as follows:

## I. INTRODUCTION.

Appellant Whirlpool seeks to overturn the order of the Bankruptcy Court granting relief from the automatic stay to CIT to allow CIT to pursue its state law remedies with respect to funds in a bank account.[1] There is no dispute by any party that CIT had a valid security interest in the funds in this account, that CIT was substantially undersecured, that the Debtor had no equity in this collateral, and that the Debtor in this Chapter 7 proceeding will not be reorganized. It is therefore undeniable that the Bankruptcy Court had more than sufficient grounds to grant relief from stay. The standard for review of an order granting relief from stay is abuse of discretion. There was no abuse of discretion by the Bankruptcy Court in this case.

The arguments offered by Whirlpool in support of its appeal are all either unsupported by the record or irrelevant. Whirlpool argues that the fact that CIT's earlier motion for relief from stay was denied precludes CIT from bringing a motion for relief from stay at a later time. This argument is unsupported by the cases that Whirlpool cites, all of which concern the finality of orders granting or denying relief from stay for purposes of whether such orders are appealable, but none of which address whether a creditor in a bankruptcy case is limited to one chance only to seek relief from stay. Furthermore, appellant ignores the fact that the earlier motion was filed only days after the bankruptcy filing, while the later motion was filed after a year and a half of inactivity with respect to this asset. Whirlpool further argues that the order

---

[1] Although the Chapter 7 trustee has "joined" in Whirlpool's appeal, he has filed no separate brief. Accordingly, CIT need not and does not address the arguments made by the Trustee in the Bankruptcy Court.

should be reversed because, it is claimed, Whirlpool has a competing security interest in these funds. This argument is also without merit, as the fact that there may be disputes among creditors under state law in assets in which the estate has no interest in itself supports the granting of relief from stay. And, finally, Whirlpool argues that relief from stay should not have been granted because CIT was allegedly guilty of violating the automatic stay. This argument is unsupported by any evidence in the record, and would, in any event, not constitute grounds for denying stay relief. Even if the facts alleged were true, which Whirlpool did not establish in the proceeding below, and even if the facts alleged constituted a violation of the stay, which CIT disputes, there was no impact whatsoever on the estate. Hence, it cannot be said that the decision of the Bankruptcy Court to grant relief from stay constituted an abuse of discretion.

The order of the Bankruptcy Court was proper under the facts and the law. There was no abuse of discretion and, accordingly, the appeal of Whirlpool should be denied.

## II. STATEMENT OF FACTS.

CIT is a secured creditor of the Chapter 7 debtor, MidPac Lumber Co., Ltd. Its claim arises out of a revolving credit facility secured by a duly perfected security interest in all of the personal property of the debtor, including accounts receivable, inventory, equipment, investment property, general intangibles, deposit accounts, and the proceeds thereof. (Docket at 213, Declaration of Frank Brown ["Brown Decl."], ¶¶ 6, 7)[2] As of May 24, 2001, shortly before the filing of CIT's motion for relief from stay on June 1, 2001, the amount of MidPac's indebtedness to CIT totaled $2,481,538.19. (*Id.* at ¶ 23) At issue here is the funds in a bank account, consisting of the proceeds of a public auction of the debtor's equipment and inventory, proceeds of collections of the debtor's accounts receivable, and interest earned on these funds, all

[2] Citations to the record will be cited as "Docket at ___" as referenced in the Appellant's Designation of Items To Be Included On Record On Appeal and in Appellee's Designation Of Additional Items To Be Included On Record On Appeal, filed herein.

of which is the cash collateral of CIT. The balance of the funds in the account at the time of CIT's motion for relief from stay was approximately $1,093,406.63. (*Id.* at ¶ 24) The amount by which CIT was undersecured when it brought its motion was therefore approximately $1.4 million. (*Id.* at ¶ 26) It is undisputed by the appellant, both in this appeal and in the Bankruptcy Court, that the debtor had no equity in the funds in this bank account. Whirlpool has also not disputed the validity of CIT's security interest or the fact of the Debtor's default.

The details regarding the creation of the fund in question are as follows:

The loan agreement between CIT and MidPac was entered into on March 19, 1998. (*Id.* at ¶ 6) A lockbox was established for the collection of the accounts receivable under the revolving credit facility. (*Id.* at ¶ 18) Thereafter, CIT advanced funds to MidPac, but MidPac encountered financial problems and committed various acts of default under the agreement. (*Id.* at ¶ 8) In August 1999, CIT and MidPac entered into a forebearance agreement, pursuant to which CIT agreed to forbear from foreclosing its collateral until September 30, 1999, and MidPac's principal, Mr. Glassman, executed a guarantee of MidPac's obligation to CIT, secured by a deed of trust on Glassman's home. (*Id.* at ¶¶ 9-11) At the end of the forebearance period, MidPac was still unable to meet its obligations under the loan agreement and embarked upon an asset liquidation program. (*Id.* at ¶ 12) It hired a firm, Rabin Brothers, to conduct an auction of its inventory and equipment. (*Id.* at ¶ 13) MidPac's agreement with Rabin Brothers provided for the proceeds of the auction to be applied first to payment of Rabin Brothers' fees and expenses and for the remaining proceeds to be turned over to CIT to be applied to MidPac's outstanding loan balance. (*Id.* at ¶ 16) CIT was not a party to the agreement between MidPac and Rabin Brothers. (*Id.* at ¶ 13)

The agreement between MidPac and Rabin Brothers was entered into on January 6, 2000, with the auction scheduled for January 19, 2000. (*Id.* at ¶¶ 13-14) On January 18,

2000, one day before the scheduled auction, an involuntary bankruptcy petition was filed against MidPac by certain of its creditors. (*Id.* at ¶ 14) The auction, however, went forward as scheduled, and the net proceeds, totaling $717,291.22, were transmitted to CIT, pursuant to the agreement between MidPac and Rabin Brothers. (*Id.* at ¶¶ 15-16) In light of the bankruptcy filing, CIT did not apply the funds to the loan balance but, rather, opened a bank account (the "Cash Collateral Account") for the purpose of holding the cash collateral of the Debtor. (*Id.* at ¶ 17) CIT deposited in the Cash Collateral Account both the auction proceeds and thereafter, on an ongoing basis, the payments from MidPac's customers that were delivered to the lock box that had been established pursuant to the loan agreement. (*Id.* at ¶18) With the exception of an inadvertent instance that was subsequently reversed, CIT did not apply any part of the funds in the Cash Collateral Account to MidPac's outstanding loan balance or withdraw any funds from the account. The account simply sat, accruing interest, for a year and a half. (*Id.*)

Shortly after the filing of the involuntary Chapter 7 petition, CIT brought a motion in the Bankruptcy Court for relief from the automatic stay. (Docket at 8) On that occasion, which was only a few days after the petition was filed, and before the order for relief was entered, the Trustee and various creditors, including Whirlpool, the appellant herein, appeared at the hearing and argued that the auction had been conducted in violation of the automatic stay and that relief from stay should therefore be denied. (Docket at 219) No one suggested that the asset sale should somehow be undone, and, in fact, it was acknowledged that the auction had been highly successful, yielding far more than expected. (*Id.* at 4:25-5:10) The Trustee urged the Court to order that the proceeds be turned over to the Trustee. (*Id.* at 6:7-19) The Court declined to make any ruling or even comment on the proper disposition of the funds, however. Instead, the Court denied CIT's motion and urged all interested parties to work

towards a resolution of the issue of the disposition of the proceeds of the auction sale. (*Id.* at 6:20-7:6)

Almost a full year and a half later, the Chapter 7 bankruptcy was still pending and there had been no progress toward a resolution of the bankruptcy and distribution of the assets, a fact that was noted by the Bankruptcy Court at the hearing on this matter. (Docket at 259, Transcript of Proceedings, at 4:10-16, 12:19-13:11) Neither the Trustee nor any creditor, including Whirlpool, had sought to have the funds in the Cash Collateral Account turned over to the Trustee, nor had anyone sought to avoid, subordinate or otherwise challenge CIT's lien. On June 1, 2001, CIT again sought relief from the automatic stay, so as to enable CIT to pursue its remedies under state law. (Docket at 209-214) Notably, the matter was heard by the same judge, The Honorable Lloyd King, who had denied the earlier motion. During the course of this second proceeding, no one, including Whirlpool, disputed the validity of CIT's lien, the amount of the indebtedness secured by that lien or the fact that CIT was undersecured in the amount of over $1.4 million. Accordingly, in light of the fact that the statutory grounds for relief from stay were not only established but were uncontested, the Bankruptcy Court granted the motion. (Docket at 247-248) The Bankruptcy Court thereby clearly recognized that because the estate had no equity in these funds, any disputes that might exist as to the disposition of the funds or the priority of liens on this collateral were disputes among competing creditors, in which the estate had no interest. There was, therefore, no reason for this matter to remain under Bankruptcy Court jurisdiction.

## III. STANDARD OF APPELLATE REVIEW.

"The bankruptcy court's decision to grant relief from the automatic stay is committed to its sound discretion, and is reviewed under the abuse of discretion standard." *In re Beguelin*, 220 B.R. 94, 97 (9th Cir. BAP 1998). "Decisions committed to the bankruptcy court's

discretion will be reversed only if based on an erroneous conclusion of law or when the record contains no evidence on which the bankruptcy court rationally could have based that decision." *Benedor Corp. v. Conejo Enters. (In re Conejo Enters.)*, 96 F.3d 346, 351 (9th Cir. 1996) (quoting *In re Windmill Farms, Inc.*, 841 F.2d 1467, 1472 (9th Cir. 1988).

"The appellate court may affirm the lower court on any ground fairly supported by the record." *In re Leavitt*, 171 F.3d 1219, 1223 (9th Cir. 1999) (citing *United States v. Hemmen*, 51 F.3d 883, 891 (9th Cir. 1995).

## IV. ARGUMENT.

### A. Whirlpool Neither Contests the Fact that the Bankruptcy Estate Has Absolutely No Interest in the Subject Assets nor Explains How the Bankruptcy Court Could Have Abused its Discretion by Terminating the Automatic Stay in that Circumstance.

The most noteworthy aspect of Whirlpool's Opening Brief is the argument that Whirlpool *did not make*. Whirlpool did not contest the fact that the two bases for mandatory stay relief – that the estate has no equity in the subject assets and that those assets are not needed for an effective reorganization – are present in this case. As noted above, CIT was woefully undersecured and will not be fully repaid. Moreover, as both a practical and a legal matter, there can and will be no reorganization of the debtor. It has long been out of business, its principal assets have been auctioned off, and the case is a Chapter 7 liquidation case. Neither Whirlpool nor any other party in interest (including the Chapter 7 trustee) has ever contested these basic, *outcome-determinative*, facts. Moreover, Whirlpool has never even sought to explain how the Bankruptcy Court's decision to terminate the automatic stay could possibly constitute an abuse of discretion in the undisputed presence of the statutory grounds for mandatory stay relief, when the bankruptcy estate has absolutely no interest in the subject assets.

When the estate has no interest in an asset, because there is no equity in the asset (the debt secured by a lien in the asset exceeds the value of the asset) *and* the property is not

necessary to an effective reorganization, stay relief is mandatory. Section 362(d)(2) of the Bankruptcy Code lists the circumstances under which the court must grant stay relief with respect to an "act against property":

> (d) On request of a party in interest and after notice and a hearing, the court *shall* grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization[.]

11 U.S.C. § 362(d)(2) (Emphasis added.). The mandatory nature of this statute is emphasized in 3 *Collier on Bankruptcy* ¶ 362.07, at 362-78 (15th ed. Revised 2000):

> In addition, the court "shall" grant relief from the stay of an act against property if the debtor has no equity in the property and the property is not necessary to an effective reorganization.

(Emphasis in original text.)

Rather than try to explain how or why the Bankruptcy Court abused its discretion by granting stay relief with respect to an asset in which the bankruptcy estate had absolutely no interest, Whirlpool attempts to deflect the attention of this court with several arguments that are both factually and legally baseless.

**B. <u>The Bankruptcy Court Did Not Err In "Permitting CIT to File a Second Motion."</u>**

Whirlpool's initial argument is that the Bankruptcy Court somehow erred by "permitting" CIT to file a second motion for stay relief. In support of this argument, Whirlpool claims that the Bankruptcy Court's order denying the initial motion was a final, *res judicata,* order that somehow precluded CIT from again seeking stay relief.

Whirlpool is flat wrong, from both a factual and legal standpoint. The Bankruptcy Court order denying CIT's initial stay relief motion was not entered with prejudice. It contained no language barring CIT from the filing of a later motion. To the contrary, at the April 10, 2000 hearing, the Court invited the parties to attempt to settle their disputes, thereby implicitly acknowledging that the matter had not been finally resolved. Moreover, the *same bankruptcy judge* heard and decided both motions – denying the initial motion and granting the second. Whirlpool made the identical *res judicata* argument to the Bankruptcy Court at the time of the second motion. (Docket at 215, at 6-7) If the Bankruptcy Court had intended to preclude CIT from filing a second motion, it could and would have denied the second motion on that ground. There can be no better evidence of the original intent of the Bankruptcy Court with respect to this issue than its subsequent action.

In addressing the issues of finality and appealability, Whirlpool misses the point completely. The issue is not the finality or appealability of the initial order denying stay relief; it is whether a renewed motion may be filed at a later date. As a matter of law, the denial of a motion for relief from the automatic stay never bars the filing of a later motion. As the United States Court of Appeals for the Second Circuit has directly stated: ". . . whenever a motion for relief from the automatic stay is denied— whether or not the bankruptcy court expressly instructs the parties that the door remains open—the movant remains free to make a new motion, based upon changed circumstances, for relief from the stay at a future date. Indeed, that would be true in most instances of even a concededly final injunction." *In re Chateaugay Corp.*, 880 F.2d 1509, 1513 (2d Cir. 1989) (citing *Association Against Discrimination in Employment, Inc. v. City of Bridgeport*, 710 F.2d 69, 74 (2d Cir. 1983). Moreover, "[b]ecause the automatic stay will necessarily be lifted at some time, the sole issue in a motion for relief from the automatic stay is temporal." *Chateaugay Corp*, 880 F.2d at 1513. Hence, while it may be appropriate to deny a

stay relief motion at one stage in a bankruptcy case, it may well be appropriate to grant stay relief at a later stage.

The reason for this rule is obvious: circumstances change; interest on secured debt accrues; property values diminish; "equity cushions" diminish; operating businesses fail and shut their doors; a finding that an asset might be necessary for an effective reorganization today may be inappropriate at a later date, after a debtor has attempted unsuccessfully to reorganize or has altered its business plan; Chapter 11 reorganization cases are often converted to Chapter 7 liquidation cases. Secured creditors frequently file multiple motions for stay relief. Bankruptcy courts often deny motions for stay relief that are filed early in a case, and grant later motions filed by the same secured creditors after the passage of time during which, among other things, equity cushions have evaporated and/or the debtors have not taken steps to promulgate or confirm plans of reorganization or have been unsuccessful in their attempts to do so.

In this case, the involuntary petition was filed on January 18, 2000. CIT's initial motion for stay relief was filed on February 4, 2000, only 17 days later, even before an Order for Relief was entered in the case. On April 10, 2000, the Bankruptcy Court denied the initial motion. On June 1, 2001, CIT filed its second motion. The Bankruptcy Court granted the second motion on October 2, 2001. Almost 18 months passed between the Court's denial of the initial motion and its grant of the second motion. During that time, the cash account continued to remain in a limbo state, notwithstanding the acknowledged facts that [i] the subject funds remained CIT's cash collateral, [ii] CIT was woefully undersecured, and [iii] the bankruptcy estate had absolutely no interest in the funds. During that protracted time period, neither the Trustee nor any of the creditors of the estate (including Whirlpool) took any steps whatsoever in the bankruptcy case to challenge CIT's claim, to challenge CIT's lien, to attempt to equitably subordinate the claim of CIT, or to compel a turnover of, or gain control over, the subject

property. In its Omnibus Reply Brief in Support of Motion for Relief from Automatic Stay, CIT alerted the Bankruptcy Court to all of these facts and circumstances. (Docket at 239, at 16-17) In announcing his intention to grant stay relief at the September 19, 2001 hearing on the second motion, the Bankruptcy Court noted these facts:

> If this were the first hearing on a motion for relief from stay, that would be one thing, but now we're 17 months after denial of the motion. This is a renewed motion. Nothing has happened in the Bankruptcy Court.

(Docket at 259, at 12, lines 19-24) In view of the foregoing, it would have been inequitable and inappropriate, *and a clear abuse of discretion,* for the Bankruptcy Court to *bar* CIT from prosecuting a second stay relief motion.

The cases cited by Whirlpool do not support its position. They do not even address the issue at hand. Three of the four cases involve the appealability of orders granting or denying stay relief, a matter that no one here disputes. (*See Tucson Estates*, 912 F.2d 1162 (9th Cir. 1990); *In re Kemble,* 776 F.2d 802 (9th Cir. 1985); *In re Haukos Farms, Inc.*, 68 B.R. 428 (Bankr. D. Minn. 1986)). The other, *In re Ramirez*, 188 B.R. 413 (9th Cir. BAP 1995), involved the right of a debtor to file a new bankruptcy case for the purpose of resurrecting the automatic stay after stay relief had previously been granted in a prior case, an issue involving a patently abusive practice that has nothing to do with this case. The issue here, by contrast, is the right of a creditor to renew a motion for stay relief after the denial of a motion brought earlier in the case. None of the cases cited by Whirlpool addresses this issue. Indeed, it is common practice for a secured creditor to renew a motion for stay relief that has been denied early in the case.

### C. <u>The Bankruptcy Court was Required to Enter a Stay Relief Order Under Section 362(a)(2) of the Bankruptcy Code.</u>

Whirlpool next argues that relief from stay should have been denied because CIT failed to "meet its burden" under Section 362(d) in light of purported evidence that Whirlpool

had some competing interest in the funds subject to CIT's security interest. Whirlpool also argues that the Bankruptcy Court erred by "not requiring CIT to prove the source of the moneys it was collecting." Both of these arguments fundamentally misconstrue the statutory basis for relief from stay under Section 362(d), namely, that the *debtor* has no equity in the collateral. All that Whirlpool is arguing is that Whirlpool believes that *it* has an interest in these funds. This merely highlights the fact that any dispute that may exist as to the Cash Collateral Account is a dispute among creditors, in which the estate has no interest. This is precisely the circumstance in which relief from stay is appropriate and, indeed, mandatory under the Bankruptcy Code.

1. **<u>CIT's Burden Was Only To Prove That The Debtor Had No Equity In the Cash Collateral Account, A Fact That Whirlpool Does Not Dispute.</u>**

As discussed above, section 362(d)(2) provides that, on the motion of a party in interest, "the court *shall* grant relief from the stay . . . if (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization."

Section 362(g) allocates the burden of proof for the foregoing test, as follows:

> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in the property; and
>
> (2) the party opposing such relief has the burden of proof *on all other issues.*

11 U.S.C. § 362(g) (emphasis added).

CIT met its burden on the one point on which it had the burden under the express terms of the statute. It presented evidence of its security interest, of the perfection of its security interest, and of the amount of the indebtedness secured by the collateral. Further, CIT presented evidence that the funds in the Cash Collateral Account derived from the sale of the debtor's equipment and inventory and its accounts receivable, and were thus subject to CIT's duly perfected security interest. Neither Whirlpool nor any other party opposing CIT's motion made

any effort to controvert any of these facts. All that Whirlpool claims is that Whirlpool has some competing interest in these funds. Whether or not its claims are meritorious is irrelevant here, however. What is relevant is that Whirlpool presented no evidence that the *debtor* had any interest in these funds.

Whirlpool argues that, in order to meet its burden that the debtor had no equity in the Cash Collateral Account, CIT was required to trace the funds in the account. Whirlpool cites two cases. *Stoubmos v. Whitesides,* 988 F.2d 949, 951 (9th Cir. 1993), and *In re Charter First Mortg., Inc.,* 56 B.R. 838, 841-2 (Bankr. D. Or. 1985). Both cases involved disputes over funds in which it was claimed that proceeds of a secured creditor's collateral and the debtor's unencumbered funds were commingled. Tracing, therefore, was necessary in both cases in order to establish whether the *debtor* had equity in the account. Here, by contrast, Whirlpool seeks to require tracing in order to establish the extent to which funds in the account might be subject to the allegedly competing liens of other creditors. There is no suggestion, much less any evidence, that tracing might reveal that any of the funds are unencumbered. The cited cases are inapposite. They have no bearing on the present case, in which no one claims that the debtor has an interest.

2. **The Bankruptcy Court Has No Jurisdiction To Hear Inter-Creditor Disputes In Which The Estate Has No Interest.**

As noted above, the issues raised by Whirlpool are *inter-creditor* issues. Those issues involve the extent and relative priority of the liens of two creditors. Bankruptcy courts have no jurisdiction to hear disputes between creditors over assets in which the estate has no interest. A bankruptcy court's subject matter jurisdiction does not extend to a dispute that has no impact on the estate. *See In re Bill Cullen Electrical Contracting Co.*, 160 B.R. 581, 583 (Bankr.N.D.M. 1993). The Court has no jurisdiction over a dispute involving property in which the estate asserts no interest. *See In re World Wines, Ltd.*, 77 Bankr. 653, 655-56 (Bankr.N.D. Ill. 1987) ("Courts have consistently held that, if a controversy does not involve property in

which the debtor's estate asserts an interest, and the resolution of the claim will not affect the administration of the estate, then the bankruptcy court has no subject matter jurisdiction to adjudicate the claim"). *See also In re Bill Cullen Electrical Contracting Co.*, 160 B.R. at 584; ("a bankruptcy court's jurisdiction to hear disputes between creditors depends on whether there is any impact on the estate . . . ."); *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987) (a bankruptcy court has no jurisdiction to hear disputes between two creditors over assets abandoned by the estate).

Notably, the lien-priority issue raised by Whirlpool as a reason that relief from stay should have been denied is the subject of a separate pending lawsuit filed by Whirlpool against CIT and others on March 23, 2001 in the United States District Court for the District of Hawaii. In its complaint in that case, Whirlpool alleged that "CIT, without Whirlpool's consent, sold or otherwise disposed of Whirlpool's collateral and received the proceeds," and that "CIT has so interfered with Whirlpool's rights as a secured creditor to be liable for conversion." (Docket at 240, Appendix to Omnibus Reply Brief, Ex. B, at ¶¶ 51 and 52) The very fact that Whirlpool had sued CIT in a non-bankruptcy forum over its alleged rights in this collateral—a case in which MidPac, the debtor herein, is not a party— demonstrates that the MidPac bankruptcy estate has no stake in this dispute. Having sued CIT in the U.S. District Court over the very issues it claims should be determined in the Bankruptcy Court, Whirlpool demonstrates that the Bankruptcy Court decision to relegate this matter to a non-bankruptcy forum was proper.

### 3. Whirlpool Has Admitted In Pleadings In This Court That The Estate Has No Interest In This Matter.

Whirlpool has itself argued in a pleading filed in the District Court case that the Bankruptcy Court does not have jurisdiction over the competing claims to the Cash Collateral Account, because the issues do not involve the bankruptcy estate.

On August 23, 2001, in a memorandum it filed in opposition to a motion to dismiss the District Court action, Whirlpool protested that the Bankruptcy Court has no interest in the Whirlpool claims: "**Whirlpool Has Standing Because Its Claims Are Not Property of the Estate and Are Related to Actions Taken Directly Against Whirlpool By Third Parties.**" (Docket at 240, Appendix to Omnibus Reply Brief, Ex. C at 2; emphasis in original). Whirlpool's position on the bankruptcy jurisdiction issue apparently varies from courtroom to courtroom, depending upon its momentary needs. The doctrine of judicial estoppel does not permit a party to take such inconsistent positions, however. A party may not change its tune to fit the circumstances.

Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996); *see also Meronk v. Arter & Hadden. L.L.P. (In re Meronk)*, 249 B.R. 208, 215 (9th Cir. BAP 2000) (holding same). "It is a doctrine which is based upon policies that seek to foster the orderly administration of justice and regard for the dignity of judicial proceedings, and to preclude parties from playing fast and loose with the courts." *Estate of Ashman v. Commissioner*, 231 F.3d 541, 543 (9th Cir. 2000) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1991) (internal quotations and citations omitted). "If a litigant's current position is manifestly inconsistent with a prior position such as to 'amount to an affront to the court, judicial estoppel may apply.'" *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1190 (9th Cir. 2000) (quoting *Ryan Operations G.P. v. Santiam Midwest Lumber Co.*, 81 F.3d 355, 362-63 (3d Cir. 1996)).

**4. <u>Relief From Stay Is A Limited Proceeding, In Which It Is Not Appropriate To Adjudicate Inter-Creditor Issues.</u>**

Whirlpool is essentially arguing that the Bankruptcy Court was obliged, in the context of the relief from stay proceeding, to make a determination as to Whirlpool's alleged rights in the Cash Collateral Account. The law is clear, however, that stay relief proceedings are limited to the issues specified in the statute and are not the context in which to adjudicate such claims. *In re Johnson*, 756 F.2d 738, 740 (9th Cir.), *cert. denied*, 474 U.S. 828 (1985) (relief from stay hearings are limited in scope to adequacy of protection, equity, and necessity to an effective reorganization, and validity of underlying claims is not litigated). *See also Biggs v. Stovin (In re Luz Int'l)*, 219 B.R. 837, 842 (9th Cir. BAP 1998); *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 33 (1st Cir. 1994); *In re Al's Den, Inc.*, 81 B.R. 47, 50 (Bankr. D. Haw. 1987).

The legislative history makes the matter unequivocally clear:

> . . . . at hearings on relief from the stay, the only issue will be the lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization of the debtor, or the existence of other cause for relief from the stay. This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims against the creditor, which, although relevant to the question of the amount of the debt, concern largely collateral or unrelated matters. This approach is consistent with that taken in cases such as *In re Essex Properties*, Ltd., 430 F. Supp. 1112 (N.D. Cal. 1977), that an action seeking relief from the stay is not the assertion of a claim which would give rise to the right or obligation to assert counterclaims. Those counterclaims are not to be handled in the summary fashion that the preliminary hearing under this provision will be. Rather, they will be the subject of more complete proceedings by the trustee to recover property of the estate or to object to the allowance of a claim. However, this would not preclude the party seeking continuance of the stay from presenting evidence on the existence of claims which the court may consider in exercising its discretion. What is precluded is a determination of such collateral claims on the merits at the hearing.

S. Rep. 95-989 (1978), p. 55; *See also* H. Rep. 95-595 (1977), p. 344.

Where, as here, there is a pending District Court lawsuit, involving the identical creditors and identical issues, the litigation of those issues in the context of a stay relief

proceeding would have been particularly inappropriate, and utterly wasteful. Clearly, the Bankruptcy Court did not err in granting relief from stay and thereby removing the estate from a dispute in which it had no stake.

**D. The Bankruptcy Court Never Ruled That CIT Violated the Automatic Stay; Moreover, Even If It Had, Because The Estate Was Not Damaged By Any Such Breach, The Court Properly Exercised Its Discretion In Granting Stay Relief.**

Whirlpool claims that CIT breached the automatic stay by allegedly conducting an auction of MidPac's assets after the commencement of an involuntary bankruptcy case against that entity, and collecting the Debtor's accounts receivables thereafter. CIT has denied both allegations. Moreover, contrary to Whirlpool's claim, the Bankruptcy Court never made a finding that CIT breached the stay.

**1. CIT Did Not Violate the Automatic Stay.**

MidPac alone made the decision to conduct the subject auction. The auctioneer was hired, and controlled, by MidPac. "[S]ection 362's automatic stay does not apply to sales or transfers of property initiated by the debtor." *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 574 (9th Cir. 1992). Moreover, as all parties agree, the auction was highly successful. While a CIT agent may have collected accounts receivables thereafter, as CIT has pointed out above, CIT did not apply the collections to the CIT claim. For months, it held the proceeds in an interest-bearing account pending entry of an appropriate order modifying the automatic stay. During this time, neither the Chapter 7 trustee nor any other party in interest had taken a single step to (i) collect the accounts receivable, (ii) take possession of the collected proceeds, and/or (iii) seek damages from, or otherwise sanction, CIT on account of these alleged breaches. In short, Whirlpool used baseless allegations of misconduct in an attempt to prevent CIT from effectuating the stay relief granted by the Bankruptcy Court without ever putting the allegations of misconduct to a true judicial test. The reasons for this inaction are obvious: (a) the claims of

wrongdoing are baseless, (b) the Bankruptcy Court never made a finding that CIT violated the automatic stay, and (c) in any event, the estate was not damaged by the alleged misconduct because the auction was successful, the proceeds were not applied to the CIT claim, and the estate had no interest whatsoever in the subject funds.

2. **The Estate Was Not Damaged By CIT's Alleged Breach of the Stay.**

Although Whirlpool alleges that CIT breached the automatic stay, nowhere does it claim that the Estate was damaged in any way by the alleged breach. With a deficiency of in excess of $1.4 million, CIT is woefully undersecured. Hence, even if there had been some technical breach of the automatic stay, the Estate was not damaged thereby. In such circumstances, the alleged offender should not be sanctioned in any way.

A violation of the automatic stay, standing alone, will not support an award of damages under 11 U.S.C. § 362(h) where the debtor has suffered no actual damages. *See In re John Fernandez*, 227 B.R. 174, 180 (9th Cir. 1999) (holding that a prima facie case under § 362(h) requires a showing of actual damages); *See also In re Adams*, 212 B.R. 703, 708, 711-12 (Bankr. D. Mass. 1997) (holding that a debtor must sustain actual damages in order to collect damages for violation of the automatic stay); *Whitt v. Philadelphia Housing Authority (In re Whitt)*, 79 B.R. 611, 615-616 (Bankr. E.D. Pa. 1987) ("No damages will be awarded as a result of the violation of the automatic stay if there was no evidence that the debtor suffered any harm.")

Denying damages to the debtor, the *Adams* court found that the debtor had suffered no actual injury. 212 B.R. at 711-712. A creditor had retained the debtor's rent payments in violation of the automatic stay. Another creditor had a perfected security interest in the debtor's rent payments. The court found that the creditor's retention of the rent payments constituted only a technical violation of the stay, and that the debtor was not entitled to the rent

payments in any event because of the valid security interest in those payments. *Id.* As in the case at bar, because the debtor had no rights in the payments, the debtor could not have been harmed by the creditor's retention of the payments. Hence, no actual damages could be shown by the debtor. *Id.*

Similarly, in *In re Price*, 179 B.R. 209, 212 (Bankr. E.D. Cal. 1995), the court refused to order the return of funds collected post petition by a creditor in violation of the automatic stay because the debtor suffered no injury as a result of the violation. Supporting its decision, the court asserted that "since Debtors remain ultimately liable on this debt, the court finds no injury from Creditor's post-petition collection of payments." *Id.* Moreover, "permitting Creditor to retain the funds already collected would not prejudice the bankruptcy estate" because Debtors stated an intention to pay its debt to Creditor in full. *Id.* "The court finds no injury to Debtors nor the bankruptcy estate as a result of Creditor's collection of post-petition wages in violation of the automatic stay. Therefore, the court will not order a return of funds heretofore collected." *Id.*

As in the *Adams* and *Price* cases, in this case, the bankruptcy estate had no interest in the subject funds and CIT, an undersecured creditor, was entitled to recover its collateral. Hence, even if CIT had committed some technical breach of the automatic stay, the estate was not harmed thereby. Significantly, neither Whirlpool, nor the Chapter 7 trustee, nor any other party has ever argued, much less proffered any evidence, that the bankruptcy estate was harmed by the alleged breach of the automatic stay. Under those circumstances, Whirlpool cannot validly argue that the Bankruptcy Court abused its discretion by allowing stay relief.

"Whether 'cause' exists to grant relief from the automatic stay -- retroactive or otherwise -- is a matter within the discretion of bankruptcy court." *In re Siverling*, 179 B.R. 909, 912 (Bankr. E.D. Cal. 1995) (citing *In re Fischer*, 136 Bankr. 819 (Bankr. D. Alaska 1992)).

Moreover, "the bankruptcy court has wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay." *See Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108-09 (9th Cir. 1995) (quoting *In re Schwartz*, 954 F.2d 569, 572 (9th Cir. 1992)). In the instant case, in view of the facts that the estate had no interest whatsoever in the subject funds and that the alleged violations of the automatic stay could have caused no harm to the estate, the Bankruptcy Court's decision to allow stay relief was a sound exercise of its discretion.

## V. CONCLUSION.

For the foregoing reasons, the Court should affirm the order of the Bankruptcy Court granting CIT's motion for relief from the automatic stay.

DATED: Honolulu, Hawaii, January 11, 2001.

CADES SCHUTTE FLEMING & WRIGHT
A Limited Liability Law Company
NICHOLAS C. DREHER
THEODORE D. C. YOUNG

ORRICK, HERRINGTON & SUTCLIFFE LLP
NEAL L. WOLF

Attorneys for THE CIT GROUP/BUSINESS CREDIT, INC.

IMANAGEDB:396339.1