1-28-02

LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997

Attorney for Appellant
WHIRLPOOL CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>MIDPAC LUMBER COMPANY, LTD.,<br><br>Debtor. | CIVIL NO. 01-00732 DAE-KSG<br><br>**APPELLANT WHIRLPOOL CORPORATION'S REPLY BRIEF; CERTIFICATE OF SERVICE**<br><br>APPEAL FROM ORDER GRANTING CIT GROUP/BUSINESS CREDIT, INC.'S MOTION FOR RELIEF FROM AUTOMATIC STAY ENTERED ON OCTOBER 2, 2001<br><br>Bk. No. 00-00136 |

**APPELLANT WHIRLPOOL CORPORATION'S REPLY BRIEF**

EXHIBIT B

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A. CIT Had to Demonstrate That it Had a Perfected Security Interest in the Subject Collateral. Whirlpool Produced Evidence to Show That CIT Had No Legally Enforceable Rights to CG Investments, Incas' Property. The Bankruptcy Court Disregarded this Critical First Step and Granted Relief. . . . . . . . . . . . . . . . 4

B. The Bankruptcy Court Erred In Permitting CIT To File A Second Motion Because The First Motion Was Denied, The Appeal Period Had Passed And It Was A Final Order. No Changed Circumstances Were Demonstrated By CIT Other Than Its Continuing And Ongoing Violations Of The Automatic Stay Of Two Separate Bankruptcy Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

C. The Court Had Discretion To Deny The Stay Relief Or To At Least Hold A Final Hearing On The Issues That Were Presented By Whirlpool and the Other Objecting Parties And The Failure To Do So Was An Abuse Of Discretion. . 8

1. CIT Failed To Carry The Burden As To The Source Of The Cash Collateral Account And Failed to Produce Any Evidence To Rebut Claims That The Account Had Been Commingled . . . . . . . . . . . . . . 8

2. By Enacting Section 303 Regarding Involuntary Cases Congress Has Dictated That Creditors Have A Right to Protect Themselves Against Knowing And Intentional Stay Violations of a Single Renegade Creditor 8

3. Whirlpool Has Not Admitted In The Pleadings That The Estate Has No Interest In the Matter But Has Stated That It Had Standing To Pursue Its Claims For RICO. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

4. Whirlpool Agrees That Relief From Stay Is A Limited Proceeding And Is Not Appropriate To Adjudicate Intercreditor Issues, But The Creditor Must Show That It Has Clean Hands And That It Has The Right To The Relief In Which It Is Seeking. CIT Has Neither . . . . . . . . . . . . . . . . 9

D. The Bankruptcy Court Ruled That CIT Had Violated The Stay And The Stay And Its Creditors Were Damaged And That The Court Abused Its Discretion By Not Imposing The Tougher Standards Required By The Ninth Circuit For Annulment Of The Automatic Stay. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

E. The Estate Was Damaged Because The Estate Consists Of The Rights Of Its Creditors And The Property Of The Debtor And All Of Which Has Been Damaged By CIT's Heavy Handed And Cavalier Disregard For Federal Law. 11

## TABLE OF AUTHORITIES

### FEDERAL CASES

In re American Mariner Industries, Inc., 734 F.2d 426 (9th Cir. 1984) . . . . . . . . . . . . . 7, 8

In re Chateaugay Corp., 880 F.2d 1509 (2nd Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re E.D. Wilkins Grain Co., 235 B.R. 647 (Bankr. ED. CA 1999) . . . . . . . . . . . . . . . . . . 12

In re Omni Graphics, Inc., 119 B.R. 641 (Bankr. E.D. WI 1990) . . . . . . . . . . . . . . . . . . 10

In re Shamblin, 890 F.2d 123 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

### STATUTES

The Bankruptcy Code, 11 U.S.C. § 303 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

### RULES

Fed. R. Bankr. P. 7052 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

### MISCELLANEOUS

Collier on Bankruptcy 15th Ed. Rev. ¶ 362.11[2] (CD ROM 2002) . . . . . . . . . . . . . . 10, 12

Joseph Mullin, Comment, *Bridging the Gap: Defining the Debtor's Status During the Involuntary Gap Period* 61 U. Chi. L. Rev. 1091 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I. INTRODUCTION.

Comes now Whirlpool Corporation ("Whirlpool"), by and through its undersigned counsel and hereby respectfully submits this Reply Brief.[1]

## II. BACKGROUND.

Before Whirlpool addresses the arguments raised in the Answering Brief, Whirlpool believes it necessary to first address some of CIT's factual assertions.

First, CIT states that: "[t]here is no dispute by any party that CIT had a valid security interest in the funds in this account . . ." Answering Brief at pg.2. Whirlpool produced evidence that demonstrated that among the monies held by CIT were money over which CIT had no "valid" security interest. Whirlpool produced evidence that CIT was collecting receivables of another bankruptcy Debtor, CG Investments, Inc. dba Maui Home Supply (Docket at 216, Exhibit "D"). Whirlpool produced evidence that it has a security interest senior to CIT over these proceeds (Docket at 216, Exhibits "B" through "J"). Additionally, Whirlpool produced evidence that, among the accounts that CIT was collecting in violation of the automatic stay, was the account of J&J Hardware. Whirlpool produced evidence showing that J&J was an account debtor of Maui Home Supply. Exhibit "D" to the Declaration of Timothy J. Hogan filed on June 13, 2001, was a copy of the Maui Home Supply bank statement and deposited items that showed the J&J payment deposits (Docket at 216, Exhibit "D").

The transcript of Ted Phelp's 2004 Examination (Docket at 240, Exhibit "A")

[1] Citations of the record will be cited as "(Docket at ___)" as previously referenced in Whirlpool's Opening Brief and CIT's Answering Brief.

demonstrates CIT's knowing and willful violation of the Automatic Stay including conducting the auction the day after learning of the involuntary Bankruptcy filing and the continued active collection of accounts receivable post petition (Docket at 240, p. 114, line 8 to p.117, line 18). The continued violations are evidence by CIT's collection agent, Jack Hatcher's post petition collection efforts. Whirlpool had demonstrated that CIT's account contained commingled proceeds. CIT has never produced an accounting that would trace its collateral into the account. By not putting CIT to its proof, the Bankruptcy Court erred. By not requiring CIT to make its case at a final hearing, the Bankruptcy Court abused its discretion.

In addition, CIT argues that it didn't' violate the automatic stay in its Answering Brief at p. 3, where CIT states that: ". . .Whirlpool argues that relief from stay should not have been granted because CIT was allegedly guilty of violation the automatic stay. This argument is unsupported by any evidence in the record . . ." Answering Brief at p. 3. The evidence in the record is the Bankruptcy Court's finding in regard to the first stay motion that the stay had been violated. In the order denying CIT's first motion, the Court specifically pointed to the reasons that the stay has been violated as follows:

> THE COURT: Well, but reading the agreement between the Debtor and the auctioneer, I think there is sufficient reference to your client, plus the actual tracing of the proceeds that is was conducted really to – to pay what was owing to your client. Your client knew that it was going on and this – an involuntary was filed. The sale should have never been conducted.

Transcripts of Proceedings before the Honorable Lloyd King, United States Bankruptcy Court Judge on April 3, 2000 (Docket at 219 at p. 4, lines 15-21). Then the Bankruptcy Court went on to detail, in the circumstances of an involuntary bankruptcy, the injury to the other creditors

as follows:

> THE COURT: Well, the issue is the applica – the use and application of the proceeds and – I suppose that what has to be worked out between parties and the parties have been put into a difficult position because the sale was conducted knowing that an involuntary petition was filed.

Transcripts of Proceedings before the Honorable Lloyd King, United States Bankruptcy Court Judge on April 3, 2000 (Docket at 219 at p. 5, lines 19-24).

The Order Denying the Relief from Automatic Stay was entered pursuant to the statement of reasons made in open court as provided by Fed. R. Bankr. P. 7052 of the Federal Rules of Bankruptcy Procedure.. These findings constitute the law of the case (Docket at 219 at p. 7 lines 7-10). This order has not been vacated and was a final judgment, against CIT and collateral estoppel prevents CIT from arguing otherwise.

CIT's also falsely accuses Whirlpool of taking inconsistent positions alleging at Page 13 of the Answering Brief that Whirlpool has conceded that the Bankruptcy Court lacks jurisdiction over CIT's violation of the automatic stay by misstating Whirlpool's position when it argued in another proceeding that it had standing to pursue its RICO/Fraud claims. Rather than correct the damage caused by its overt disdain for the Automatic Stay, CIT chooses to make absurd legal arguments and misscharacterize the positions of the litigants in related proceedings.

CIT also injured the Bankruptcy Estate of CG Investments, Inc. dba Maui Home Supply and its creditors whose rights were lost in the granting of Second Motion though not having been afforded the opportunity to raise their objections to that debtor's Estate being gobbled up by CIT. There were other creditors with claims to that property whose rights are

now lost in CIT's collateral feeding frenzy. This was an example of when a final hearing should have been conducted to deal with the commingling issues that CIT all but ignores in its Answering Brief.

## III. ARGUMENT.

### A. CIT Had to Demonstrate That it Had a Perfected Security Interest in the Subject Collateral. Whirlpool Produced Evidence to Show That CIT Had No Legally Enforceable Rights to CG Investments, Incas' Property. The Bankruptcy Court Disregarded this Critical First Step and Granted Relief.

In CIT's Statement of Facts in its Answering Brief, CIT makes the statement that, "at issue here is the funds in a bank account, consisting of the proceeds of a public auction of the Debtor's equipment and inventory, proceeds of collection of the Debtor's accounts receivables, and interest earned on these funds, all of which is the cash collateral of CIT." Answering Brief at pp. 3-4. This is a statement not established in the records and Whirlpool made a proper showing below that this was not CIT's collateral but rather, the property of an all together different bankruptcy estate. Whirlpool established that CIT was attempting to conceal its malfeasance through its failure to turn over critical documents in the bankruptcy court. See Declaration of Timothy J. Hogan; Exhibit "A" - "E" at ¶ 5 (Docket at 216, p. 2).

One of the parties objecting to CIT's second attempt to grab the money was Pacific Century Trust. (Docket at 225.) This objection, brought by a creditor seeking to recover construction bond funds that were in MidPac's accounts and alleged by Pacific Century to have been "converted" by CIT. See Pacific Century Trusts Memorandum in Opposition to Motion of CIT Group/Business Credit, Inc., for Relief from Automatic Stay filed on June 14, 2001 Docket at 225 at p. 5. CIT now claims to have had a perfected security interest in the Bond

Funds. A proper objection to that was brought and if sustained, the Estate could have been found to have had a trust obligation in favor of such creditors. By allowing CIT to avoid its proof at a final hearing regarding the source of the funds it clams were its collateral, the Bankruptcy Court in essence wiped out this Bond Fund claim and made it meaningless.

In addition, CIT states in its Answering Brief that "CIT deposited in the cash collateral account both the auction proceeds and thereafter on an ongoing basis, the payments from MidPac's customers that were delivered to the lockbox that had been established pursuant to the loan agreement." Answering Brief at p. 5. The principal "customer" that CIT is referring to is CG Investments, Inc. dba Maui Home Supply regarding which Whirlpool had sold products under a terms of a senior purchase money security interest. CIT, through a variety of devices including an unperfected consignment agreement was able to assert a bogus claim to this other debtor's property. What Whirlpool demonstrated in the Bankruptcy court was that it was not MidPac's customer's money that CIT was grabbing but money belonging to creditors of the CG Investments, Inc. Under the circumstances were the rights of other creditors were, more likely than not, being erased, it was an abuse of discretion to not require CIT to sort out its claims at a final hearing.

In fairness to the Bankruptcy Court, the Court's Statement of Reasons Pursuant to Fed. R. Bankr. P. 7052 conditioned the granting of the relief requested in the Second Motion on CIT's pledge to file a state court strict foreclosure action regarding the subject fund. In developing its statement of reasons for granting the Second Motion, the Bankruptcy Court questioned CIT's counsel as follows:

THE COURT: If the motion is granted, how would your client proceed?

MR. WOLF: Well, if the motion were granted, Your Honor, CIT would take the funds . . .

THE COURT: Well, now, but perhaps you could give – tell me a little more precisely how CIT would proceed. In other words, how does Bank of America hold the money and can CIT just – just say it's – its mine, give it to me or what authorizes Bank of America to deliver the money?

MR. WOLF: Well, if - - if the stay is lifted or annulled, CIT could exercise its rights to the account under applicable state law. In this case, it has a security interest in the account and, Your Honor, I – you know, I'm something of an Article 9 expert, but specifically, here, what I think they would need to do is – give notice and proceed under state law to – take control of the funds.

THE COURT: And – and how – how would that be done? I'm just trying to get an idea for what would be done and how long it would take.

MR. WOLF: I assume it would take a very, very short time, Your Honor. I – I assume they could foreclose on – under state law, you know, in the terms of foreclosure under – under Article 9 with respect to cash account, you know, a lot – and that – and that absolutely circle [sic] what I believe that they would do with the – to give notice to the Debtor and anyone that has any junior liens to the extent, if any, and at such time as an – an applicable notice period apply they would ask for turnover of the proceeds.

THE COURT: All right. I'm going to adhere to the tentative ruling and grant the motion for relief from stay.

. . .

THE COURT: ... If the motion is granted, the CIT does – just doesn't walk up to Bank of America and ask for a check. It has to give notice [sic] foreclose and there may be ways for the other parties to react to that if they wish to do so.

. . .

> The order can say that the motion is granted for the reasons stated in open court.

Transcripts of Proceedings before the Honorable Lloyd King, United States Bankruptcy Court Judge on September 19, 2001 (Docket at 259 at pp. 10–13).

Despite promising to in a "very very short time" to give notice of its intent for foreclose, Whirlpool has not received any such notice. Sadly, Whirlpool suspects that CIT just took the money without so much as a "by your leave." Unless the Bankruptcy Court is reversed, it is unlikely that the creditors of either effected Estate will ever know.

**B. The Bankruptcy Court Erred In Permitting CIT To File A Second Motion Because The First Motion Was Denied, The Appeal Period Had Passed And It Was A Final Order. No Changed Circumstances Were Demonstrated By CIT Other Than Its Continuing And Ongoing Violations Of The Automatic Stay Of Two Separate Bankruptcy Cases.**

CIT, in its Answering Brief seems to argue that the first order denying relief was not a final order. Then it implies that this is a case of first impression in the Ninth Circuit, citing In re Chateaugay Corp., 880 F.2d 1509, 1513 (2nd Cir. 1983). First, the Second Circuit required some showing of "changed circumstances." The only thing CIT can point to is the Bankruptcy Court's statement that CIT has waited 17 months. In reality, much of the delay was based on CIT's serial requests for continued hearings (Docket at 230, 234 & 237) and its obvious need to wrap up its illegal post petition collection efforts first.

By reading the Chateauguay case, one discovers that this is not a case of first impression in the Ninth Circuit as follows: "[M]ost circuits that have considered the issue have held that such order are final. See In re American Mariner Industries, Inc., 734 F.2d 426, 429 (9th Cir. 1984)." Chateauguay, 880 F.2d at 1511 (citation in original).

In Chateauguay, the Court of Appeals held that the denial of a motion for relief from automatic stay was the equivalent to the granting of a permanent injunction. Id. CIT's argument is, therefore, that having been the losing party in an fight over a permanent injunction, it is free to disregard the ruling continue the prohibited conduct and then challenge it again. Whirlpool believes that this is not the law and collateral estoppel applies unless CIT shows grounds for relief from the earlier order.

**C. The Court Had Discretion To Deny The Stay Relief Or To At Least Hold A Final Hearing On The Issues That Were Presented By Whirlpool and the Other Objecting Parties And The Failure To Do So Was An Abuse Of Discretion.**

**1. CIT Failed To Carry The Burden As To The Source Of The Cash Collateral Account And Failed to Produce Any Evidence To Rebut Claims That The Account Had Been Commingled.**

CIT failed to demonstrate that the money its was attempting to take was entirely traceable to its security. That would have been the subject of a final hearing that the Bankruptcy Court allowed CIT to avoid. The Bankruptcy Court erred by not putting CIT to its proof.

**2. By Enacting Section 303 Regarding Involuntary Cases Congress Has Dictated That Creditors Have A Right to Protect Themselves Against Knowing And Intentional Stay Violations of a Single Renegade Creditor.**

CIT continues to rely on its central premise: that the funds it was holding were proceeds of its collateral. Whirlpool produced evidence that rebutted this false premise. Without a showing that CIT was secured in this property, the relief from stay had the effect of allowing an unsecured creditor relief. There is no authority for that.

The Bankruptcy Code, 11 U.S.C. § 303 provides creditors with a device to prohibit one

creditor from dismembering the Debtor's Estate. By allowing CIT to disregard the automatic stay and not require it to make some attempt to alleviate the harm to the Estate and its creditor, the Bankruptcy Court effectively rewarded CIT.

**3. Whirlpool Has Not Admitted In The Pleadings That The Estate Has No Interest In the Matter But Has Stated That It Had Standing To Pursue Its Claims For RICO.**

Whirlpool has argued that it had standing to pursue its RICO and Fraud Claims. In its motion and its Omnibus Reply Brief CIT tried to trick the Bankruptcy Court with this sleight of hand but Whirlpool was able to alert the Bankruptcy Court to CIT's own inconsistency.

> MR. HOGAN: Well, we just spent a whole – well, a good part of an afternoon in front of the Honorable David Ezra in which they – they argued that he didn't have jurisdiction either, Your Honor.

(Docket at 259 at p. 9, lines 10-13).

**4. Whirlpool Agrees That Relief From Stay Is A Limited Proceeding And Is Not Appropriate To Adjudicate Intercreditor Issues, But The Creditor Must Show That It Has Clean Hands And That It Has The Right To The Relief In Which It Is Seeking. CIT Has Neither.**

CIT is still arguing that it didn't violate the stay. That's not what the Bankruptcy Court ruled in the statement of reasons pursuant to Fed. R. Bankr. P. 7052 in denying the first motion.

> THE COURT: It's my tentative view that the motion was – that the sale was conducted in violation of the automatic stay and the motion should be denied subject to hearing from counsel.

Transcripts of Proceedings before the Honorable Lloyd King, United States Bankruptcy Court Judge on April 3, 2000 (Docket at 219 at p. 4, lines 2-5).

The Bankruptcy Court went on to deny the motion for the reasons stated in open court (Docket at 219, at p. 7 lines 7-10). Now CIT is saying that it didn't violate the stay. This points to the difficulties raised by entering a second order on what amounts to the same motion. Collateral Estoppel was intended to avoid this.

Having violated the stay, CIT had to make some showing that its was worthy of dispensation that would excuse its earlier willful misconduct. If failed to. Now it is trying, for what amounts to the third time, to erase its wrongdoing by pretending that it never happened.

As stated above, having violated the stay and continuously avoided its legal obligations in the Bankruptcy Court, CIT lost its equitable standing. The Bankruptcy Court erred when it did not require the CIT to meet the standard for annulment of the stay. Instead of addressing this issue on appeal, CIT attacks Whirlpool stating that "the claims of wrongdoing are baseless." Answering Brief at pg. 18. CIT believes that it can violate the stay. CIT had a burden to correct its stay violation by providing the Estate and its creditors with information regarding the sale of collateral but didn't. By not requiring that and allowing CIT to skate past its obligations to follow the law, the Bankruptcy Court erred. See In re Shamblin, 890 F.2d 123 (9th Cir. 1989) (equity favors enforcement rather than annulment that should only be applied in extreme circumstances); see also In re Omni Graphics, Inc., 119 B.R. 641, 644 (Bankr. E.D. WI 1990) (Bank is not a 'novice' and when it takes a calculated risk in an involuntary case, its actions are clearly willful).

> A violation of the stay is punishable as contempt of court. When a violation of the stay is inadvertent, however, contempt is not an appropriate remedy. Nevertheless, the creditor will have a duty to undo actions taken in violation of the automatic stay. Failure to undo a technical violation may elevate the violation to a willful

> one. If the conduct is willful, even if based upon advice of counsel, contempt is an appropriate remedy.
>
> Most courts will impose contempt sanctions for a knowing and willful violation of a court order. The automatic stay is considered as equivalent to a court order.

Collier on Bankruptcy 15th Ed. Rev. ¶ 362.11[2] (CD ROM 2002).

In this case, CIT continues to say that it didn't violate the stay. CIT employed Jack Hatcher to continue collection actions after the filing of the MidPac case, let alone the CG Investments, Inc. bankruptcy. In addition, the Bankruptcy Court ruled in the first motion that "the sale never should have been held." CIT did nothing to undo the violation. Rather it continued unabated.

Under CIT's view of the law, the stay just doesn't apply to parties "claiming" to be a secured creditor. This is not the law.

**D. The Bankruptcy Court Ruled That CIT Had Violated The Stay And The Stay And Its Creditors Were Damaged And That The Court Abused Its Discretion By Not Imposing The Tougher Standards Required By The Ninth Circuit For Annulment Of The Automatic Stay.**

There is no question that CIT violated the stay. The Bankruptcy Court found that in its first order. There was no showing of changed circumstances or evidence of acts to alleviate the harm to the Estate. A good example of such acts would be CIT turning over its records to allow the creditors of both estates to see whose property CIT was trying to take. CIT continues to hide the ball. Despite being allowed to lift the stay, CIT still has yet to turn over a statement of its account regarding this loan. What is CIT hiding?

**E. The Estate Was Damaged Because The Estate Consists Of The Rights Of Its Creditors And The Property Of The Debtor And All Of Which Has Been Damaged By CIT's Heavy Handed And Cavalier Disregard For Federal Law.**

It is important to remember that this case, like the CG Investments, Inc. case was commenced as an "involuntary" Chapter 7 case. CIT makes the pragmatic argument of "no harm no foul" in stay litigation. That is not the law as applied to involuntary cases.. The stay is the foundation of the bankruptcy proceedings and when it is violated that alone should have some consequence.

> Permitting an involuntary debtor the latitude to simply stipulate away the automatic stay for a future trustee would also frustrate the very purpose of arming creditors with the right to file an involuntary petition. When a debtor is not paying its debts as they come due, creditors may file an involuntary petition to preserve the debtor's assets rather than run the risk that the debtor will be financially dismembered by other creditors or its assets dissipated through the debtor's incompetence or dishonesty.

In re E.D. Wilkins Grain Co., 235 B.R. 647, 650 (Bankr. ED. CA 1999) citing Joseph Mullin, Comment, *Bridging the Gap: Defining the Debtor's Status During the Involuntary Gap Period* 61 U. Chi. L. Rev. 1091 (1991).

MidPac's creditors took the extraordinary step to file an involuntary petition to stop the CIT liquidation. Despite Congress' clear dictate that the stay applies, CIT went ahead with the sale. It continued to collect from third parties money that it knew was subject to dispute and that clearly was property of the estate. Then CIT was allowed to swallow up the collateral without the ability of the Trustees or the estates' creditors to challenge its right to do so. In light of CIT's continued stay violations, that was an abuse of discretion.

## IV. CONCLUSION.

For the reasons stated, Whirlpool respectfully asks that the Order of the United States Bankruptcy Court be vacated and that CIT be ordered to account for the whereabouts of the money that was to be the subject of its promised strict foreclosure action.

DATED Honolulu, Hawaii JAN 28 2002.

Timothy J. Hogan, Esq.
Attorney for Whirlpool Corporation
Appellant.