Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys At Law
A Law Corporation

PAUL ALSTON 1126-0
LOUISE K. Y. ING 2394-0
THOMAS E. BUSH 4737-0
ALLISON KIRK 8156-0
18th Floor, ASB Tower
1001 Bishop Street
Honolulu, Hawai'i 96813
Telephone: 524-1800
Facsimile: 524-4591
palston@ahfi.com
ling@ahfi.com
tbush@ahfi.com
akirk@ahfi.com

Attorneys for Defendant/Cross-claimant
THE CIT GROUP/BUSINESS CREDIT, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE | ) | Civil No. CV 01 00187 MEA-BMK<br>(Tort and RICO)<br><br>**DEFENDANT THE CIT GROUP/BUSINESS CREDIT, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF WHIRLPOOL CORPORATION'S MOTION IN LIMINE NO. 5 REGARDING EVIDENCE OF REASONABLE RELIANCE, FILED 6/13/06;** DECLARATION OF LOUISE K. Y. ING; |

| | | |
|---|---|---|
| PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Crossclaim Defendants. | ) | EXHIBITS A-E; CERTIFICATE OF SERVICE<br><br>JUDGE: Hon. Marvin E. Aspen<br><br>TRIAL: November 6, 2006 |

**DEFENDANT THE CIT GROUP/BUSINESS CREDIT, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF WHIRLPOOL CORPORATION'S MOTION IN LIMINE NO. 5 REGARDING EVIDENCE OF REASONABLE RELIANCE, FILED 6/13/06**

Defendant The CIT Group/Business Credit, Inc. ("CIT") opposes Whirlpool's request to exclude evidence of whether Whirlpool reasonably or justifiably relied on statements by Ted Phelps and others about MidPac Lumber Co. ("MidPac") and Maui Home Supply ("MHS"). Whirlpool's motion should be denied because as discussed at length in CIT's Trial Brief (filed 6/14/06) at pages 10-18 (the arguments are incorporated herein by reference):

(A) reasonable or justifiable reliance has long been an element of fraud claims under Hawai`i law. *See TSA International, Ltd. v. Shimizu Corp.*, 92 Haw. 243, 990 P.2d 713 (1999) (the Hawaii Supreme Court specifically ruled that

**<u>reliance must be reasonable);</u>** *Bulgo v. Moniz,* 853 F.2d 710, 716 (9th Cir. 1988) (listing "justifiable reliance" as an element of a fraud claim, citing *In re Hawaii Corp.,* 567 F. Supp. 609, 630 (D. Haw. 1983) (misrepresentation case); *Stahl v. Balsara*, 60 Haw. 144, 149, 587 P. 2d 1210 (1978)(ruling that it was "utterly unreasonable for appellant to rely upon such representations"-prognostications), *discussed in Trial Brief, at 10-11;*

(B) even if the Court finds Hawai`i law to be unclear on that element, the Court should follow the lead of California and most other jurisdictions in requiring justifiable reliance. *See Trial Brief, at 12-17.* When precedent is lacking, "[t]he general trend of Hawaiian courts is to look to California law in the absence of Hawaiian authority." *Locricchio v. Legal Services Corp.*, 833 F.2d 1352, 1357 (9th Cir. 1987); *Sutherland v. Kaonohi Ohana, Ltd.*, 776 F.2d 1425, 1427 n.4 (9th Cir. 1985) ("the courts of Hawaii frequently look to decisions from California when deciding cases of first impression"), *quoted in Trial Brief, at 12.* The issue of whether justifiable reliance is an element of fraud claims in Hawai`i was not one which the parties specifically briefed in response to Whirlpool's Motion for Partial Summary Judgment As To Defendant CIT Group/Business Credit, Inc. on Count V (RICO) ... and Count II (Fraud Conspiracy) (filed 2/2/04)

("WP RICO MPSJ"),[1] and CIT therefore did not have an opportunity to bring to this Court's attention, before the issuance of its Opinion, the weight of authority in Hawai`i, California and other jurisdictions requiring justifiable reliance as an element of a fraud claim, not just a fraudulent inducement claim;

(C) even if one assumes that Hawai`i courts have only required justifiable reliance as an element of fraudulent inducement claims, Whirlpool must still prove reasonable or justifiable reliance, for its fraud claim is based on fraudulent inducement caused by silence or concealment. *See Trial Brief, at 17-18.* For instance,Whirlpool claims that it was Ted Phelps' silence about the contents of his July 9, 1999, letter to creditors that first fraudulently induced Whirlpool into continuing to ship goods to MidPac and MHS, and not to exercise its creditor rights. *Second Amended Complaint, ¶¶ 96-106.* Whirlpool therefore cannot and should not be allowed to evade the requirement to prove it reasonably or justifiably relied.

The *Restatement (Second) of Torts* provides additional authority for the principle that justifiable reliance is an element of fraudulent misrepresentation cases: "The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him."

---

[1] *See* Whirlpool's Memorandum in Support of Motion (filed 2/2/04); CIT's Memorandum in Opposition to WP's RICO MPSJ (filed 3/4/04); Whirlpool's Reply Memorandum (filed 3/17/04).

*Restatement (Second) of Torts § 541 (1977*). While this formulation for justifiable reliance arguably sets a lower threshold than under Hawai`i, California and other states' laws, the Restatement commentary explains that the plaintiff claiming fraud must have "used his senses" and cannot "blindly" rely:

> Although the recipient of a fraudulent misrepresentation is not barred from recovery because he could have discovered its falsity if he had shown his distrust of the maker's honesty by investigating its truth, he is nonetheless required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.

*Id., comment a.*

Whirlpool tries to evade its burden of showing reasonable reliance by contending that it "remained in the dark" while CIT "learned of the fraud" and "became actively involved in establishing a previously non-existent paper trail to support is alleged consignment and created a previously non-existent junior secured interest all directed at Whirlpool." *Whirlpool's Memorandum in Support, at 2-3.* There are numerous problems with Whirlpool's argument, some of which will be highlighted:

- Whirlpool misrepresents "the fraud" of which CIT was aware in the summer and fall of 1999, and tries to blur it into the broader fraud alleged by Whirlpool: the alleged scheme to "bust out" MidPac. However, CIT's representatives testified that at the time, they understood the fraud to have

been a limited one: a fraud "against CIT" arising from overstating accounts receivable. *Ex. A, Rule 30(b)(6) Deposition of Thomas A. Hayes (11/19/02), at 66:25-67:15; Ex. B, Deposition of Robert Brichacek (11/21/02), at 112:4-7.*

- Whirlpool creates confusion by blurring timeframes in its efforts to tar Phelps with fraudulent conduct and tie Phelps to CIT. Whirlpool refers in its memorandum in support of motion to an alleged statement by Phelps to Whirlpool that there was "no fraud." *Memorandum in Support, at 2.* However, Whirlpool's Ernest Matlock testified that the statement did not occur until September 13, 1999, several months after Phelps allegedly lulled or defrauded Whirlpool into continuing to ship goods on credit to MidPac and MHS for one month in June to July 1999. *Ex. C, Rule 30(b)(6) Deposition of Ernest Matlock, at 23:23-24:11.* Although Matlock took frequent notes of his conversations with Phelps, he did not bother to document that alleged statement. *Id., at 24:10.*

- Whirlpool did not "use [its] senses." Not only did Whirlpool keep shipping on credit in the face of repeated defaults on MidPac and MHS' payment plan, but its Hawai`i-based personnel, Harris Fujita and Wayne Miyake, made weekly visits or twice weekly to MidPac and MHS throughout June to December 1999. *Ex. D, Rule 30(b)(6) Deposition of Alex Holton*

*(11/15/02), at 39:20-40:10.* Fujita's only documented observation of anything out of the ordinary was a November 3, 1999, memorandum in which he reported on MidPac's plans for a liquidation sale and his concerns that proceeds from MidPac's sale of appliances "would go to pay down the CITI debt and not Whirlpool's." *Trial Ex. W766, attached as Ex. E.* This memorandum, showing Fujita's ability to observe and report on matters outside the ordinary course of business, undercuts Whirlpool's theory that CIT was controlling sales at MidPac and MHS without Whirlpool being in a position to discover such unusual and alarming circumstances.

- Whirlpool itself creates confusion by blurring the lines between its fraud and fraud conspiracy claims. As this Court found, its fraud claim is based on its theory that the alleged silence and concealment by CIT's alleged agent, Ted Phelps, induced Whirlpool to ship over $300,000 in goods between June 23 and July 23, 1999. That is the claim for which Whirlpool must not only prove reasonable reliance under the authorities discussed above and in CIT's trial brief, but Phelps' agency. *Memorandum Opinion and Order (filed 12/28/04) ("Opinion"), at 14.*
- A ruling on reasonable reliance will not excuse Whirlpool from meeting the many other elements it must prove to establish its claims. The other vague scheme alleged by Whirlpool in its motion in limine, the creation of a phony

"paper trail" and "previously non-existent junior secured interest all directed at Whirlpool", appears to relate to Whirlpool's fraud conspiracy claim (and perhaps its conversion and/or interference claims), although it is unclear what transactions Whirlpool is referring to. For its fraud conspiracy claim, Whirlpool will not only need to prove all the elements of an underlying fraud, including Whirlpool's reasonable reliance under the authorities discussed above and in the trial brief, but that (A) CIT intended to assist the alleged conspiracy, *Opinion, at 19,* rather than just protecting its legitimate interests (*see discussion in Trial Brief, at 19-20, incorporated herein by reference*), and (B) the alleged conspiracy was for the purpose of harming and did harm Whirlpool. *See authority cited in Trial Brief, at 20-21, incorporated herein by reference.*) Therefore, it will not be sufficient in proving its fraud conspiracy claim, as Whirlpool intimates in its Motion in Limine, to show only that Phelps was CIT's agent, that Phelps made the alleged statements, and Whirlpool relied on them. Whirlpool must show it reasonably relied and must show all the other elements for fraud conspiracy.

For the foregoing reasons, Whirlpool's Motion seeking exclusion of evidence of reasonable reliance should be denied.

DATED: Honolulu, Hawaiʻi, June 26, 2006.

/s/ Louise K. Y. Ing
PAUL ALSTON
LOUISE K. Y. ING
THOMAS E. BUSH
ALLISON KIRK
Attorneys for Defendant/Cross-claimant THE CIT GROUP/BUSINESS CREDIT, INC.