COPY



IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>MIDPAC LUMBER CO., LTD.,<br><br>Debtor. | CASE NO. 00-00136<br>(Chapter 7) |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE LLOYD KING
UNITED STATES BANKRUPTCY COURT JUDGE
ON SEPTEMBER 19, 2001

APPEARANCES:

| | |
|---|---|
| For The CIT Group./<br>Business Credit, Inc. | NEAL L. WOLF, ESQ.<br>Orrick Herrington & Sutcliffe LLP<br>777 South Figueroa Street<br>32nd Floor<br>Los Angeles, CA 90017-5832 |
| For The CIT Group/<br>Business Credit, Inc. | THEODORE D.C. YOUNG, ESQ.<br>Cades Schutte Fleming & Wright<br>1000 Bishop Street, 11th Floor<br>Honolulu, HI 96813 |
| For Mark J.C. Yee,<br>Trustee | JERROLD K. GUBEN, ESQ.<br>Reinwald O'Connor & Playdon<br>Makai Tower, 24th Floor<br>733 Bishop Street<br>Honolulu, HI 96813 |
| For Whirlpool Corporation | TIMOTHY J. HOGAN, ESQ.<br>Lynch Ichida Thompson & Kim<br>1132 Bishop Street, Suite 1405<br>Honolulu, HI 96813 |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

APPEARANCES (Continued):

| | |
|---|---|
| For Pacific Century Trust, Successor Trustee of The Melanie Gorman Trust | FRANCIS P. HOGAN, ESQ.<br>Ashford & Wriston<br>1099 Alakea Street, Suite 1400<br>Honolulu, HI 96813 |
| For KraftMaid Cabinetry, Inc. | DARREN M. SUZUKI, ESQ.<br>Chee & Markham<br>1000 Bishop Street, Suite 1000<br>Honolulu, HI 96813 |
| For Riedel Construction, Inc. | TERRY L. DAY, ESQ.<br>3283 Beaumont Woods Place<br>Honolulu, HI 96822 |
| For Klupenger Lumber Company, Inc. | EDWARD J. CORWIN, ESQ.<br>Bays Deaver Hiatt Lung & Rose<br>Alii Place, 16th Floor<br>1099 Alakea Street<br>Honolulu, HI 96813 |
| Transcriber | JUVELYNN FAGARAGAN |
| Audio Operator | NEAL MAESHIRO |

--oOo--

THE CLERK: Case 00-00136, Midpac Lumber Company. This case is called for a preliminary hearing on a motion for relief from the automatic stay.

We have counsel on line please.

MR. WOLF: This is Neal Wolf of Orrick Herrington & Sutcliffe on behalf of the CIT Group/Business Credit, Inc. which is the movement -- Movant. And, Your Honor, I'd like to thank you for letting me appear telephonically. I was to fly down, but my flight was, not surprisingly, cancelled.

THE COURT: All right. Can you hear me all right, Mr. Wolf?

MR. WOLF: I certainly can, Your Honor.

THE COURT: All right.

MR. YOUNG: Good afternoon, Your Honor. Theodore Young for the CIT Group/Business Credit, Inc.

THE COURT: How come everybody else is on the other side of the courtroom?

MR. GUBEN: We're trying to distance ourselves from Mr. Young and Mr. Wolf, Your Honor.

Jerrold Guben on behalf of the Debtor/Respondent, Your Honor, Midpac Lumber, and Mark J.C. Yee, the Trustee.

MR. T. HOGAN: Good afternoon, Your Honor. Timothy Hogan on behalf of the Whirlpool Corporation.

MR. F. HOGAN: Good afternoon, Your Honor.

Francis Hogan for Pacific Century Trust, trustee of the Melanie Gorman Trust.

MR. SUZUKI: Good afternoon, Your Honor. Darren Suzuki on behalf of KraftMaid Cabinetry.

MS. DAY: Good afternoon, Your Honor. Terry Day on behalf of Riedel Construction Company.

MR. CORWIN: Your Honor, Ed Corwin on behalf of Klupenger Lumber Company.

THE COURT: All right. Good afternoon.

This is a motion for relief from stay. It's my tentative view that the motion should be granted.

It's been 17 months since the prior motion by CIT for relief from stay was denied. Various theories have been advanced as to why relief from stay shouldn't be granted or there should be other relief as to CIT, but nothing has been done. I -- there's been no showing that -- or attempt to show that CIT wouldn't be good for a judgment in the amount that's held in the account in the bank. Some theories -- well, constructive trust is rather difficult in the Bankruptcy Court. Pacific Century and Riedel might be better off in another court and then this Court on their theories. And, finally, there's harm in this ongoing delay to the moving party.

So that's my tentative view subject to hearing from other -- Mr. Wolf, if it's all right with you, I'll let

the opposing parties go ahead.

MR. WOLF: That would be fine, Your Honor.

THE COURT: All right. Mr. Guben?

MR. GUBEN: Yes. Let me begin, Your Honor.

We've looked at the -- the situation and the Court is correct, CIT is actually good for the money. That's why we have not made a demand. And if we did make a demand under 542(a), we know that in cash collateral, we would have to probably provide and certainly provide adequate protection which effectively would be the full amount of the auction proceeds in cash or letter or creditor, some type of certificate of deposit.

But with respect to the preliminary hearing and the final hearing, we have been working with Whirlpool and we can discuss that later. But what I'd like to at least discuss today is, what do we have to do to survive a preliminary hearing as opposed to getting to a final hearing.

We've raised various issues, what we call affirmative defenses. These affirmative defenses can be raised in a relief or modification of the stay hearing without beyond, if you will, preponderance of the evidence proof. That is for a litigation on the merits. Whether or not CIT was an insider. Whether or not CIT's claim in an adversary proceeding should be equitably subordinate.

Whether or not CIT engaged in some type of fraudulent concealment and as a result they have a duty to the creditors. That will be the subject of an adversary proceeding, and under 546, it will be filed timely.

What the Court has to decide today is, what types of proof would we have to put on at a final hearing to establish not the merits of those defenses, but sufficient proof to establish that CIT should not be allowed to foreclosure, if you will, on the proceeds.

I have looked at the, if you will, the burdens of proof and the burdens of persuasion. I really can't tell this Court as I stand here today what I would have to show at a final hearing to defeat, to defeat, CIT's motion for the modification of the automatic stay. I know it is something less than the proof that I would have to establish in the adversary proceeding for equitable subordination, fraudulent concealment, if you will, insider status. But it is a, if you will, a prima facie showing. If that's the case, I think we can satisfy the Court that at a final hearing, will it be able to establish by affidavit and declaration a prima facie case with respect to these defenses, again, not going to the merits, but going insofar as to defeat CIT's modification for the stay.

That is what we would be willing to establish at a final hearing, Your Honor, even if the Court decides that

the motion for relief should be granted. We all admit CIT is good for it if we do prevail on the adversary proceeding, but the question is, should it be granted given the fact that CIT, while it did engage in a technical violation of the automatic stay by conducting the auction, appropriating the proceeds after they were fully notified of MidPac Lumber's Chapter 7 involuntary filing they went ahead with it. Whether or not that's enough to give them dirty hands, I'll leave that up to the Court.

But the issue today is, Your Honor, what is the burden of proof, the burden of persuasion that a trustee must establish to defeat a motion for relief from stay but not necessarily establish equitable subordination, fraudulent concealment and the other affirmative defenses that will be raised in the, if you will, affirmative claims in an adversary proceeding.

I think that we should be entitled to go to a final hearing. It's only 30 days off. We could do it by affidavit and declaration. I think we can establish a prima facie case, Your Honor, to suspend those funds. There's no harm being done. Probably in a letter of creditor and account, accruing interest as we speak. But I think that the Trustee should be allowed to proceed to a final hearing on these matters.

THE COURT: Thank you, Mr. Guben.

Mr. Hogan?

MR. T. HOGAN: Thank you, Your Honor.

Your Honor is correct that it's been a -- a while since this was brought before the Court, but in the first instance, Your Honor, we really weren't looking in a motion for relief but for annulment because of actions that were taken in violations stay. I -- I don't think time has cured that and I think what we are still faced with is an order -- a request for annulment and I don't think CIT has set forth the kind of showing that's necessary for the Court to grant them that extraordinary remedy.

I don't think there's any dispute that the stay was violated. Contrary to one of the -- the footnotes in what was filed, Your Honor, frankly, I was shocked to read it that if the Court is relying at all on footnote 1 on page 6 that somehow this just happened by the Debtor, I think we at least should have a chance to put something in the record to correct that, Your Honor.

What we're talking about isn't simply a stay violation that occurred one day and then was cured, they got the money. We'd be able to put on, Your Honor, and I'd put evidence in the file, in my affidavit, J&J Hardware, to show that they've been collecting despite this Court denying them the earlier motion, they went about their business to collect the -- the receivables as if nothing had happened at

that hearing, Your Honor. I believe that is another violation to stay and they cite a lot of cases that unless you can show some harm that it's no harm, no foul, but I think there's a point where a creditor, especially a creditor that's asking to be able to take a million dollars without having shown where that million dollars came from, shouldn't be granted the kind of equitable relief and I'd say excuse that they're asking, Your Honor.

They made a statement that Whirlpool alleges that this Court doesn't have jurisdiction, Your Honor. Well, we just spent a whole -- well, a good part of an afternoon in front of the Honorable David Ezra in which they -- they argued that he didn't have jurisdiction either, Your Honor.

The claims they are talking about are racketeering claims against CIT, Your Honor, not the claims to these proceeds. We made it clear these are commingled. I've made a showing they are commingled, and under Article 9 as cited in my -- my brief that was back in June, that goes to the Trust -- the Trustee with the exception of a small amount received within ten days. They haven't made any showing of how much they've received within ten days. That's Article 9, state law controls the rights of this creditor. They're saying we get it all.

Now, what I put in the record, Your Honor, it's interesting this has been called in the MidPac Lumber case

is that this was money from another case. Those creditors have not been given notice of this hearing. We'd made a showing that this was money from the Maui Home Supply case. They haven't gotten notice of this hearing and their rights are being affected.

So as far as granting CIT the annulment that they are asking for and that the time that has gone by, Your Honor, the time has been much more on CIT's side than on an insolvent trustee's estate side, Your Honor, we'd ask the Court to deny the motion or at least set it for final hearing. Thank you.

THE COURT: Did anyone else wish to be heard in opposition to the motion?

(No response.)

Mr. Wolf, this is Judge King.

MR. WOLF: Yes, Your Honor?

THE COURT: If the motion is granted, how would your client proceed?

MR. WOLF: Well, if the motion were granted, Your Honor, CIT would take the funds which are in the account and apply into the payment of its debt. Debtor simply -- what it would do, as Your Honor noted and as counsel -- the counsel who spoke in oppositions to motion noted, if they have claims that they believe they have against CIT, they can initiate a lawsuit against CIT which is a case that the

Trustee he hasn't done in some 17 months in that position. And CIT is definitely good for the money, Your Honor, and say multi-billion -- is part of a multi-billion dollar corporation.

So if they -- if they have some claims, they can assert them. The fact of the matter is, they haven't assert -- asserted them today.

THE COURT: Well, now, but perhaps you could give -- tell me a little more precisely how CIT would proceed. In other words, how does Bank of America hold the money and can CIT just -- just say it's -- it's mine, give it to me or what authorizes Bank of America to deliver the money?

MR. WOLF: Well, if -- if the stay is lifted or annulled, CIT could exercise its rights to the account under applicable state law. In this case, it has a security interest in the account and, Your Honor, I -- you know, I'm -- I'm something of an Article 9 expert, but specifically, here, what I think they would need to do is -- is give notice and proceed under state law to -- to take control of the funds.

THE COURT: And -- and how -- how would that be done? I'm just trying to get an idea for what would be done and how long it would take.

MR. WOLF: I assume it would take a very, very short time, Your Honor. I -- I assume that they could

foreclose on -- under state law, you know, in terms of foreclosure under -- under Article 9 with respect to cash account, you know, a lot -- and that -- and that absolutely circle what I believe that they would do with the -- to give notice to the Debtor and anyone that has any junior liens to the extent, if any, and at such time as an -- an applicable notice period apply they would ask for a turnover of the funds.

THE COURT: All right.

MR. WOLF: Does Your Honor want me to respond to some of the points that were made by counsel?

THE COURT: No.

MR. WOLF: Okay.

THE COURT: But does anyone else have anything they want to add?

(No response.)

All right. I'm going to adhere to the tentative ruling and grant the motion for relief from stay.

If this were the first hearing on a motion for relief from stay, that would be one thing, but now we're 17 months after denial of the motion. This -- this is a renewed motion. Nothing has happened in the Bankruptcy Court. We're talking about a substantial sum of money I think now in excess of a million dollars and the procedures will have to be followed. If the motion is granted, the CIT

does -- just doesn't walk up to Bank of America and ask for a check. It has to give notice foreclose and there may be ways for the other parties to react to that if they wish to do so.

But in any event, CIT has been kept waiting long enough if there is harm to it in simply keeping it waiting for another who knows how long a period of time and I think, therefore, that cause exists to grant this motion and I'll ask Mr. Wolf or Mr. Young please to submit an order. The order can say that the motion is granted for the reasons stated in open court.

Is there anything --

MR. WOLF: Thank you very much, Your Honor.

THE COURT: Is there anything else that requires attention this afternoon?

(No response.)

Apparently not.

All right. Mr. Wolf, thank you for your telephonic participation. We'll right off the connection now.

Okay. Thank you.

(Whereupon, the hearing was concluded.)

--oOo--

STATE OF HAWAII )
) ss.
CITY AND COUNTY OF HONOLULU )

I, JUVELYNN FAGARAGAN, certified court transcriber for the United States Bankruptcy Court for the District of Hawaii, do hereby certify that the foregoing is a true and accurate transcript from the electronic sound recording of the proceedings had in connection with the above entitled cause and was transcribed by me to the best of my ability from the certified tapes furnished to me identified as follows:

Tape No. 01-128, Log Nos. 4752-6195

DATED at Honolulu, Hawaii this 29th day of October, 2001.

Juvelynn Fagaragan, Transcriber