Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys At Law
A Law Corporation

PAUL ALSTON 1126-0
LOUISE K. Y. ING 2394-0
THOMAS E. BUSH 4737-0
ALLISON KIRK 8156-0
18th Floor, ASB Tower
1001 Bishop Street
Honolulu, Hawai‘i 96813
Telephone: 524-1800
Facsimile: 524-4591
palston@ahfi.com
ling@ahfi.com
tbush@ahfi.com
akirk@ahfi.com

Attorneys for Defendant/Cross-claimant
THE CIT GROUP/BUSINESS CREDIT, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE | Civil No. CV 01 00187 MEA-BMK<br>(Tort and RICO)<br><br>**DEFENDANT CIT GROUP/BUSINESS CREDIT, INC.'S REPLY TO WHIRLPOOL CORPORATION'S OPPOSITION TO CIT'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OF AND ARGUMENT RE: ALLEGED BANKRUPTCY FRAUD BY CIT;** CERTIFICATE OF SERVICE |

| | | |
|---|---|---|
| PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Crossclaim Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | JUDGE: Hon. Marvin E. Aspen<br><br>TRIAL: November 6, 2006 |

**DEFENDANT CIT GROUP/BUSINESS CREDIT, INC.'S REPLY TO WHIRLPOOL CORPORATION'S OPPOSITION TO CIT'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OF AND ARGUMENT RE: ALLEGED BANKRUPTCY FRAUD BY CIT**

Defendant CIT Group/Business Credit, Inc. hereby responds to Whirlpool Corporation's Opposition to CIT's Motion in Limine to Preclude Evidence of and Argument re: Alleged Bankruptcy Fraud by CIT ("MIL re Bankruptcy Fraud") ("Opposition"). Whirlpool makes three erroneous arguments in its opposition: (1) that it should be allowed to elicit evidence of predicate acts of bankuptcy fraud against Mr. Iwamoto because there are still RICO conspiracy claims against him, (2) that CIT benefitted from Mr. Iwamoto's alleged bankruptcy fraud and (3) that CIT is motivated by concern that Judge Ezra's Amended Order upholding the lifting of the automatic stay in the MidPac Lumber

bankruptcy case as to proceeds in a cash collateral account claimed by MidPac will show that CIT "never obtained a stay lift order for the property it took from Maui Home Supply." *Opposition, at 2.*

All Whirlpool's arguments should be rejected out of hand because Whirlpool has no private right of action to sue for violations of the criminal bankruptcy fraud statute. *See Heavrin v. Boeing Capital Corporation*, 246 F. Supp.2d 728, 731 (W.D.Ky. 2003) ("there is no private cause of action under 18 U.S.C. § 152(4) for filing a false proof of claim in a bankruptcy proceeding") (citing *Clayton v. Raleigh Fed. Sav. Bank*, 194 B.R. 793, 795 (M.D.N.C. 1996). The holdings of *Heavrin* and *Clayton* apply to the sub-section of 18 U.S.C. § 152 that Whirlpool appears to implicate here (*compare* § 152(1) (fraudulently concealing from a trustee or from creditors "property belonging to the estate") *with SAC* ¶ *168* ("CIT has concealed assets in a bankruptcy case"), although Whirlpool does not specify any sub-sections at all. Both the *Heavrin* and *Clayton* cases applied the four factors in *Cort v. Ash*, 422 U.S. 66 (1975), "for determining whether a private right of action may arise from a statute", *Heavrin,* 246 F. Supp.2d at 731, none of which justify a contrary holding with respect to Section 152(1) because:

1. "Whether the plaintiff belongs to a class for whose special benefit the statute was enacted." *Id.* Section 152(1) only prohibits concealment

from a trustee or similar officers of the court or creditors in a Chapter 11 case. Both the MidPac and MHS bankruptcies were Chapter 7 cases. *SAC, ¶ 166.* The *Heavrin* court reasoned that "The [Bankruptcy] Code creates extensive rights readily available to litigants, and there is no reason to believe that additional rights should be created where none are expressed or clearly implied." *246 F. Supp.2d at 731.*

2. "whether explicit or implicit legislative intent to create such a remedy can be found." *Id.* Whirlpool has shown no legislative intent to create a private remedy for aggrieved creditors like Whirlpool.

3. "whether a private right of action is consistent with the underlying purposes of the legislative scheme." *Heavrin, 246 F. Supp.2d at 731.* As in *Heavrin* and *Clayton* with respect to section 152(4), "implication of a private right of action would not be consistent with the overall legislative scheme with respect to bankruptcy proceedings" for "the Bankruptcy Code is a highly intricate and reticulated statutory scheme that does not easily lend itself to the creation of new rights and remedies on the part of private parties." *Heavrin,* at 246 F. Supp.2d at 731 *(citing with respect to the Bankruptcy Code, In re Terio*, 158 B.R. 907 (S.D.N.Y. 1993).

4. “whether a cause of action is not one traditionally relegated to state law.” *Heavrin*, 246 F.Supp.2d at 731. The *Heavrin* and *Clayton* courts did not specifically address this fourth factor but apparently found enough reason under the other three factors to rule that no private right of action should be implied in 18 U.S.C. § 152(4).

This Court should likewise find that Whirlpool cannot use 18 U.S.C. § 152 as a basis for claim against CIT. Although the RICO Act specifically covers “fraud connected with a case under title 11”, *18 US.C. § 1961(1)(D)*, Whirlpool did not prevail on its RICO claim against CIT and has no other basis on which to sue for violations of 18 U.S.C. § 152.

If that were not enough, there are specific reasons that each of Whirlpool’s three arguments in its opposition are wrong:

With respect to Whirlpool’s first argument relating to alleged bankruptcy fraud by Mr. Iwamoto, “[t]he circumstances constituting fraud” must be pled with specificity. *Fed.R.Civ.P. 9(a)*. There are absolutely no allegations, either general or specific, against Mr. Iwamoto or any references to his alleged “conduct just prior to the bankruptcy filing by MidPac’s creditors, in transferring assets” (*Opposition, at 2*) in the bankruptcy fraud section of Whirlpool’s RICO Count V *(see Second Amended Complaint ¶¶ 166-176)*, or in Whirlpool’s First Amended RICO Case Statement (filed 10/17/01), pages 17-20.

With respect to Whirlpool's second argument, there are therefore no alleged predicate acts of bankruptcy fraud by Mr. Iwamoto under the section of the SAC dealing with "Bankruptcy Fraud" from which CIT allegedly benefitted.

With respect to Whirlpool's third argument, the lack of any order lifting stay in the Maui Home Supply ("MHS") bankruptcy case, filed January 31, 2001 (*see SACC ¶ 166)* is irrelevant to this motion. Whirlpool is referring to the allegations in paragraph 167 of its SAC, which alleges that CIT and the RICO "Enterprise" "retained possession of the proceeds of the liquidation [of "the remaining assets of MidPac and MHS"] and continued to collect accounts receivable from MidPac and Maui Home Supply account debtors" in violation of the automatic stay provisions of 11 U.S.C. § 362. *Id., ¶ 167.* Those alleged wrongs, assuming they have any merit, are pled only under Count V of Whirlpool's SAC, the claim for relief against which CIT has been granted summary judgment. Bankruptcy fraud allegations appear nowhere in Whirlpool's allegations against CIT in Counts 1 through IV of its tort claims.

Moreover, even if the pleading deficiencies in the SAC were overlooked, it would be both improper and futile to allow Whirlpool to expand its fraud conspiracy or conversion claim to include alleged acts of bankruptcy fraud under paragraphs 166-76. Whirlpool already litigated and lost on its allegations in paragraphs 167-68 of the SAC that CIT's receipt of MidPac proceeds improperly

included MHS proceeds in which Whirlpool had a senior interest, as CIT pointed out in its memorandum in support of its motion in limine on bankruptcy fraud and its June 26, 2006, memorandum opposing Whirlpool's Motion in Limine No. 2 seeking to exclude Judge Ezra's Amended Order ("MIO to Whirlpool Motion in Limine No. 2"). Before the Bankruptcy Court and on appeal to the U.S. District Court, Whirlpool strenuously objected to CIT's claim to proceeds in a MidPac cash collateral account, alleging (as it does now) that money CIT claimed to have gotten from MidPac included proceeds CIT allegedly wrongfully took from MHS in which Whirlpool had a security interest. Whirlpool argued that the MidPac automatic stay should not be lifted and would be violated because it would allow CIT to claim proceeds, which rightfully belonged to Whirlpool. *See Appellant Whirlpool Corporation's Reply Brief (filed in In re MidPac Lumber Company, Ltd., Civil No. 01-00732DAE-KSC on 1/28/02), at 1 (Ex. B to MIO to Whirlpool Motion in Limine No. 2).*

In its Amended Order, Judge Ezra rejected Whirlpool's objections. The Court explicitly stated that "**[t]here is no evidence that CIT induced debtor** [*i.e.,* MidPac] into conducting the auction or **into directing the proceeds to CIT**." *Order* at 7-8 (emphasis added) (*Ex. 1 to CIT's Motion in Limine re Bankruptcy Fraud*). Indeed, the Court noted that the money had been in the cash collateral account **for eighteen months** before CIT moved to lift the automatic stay and

claim the proceeds and that during this entire time, "neither the Trustee nor any of the creditors of the estate, including Whirlpool, took any steps to challenge CIT's claim or to take control over the subject property." *Id.* at 6 (emphasis added).

Likewise, neither the Trustee of MHS or any of its creditors, including Whirlpool, have taken steps during the six years MHS's bankruptcy case has been pending to challenge CIT's alleged receipt of proceeds either directly or indirectly from MHS or from its account debtors, as violating the automatic stay provisions of the Bankruptcy Code. Such proceedings appropriately would have taken place in the bankruptcy cases because Whirlpool's allegations are based on CIT's alleged misuse of property of the MidPac and MHS estates, given that the bankruptcy fraud provisions in 18 U.S.C. § 152, are criminal laws aimed at punishing illegal transfers of "property belonging to the estate of a debtor." *18 U.S.C. § 152 (1), (5); Collier on Bankruptcy, ¶ 7.02[1][a][III], at 7-29; ¶ 7.02[5][a][i]iB], at 7-62 to 7-63 (15th ed. rev. 2006).* If Whirlpool has any claim that CIT violated the automatic stay in connection with MHS, this is neither the time nor the place to raise that issue for the first time. This court is not an alternative forum for adjudicating alleged stay violations, even if Whirlpool had standing to complain.

For the foregoing reasons, this Court should grant CIT's motion in limine and preclude Whirlpool from presenting evidence or argument regarding

allegations of bankruptcy fraud that Whirlpool pleaded in paragraphs 166 through 176 of its Second Amended Complaint as part of its dismissed RICO claim against CIT.

DATED: Honolulu, Hawaiʻi, July 3, 2006.

/s/ Louise K. Y. Ing
PAUL ALSTON
LOUISE K. Y. ING
THOMAS E. BUSH
ALLISON KIRK
Attorneys for Defendant/Cross-claimant THE CIT GROUP/BUSINESS CREDIT, INC.