NOV 26 2002



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO, and KURT GLASSMAN, DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants.<br><br>and<br><br>CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Cross-Claim Defendants. | Civil No. CV01-00187 DAE BMK<br><br>(Tort and RICO) |

DEPOSITION OF RAYMOND S. IWAMOTO

Taken on behalf of Plaintiff Whirlpool Corporation, at 2300 Pauahi Tower, 1001 Bishop Street, Honolulu, Hawaii, 96813, commencing at 9:05 a.m., on Tuesday, November 12, 2002, pursuant to Notice.

REPORTED BY: JANIS K. FLOATE, RPR, CSR 254
Notary Public, State of Hawaii

EXHIBIT A

created it.

Q. Glenda Corp?

A. Yes. Something that you filed. I remember reading that, and I said, oh, my god.

Q. So you didn't create Glenda Corporation?

A. No.

Q. You had nothing to do with creating it?

A. No.

Q. Did you discuss Glenda Corp with Vernon Char?

A. Yes.

Q. When did you discuss it with him?

A. During the period of time, which would be around September, around this time, when we -- Mr. Phelps took on the responsibility of dealing with the vendors and helping with CIT. My focus was CIT, Damon Estate, the ground lessor, and getting new financing. Mr. Phelps would help with the new financing. Mr. Glassman indicated that Mr. Bowling would put some money back into the company, and the way it was coming in was through this Glenda Corp.

So who was going to be Glenda Corp's attorney? We were told it was Vernon Char. We went over to his office, and we discussed how this was going to happen. Vernon had Steve Ching to

participate from the tax perspective. And I think that answers your question.

Q. Is it your understanding, sir, that there was never an attempt to seek investors, independent investors for Glenda Corp?

A. At the same time that Kurt Glassman was saying and Mr. Bowling were saying that the money was coming in through the Glenda Corp channel, just as a Plan B, if that money didn't materialize, Kurt was talking to, I think, one or two of his associates that he knew that might be interested in investing. That's all I know.

Q. Had you ever spoken to Mr. Phelps about his traveling to the mainland to put on a show for investors?

MS. ING: Object. Lacks foundation.

A. No. I thought Mr. Phelps went there only to meet with Glenda Bayliss.

BY MR. HOGAN:

Q. So you understood that he had gone to the mainland to meet with Glenda Bayliss?

A. Yes. Now, I don't know if I knew that at the time or afterwards when I'm reading these papers, you know.

Q. Did you ever prepare a letter to City Bank

Investments?

A. Yes, because, you know, City Bank is already a lender to CG Investments, as you can see from number one and number two. But at this time, CIT is a lender to Midpac, and with two million dollars coming in from Glenda Corp, we got a commitment from City Bank to loan maybe to CGBN, which is the parent of Midpac, or to Midpac, I forget which, so the financial statements where the debtor is CG Investments is not relevant, and I think that's what she means.

Q. Because the loan will be to Midpac?

A. Yes.

Q. Did you ever get any UCC-1 reports or anything from CIT? Did they ever produce any evidence of what they claimed was their liens to you?

A. I don't know how to answer that because the record is the record assuming the title company doesn't make a mistake.

Q. Right.

A. They will produce all the liens. That's on record.

Q. Is it your understanding that there was no discussion ever regarding the Whirlpool inventory

Q. Third line talks about, it says, "It does not make economic sense for Whirlpool to do this," referring to the lawsuit. "They are unsecured." What did you mean by that? Was it your statement that Whirlpool was unsecured as to any particular entity or what did you base that on?

A. Let me go back to your previous questions where you were asking me a lot of questions about Whirlpool and how they may have figured into the forbearance agreement -- or not the forbearance agreement, but the refinancing.

And as I have told you that, Mr. Phelps took responsibility for all the vendors, and the feedback I was getting from Mr. Phelps was that many of the vendors were very supportive. And I assume that included Whirlpool, that they would -- that they had been informed that they should stop selling appliances on credit; they should just sell it on C.O.D. basis. And they were willing to do this.

So to me, they were not an issue. That's why all your questions about, you know, their security interests and everything, I don't recall very much because they were not -- that was not an important issue.

So now obviously here this e-mail here is

November 3, and obviously the financing and the Glenda Corp money has not materialized. And as you know, we went down to escrow twice to wait for the money, and the money did not come. Therefore, City Bank did not fund its loan and, therefore, we had to come up with Plan B.

Plan B was to downsize and to focus on the appliance and Kraftmaid sales because those were very profitable. And I am being told at this time that the vendors, the Kraftmaid and the Whirlpool, are going to support this.

Then comes the big surprise. The lawsuit is filed, which comes as a big surprise to me because I was told that they were being supportive.

To me, you asked me the question it does not make economic sense for Whirlpool to do this. To me, my trying to save this company by refinancing in the first place was the way that Whirlpool and all the other vendors would have gotten paid.

As it was explained to me by Mr. Phelps, it would have been like on a two- to four-year payout basis, but they would have gotten paid. But if somebody filed a lawsuit or somebody filed an involuntary bankruptcy or if CIT foreclosed, Midpac would go down, and Whirlpool would not get paid

# C E R T I F I C A T E

STATE OF HAWAII )
) SS.
CITY AND COUNTY OF HONOLULU )

I, JANIS K. FLOATE, Notary Public, State of Hawaii, do hereby certify:

That on November 12, 2002, appeared before me Raymond S. Iwamoto, the witness whose deposition is contained herein; that prior to being examined, the witness was by me duly sworn;

That the deposition was taken down by me in machine shorthand and was thereafter reduced to typewriting under my supervision; that the foregoing represents to the best of my ability, a true and correct transcript of the proceedings had in the foregoing matter.

I further certify that I am not an attorney for any of the parties hereto, nor in any way concerned with the cause.

DATED this ______ day of____________,2002, in Honolulu, Hawaii.

____________________________________
JANIS K. FLOATE, RPR, CSR 254
Notary Public, State of Hawaii
My Commission Exp: December 12, 2005