Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys At Law
A Law Corporation

PAUL ALSTON 1126-0
LOUISE K. Y. ING 2394-0
THOMAS E. BUSH 4737-0
ALLISON KIRK 8156-0
18th Floor, ASB Tower
1001 Bishop Street
Honolulu, Hawaiʻi 96813
Telephone: 524-1800
Facsimile: 524-4591
palston@ahfi.com
ling@ahfi.com
tbush@ahfi.com
akirk@ahfi.com

Attorneys for Defendant/Cross-claimant
THE CIT GROUP/BUSINESS CREDIT, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE | ) | Civil No. CV 01 00187 MEA-BMK<br>(Tort and RICO)<br><br>**DEFENDANT CIT GROUP/BUSINESS CREDIT, INC.'S REPLY TO WHIRLPOOL CORPORATION'S OPPOSITION TO CIT'S MOTION IN LIMINE TO PRECLUDE USE OF AND ARGUMENT RE: THE "BOND FUNDS FRAUD" AS EVIDENCE OF CIT'S LIABILITY;**<br>DECLARATION OF LOUISE K. Y. |

618,024 / 6527-1

| | | |
|---|---|---|
| PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Crossclaim Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | ING; EXHIBITS 5-7; CERTIFICATE OF SERVICE<br><br>JUDGE: Hon. Marvin E. Aspen<br><br>TRIAL: November 6, 2006 |

**DEFENDANT CIT GROUP/BUSINESS CREDIT, INC.'S REPLY TO WHIRLPOOL CORPORATION'S OPPOSITION TO CIT'S MOTION IN LIMINE TO PRECLUDE USE OF AND ARGUMENT RE: THE "BOND FUNDS FRAUD" AS EVIDENCE OF CIT'S LIABILITY**

Defendant CIT Group/Business Credit, Inc. hereby responds to Whirlpool Corporation's Opposition to CIT's Motion in Limine to Preclude Use of and Argument re: the "Bond Funds Fraud" as Evidence of CIT's Liability ("Opposition"). Despite Whirlpool's fevered attempt to tie unrelated statements and transactions together to show that the alleged "bond funds" scheme is evidence of CIT's agreement to join a conspiracy, Whirlpool does not address at all in its Opposition how the alleged bond funds fraud was directed at Whirlpool or harmed Whirlpool, two essential elements of a conspiracy claim under *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 n.3 (9th Cir. 1984) (the elements

conspiracy claim are "a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage."). Whirlpool thereby concedes that this alleged fraud was neither directed at nor harmful to Whirlpool. Whirlpool has provided no reason for treating the bonds fund fraud any differently with respect to Whirlpool's fraud conspiracy claim than its RICO claim. In granting CIT summary judgment on Whirlpool's RICO claim, this Court rejected Whirlpool's Bond Funds fraud theory that CIT had knowingly used MidPac's bond funds to repay MidPac's loans in order to use the payments to make loans to other borrowers (*Second Amended Complaint ("SAC"), ¶ 268*) and "cover up the existence of the enterprise", reasoning that "these attempted links between racketeering proceeds and injury to Whirlpool are far too tenuous to support a § 1962(a) claim." *Memorandum Opinion and Order ("Opinion"), at 21.* Simply put, Whirlpool hopes that if it blows enough smoke, it can dispense with facts and law and make CIT look bad, so the jury will assume CIT must have conspired against Whirlpool.

If the alleged scheme is not an actionable grounds for a conspiracy claim, it should not be deemed circumstantial evidence of CIT's agreement to join a conspiracy, for "an alleged civil conspiracy must be established by *clear, cogent,* and convincing evidence." *Doleman, 727 F.2d at 1483 n.3.* The *Doleman* case

teaches that courts should require plaintiffs to "provide specific evidence of the alleged co-conspirators' agreement to engage in conduct designed to breach a fiduciary duty. Without such evidence of the parties' subjective intent, allegations of a conspiracy should not go to a jury. To do so would confuse the jury and also cause a diversion of trial time." *Id.*

The so-called "bond funds fraud" evidence cited in Whirlpool's opposition (which involved only one known and identified set of transfers of bond funds by CIT that was reversed as soon as it was discovered by CIT and before it caused any injury to anyone) *(see Ex. 3 to CIT's Motion in Limine re Bond Funds Fraud, Hayes report, at 1, § 1; Ex. 5, Schedule 1, Exs. A-C of Hayes Report)* does not meet the clear, cogent, convincing or specific standards for evidence of CIT's alleged agreement to join a conspiracy to defraud Whirlpool. In fact, the whole concept of the "bond funds fraud" is incomprehensible. The evidence should not even go to the jury:

- Whirlpool mischaracterizes a June 23, 1999, letter from Raymond Iwamoto to CIT in-house attorney Grace Bowen as "reminding [CIT] of its own liability in regard to bond funds" and thereby improperly inducing CIT not to "put an end to MidPac's malfeasance." *Opposition, at 4.* However, the author of the letter and a CIT representative both testified that the main thrust of the Iwamoto letter was not to induce CIT to join a conspiracy by threatening it with

liability arising from freezing bond funds but to discourage CIT from contacting MidPac's suppliers as part of CIT's investigation because they were "vital assets of MidPac that should not be jeopardized by CIT's inquiries." *Ex. 2 to Opposition, at 3.*[1] Further, even under Whirlpool's argument, if CIT was induced to do nothing, that is not the same as being induced to conspire. *See Opinion at 17 ("Demonstrating that CIT was aware of the ongoing fraud at MidPac is not sufficient to demonstrate agreement") (citing Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc., 982 P.2d 853, 881 n. 28 (Haw. 1999)).* Further, the other evidence cited by Whirlpool--Mr. Iwamoto's November 3, 1999 email–shows that CIT did not accede to MidPac's enticements by unfreezing bond accounts and thereby allow MidPac to misappropriate the bond funds for its operations.

---

1 *See Ex. 6, Deposition of Raymond Iwamoto (11/12/02) ("Iwamoto Deposition"), at 126:16-127:15. "I'm talking to CIT and saying be careful, because our relationship with our vendors is very important. . . . So you cannot make false accusations to these vendors"); 128:6-129:2 ("they were talking about contacting all the trade creditors. And I'm saying to them be careful in how you talk to the trade creditors. You can't go around saying that there has been fraud when you don't know if there is fraud"); Ex. 7, Rule 30(b)(6) Deposition of Thomas A. Hayes, Vol. I (11/19/02) ("Hayes 30b6, Vol I"), at 263:4-264:22).* Whirlpool similarly characterizes the letter in another Opposition. *Whirlpool's Opposition to Docket No. 800 (filed 6/26/06), at 3 ("Mr. Iwamoto. . . furthered the fraud by threatening CIT that if it disclosed the ongoing fraud to one of its victims, specifically Whirlpool, CIT would be sued").*

- Whirlpool points to a November 3, 1999 email from Raymond Iwamoto to his colleagues at his firm that "CIT will have to bite the bullet and fund bonding moneys." *Ex. 1 to Whirlpool's Opposition; Trial Ex. W762.* Whirlpool fails to explain how this email, written nearly five months after Whirlpool claims CIT the alleged conspiracy directed at Whirlpool, is evidence of CIT's continuing agreement to conspire. Indeed, since the purpose of the alleged conspiracy was precisely to ***avoid*** funding bond escrows, this email shows CIT a victim, holding the bag, not a perpetrator.

- To the extent Whirlpool contends that CIT's agreement to conspire is evidenced by its sweeping bond funds and applying them to CIT's loan, the only evidence of alleged sweeps identified by Whirlpool, an expert report by its forensic accounting expert Thomas Ueno (*Trial Ex. W882*), covers a limited set of transactions (June 17 and 24, 1999), all of which have been refuted by CIT's forensic accounting expert Thomas E. Hayes. *Ex. 3 to CIT's Motion in Limine re Bond Funds Fraud and Ex. 5, Schedule 1, Exs. A-C.* Whirlpool argues that CIT has not produced evidence that it returned bond funds that it obtained, *Opposition, at 3*, but it is Whirlpool which bears the burden of proving CIT illicitly swept MidPac's bond funds and misapplied them to its loan, assuming any of that evidence is even relevant. In any event, that issue is moot because Whirlpool cannot even show that any alleged agreement to conspire relating to bond funds

was aimed at or harmed Whirlpool. Whirlpool admits in its opposition that the alleged bond funds fraud exposed "banks . . . to potential harm", not Whirlpool. *Id.*

"A reasonable juror could find this [the alleged bond funds fraud] to be circumstantial evidence of an agreement to continue the fraud conspiracy that CIT joined on June 23, 1999", *id.,* only if Whirlpool is allowed to confuse the jury with an incomprehensible collateral conspiracy theory that inconsistently faults CIT for both withholding bond funds from MidPac and allowing MidPac to use them in operations and that in either event was irrelvant to, was not directed at and did not harm Whirlpool. Whirlpool's opposition is a "poster-child" for the need for FRE 402 and 403 limitations on unfocused evidence of alleged bad acts having nothing to do with Whirlpool. This motion provides an opportunity for the Court to shape a more focused and orderly trial by barring the admission of irrelevant evidence that has nothing to do with any improper purpose directed at Whirlpool.

For the foregoing reasons, CIT's motion to preclude evidence of and argument about the alleged bond funds fraud should be granted.



618.024 / 6527-1

DATED: Honolulu, Hawai'i, July 3, 2006.

/s/ Louise K. Y. Ing
PAUL ALSTON
LOUISE K. Y. ING
THOMAS E. BUSH
ALLISON KIRK
Attorneys for Defendant/Cross-claimant THE CIT GROUP/BUSINESS CREDIT, INC.