cl 10/03, errata corrections, DLD



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

WHIRLPOOL CORPORATION, a Delaware corporation,

Plaintiff,

vs.

CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; CGBN, INC., a Hawaii corporation; MICHAEL CLIFFORD; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO, and KURT GLASSMAN, DOE INDIVIDUALS 1-50; DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,

Defendants.

and

CG DEVELOPMENT, INC., F&J MOVERS, and RENEE K. COSTA,

Additional Cross-Claim Defendants.

Civil No. CV01-00187 DAE BMK

(Tort and RICO)

DEPOSITION OF RAYMOND S. IWAMOTO

Taken on behalf of Plaintiff Whirlpool Corporation, at 2300 Pauahi Tower, 1001 Bishop Street, Honolulu, Hawaii, 96813, commencing at 9:05 a.m., on Tuesday, November 12, 2002, pursuant to Notice.

REPORTED BY: JANIS K. FLOATE, RPR, CSR 254
Notary Public, State of Hawaii

**EXHIBIT 6**

APPEARANCES:

For Plaintiff Whirlpool Corporation:

TIMOTHY J. HOGAN, ESQ.
Lynch Ichida Thompson Kim & Hirota
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813

For Defendant CIT Group/Business Credit, Inc.:

LOUISE Y.K. ING, ESQ.
Alston Hunt Floyd & Ing
1800 Pacific Tower
1001 Bishop Street
Honolulu, Hawaii 96813

For Defendants Edwin Bowling and Frances Haller-Bowling:

MARGERY S. BRONSTER, ESQ.
JEANNETTE HOLMES, ESQ.
Bronster Crabtree & Hoshibata
2300 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813

For Defendants Michael Clifford, CGBN, Inc., and Additional Cross-Claim Defendant CG Development, Inc.:

TED N. PETTIT, ESQ.
CHRISTOPHER J. MUZZI, ESQ.
Case Bigelow & Lombardi
2600 Mauka Tower
737 Bishop Street
Honolulu, Hawaii 96813

For Defendant Raymond Iwamoto:

CALVIN E. YOUNG, ESQ.
Ayabe Chong Nishimoto Sia & Nakamura
2500 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813

APPEARANCES (continued):

Speakerphone Appearance from Benton Harbor, Michigan:

DEB CLAWSON, ESQ.
Whirlpool Corporation
Legal Department
2200 M63
Mailbox No. 2200
Benton Harbor, Michigan 49022

Also Present:

SYLVIA M. LEE, Paralegal
Lynch Ichida Thompson Kim & Hirota

Q. Okay, I'll ask you about J&J. Why would you presume that you could -- why did J&J come up in all this?

A. CIT brought up the three companies, F&J, J&J and Spectrum. That's why J&J came up.

Q. You've got three companies here. Were these telephone conversations, to the best of your knowledge, that this was being presented or was there a letter that was preceding this June 23rd?

A. I think this was a telephone conversation that precedes this letter. But you know what I'm telling you is that this sentence that Kurt assisted helping in J&J set up their business, that's incorrect. He did not. As far as I know, he didn't help J&J set up its business.

Q. The last page, C 00729, third paragraph, however, based on our discussions --

The last sentence says, "As for mainland suppliers, Whirlpool, Kraftmaid, Stanley and others, the relationship that Midpac has with these companies are vital assets of Midpac and should not be jeopardized by CIT's inquiries."

Why did you say that?

A. Remember now, this is the first inkling I've ever had that there may be a possible default

under CIT financing. I speak to my client. My client tells me it's all inadvertent, there's plenty collateral, company is doing great guns, it's in fine shape.

Now, I'm talking to CIT and saying be careful, because our relationship with our vendors is very important, a very valuable asset. So you cannot make false accusations to these vendors that will stop them from supporting the company. I'm fighting to keep this company going. I'm believing that this company -- up to this point and I believe it, this company was making tons of money. You know? And the employees, you know, hundreds of employees would have lost their jobs and everything. I'm fighting for this company.

Q. Did you discuss with Kurt Glassman the issue of having CIT inquire regarding, say, Whirlpool and call Whirlpool to verify payables, that sort of thing?

A. I don't recall. You mean before this letter when I was writing this letter?

Q. Obviously Whirlpool was an important customer or supplier, vendor. Did Kurt ever say anything to you about not letting this get back to Whirlpool?

A. No.

Q. Specifically?

A. No.

Q. So that was put in here by you on your own?

A. In response to -- I don't know if the word threat is the right word, but if you look at this -- and I'm trying to refresh my memory.

At this point, all I know is that there has been inadvertent error, just an inadvertent error, yet CIT has frozen accounts, jeopardized payroll tax, bonding accounts and its payments to its normal trade creditors, which would include Whirlpool and Kraftmaid and all of that. And they are insisting that Glassman turn over the books of these other companies, which I am telling them he has no control over because I believed it at the time, that these are owned by separate, different, unrelated individuals. Even though Kurt may have helped them by creating these companies, he had no control over them.

Now, probably from my phone conversations with CIT they were talking about contacting all the trade creditors. And I'm saying to them be careful in how you talk to the trade creditors. You can't

go around saying that there has been fraud when you don't know if there is fraud.

Q. Now, did you do any other investigation other than to talk to Kurt Glassman to verify that there was no fraud prior to writing this letter?

A. I trusted my client. I did not investigate whether he was lying to me or not.

Q. Why is that?

A. Because I trusted him.

Q. Now, at the same time -- let me make sure. Were you aware that you had formed W Spectrum, that documents had just a couple weeks before been prepared for that company, and is it your testimony that you didn't feel any need to go and investigate any further regarding the CIT allegations that would be pointed directly at Mr. Glassman as having been a participant in a fraud to verify, in fact, if CIT was correct?

MR. PETTIT: Objection, form of the question.

MS. ING: Join in the objection.

BY MR. HOGAN:

Q. You had documents that showed that you had just formed Spectrum two weeks before.

A. Yes.

C E R T I F I C A T E

STATE OF HAWAII )
) SS.
CITY AND COUNTY OF HONOLULU )

I, JANIS K. FLOATE, Notary Public, State of Hawaii, do hereby certify:

That on November 12, 2002, appeared before me Raymond S. Iwamoto, the witness whose deposition is contained herein; that prior to being examined, the witness was by me duly sworn;

That the deposition was taken down by me in machine shorthand and was thereafter reduced to typewriting under my supervision; that the foregoing represents to the best of my ability, a true and correct transcript of the proceedings had in the foregoing matter.

I further certify that I am not an attorney for any of the parties hereto, nor in any way concerned with the cause.

DATED this 26 day of Nov., 2002, in Honolulu, Hawaii.

Janis K. Floate

JANIS K. FLOATE, RPR, CSR 254
Notary Public, State of Hawaii
My Commission Exp: December 12, 2005