Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys At Law
A Law Corporation

PAUL ALSTON 1126-0
LOUISE K. Y. ING 2394-0
THOMAS E. BUSH 4737-0
ALLISON KIRK 8156-0
18th Floor, ASB Tower
1001 Bishop Street
Honolulu, Hawai'i 96813
Telephone: 524-1800
Facsimile: 524-4591
palston@ahfi.com
ling@ahfi.com
tbush@ahfi.com
akirk@ahfi.com

Attorneys for Defendant/Cross-claimant
THE CIT GROUP/BUSINESS CREDIT, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE | ) | Civil No. CV 01 00187 MEA-BMK (Tort and RICO)<br><br>**DEFENDANT CIT GROUP/BUSINESS CREDIT, INC.'S REPLY TO WHIRLPOOL CORPORATION'S OPPOSITION TO CIT'S MOTION IN LIMINE TO PRECLUDE USE OF AND ARGUMENT RE: TED PHELPS' AUGUST 11, 1999 EMAIL;**<br>CERTIFICATE OF SERVICE |

| | | |
|---|---|---|
| PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Crossclaim Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | JUDGE: Hon. Marvin E. Aspen<br><br>TRIAL: November 6, 2006 |

**DEFENDANT CIT GROUP/BUSINESS CREDIT, INC.'S REPLY TO WHIRLPOOL CORPORATION'S OPPOSITION TO CIT'S MOTION IN LIMINE TO PRECLUDE USE OF AND ARGUMENT RE: TED PHELPS' AUGUST 11, 1999 EMAIL**

Defendant CIT Group/Business Credit, Inc. hereby responds to Whirlpool Corporation's Opposition to CIT's Motion in Limine to Preclude Use of and Argument re: Ted Phelps' August 11, 1999 Email ("Opposition"). Whirlpool's arguments in its Opposition for using Ted Phelps' August 11, 1999 email against CIT, even though Whirlpool does not dispute it did not reach CIT, illustrate well the need for FRE 402 and 403. They are tools the Court can use to manage the admission of evidence at trial and preclude tenuous evidence like the August 11, 1999 email that will only serve to prolong trial. Admission of such evidence will mean CIT will need additional time to present evidence and

argument showing that the email is not probative of Mr. Phelps' agency capacity, Mr. Cleland's agency capacity, any connection between the subject of the email and Mr. Phelps' or Mr. Cleland's scope of authority vis a vis CIT, CIT's knowledge of intended bank fraud by Kurt Glassman, CIT's joining of a conspiracy to commit bank fraud, or any connection between such a conspiracy directed at certain banks and harm to Whirlpool.

The email should not go to the jury if Whirlpool cannot first make preliminary showings that (A) Mr. Phelps was CIT's agent, (B) Mr. Phelps' statement was made in the course and scope of his agency (assuming agency is found), (C) a conspiracy existed in which CIT joined, (D) even if Mr. Phelps was not CIT's agent, Mr. Cleland was, and (E) if Mr. Cleland was CIT's agent, Mr. Phelps' statement to him about Mr. Glassman was made in the course and scope of the conspiracy. Lacking direct or even meritorious circumstantial evidence of Mr. Phelps' agency or CIT's agreement to conspire, Whirlpool evidently hopes that the email and all the other extraneous evidence it seeks to present (e.g., the "Bond Funds fraud", the Navy contract, replacement financing efforts, etc.) will throw enough mud at CIT that the jury will overlook Whirlpool having failed to prove each of the required elements of its claims.

The email itself may illustrate Mr. Phelps' poor judgment in making light of Mr. Glassman's dealings with two banks, but it is not probative of whether

CIT considered Mr. Phelps its agent or agreed to join any conspiracy, for Whirlpool will have to admit there is nothing indicating CIT authorized, directed, or read at the time the statements in the email. Whirlpool's only "hook" is if it can prove as a threshold matter that either Mr. Phelps and/or Mr. Cleland were CIT's agent and acting within the scope of his respective authority. Even assuming they were agents, the email is not probative of whether CIT agreed to join a conspiracy, for this Court has already ruled that "[d]emonstrating that CIT was aware of the ongoing fraud at MidPac is not sufficient to demonstrate agreement." *Memorandum Opinion and Order ("Opinion"), at 17 (citing Robert's Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc., 982 P.2d 853, 889 n. 44 (Haw. 1999)).*

Nevertheless, stepping back to address Whirlpool's argument that the email is an admission or knowledge of a CIT agent, Rule 801(d)(2)(D) of the Federal Rules of Evidence govern the conditions under which the statement of an agent can be deemed an admission by his principal: it must be proven that the declarant is indeed the principal's agent and that he spoke about a matter within the scope of his or her employment. However, in determining whether an agency or employment relationship existed at the time of the statement and the scope of such a relationship, the content of the statement is to be considered **but is not alone sufficient**. *Id. (emphasis added).* The preliminary questions relating to the declarant's authority and the existence and scope of an the agency or employment

relationship are treated as evidentiary questions governed by Fed.Ev.R. 104(a) and which should be determined by the court.[1] *Advisory Committee Notes to Rule 801 (1997 Amendment). Accord, Hilao v. Estate of Marcos,* 103 F.3d 737, 775 (9th Cir. 1996) ("The existence of an agency relationship is a question for the judge under Rule 104(a) and must be proved by substantial evidence but not by a preponderance of the evidence."). Whirlpool cannot make such a threshold showing that either Mr. Phelps or Mr. Cleland were CIT's agents and acting within the scope of their agency because:

- Whirlpool has not come forward with substantial evidence that Mr. Phelps was CIT's agent. *See CIT's Reply to Whirlpool Corporation's Opposition to CIT's Motion in Limine to Preclude Evidence of and Argument Based upon Ted Phelps' Alleged October 28, 1999 Statement to Ernest Matlock Regarding Phelps' Relationship with CIT, at 4-11 (filed 7/3/06).*

---

[1] Rule 104(a) states:

(a) Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibilty of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

- Whirlpool has not come forward with reasons why, even assuming Mr. Phelps was CIT's agent, this is a situation where Mr. Phelps' knowledge should be imputed to CIT.

> The general rule which imputes an agent's knowledge to the principal is well established. The underlying reason for it is that an innocent third party may properly presume the agent will perform his duty and report all facts which affect the principal's interest. But this general rule does not apply when the third party knows there is no foundation for the ordinary presumption, - when he is acquainted with the circumstances plainly indicating that the agent will not advise his principal.

*Imperial Fin. Corp. v. Finance Factors, Ltd.,* 53 Haw. 203, 206 (1971). The general rule of imputing knowledge should not be applied here. The statement was Mr. Phelps' attempt at joke or an expression of his opinion; in poor taste perhaps but a joke or opinion nonetheless. The statement is followed by another off-the-cuff comment by Mr. Phelps about airline executives that underscores that the email was not to be taken seriously. Assuming Mr. Phelps was CIT's agent, he was not making a joke on behalf of a principal or to advance a principal's interest. Nor was the comment about a transaction aimed at injuring Whirlpool. Moreover, CIT has discussed and cited in its Trial Brief the extensive body of law holding that a lender (and its agent) have no duty to disclose information about MidPac

or its principals to MidPac's other creditors. *See Trial Brief, at 3-7, which is incorporated herein.*

- Whirlpool has not come forward with any evidence that Mr. Cleland was CIT's agent or acting with the scope of any agency. Mr. Cleland was an employee of Collateral Risk Management ("CRM"). Whirlpool would have the Court ignore the express terms of the Inventory Management Service Agreement, dated July 15, 1999, between Collateral Risk Management ("CRM"), CIT and MidPac (*Ex. 1 to Opposition*) which specifically provides that CRM "is not the agent or employee of LENDER and is acting solely as an independent contractor." *Id., ¶ 1(g), at AL000034.*
- Even assuming Mr. Cleland, as an employee of CRM, could be deemed an agent of CIT, Whirlpool has not come forward with any evidence that his communication with Mr. Phelps about the status of MidPac's replacement financing efforts or Mr. Glassman's conduct towards the banks was within the scope of CRM's engagement. As the agreement points out, CRM was engaged to provide "Inventory Management Service", including delivering an "initial Collateral Report based on a physical inventory" to lender, complying with written instructions from Lender on "the manner in which COMPANY may remove inventory subject to LENDER's interest", and

reporting to LENDER on Improper care of condition of the inventory." *Id., ¶1(b), (c), (d).*

Whirlpool argues that its conspiracy claim gives it carte blanche to introduce any manner of tenuous evidence against CIT to prove conspiracy under the 50+ year old case of *Hashimoto v. Halm*, 40 Haw. 354 (1953). Since *Hashimoto,* the courts have developed a system of evidentiary rules and procedural steps that create a more orderly process for admission of evidence in conspiracy cases. While statements made by a co-conspirator during the course and in furtherance of a conspiracy are not considered hearsay Fed. R. Evid. 801(d)(2)(E) and are instead considered admissions of a party co-conspirator, before an alleged co-conspirator's statements are admissible under that rule, "[t]he party proffering the statements as nonhearsay under Rule 801(d)(2)(E) must demonstrate the existence of a conspiracy and that the statements were made in the course of and in furtherance of that conspiracy." *Precision Piping and Instruments, Inc. v. E..I. du Pont de Nemours and Co.,* 951 F.2d 613, 612 (4th Cir. 1991). "Prior to admitting the statements, the trial court [pursuant to Rule 104(a) must make the preliminary factual determinations relevant to Rule 801(d)(2)(E). *Id.* Specifically, the court must determine that "there was a conspiracy and that the statements were made while both the declarant and the person against whom the statement is offered were part of the conspiracy." *Qualley v. Clo-Tex Int'l, Inc.,*

212 F.3d 1123, 1130 (8th Cir. 2000). In making these factual determinations, however, the court may consider the contents of the co-conspirator statements but the statements "are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered." *See* Fed. R. Evid. 801(d)(2)(E).

Whirlpool has not shown and cannot make a preliminary showing that Mr. Phelps and CIT were part of the "Glassman fraud" conspiracy for the reasons stated in CIT's memorandum in support of its motion to preclude the August 11, 1999 email. Moreover, as this Court found, the law is clear that mere knowledge of a fraud or conspiracy does not equate to evidence that "CIT joined the alleged conspiracy" (*Opinion, at 17*) or "acted with the purpose of assisting" a conspiracy. *Id., at 19. Accord, Robert's, 982 P.2d at 889 n. 44; Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482 n. 3.* Nor as discussed above and in CIT's Trial Brief does knowledge about a borrower's suspected fraud or financial problems give rise to a duty to disclose those facts to the borrower's other creditors. *CIT's Trial Brief, at 3-7.*

For the foregoing reasons, CIT's motion should be granted and Whirlpool should be precluded from eliciting evidence or making arguments to the jury that Mr. Phelps' August 11, 1999, email to George Cleland is evidence that Mr. Phelps was CIT's agent or that CIT agreed to join a conspiracy or that CIT is

liable for conspiracy. Instead, Whirlpool should be required to make preliminary showings to this Court that there is substantial evidence showing that (A) Mr. Phelps was CIT's agent, (B) assuming he was CIT's agent, Mr. Phelps' statement was made in the course and scope of his agency, (C) even if Mr. Phelps was not CIT's agent, Mr. Cleland was, (D) if either was CIT's agent, a conspiracy existed in which CIT joined, and (E) if either was CIT's agent, Mr. Phelps' statement about Mr. Glassman and Mr. Cleland's receipt of the statement were done in the course and scope of the conspiracy. If Whirlpool fails to make those showings, the August 11, 1999, email should not go to the jury.

DATED: Honolulu, Hawai‘i, July 3, 2006.

/s/ Louise K. Y. Ing
PAUL ALSTON
LOUISE K. Y. ING
THOMAS E. BUSH
ALLISON KIRK
Attorneys for Defendant/Cross-claimant THE CIT GROUP/BUSINESS CREDIT, INC.