Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys At Law
A Law Corporation

PAUL ALSTON 1126-0
LOUISE K. Y. ING 2394-0
THOMAS E. BUSH 4737-0
ALLISON KIRK 8156-0
18th Floor, ASB Tower
1001 Bishop Street
Honolulu, Hawai'i 96813
Telephone: 524-1800
Facsimile: 524-4591
palston@ahfi.com
ling@ahfi.com
tbush@ahfi.com
akirk@ahfi.com

Attorneys for Defendant/Cross-claimant
THE CIT GROUP/BUSINESS CREDIT, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE | ) | Civil No. CV 01 00187 MEA-BMK<br>(Tort and RICO)<br><br>**DEFENDANT CIT GROUP/BUSINESS CREDIT, INC.'S REPLY TO WHIRLPOOL CORPORATION'S OPPOSITION TO CIT'S MOTION IN LIMINE TO PRECLUDE USE OF AND ARGUMENT RE: TED PHELPS' JULY 29, 1999 LETTER AS EVIDENCE OF AGENCY;**<br>DECLARATION OF LOUISE K. Y. |

| | | |
|---|---|---|
| PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20,<br><br>Defendants,<br><br>and<br><br>F&J MOVERS, and RENEE K. COSTA,<br><br>Additional Crossclaim Defendants. | ) | ING; EXHIBITS 4-6; CERTIFICATE OF SERVICE<br><br>JUDGE: Hon. Marvin E. Aspen<br><br>TRIAL: November 6, 2006 |

**DEFENDANT CIT GROUP/BUSINESS CREDIT, INC.'S REPLY TO WHIRLPOOL CORPORATION'S OPPOSITION TO CIT'S MOTION IN LIMINE TO PRECLUDE USE OF AND ARGUMENT RE: TED PHELPS' JULY 29, 1999 LETTER AS EVIDENCE OF AGENCY**

Defendant CIT Group/Business Credit, Inc. hereby responds to Whirlpool Corporation's Opposition to CIT's Motion in Limine to Preclude Use of and Argument re: Ted Phelps' July 29, 1999 Letter as Evidence of Agency ("Opposition"). The letter should *not* go to the jury for the purpose of proving whether an agency relationship existed between Mr. Phelps and CIT for the purposes of either Whirlpool's fraud or its fraud conspiracy claim. If it is to be considered at all, it should be considered by the Court in making a threshold determination of whether an agency relationship existed.

Under Rule 801(d)(2)(D) of the Federal Rules of Evidence, a statement of a third person will be deemed a party's admission if that third person

is an agent or servant making a statement about a matter within the scope of his or her employment, made during the existence of the relationship. Fed.Ev.R. 801(d)(2)(D). In determining whether an agency or employment relationship existed at the time of the statement and the scope of such a relationship, the content of the statement is to be considered **but is not alone sufficient**. *Id. (emphasis added).* The preliminary questions relating to the declarant's authority and the existence and scope of an the agency or employment relationship are treated as evidentiary questions governed by Fed.Ev.R. 104(a) and which should be determined by the court.[1] *Advisory Committee Notes to Rule 801 (1997 Amendment). Accord, Hilao v. Estate of Marcos,* 103 F.3d 737, 775 (9th Cir. 1996) ("The existence of an agency relationship is a question for the judge under Rule 104(a) and must be proved by substantial evidence but not by a preponderance of the evidence"). Likewise, in this case, the court should consider and determine the preliminary evidentiary questions of whether Mr. Phelps was CIT's agent, including if it deems necessary, evidence like the July 29, 1999, letter. The letter should not go to the jury for that purpose.

---

[1] Rule 104(a) states:

> (a) Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibilty of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

However, Whirlpool's arguments about the relevance of the July 29, 1999, letter to the existence of an agency relationship should be rejected because:

- Whirlpool makes a *non sequitur* argument that Mr. Phelps' alleged contemporaneous statements to Whirlpool that there was "no fraud" at MidPac and "problems did not extend to Maui"(*Opposition, at 2*), make Mr. Phelps' statement in the July 29, 1999 letter relevant to the existence of an agency relationship. Whirlpool does not explain how the first two comments, assuming they were even made, are probative of the existence of any agency relationship as of late July 1999, for they say nothing about whether Mr. Phelps had a reasonable belief, based on CIT's conduct, that he was CIT's agent, two necessary elements of implied actual authority. *See Cho Mark Oriental Food v. K&K Int'l, 73 Haw. 509, 515, 836 P.2d 1057 (1992), cited and discussed in CIT's Trial Brief, at 8.*
- Whirlpool does not even show why Mr. Phelps' alleged statement that "problems did not extend to Maui" was intentionally misleading as of late July 1999, given that Mr. Phelps had only been "on the job" since June 24, 1999, and had been retained by MidPac as consultant, not Maui Home Supply. *Ex. 2 to CIT's Motion in Limine re: July 29, 1999 Letter (filed 6/13/99), Phelps Examination, at 93:7-11.*
- Moreover, with regard to the alleged "no fraud" statement, Whirlpool once again mischaracterizes the record. There is no evidence of a statement by

Mr. Phelps contemporaneous with the July 29, 1999, letter that "no fraud" took place at MidPac. Whirlpool's Credit Analyst Ernest Matlock testified that the comment, made as "an aside", (*Ex. 4, Rule 30(b)(6) Deposition of Ernest Matlock, at 24:25*) did not occur until September 13, 1999, nearly two months after the July 29, 1999 letter. *Id., at 23:23-24:11.* Although Mr. Matlock took frequent notes of his conversations with Phelps (*see, e.g., Whirlpool's Exhibit and Witness List (filed 2/27/06), Exs. W29-36, W39-40, W678, W696, W730, W748*), he did not bother to document that alleged statement, assuming it was even made. *Ex. 4, at 24:10.* Mr. Matlock's testimony is unreliable, in any event, for as the Whirlpool credit analyst involved in the decisions to set and increase MidPac and Maui Home Supply's credit limits from December 1998, on (*Ex. 6, Rule 30(b)(6) Deposition of Carl Smith (2/14/03), at 71:18-72:13*) and in monitoring the MidPac and MHS accounts and developing a repayment plan throughout 1999 (*id., at 185:1-8; 198:21-199:10; 204:18-205:3; 255:23-256:6*), he had an interest in defending his decisions and blaming others for Whirlpool's inaction.

- Whirlpool has no basis, other than its own desire to see things its paranoid way, for disputing testimony that Mr. Glassman had voluntarily selected Mr. Phelps as MidPac's consultant. Whirlpool argues instead, supported by neither law or fact, that "any consultant Mr. Glassman would have

consented to would have been CIT's agent." Whirlpool would have the court and jury ignore a written agreement (*Ex. 5, Forbearance Agreement, Trial Ex. W630, at 2, ¶ 5*), and contrary testimony by MidPac's own attorney and Mr. Phelps himself. *Ex. 2 to CIT's Motion in Limine re: July 29, 1999 Letter, Phelps Examination, at 53:7-17, 54:1-6, 85:18-20; Ex. 6 to CIT's Reply re: Motion in Limine re: Phelps' Alleged October 28, 1999, Statement, Iwamoto Depo., at 122:3-6.* The fact that a lender requires a borrower to retain consultant does not make the consultant the lender's agent. Whirlpool has presented no evidence or law controverting the report of CIT's asset-based lender expert Irwin Teich, who opined that where borrower fraud is involved, one of the asset-based lender's remedies is to "request the borrower to bring in an independent third party everyone can trust, i.e., a consultant." *Ex. 4 to Declaration of Timothy J. Hogan (filed 6/13/06), Report of Irwin Teich, at 5, § VIII. Cf. Schwan's Sales Enterprises, Inc. v. Commerce Bank & Trust Co.*, 397 F. Supp. 2d 189, 195 (D. Mass. 2005) ("The leverage the bank may have had as a practical consequence of the lending relationship itself is not dispositive, because it is not 'the exercise of such total control over the debtor as to have essentially replaced its decision-making capacity with that of the lender'"). Whirlpool has not and cannot produce evidence that CIT exercised total control over

MidPac, as opposed to leverage as MidPac's major lender, so as to render MidPac's consultant CIT's agent.

For the foregoing reasons, CIT's motion should be granted and Whirlpool should be precluded from eliciting evidence or making arguments to the jury that Mr. Phelps' July 29, 1999 letter to CIT's Mr. Brichacek is evidence that Mr. Phelps was CIT's agent. Instead, Whirlpool should be required to make preliminary showings to this Court that there is substantial evidence showing that (A) Mr. Phelps was CIT's agent, (B) assuming he was CIT's agent, Mr. Phelps' statement was made in the course and scope of his agency. If Whirlpool fails to make those showings, the July 29, 1999 letter should not go to the jury.

DATED: Honolulu, Hawai'i, July 3, 2006.

/s/ Louise K. Y. Ing
PAUL ALSTON
LOUISE K. Y. ING
THOMAS E. BUSH
ALLISON KIRK
Attorneys for Defendant/Cross-claimant THE CIT GROUP/BUSINESS CREDIT, INC.