Of Counsel:
ALSTON HUNT FLOYD & ING
Attorneys At Law
A Law Corporation

PAUL ALSTON 1126-0
LOUISE K. Y. ING 2394-0
THOMAS E. BUSH 4737-0
ALLISON KIRK 8156-0
18th Floor, ASB Tower
1001 Bishop Street
Honolulu, Hawai'i 96813
Telephone: 524-1800
Facsimile: 524-4591
palston@ahfi.com
ling@ahfi.com
tbush@ahfi.com
akirk@ahfi.com

Attorneys for Defendant/Cross-claimant
THE CIT GROUP/BUSINESS CREDIT, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| WHIRLPOOL CORPORATION, a Delaware corporation, | ) | Civil No. CV 01 00187 MEA-BMK (Tort and RICO) |
| Plaintiff, | ) | **DEFENDANT CIT GROUP/BUSINESS CREDIT, INC.'S REPLY TO WHIRLPOOL CORPORATION'S OPPOSITION TO CIT'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OF AND ARGUMENT BASED UPON TED PHELPS' ALLEGED OCTOBER 28, 1999 STATEMENT TO ERNEST MATLOCK** |
| vs. | ) | |
| CIT GROUP/BUSINESS CREDIT, INC., a New York corporation; EDWIN BOWLING; FRANCES HALLER-BOWLING; RAYMOND IWAMOTO; KURT GLASSMAN; DOE INDIVIDUALS 1-50; DOE | ) | |

| | | |
|---|---|---|
| PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 1-20, | ) | **REGARDING PHELPS' RELATIONSHIP WITH CIT;** DECLARATION OF LOUISE K. Y. ING; EXHIBITS 4-9; CERTIFICATE OF SERVICE |
| Defendants, | ) | |
| and | ) | |
| F&J MOVERS, and RENEE K. COSTA, | ) | |
| | ) | JUDGE: Hon. Marvin E. Aspen |
| Additional Crossclaim Defendants. | ) | TRIAL: November 6, 2006 |

**DEFENDANT CIT GROUP/BUSINESS CREDIT, INC.'S REPLY TO WHIRLPOOL CORPORATION'S OPPOSITION TO CIT'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OF AND ARGUMENT BASED UPON TED PHELPS' ALLEGED OCTOBER 28, 1999 STATEMENT TO ERNEST MATLOCK REGARDING PHELPS' RELATIONSHIP WITH CIT**

Defendant CIT Group/Business Credit, Inc. hereby responds to Whirlpool Corporation's Opposition to CIT's Motion in Limine to Preclude Evidence of and Argument Based Upon Ted Phelps' Alleged October 28, 1999 Statement to Ernest Matlock Regarding Phelps' Relationship with CIT ("Opposition"). Whirlpool concedes in its Opposition that based on this Court's ruling (*Memorandum Opinion and Order ("Opinion"), at 15-16*), Ted Phelps' alleged "eyes and ears" comment to Ernie Matlock on October 28, 1999, cannot be used to prove that Mr. Phelps was acting as CIT's agent between June 23 and

July 23, 1999, the timeframe of the alleged fraud under Count I of Whirlpool's Second Amended Complaint ("SAC"). Indeed, although Mr. Phelps' alleged involvement in ordering product from Whirlpool between June 23 and July 23, 1999, as alleged agent for CIT was a central theme in Whirlpool's fraud allegations (*Second Amended Complaint ("SAC"), ¶ 101*), Whirlpool's own Rule 30(b)(6) witness Carl Smith admitted that before July 23, 1999, "I don't believe Ted Phelps was actually involved in any of the order releases." *Ex. 4, Rule 30(b)(6) Deposition of Carl Smith, Vol. 2 (2/14/03), at 220:16-221:1.* Therefore, at a minimum, this Court should issue an order precluding Whirlpool from using the "eyes and ears" comment against CIT with respect to Whirlpool's fraud allegations in Count I and instruct the jury accordingly.

In addition, the alleged "eyes and ears" comment should be excluded as evidence of Mr. Phelps' agency for the purposes of Whirlpool's fraud conspiracy claim. The pending motions present this Court with the ability to assist the parties in planning either a focused, efficient trial or a trial allowing liberal admission of evidence, with much witness and argument time spent explaining and limiting the effect of various pieces of evidence.

Whirlpool's opposition is flawed because it makes unfounded factual assumptions and seeks the admission of third-party statements and conduct against CIT before Whirlpool has even reached "first base;" that is, proved the threshold

issue of whether Mr. Phelps was CIT's agent. Whirlpool's Opposition is a prime example of how an overbroad admission of evidence before there has even been a preliminary finding by the Court of agency and conspiracy can complicate and lengthen a trial, confuse a jury and prevent a determination of threshold issues that can shape an orderly and efficient trial.

For instance, Whirlpool erroneously argues that "Mr. Phelps admitted to Mr. Matlock that he was the eyes and ears of CIT." *Opposition, at 2.* In truth, it is only Mr. Matlock who so testified. It is premature (and CIT contends, error) to deem that alleged statement to Mr. Matlock an admission. Whirlpool has no evidence from Mr. Phelps or CIT that such a statement was made. In fact, if called or deposed for trial, Mr. Phelps is expected to testify consistent with his declaration submitted in support of CIT's Motion for Partial Summary Judgment as to Count I (Fraud) and Count II (Fraud Conspiracy) (filed 2/2/04), that:

> 3. I was employed by MidPac as a consultant on, or about, June 24, 1999.
> 4. I was never an employee or agent of CIT, nor ever acted on behalf of CIT, or held myself out to be acting on behalf of CIT. CIT never controlled or directed my activities at MidPac. I made clear to CIT that I represented MidPac's interests.
>
> * * *
>
> 12. I have no recollection of saying to anyone at Whirlpool that I was CIT's "eyes and ears" and I do not believe I made any such comment. Nor do I recall telling anyone at Whirlpool that "I was a certified fraud examiner and I see no fraud here," and I do not believe I made any such comment. Any comments I made to Whirlpool personnel during my tenure as

MidPac's workout consultant represented only my personal opinions as a representative of MidPac and were not made on behalf of CIT.

*Declaration of Ted Phelps (Exhibit D to Declaration of Louise K. Y. Ing, filed on February 2, 2004 ("CIT's Master Exhibits")).*

Under Rule 801(d)(2)(D), a third party's statement can be deemed an admission by a party if the statement was made by an agent or servant concerning a matter within the scope of his or her employment, made during the existence of the relationship. Fed.Ev.R. 801(d)(2)(D). However, in determining whether an agency or employment relationship existed at the time of the statement and the scope of such a relationship, the content of the statement is to be considered **but is not alone sufficient**. *Id. (emphasis added).* The preliminary questions relating to the declarant's authority and the existence and scope of an the agency or employment relationship are treated as evidentiary questions governed by Fed.Ev.R. 104(a) and which should be determined by the court.[1] *Advisory Committee Notes to Rule 801 (1997 Amendment). Accord, Hilao v. Estate of Marcos,* 103 F.3d 737, 775 (9th Cir. 1996) ("The existence of an agency

---

[1] Rule 104(a) states:

(a) Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibilty of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

relationship is a question for the judge under Rule 104(a) and must be proved by substantial evidence but not by a preponderance of the evidence").

The "evidence" cited by Whirlpool in its Opposition falls short of substantial evidence of the existence of an agency for the following reasons:

- There is a two-part inquiry that must be made to determine if Mr. Phelps had implied actual authority from CIT to serve as its agent: **"the relevant inquiry is whether the agent reasonably believes, <u>because of the conduct of the principal</u> . . . that the principal desired him to so act."** *Cho Mark Oriental Food v. K&K Int'l, 73 Haw. 509, 515,836 P.2d 1057 (1992)* (emphasis added; internal quotations and citations omitted). This, in turn, requires an examination of what powers "the agent reasonably believes himself to possess **as a result of representation by the principal or of acts of the agent permitted by the principal over a course of time in which the principal has acquiesced."** *In re Ballard,* 100 B.R. 526 (Bk Nev. 1989) (emphasis added). *Accord Global Poly, Inc. v. Fred's Inc.,* 2004 U.S. Dist. LEXIS 21881 (N.D. Ill. 2004) (principal's words or actions must lead a reasonable person in the position of the alleged agent to believe he/she was authorized to act).

- Neither CIT's words and actions, nor Mr. Phelps' own testimony about his reasonable belief about his capacity, support Whirlpool's theory. When examined by Whirlpool's counsel in 2000, Mr. Phelps testified that he was officially engaged by MidPac "when CIT told them that in order to

continue with the company and help it, allow it to try to straighten itself out", they wanted a consultant. Mr. Phelps testified that CIT did not insist it be him, that CIT offered to provide a list of consultants, wanted Collateral Risk Management installed as inventory custodians; and wanted a forbearance agreement negotiated. *Ex. 2 to CIT's Motion in Limine re July 29, 1999 Letter, Rule 2004 Examination of Ted Phelps (12/7/00) ("Phelps Examination"), at 53:11-54:6.* According to Mr. Phelps, CIT's Thomas A. Hayes told MidPac that "It doesn't have to be Ted. We brought him down here to help us on this, but if you want somebody else." Mr. Glassman replied, "No, no. I'm happy with Ted. That's fine." *Id., at 54:3-6. See also Ex. 5 to CIT's Reply re Motion in Limine re July 29, 1999 Letter (filed 7/3/06), at 2, ¶ 5 (MidPac has hired Mr. Phelps as "a consultant to Borrower.")*

- As for CIT, its account executive Robert Brichacek was never told by Mr. Phelps or anyone else that Mr. Phelps was CIT's "eyes and ears". *Ex. 5, Deposition of Robert Brichacek (11/21/02), at 129:20-130:9.* Referring to the telephone call Mr. Matlock made to CIT, which prompted Mr. Phelps' call to Mr. Matlock on October 28, 1999, Mr. Bricachek understood that "as part of his [Mr. Phelps'] responsibilities one of the things that he was doing on behalf of Midpac was handling the unsecured creditors, the trade creditors." *Id., at 130:12-15.*

- As discussed above, Whirlpool has not proven Mr. Phelps actually made the statement to Ernie Matlock. We only have Mr. Matlock's

hearsay testimony about Mr. Phelps' alleged statement to him. Mr. Matlock's testimony is unreliable, for as the Whirlpool credit analyst involved in the decisions to set and increase MidPac and Maui Home Supply's credit limits from December 1998, on (Ex. 6 to CIT's Reply re: Motion in Limine re: July 29, 1999 Letter (filed 7/3/06), Rule 30(b)(6) Deposition of Carl Smith (2/14/03), at 71:18-72:13) and in monitoring the MidPac and MHS accounts and developing a repayment plan throughout 1999 (id., at 185:1-8; 198:21-199:10; 204:18-205:3; 255:23-256:6), he had an interest in defending his decisions and blaming others for Whirlpool's inaction.

- Mr. Phelps had never been retained by CIT before and his prior contacts with CIT had been in his capacity as consultant for another troubled company that obtained financing from CIT. *Ex. 6, Phelps Examination, at 13:10-25; 15:18-16:17.*

- Nor can Whirlpool rely on Edwin Bowling's contradictory and hearsay testimony as substantial evidence of the existence of an agency. It is telling that even after Mr. Bowling had been sued by CIT in its crossclaims (Second Amended Crossclaim filed 2/3/03), he testified upon examination by Whirlpool's counsel in this case that he only spoke to Phelps "[m]aybe three times" and that Mr. Phelps never told Mr. Bowling for whom Mr. Phelps worked. *Ex. 1 to Opposition, Bowling Deposition (3/11/03), at 80:16-18, 22-23.* When confronted with his contradictory testimony in his February 1, 2001, Bankruptcy

Rule 2004 examination in the CG Investments, Inc. bankruptcy, Mr. Bowling equivocated: "I think", "all I can do is tell you my recollection", "My understanding was. " Mr. Bowling had a single conversation with Mr. Phelps, during which "I think he told me he reported to CIT, I think." *Id., at 81:24, 82:1-2, 83:16.* When asked why he believed Mr. Phelps worked for CIT, Mr. Bowling relied on inadmissible hearsay from Mr. Glassman, "I believe Glassman told me he worked for CIT." *Id., at 82:3-5.* Mr. Bowling's testimony is unreliable, not only because of his memory problems but because of his bias against CIT, which filed a crossclaim against him.

- Raymond Iwamoto, who had many more contacts with Mr. Phelps than did Mr. Bowling and therefore, opportunity to observe whether Mr. Phelps demonstrated a reasonable belief that he was CIT's agent, testified that "[w]hen I spoke to Ted Phelps I always thought I was talking to an agent of the client [MidPac]." *Ex. 7, Deposition of Raymond Iwamoto (11/12/02), at 122:3-6.*

- Other than unreliable hearsay by Mr. Matlock and Mr. Bowling, the only other alleged evidence of implied actual authority that Whirlpool has proffered is (A) a one-liner in a July 29, 1999 letter which is the subject of CIT's Motion in Limine to Preclude Use of and Argument re: Ted Phelps' July 29, 1999 Letter as Evidence of Agency (filed 6/13/06) and briefed separately (*see Reply to Motion in Limine re July 29, 1999 Letter, incorporated herein*) and (B) Mr. Phelps' alleged "attempt to get a release for CIT in December

1999" in connection with MidPac's supply contract with the U.S. Navy ("Navy Contract"). *Opposition, at 3.*

- The testimony of Whirlpool's Carl Smith, demonstrates that Mr. Phelps' communications with Whirlpool about the Navy Contract are not probative of whether Mr. Phelps reasonably believed himself to be CIT's agent. While according to Whirlpool's credit manager Carl Smith, Mr. Phelps allegedly relayed a request from CIT for a release from Whirlpool in return for CIT releasing to Whirlpool its interest in proceeds from the Navy Contract (*Ex. 8, Deposition of Carl Smith (12/17/02) ("Smith Depo."), at 238:2-15*), Mr. Phelps also gave advice to Whirlpool, recommending "that it was in our [Whirlpool's] best interest to do what was necessary to be able to get the proceeds to the naval contract." (*Id., at 239:1-5*). Rather than constituting substantial evidence of Mr. Phelps' agency relationship with CIT, those alleged statements can reasonably be read by the fact-finder as evidence of Mr. Phelps serving as MidPac's go-between with two MidPac creditors, trying to broker an agreement which would allow MidPac to continue performing its supply contract with the Navy. In fact, Mr. Phelps turned out to be more help to Whirlpool than to CIT, for CIT agreed in a December 15, 1999 letter (*Ex. 9, Trial Ex. W804*) not to interfere with the Navy's direct payment of proceeds to Whirlpool, even though Whirlpool never gave any release. *Ex. 8, Smith Depo., at 239:6-10.*

For the foregoing reasons, CIT's motion should be granted, and any evidence of the alleged "eyes and ears" statement by Ted Phelps and any argument that Phelps was CIT's agent based upon the "eyes and ears" statement should not go to the jury, either with respect to Whirlpool's fraud or its fraud conspiracy claims. Instead, this Court should make a preliminary finding that Whirlpool has failed to produce substantial evidence that Mr. Phelps had implied actual authority to act as agent for CIT, or should hold a hearing for that purpose. Assuming the "eyes and ears" comment is allowed to go the jury, there should be a limiting jury instruction that it not be considered against CIT in connection with Whirlpool's fraud claim.

DATED: Honolulu, Hawaiʻi, July 3, 2006.

/s/ Louise K. Y. Ing
PAUL ALSTON
LOUISE K. Y. ING
THOMAS E. BUSH
ALLISON KIRK
Attorneys for Defendant/Cross-claimant THE CIT GROUP/BUSINESS CREDIT, INC.